```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

**AMBER GASCHO,** *et al.*,
**on behalf of themselves and all
others similarly situated,**

        Plaintiffs,                  CASE NO. 2:11-CV-00436
                                                JUDGE SMITH
                                                MAGISTRATE JUDGE KING

   v.

**GLOBAL FITNESS HOLDINGS, LLC,**

        Defendant.

## REPORT AND RECOMMENDATION

This matter is before the Court on *Plaintiffs' Motion to Remand*, Doc. No. 11 ("*Motion to Remand*"). Defendant opposes the *Motion to Remand*. *See Defendant Global Fitness Holdings, LLC's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand*, Doc. No. 20 ("*Memo. in Opp.*").[1] After *Plaintiffs' Reply Memorandum in Support of Their Motion to Remand*, Doc. No. 23 ("*Reply*"), was filed, defendant, with the Court's consent, filed a surreply. *Order*, Doc. No. 33; *Defendant Global Fitness Holdings, LLC's Surreply in Opposition to Plaintiffs' Motion to Remand*, Doc. No. 34 ("*Surreply*"). Plaintiffs did not respond to the *Surreply*. This matter is therefore ripe for resolution and was referred to the undersigned for consideration and *Report and Recommendation*. *Order*, Doc. No. 39.

---

[1] Defendant has filed an unredacted opposition memorandum under seal. *See* Doc. No. 21. For ease of reference, the Court will refer to the page numbers in the earlier filed redacted version of the *Memo. in Opp.* in this *Report and Recommendation*.

For the reasons that follow, it is **RECOMMENDED** that the *Motion to Remand* be **DENIED**.

**I.    BACKGROUND**

    **A.    Personal Training Contract**

Defendant Global Fitness Holdings, LLC, d/b/a Urban Active ("defendant" or "Urban Active") is a Kentucky limited liability corporation conducting business in Ohio. *Second Amended Complaint*, Doc. No. 31, ¶ 3. Defendant operates fitness clubs in over seventeen locations throughout Ohio, offering personal training and other services. *Id*.

On December 12, 2009, plaintiff Amber Gascho, a resident of Ohio, signed a gym membership contract with defendant's facility located in Powell, Ohio. *Id*. at ¶¶ 23-24. According to plaintiff Gascho, defendant did not, at the time she signed the membership contract, fully advise her of the membership costs, including a semiannual maintenance fee, or of the right to cancel her membership. *Id*. at ¶ 25.

In late July 2010, defendant's employees promoted personal training sessions to members, including plaintiff Gascho. *Id*. at ¶ 26. Two of defendant's employees represented to her that she could cancel the personal training contract at any time for a $10.00 administrative fee. *Id*. at ¶ 27. Based on these representations, plaintiff Gascho alleges, she signed a personal training contract on July 30, 2010. *Id*. at ¶¶ 28-29. At the time of signing, defendant did not give to plaintiff a copy of the personal training contract or of the "notice of cancellation" form. *Id*. at ¶ 29.

Several weeks later, when plaintiff Gascho tendered her notice of cancellation and $10.00 termination fee, she was shown for the first time a copy of her contract. *Id*. at ¶ 30. She was also advised that the early cancellation fee was $250.00, not $10.00. *Id*. When plaintiff Gascho refused to pay the $250.00 fee, defendant continued to charge her credit card for the personal training contract. *Id*. at ¶ 31. Ultimately, she contacted her bank and cancelled payment. *Id*. Plaintiff Gascho raised these issues with defendant's managers at the Powell, Ohio facility. *Id*. at ¶ 32. According to plaintiff Gascho, one of defendant's managers "indicated that he had heard of other gym members raising similar complaints." *Id*.

    **B.**    **The Original Complaint**

On April 13, 2011, plaintiff Gascho filed the original complaint in the Court of Common Pleas for Franklin County, Ohio. *Complaint*, Doc. No. 4. The *Complaint* asserted claims on behalf of plaintiff Gascho and a class of plaintiffs identified as "[a]ll persons to whom Urban Active sold personal training contracts or services to [sic] within the State of Ohio from November 1, 2007 until present." *Id*. at ¶ 7. The *Complaint* specifically alleged that plaintiff Gascho's claims "are typical of the claims of the other members of the Class[.]" *Id*. at ¶ 12. In describing plaintiff Gascho's attempts to cancel the personal training contract, the *Complaint* further alleged that defendant advised her that "the early cancellation fee was actually $250.00 or 15% of the remaining balance due on the one year contract [instead of $10.00]." *Id*. at ¶ 23. The *Complaint* asserted three counts, *i.e.,* claims under Ohio's Consumer Sales Practices Act,

O.R.C. § 1345.01 *et seq.* ("CSPA"), Ohio's Prepaid Entertainment Contract Act, O.R.C. § 1345.41, *et seq.*, and common law fraud. *Id.* at ¶¶ 27-49. The *Complaint* sought declaratory, injunctive and monetary relief in excess of $25,000, as well as costs and attorneys' fees under the CSPA. *Id.* at p. 9.

### C. The First Amended Complaint

On April 19, 2011, – while the case remained pending in state court – an amended complaint was filed by Amber Gascho and two additional named plaintiffs. *First Amended Complaint*, Doc. No. 5. Plaintiff Ashley Buckenmeyer alleges that she signed up for a personal training contract but, when she tried to cancel the contract less than four hours later, she was told, *inter alia*, that it was "too late." *Id.* at ¶¶ 35-43. Defendant allegedly refused to cancel the personal training contract and continues to charge plaintiff Buckenmeyer's bank card, forcing her to dispute defendant's charges with her bank. *Id.* at ¶¶ 44-45. After plaintiff Michael J. Hogan provided written notice of cancellation of his gym membership in October 2010, defendant is alleged to have continued to charge his bank card through February 2011. *Id.* at ¶¶ 47-49. When plaintiff Hogan contacted defendant, he was advised that his notice of cancellation had not been received. *Id.* at ¶¶ 49-50. The *First Amended Complaint* alleges that plaintiff Hogan was charged over $100.00 in additional gym membership fees, which defendant has refused to refund. *Id.* at ¶ 50.

The *First Amended Complaint* also purports to assert claims on behalf of the following classes:

(A) All persons in Ohio to whom Urban Active sold membership contracts from November 1, 2007 until the

4

    present.

 (B) All persons in Ohio to whom Urban Active sold personal training contracts or contracts for other services from November 1, 2007 until the present.

 (C) All persons in Ohio who cancelled Urban Active membership contracts, personal training contracts and other contracts for services and for whom Urban Active continued to charge their credit, bank or debit accounts from November 1, 2007 until the present.

*Id.* ¶ 9. According to the *First Amended Complaint*, the claims of the three named plaintiffs "are typical of the claims of the other members of the Class[es.]" *Id*. at ¶ 12.

 The *First Amended Complaint* asserts four causes of action, including claims under Ohio's CSPA, O.R.C. § 1345.01 *et seq.*, Ohio's Prepaid Entertainment Contract Act, O.R.C. § 1345.41, *et seq.*, Ohio's False and Deceptive Trade Practices Act, O.R.C. § 4165.01, *et seq.*, and breach of contract. *Id*. at ¶¶ 51-75. Plaintiffs seek declaratory, injunctive and monetary relief in excess of $25,000, as well as costs and attorneys' fees under the CSPA and the Deceptive Trade Practices Act and "[s]uch other relief as this Court deems just and appropriate." *Id*. at pp. 13-14.

 **D. Removal**

 Defendant removed this action on May 19, 2011, pursuant to 28 U.S.C. §§ 1332(d) and 1453. *Notice of Removal*, Doc. No. 2. Defendant contends that this action is removable under the Class Action Fairness Act of 2005, P.L. 109-2, as codified at 28 U.S.C. §§ 1332(d) and 1453 ("CAFA") because (1) the putative class consists of at least 100 members; (2) the citizenship of at least one putative class member differs from that of at least one defendant; and (3) "the amount in controversy exceeds $5,000,000, exclusive of interest and costs[.]"

*Id*. at p. 1 (citing, *inter alia*, 28 U.S.C. § 1332(d)(2), (5), (6)).

In calculating the amount in controversy, defendant multiplied plaintiff Hogan's alleged damages – *i.e.*, $100.00 in additional gym membership fees after providing written notice of cancellation – by the total number of membership contracts sold at Ohio Urban Active locations, resulting in an alleged aggregate class compensatory damages total of at least $22,500,000 – well in excess of the CAFA amount in controversy threshold.  *Notice of Removal*, ¶¶ 19-21.  Although the *First Amended Complaint* did not provide the total number of membership contracts, defendant attached to the *Notice of Removal* a declaration averring that 225,000 membership contracts had been sold at Urban Active locations in Ohio.  *Id*. at ¶ 19 (citing *Declaration of Coby DeVary*, ¶ 4, attached thereto)["*First DeVary Declaration*"].

Defendant represents that it was served with the summons, the original *Complaint* and the *First Amended Complaint* on April 19, 2011, and contends that the *Notice of Removal* was therefore timely filed within the 30-day time period authorized by 28 U.S.C. § 1446(b).  *Id*. at ¶¶ 1-3.  In moving to remand, however, plaintiffs dispute that representation and contention.

**II.   STANDARD**

Section 1446 of Title 28 establishes the procedure to be followed in order to properly remove a case to federal court, specifying, *inter alia*, the time period for filing the notice of removal:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]

28 U.S.C. § 1446(b). *See also Memo. in Opp.*, p. 5 (referring to the first paragraph of Section 1446(b) as the "Initial Pleading Clock" and to the second paragraph as the "Other Paper Clock.").

Removal statutes are strictly construed with all doubt as to the propriety of the removal resolved in favor of remand. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). In particular, the thirty-day time requirement for removal is to be strictly applied. *See*, *e.g.*, *Music v. Arrowood Indem. Co.*, 632 F.3d 284, 287 (6th Cir. 2011); *Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993).

Here, defendant argues that this Court is vested with diversity jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d), which provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs[.]" 28 U.S.C. § 1332(d)(2). *See also Hall v. State Farm Mut. Auto. Ins. Co.*, No. 05-2530, 215 Fed. Appx. 423, at *424 (6th Cir. Jan. 9, 2007) (noting that class plaintiffs may aggregate their claims in order to satisfy the amount in controversy requirement).

A defendant who removes a case carries the burden of establishing federal jurisdiction, including any amount in controversy requirement. *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d

554, 559 (6th Cir. 2010) (citing *Hertz Corp. v. Friend*, __ U.S. __, 130 S.Ct. 1181, 1194-95 (2010)). More specifically, a removing defendant must establish by a preponderance of the evidence that the amount in controversy is sufficient. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). *See also Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007) ("CAFA does not alter the fact that 'the removing defendant has the burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement has been met.'") (internal citations omitted)). Courts evaluating the propriety of removal, including the amount in controversy, must consider the claims at the time of removal. *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 769-70 (6th Cir. 2009); *Everett*, 460 F.3d at 822.

**III. DISCUSSION**

Plaintiffs argue that the *Notice of Removal* is untimely because defendant filed it 31 days after being served with the original *Complaint* on April 18, 2011. *Motion to Remand*, pp. 2-4; *Declaration of Kenneth J. Rubin Made Pursuant to 28 U.S.C. § 1746 in Support of Plaintiffs' Motion to Remand* ("*Rubin Declaration*"), ¶ 4; *Exhibits B and C*, attached thereto. Defendant no longer disputes the date upon which service of the original *Complaint* occurred. *Surreply*, p. 1 n. 1. Instead, defendant contends that service of the original *Complaint* is immaterial because that initial pleading did not, on its face, seek damages in excess of the amount in controversy. *Memo. in Opp.*; *Surreply*. Defendant goes on to argue that the *Notice of Removal* was timely filed because the time for removing this action did not

commence until April 19, 2011, when defendant was served with the *First Amended Complaint*. *Id*. Plaintiffs disagree, contending that defendant was on notice at the time that it received the original *Complaint* that the case was removable. *Reply.*

This Court must first determine whether the original *Complaint,* apparently served on defendant on April 18, 2011, triggered the start of the 30-day period for timely removal under Section 1446(b). The *Complaint* asserted claims under the CSPA and O.R.C. § 1345.41 and of fraud, *id*. at ¶¶ 27-49, and sought an unspecified amount in damages. *Id*. at p. 9 (seeking declaratory, injunctive and monetary relief, including an award of damages in an amount in excess of $25,000, expenses, reasonable attorneys' fees under the CSPA, and "[s]uch other relief as this Court deems just and appropriate.").

"[W]here plaintiffs seek 'to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' the defendant satisfies its burden [for removal purposes] when it proves that the amount in controversy 'more likely than not' exceeds" the jurisdictional requirement. *Everett*, 460 F.3d at 822 (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993)). Under this test, a defendant may carry its burden by showing that a "fair reading" of the unspecified damages in the complaint satisfies the amount in controversy requirement. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001). *See also Mencer v. Kraft Foods Global, Inc*., 695 F. Supp. 2d 667, 679 (S.D. Ohio 2010) ("In meeting its burden, the defendant is permitted to demonstrate, through a fair reading of the plaintiff's complaint, that the unspecified damages sought will exceed $75,000, if proven.").

Here, plaintiffs argue that defendant knew or should have known that the original *Complaint* was removable because the alleged damages exceeded CAFA's $5 million threshold. *Reply.* Plaintiffs specifically contend that defendant knew that each class member could have suffered $240.00 in damages (*i.e.*, the $250.00 early termination fee allegedly charged plaintiff Gascho less the $10.00 fee understood by her to be due). *Reply*, p. 3 (citing *Memo. in Opp.*, p. 15). Applying defendant's own amount in controversy as calculated in connection with the *Notice of Removal*, plaintiffs contend that defendant knew, as of April 18, 2011, that the total alleged aggregate class damages far exceed CAFA's $5 million jurisdictional amount. *Reply*, pp. 3-4. Alternatively, plaintiffs contend that the required amount in controversy is satisfied by using the same formula but a different damages figure derived from the original *Complaint*. *Id.* at 6-7. Plaintiffs specifically reason that defendant knew that it had collected $192.15 per month from plaintiff Gascho for at least five months after she provided her cancellation letter in August 2010. *Id.* at 6. Multiplying even one month of overcharges, $192.15, by the total number of personal training contracts sold in Ohio since November 2007, plaintiffs argue, would yield aggregate class damages greater than the $5 million CAFA threshold. *Id.* at 6-7.

Defendant responds that, because these figures – the total number of personal training contracts sold in Ohio since November 2007 and the $192.15 collected each month from plaintiff Gascho – were not alleged in the original *Complaint*, the possibility of removal of the action was not "readily ascertainable from the face" of the initial pleading. *Memo. in Opp.*, pp. 6-10 (citing, *inter alia*, *Tech Hills II*

10

*Assoc. v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 968 (6th Cir. 1993)). Therefore, defendant contends, the 30-day clock did not begin to run with service of the original *Complaint*. *Id*. Plaintiffs, however, attempt to distinguish *Tech Hills* and contend that defendant is under an affirmative obligation to investigate any "clues" signaling federal jurisdiction. *Reply*, pp. 8-10 (citing, *inter alia*, *Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573 (table), 1991 U.S. App. 14129 (6th Cir. 1991); *Fultz v. Columbia Gas of Ohio*, No. 1:10CV2683, 2011 U.S. Dist. LEXIS 19428 (N.D. Ohio Feb. 28, 2011); *Parks v. Univ. Hosps. Case Med. Ctr.*, No. 1:10-CV-2746, 2010 U.S. Dist. LEXIS 134778, at *12 n.1 (N.D. Ohio Dec. 10, 2010)).

According to plaintiffs, the original *Complaint* put defendant on notice that plaintiffs intended to seek damages for plaintiff Gascho's unauthorized monthly charges, which were typical of a class of persons who had entered into personal training contracts with defendant since November 2007. *Id*. Given these "clues," plaintiffs argue, a simple review of defendant's own business records would have disclosed the total number of persons in the alleged class, and thus the aggregate amount in controversy. Because these "clues" were apparent on the face of the original *Complaint* and available to defendant as of April 18, 2011, plaintiffs argue, the *Notice of Removal* filed thirty-one (31) days later was untimely. *Id*. (citing, *inter alia*, *Geriak v. ARNCO*, No. 1:10-cv-2856, 2011 U.S. Dist. LEXIS 43715, at *13 (N.D. Ohio Mar. 3, 2011) ("Sales records and other business documents produced in the regular course of business may constitute the kind of information upon which the amount in controversy may be determined."); *Curry v. Applebee's Int'l, Inc.*, No. 1:09CV505, 2009 U.S. Dist. LEXIS

114143, at *25 n.5 (S.D. Ohio Nov. 17, 2009) (noting in *dictum* that the defendants' "independent knowledge of the total sales figures may have rendered this case removable as early as the date they received the Complaint")).

Even accepting all of plaintiffs' arguments,[2] this Court nevertheless concludes that the *Notice of Removal* was timely.  Under plaintiffs' cited authority, a "defendant may have the papers in its possession as of the filing of the suit, but it does not receive notice of the facts contained therein until it reviews those papers in connection with the suit. . . . [A defendant does] not have *notice* of the removability simply by virtue of its possession of the papers." *Holston*, 1991 U.S. App. LEXIS 14129, at *10-11 (citations omitted) (emphasis in original).  Rather, a defendant is merely required to investigate removability "within a reasonable period of time."  *See*, *e.g.*, *Fultz*, 2011 U.S. Dist. LEXIS 19428, at *9; *Parks*, 2010 U.S. Dist. LEXIS 134778, at *13-14.

Here, defendant avers that its "review of internal data relevant to the potential aggregate class-wide amount in controversy in this action did not start until sometime after April 19, 2011."  *Second DeVary Declaration*, ¶ 9.[3]  In light of the fact that defendant was served with the original *Complaint* on April 18, 2011, reviewed

---

[2] In accepting plaintiffs' arguments, the Court expresses no opinion at this time whether or not *Tech Hills* contradicts or overrides the language in *Holston*, which was recently cited in an unreported decision by the United States Court of Appeals for the Sixth Circuit. *See Walker v. Philip Morris USA, Inc.*, No. 09-5318, 2011 U.S. App. LEXIS 22046, at *9 (6th Cir. Oct. 31, 2011).

[3] This assertion is uncontroverted by plaintiffs.  Moreover, the parties agree that discovery regarding issues surrounding removal is unnecessary. *Memo. in Opp.*, p. 14 n.4; *Reply*, p. 7.

documents relevant to the amount in controversy "sometime after April 19, 2011," and removed the action thirty (30) days later on May 19, 2011, the Court cannot conclude that defendant failed to act within a reasonable period of time.  The Court therefore concludes that the *Notice of Removal* was timely filed.[4]

**WHEREUPON**, it is **RECOMMENDED** that *Plaintiffs' Motion to Remand*, Doc. No. 11, be **DENIED**.


If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[4] Having so concluded, the Court need not address the other arguments raised by defendant.

<pre>
November 14, 2011                    s/Norah McCann King
                                    Norah M<sup>c</sup>Cann King
                              United States Magistrate Judge
</pre>