# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**AMBER GASCHO**, *et al.*,
**on behalf of themselves and all**
**others similarly situated,**

   **Plaintiffs,**

            **Case No. 2:11-CV-00436**
            **JUDGE SMITH**
  **v.**         **Magistrate Judge King**

**GLOBAL FITNESS HOLDINGS, LLC,**

   **Defendant.**

### OPINION AND ORDER

This matter is before the Court on Plaintiffs' Objection to the Magistrate Judge's Report and Recommendation Recommending Denial of Plaintiffs' Motion to Remand (Doc. 48), and Defendant's first Motion for Partial Judgment on the Pleadings (Doc. 36).[1] These matters are fully briefed and ripe for disposition. For the reasons that follow, the Court **OVERRULES** Plaintiffs' objection and therefore **DENIES** Plaintiffs' Motion to Remand (Doc. 11), and the Court **GRANTS in part** and **DENIES in part** Defendant's first Motion for Partial Judgment on the Pleadings.

---

[1] Defendant has filed a second Motion for Partial Judgment on the Pleadings (Doc. 61), but, because of the recency of this filing, this motion will be addressed in a subsequent decision.

## I.     Background[2]

On April 13, 2011, Plaintiffs initiated this class action against Defendant Global Fitness

Holdings, LLC, d/b/a Urban Active ("Global Fitness"), in the Court of Common Pleas for

Franklin County, Ohio.  Defendant was served with the Complaint on April 18, 2011.  Global

Fitness is a Kentucky limited liability corporation that operates fitness facilities in Ohio.  Plaintiffs

are residents of Ohio who entered into membership and/or personal training, child care, and/or

tanning contracts at Global Fitness's Ohio Urban Active gym facilities.  Plaintiffs allege that they

were financially wronged as members of Urban Active fitness clubs in Ohio.

The Complaint asserted claims on behalf of Plaintiff Amber Gascho and a class of plaintiffs

identified as "[a]ll persons to whom Urban Active sold personal training contracts or services to

[sic] within the State of Ohio from November 1, 2007 until present."  (Compl. at ¶ 7). On

December 12, 2009, Plaintiff Gascho, a resident of Ohio, signed a gym membership contract with

Defendant's facility located in Powell, Ohio.  *Id.* at ¶¶ 23-24.  According to Plaintiff Gascho,

Defendant did not, at the time she signed the membership contract, fully advise her of the

membership costs, including a semiannual maintenance fee, or of the right to cancel her

membership.  *Id.* at ¶ 25.

In July 2010, Plaintiff Gascho signed a personal training contract, based on Defendant's

representation that she could cancel this contract any time for $10.  At the time of signing,

---

[2] The Magistrate Judge thoroughly set forth the pertinent procedural and factual background of this case in her Report and Recommendation regarding Plaintiffs' Motion to Remand (Doc. 47).  Neither party objects to the background set forth by the Magistrate Judge. Therefore, her detailed discussion of the background is incorporated by reference herein and is summarized, restated, and supplemented as necessary to resolve the Motion for Partial Judgment on the Pleadings and the legal objection to the Report and Recommendation.

2

Defendant did not give to Plaintiff Gascho a copy of the personal training contract or of the "notice of cancellation" form. *Id.* at ¶ 29. Several weeks later, when Plaintiff Gascho tendered her notice of cancellation and $10 termination fee, she was shown for the first time a copy of her contract. *Id.* at ¶ 30. She was also advised that the early cancellation fee was $250.00, not $10.00. *Id.* When Plaintiff Gascho refused to pay the $250.00 fee, Defendant continued to charge her credit card for the personal training contract. *Id.* at ¶ 31.

The Complaint specifically alleged that Plaintiff Gascho's claims "are typical of the claims of the other members of the Class[.]" *Id.* at ¶ 12. The Complaint did not allege how many members the class contained. The Complaint asserted claims under Ohio's Consumer Sales Practices Act ("CSPA"), Ohio Rev. Code § 1345.01 *et seq.*, Ohio's Prepaid Entertainment Contract Act, Ohio Rev. Code § 1345.41 *et seq.*, and a claim of common law fraud. *Id.* at ¶¶ 27-49. The Complaint sought declaratory, injunctive and monetary relief in excess of $25,000, as well as costs and attorneys' fees under the CSPA. *Id.* at p. 9.[3]

On April 19, 2011, and while the case remained pending in state court, a First Amended Complaint was filed by Amber Gascho and two additional named plaintiffs. The First Amended Complaint, which was served on April 19, 2011, purports to assert claims on behalf of the following classes:

> (A) All persons in Ohio to whom Urban Active sold membership contracts from November 1, 2007 until the present.

> (B) All persons in Ohio to whom Urban Active sold personal training contracts or contracts for other services from November 1, 2007 until the present.

---

[3] In Ohio, plaintiffs that seek more than $25,000 shall so state in the pleading, but generally "shall not specify in the demand for judgment the amount of recovery sought[.]" Ohio R. Civ. P. 8(a).

(C) All persons in Ohio who cancelled Urban Active membership contracts,
personal training contracts and other contracts for services and for whom Urban
Active continued to charge their credit, bank or debit accounts from November 1,
2007 until the present.

*Id.* ¶ 9.  According to the First Amended Complaint, the claims of the three named plaintiffs "are

typical of the claims of the other members of the Class[es.]"  *Id.* at ¶ 12.

The First Amended Complaint asserted four causes of action, including claims under the

Ohio Consumer Sales Practices Act, the Ohio Prepaid Entertainment Contract Act, the Ohio

Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01, *et seq.*, and breach of contract.  *Id.* at

¶¶ 51-75.  Plaintiffs requested declaratory, injunctive and monetary relief in excess of $25,000, as

well as costs and attorneys' fees under the Consumer Sales Practices Act and the Deceptive Trade

Practices Act and "[s]uch other relief as this Court deems just and appropriate."  *Id.* at pp. 13-14.

Defendant removed this action to this Court on May 19, 2011, pursuant to the Class

Action Fairness Act ("CAFA"), as codified at 28 U.S.C. §§ 1332(d) and 1453.  In June 2011,

Plaintiffs moved to remand this matter to state court, arguing that Defendant failed to file its

notice of removal within the 30-day time frame required by 28 U.S.C. § 1446(b) (Doc. 11).

On August 5, 2011, Plaintiffs filed a Second Amended Complaint (Doc. 31) against

Defendant.  This complaint added additional named plaintiffs and expanded the putative class.  In

this complaint, Plaintiffs allege, *inter alia*, that Defendant engages in common practices of

misrepresenting the terms and conditions of contracts at the time of sale, making unauthorized

deductions from Plaintiffs' bank accounts, failing to provide consumers with copies of contracts at

the time of signing, failing to orally inform consumers at the time of signing of their right to

cancel, failing to provide copies of "notice of cancellation" documents in the form required under

Ohio law, and failing to honor contract cancellations.  As a result of this alleged activity, Plaintiffs

assert the following claims: violation of the Ohio Consumer Sales Practices Act (Counts I and II);

violation of the Ohio Prepaid Entertainment Contract Act (Count III); violation of the Ohio

Deceptive Trade Practices Act (Count IV); unjust enrichment (Count V); conversion (Count VI);

and breach of contract (VII).

On August 19, 2011, Defendant filed its Answer to Plaintiffs' Second Amended Complaint

(Doc. 35), and its first Motion for Partial Judgment on the Pleadings pursuant to Federal Rule of

Civil Procedure 12(c) (Doc. 36).  Defendant moves for judgment in its favor on Counts I through

VI of Plaintiff's Second Amended Complaint.  Defendant does not seek judgment on the

pleadings as to Plaintiff's breach of contract claim (Count VII).  Defendant's Motion for Partial

Judgment on the Pleadings has been fully briefed and is ripe for disposition.

In November 2011, the Magistrate Judge filed a Report and Recommendation

recommending that Plaintiffs' Motion to Remand be denied (Doc. 47).  Citing *Holston v.*

*Carolina Freight Carriers Corp.*, 936 F.2d 573 (unreported table decision), 1991 WL 112809

(6th Cir. 1991), among other cases, the Magistrate Judge concluded that the notice of removal

was timely filed because Defendant acted within a reasonable time in reviewing documents

relevant to the amount in controversy and removed the action within 30 days of the review.  In

December 2011, Plaintiffs filed their Objection to the Magistrate Judge's Report and

Recommendation.  Plaintiffs argue that the Magistrate Judge erroneously concluded that this

matter should not be remanded to state court because Defendant did not comply with the

requirements of 28 U.S.C. § 1446(b).  Defendant responded and Plaintiffs filed a reply in further

support of their position.

5

On January 26, 2012, Defendant filed a Motion for Leave to Submit Supplemental Authority in Support of Defendant's Motion for Partial Judgment on the Pleadings (Doc. 55).  By this motion, Defendant cites the recent decision of *Robins v. Global Fitness Holdings, LLC*, No. 1:11 CV 1373, 2012 WL 163031 (N.D. Ohio Jan. 18, 2012), as supplemental authority.  Plaintiffs responded to this motion, arguing that *Robins* is irrelevant to the case at bar, and that, even if it is relevant, it does not support Defendant's arguments in this case.

On February 14, 2012, Defendant filed a second Motion for Partial Judgment on the Pleadings, whereby it moved for partial judgment on the pleadings as to certain named Plaintiffs' claims of breach of contract, and claims under the Consumer Sales Practices Act and the Prepaid Entertainment Contract Act (Doc. 61).  Four days later, Plaintiffs moved to strike this Motion for Partial Judgment on the Pleadings (Doc. 62).  On March 6, 2012, the Magistrate Judge denied the Motion to Strike, and granted the Motion for leave to Supplement (Doc. 66).  Considering the recency of the filing of Defendant's second Motion for Partial Judgment on the Pleadings, it will be addressed in a subsequent decision.

## II.    Plaintiffs' Objection to Magistrate Judge's Report and Recommendation

Because it involves the preliminary issue of whether this matter must be remanded to state court, the Court will first address Plaintiffs' Objection to the Magistrate Judge's Report and Recommendation which recommends that this Court deny Plaintiffs' Motion to Remand.  The Court then will address Defendant's first Motion for Partial Judgment on the Pleadings.

### A.    Standard of Review

When objections are received to a report and recommendation on a dispositive matter, the District Judge "must determine de novo any part of the magistrate judge's disposition that has

6

been properly objected to." Fed. R. Civ. P. 72(b)(3).  After review, the District Judge "may

accept, reject, or modify the recommended disposition; receive further evidence; or return the

matter to the magistrate judge with instructions."  *Id.*; *see also* 28 U.S.C. § 636(b)(1)(C).

**B.     Discussion**

Plaintiffs challenge the Magistrate Judge's conclusion that Defendant timely filed its notice

of removal.  Plaintiffs specifically argue that the Magistrate Judge erred in deciding that "even

though Defendant possessed all the information by which it could determine whether this case was

removable when it was served with the original Complaint, Defendant was allowed to wait a

'reasonable period of time' to conduct that review and then would have thirty-days after the

completion of that review to remove the case."  (Pls.' Objection, p. 4).  Plaintiffs argue that this

decision "places the time-frame for removal in the hands of a defendant who, so long as it

conducts its review of the complaint in a 'reasonable time,' will be allowed an additional thirty-

days after concluding that review to remove."  *Id.*  According to Plaintiffs, the 30-day period for

timely removal under 28 U.S.C. § 1446(b) was triggered when the Complaint was served on

Defendant, on April 18, 2011.  Defendant argues that the Magistrate Judge properly found that

the removal was timely because Defendant filed its notice of removal within thirty days of

receiving notice of facts leading to the possibility of removal by its review of relevant documents,

which was after April 19, 2011.  In view of these arguments, the general issue presented by

Plaintiffs' objection is whether Defendant timely filed its notice of removal under Section 1446(b),

even though the notice was filed 31 days after service of the Complaint.  For the following

reasons, the Court finds that the Magistrate Judge correctly concluded that Defendant timely filed

the notice of removal.

7

Analysis of the issue presented must begin with the statute setting forth the procedure to properly remove a case to federal court. Title 28 U.S.C. § 1446(b) provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]

"The strict time requirement for removal in civil cases . . . is a strictly applied rule of procedure and untimeliness is a ground for remand so long as the timeliness defect has not been waived." *Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993) (internal quotation marks and citations omitted). "In the interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the state courts." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999). Thus, the 30-day time requirement for removal is to be strictly applied, and the failure to meet the requirement is a formal barrier to the exercise of federal jurisdiction. *See, e.g., Music v. Arrowood Indem. Co.*, 632 F.3d 284, 287 (6th Cir. 2011); *Seaton*, 992 F.2d at 81; *Holston*, 1991 WL 112809, at *2.

No published Sixth Circuit decision has addressed the particular issue presented in this case. However, the unpublished decision of *Holston* provides insight into the proper resolution of this issue. *Holston* generally involved a determination of whether a removal petition was untimely under 28 U.S.C. § 1446(b). The case had been removed on the basis that the plaintiff's state law

8

claims actually stated a federal law claim under the Labor Management Relations Act.  The plaintiff's complaint did not mention his membership in a labor union or the existence of a collective bargaining agreement, which would have preempted the state law claims.  The defendant answered the complaint, and then amended its answer to include a "pre-emption" defense.  Plaintiff was deposed and admitted facts showing his membership in the union and that he was covered under a collective bargaining agreement.  The defendant filed its petition for removal within 30 days of receipt of a transcript of the deposition (which was more than 30 days after the filing of the amended answer).  The plaintiff moved to remand, arguing that the removal was untimely because the defendant had actual knowledge that the case potentially involved federal issues when it filed the amended answer asserting preemption.  The district court denied the motion to remand.  *See id.*

On appeal, the *Holston* court thoroughly analyzed the application of the second paragraph of Section 1446(b) to the facts before it, and held as follows:  "§ 1446(b) starts the thirty-day period running from the date that a defendant has solid and unambiguous information that the case is removable, even if that information is solely within its own possession."  *Id.* at *3.  In so holding, the *Holston* court made a number of observations that are instructive.  The court noted that the clear purpose of the second paragraph of Section 1446(b) "is to commence the running of the thirty-day period once the defendant receives actual notice that the case has become removable[.]" *Id.* (quoting 14A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, § 3732 at 520)).  The court further noted that a "defendant may have the papers in its possession as of the filing of the suit, but it does not receive notice of the facts contained therein until it reviews those papers in connection with the suit . . . [A defendant does] not have *notice* of

9

the removability simply by virtue of its possession of the papers." *Id.* (Emphasis sic).  The court determined that the defendant's "certain knowledge" that it was actually facing a federal lawsuit "triggers the running of the thirty-day period within which removal petitions must be filed." *Id.* at *6.  The defendant's knowledge that "trigger[ed] the thirty-day period" was demonstrated by the amended answer filed by the defendant in which the defendant asserted preemption. *Id.*  And because the removal petition was filed more than 30 days after the filing of the amended answer, the *Holston* court determined that it was untimely under Section 1446(b).

Additional principles concerning Section 1446(b) guide this Court's resolution of the timeliness issue in the case at bar.  It is clear from the structure of Section 1446(b), that the first paragraph addresses circumstances involving a complaint that sets forth the removable claim in such a manner that the "removability of the action [is] readily ascertainable from the face of the pleading." *Tech Hills II Assoc. v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 968 (6th Cir. 1993).  Thus, although a case may have always been removable, removability may not have been ascertainable from the face of the complaint – which implicates the second paragraph of Section 1446(b).  By its terms, the second paragraph of Section 1446(b) addresses situations involving an initial pleading that does not, on its face, state a removable case.  In these situations, the clock begins after "receipt by the defendant" of a "pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. 1446(b).  Ultimately, it is the Defendant's knowledge of the operative facts of removability that triggers the 30-day period.  Thus, a court applying Section 1446(b) should "consider a defendant's actual knowledge to determine when the thirty-day period commences." *Mozee v. Dugger*, 616 F. Supp.2d 672, 673-74 (W.D. Ky. 2009); *see Holston*, at *6 ("[t]hat knowledge

10

triggers the thirty-day period").

Only when the defendant has knowledge of "solid and unambiguous information that the case is removable," may the 30-day clock begin. *See Holston* (noting that knowledge triggers the 30-day period); *but see Geriak v. Arnco*, No. 1:10-cv-2856, 2011 WL 1539929 (N.D. Ohio Apr. 22, 2011) (finding that time for filing notice of removal begins to run upon service of complaint when the defendant is in possession of information from which removability could be ascertained); *Nobles v. George T. Underhill & Associates, LLC*, No. 3:09-cv-225, 2010 WL 1542516 (W.D. Kent. Apr. 16, 2010) (finding that time for filing notice of removal begins when the complaint is served when removability can be ascertained from information in the possession of the defendant).

When an initial pleading does not present solid and unambiguous information that the case is removable, but does at a minimum suggest removability, a burden is placed on the defendant to inquire about removability. Namely, when "jurisdiction is ambiguous, [the] defendant must inquire about removability within a reasonable period of time." *Fultz v. Columbia Gas of Ohio*, No. 1:10CV2683, 2011 WL 768090, at *3 (N.D. Ohio Feb. 28, 2011) (quoting *Parks v. Univ. Hosps. Case Med. Ctr.*, No. 1:10-CV-2746, 2010 WL 5129284, at *5 (N.D. Ohio Dec. 10, 2010)). Thus, when a defendant receives an initial pleading that does not show removability on its face, but contains "clues" that removability may exist, the clock does not start until the defendant has actual, or imputed, knowledge that the case is or has become removable.

Placing this burden on a defendant recognizes that the defendant does not have knowledge of the removability until it receives notice of facts that show removability (which may or may not be ascertainable from the face of an initial pleading), but also recognizes that the defendant may have within its possession information from which removability may be determined. Furthermore,

11

this is a necessary standard because each case involving an initial pleading that does not state a removable case on its face presents its own set of facts concerning when a defendant receives notice of facts showing removability.  This standard also prevents a defendant from unilaterally determining when to inquire, and thereby trigger the 30-day period, as the standard imposes a reasonable time limit on the inquiry.

In the case at bar, Defendant removed this matter relying upon the CAFA, and the jurisdiction it grants federal courts to hear class actions meeting certain requirements.  Under the CAFA, a federal court has original diversity jurisdiction over class actions where any member of the class of plaintiffs is a citizen of a state different from any defendant, the putative class has at least 100 members, and the amount in controversy exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2), (5), and (6).

That the first two requirements of the diversity jurisdiction statute are met in this case is readily ascertainable from the Complaint.  The Complaint alleges that the named Plaintiff, Amber Gascho, resides in Ohio, and that Defendant is a Kentucky limited liability corporation.  Thus, the minimal diversity required under the statute exists.  Additionally, the Complaint alleges that Defendant operates fitness clubs throughout Ohio and offers personal training services, and the Complaint defines the class as all persons to whom Defendant sold personal training contracts or services within Ohio from November 1, 2007, until the present.  Based on this allegation regarding the extent and nature of Defendant's business, one can reasonably assume that the class consists of more than 100 persons.

Whether the $5 million jurisdictional requirement is satisfied, however, is not readily ascertainable from the face of the pleading.  Thus, to determine removability on the basis of the

CAFA, Defendant, at a minimum, would have needed to inquire into the number of persons who would potentially be members of the class.  Additionally, Defendant would have needed to determine the amount of damages alleged for each class member, to determine whether $5 million is in controversy.  Even assuming the Complaint sets forth sufficient information to determine the amount of damages at issue for each class member, the number of class members (while obviously over 100) is indeterminate if one simply looks to the allegations of the Complaint.

Thus, it is undeniable that determining the amount in controversy in the action as stated in the Complaint required Defendant to go beyond the allegations of the Complaint and review materials and information within its possession.  Determining the number of potential class members probably would not require complicated and extensive research.  However, Defendant filed the notice of removal 31 days after it was served with the Complaint.  Defendant has presented evidence that its "review of internal data relevant to the potential aggregate class-wide amount in controversy in this action did not start until sometime after April 19, 2011." (Second DeVary Decl., ¶ 9).  Even if the Court determined that one day, and no more, was a reasonable period of time for Defendant to ascertain removability based on information within its possession, Defendant filed the notice of removal within 30 days of the day after it was served with the Complaint.

As noted in *Holston*, certain facts within the possession of a defendant may not be pertinent until pleadings or other filings implicate their significance.  And it is not until those materials within the defendant's possession are reviewed that the Defendant is on notice of the information contained therein, as it relates to the initiated action.  Otherwise, the 30-day period would be triggered before the defendant has notice of solid and unambiguous information that the

13

case is removable, a result that would be contrary to the purpose of the statute.  Therefore, until

Defendant reviewed documents relevant to the amount in controversy, it did not have knowledge

or notice that the case was removable.

 For these reasons, the Court **OVERRULES** Plaintiffs' Objection to the Magistrate

Judge's Report and Recommendation, and **DENIES** Plaintiffs' Motion to Remand.  Because the

Court finds that this matter was properly removed, it will now address Defendant's first Motion

for Partial Judgment on the Pleadings (Doc. 36).

**III.** **Defendant's Motion for Partial Judgment on the Pleadings**

 Before addressing the merits of the first Motion for Partial Judgment on the Pleadings, the

Court will address the briefing submitted in connection with Defendant's Motion for Leave to

Supplement, which, as noted above, the Magistrate Judge granted.

 In briefing the supplemental authority matter, Defendant asserted that the Northern

District of Ohio's decision in *Robins v. Global Fitness Holdings, LLC* provides strong support for

its arguments in this case.  Plaintiff argued that the *Robins* decision is not relevant, and that even

if it is relevant, the reasoning expressed therein supports their position in this case, and not the

position of Defendant.

 Clearly, the *Robins* case is relevant to the issues presented and debated in the case at bar,

and thus the Magistrate Judge properly granted the Motion to Supplement.  The *Robins* case

involved claims against Global Fitness that relate to individuals' health spa membership

agreements with Global Fitness, and the facts alleged are the same or similar to the ones alleged in

the case at bar.  For example, the plaintiffs in *Robins* alleged that Global Fitness improperly

collected and retained fees in connection with memberships and employed misleading cancellation

14

policies regarding these memberships.  Based on their factual allegations, the plaintiffs in *Robins* alleged, *inter alia*, breach of contract, unjust enrichment, and violation of the Ohio Consumer Sales Practices Act, Ohio Prepaid Entertainment Contract Act, and Ohio Deceptive Trade Practices Act.  The *Robins* court dismissed the unjust enrichment claim on the basis that the terms and conditions of the agreements were covered by written contracts.  As to the class claims under Ohio Consumer Sales Practices Act and the Ohio Prepaid Entertainment Contract Act, the *Robins* court found that none of the cases cited by the plaintiffs provided the requisite notice of unlawful conduct and therefore dismissed these claims.  Additionally, the *Robins* court determined that consumers lack standing under the Deceptive Trade Practices Act, and accordingly dismissed this claim.

In view of the facts alleged, and the claims presented, the *Robins* case presents similar legal issues to those in the case at bar.  Plaintiffs and Defendant argue over the persuasiveness of the legal analysis of the *Robins* court in resolving these issues.  These arguments essentially supplement the already comprehensive briefing that has been submitted by the parties.  Because *Robins* addresses similar facts and issues as are involved in the case at bar, the Court will give this decision due consideration in reaching the merits of Defendant's first Motion for Partial Judgment on the Pleadings in this matter.

### A.       Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings."  It is well-settled that the standard of review for a motion for judgment on the pleadings under Rule 12(c) is the

15

same as that used to address a motion to dismiss under Rule 12(b)(6).  *See, e.g., Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) (noting that where a Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted is raised by a Rule 12(c) motion for judgment on the pleadings, the Court must apply the standard for a Rule 12(b)(6) motion).

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Accordingly, the Court will grant a motion for judgment on the pleadings if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Little v. UNUM Provident Corp.*, 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (Graham, J.) (citing *Rauch*). Stated differently, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted).

**B.** **Discussion**

17

Plaintiffs assert the following individual and class claims against Defendant: violation of the Ohio Consumer Sales Practices Act (Counts I and II), violation of the Ohio Prepaid Entertainment Contract Act (Count III), violation of the Ohio Deceptive Trade Practices Act (Count IV), unjust enrichment (Count V), conversion (Count VI), and breach of contract (Count VII). By its first Motion for Partial Judgment on the Pleadings, Defendant moves for judgment on Plaintiffs' Consumer Sales Practices Act and Ohio Prepaid Entertainment Contract Act class claims, and all claims under Counts IV through VI. By this motion, Defendant does not, however, move for judgment as to Plaintiffs' individual claims under the Consumer Sales Practices Act, the Prepaid Entertainment Contract Act, or as to Plaintiffs' breach of contract claim. Plaintiffs' Consumer Sales Practices Act and Prepaid Entertainment Contract Act class claims will be discussed together because they involve the same or similar issues. The remaining claims that are the subject of Defendant's first Motion for Partial Judgment on the Pleadings will be discussed in turn.

### 1. Ohio Consumer Sales Practices Act Claims (Counts I and II) and Ohio Prepaid Entertainment Contract Act Claim (Count III)

Defendant argues that Plaintiffs' Ohio Consumer Sales Practices Act ("CSPA") and Prepaid Entertainment Contract Act ("PECA") claims cannot be maintained on behalf of a putative class because they cannot meet the pleading requirements for these claims. Plaintiffs argue that Defendant's position on this issue fails because it is premature, and because they have set forth viable class action claims under these consumer protection statutory schemes.

The CSPA prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices in a consumer transaction. Ohio Rev. Code §§ 1345.02 and 1345.03. For the purpose of the CSPA, a "supplier" is a "seller, lessor, assignor,

franchisor, or other person engaged in the business of effecting or soliciting consumer

transactions[.]"  Ohio Rev. Code § 1345.01(C).  As pertinent here, a "consumer transaction"

includes the sale or transfer of services, or the solicitation to supply services.  *See* Ohio Rev. Code

§ 1345.01(A).

The PECA sets forth requirements for prepaid entertainment contracts, which are

contracts for services in certain industries, including health spas.  The act provides that health spa

service contracts include contracts "for instruction, training, or assistance in physical culture,

body-building, exercising, reducing, figure development, . . . for the use of the facilities of a health

spa, gymnasium, or other facility used for any purpose described in this division, or for

membership in any group, club, association, or organization formed for any purpose described in

this division."  Ohio Rev. Code § 1345.41(A)(4).  Failure to comply with the PECA constitutes a

deceptive act or practice in connection with a consumer transaction, in violation of the CSPA.

Ohio Rev. Code § 1345.48(A).

Pursuant to Ohio Revised Code § 1345.09, a consumer can bring a cause of action for a

violation of Chapter 1345 of the Revised Code.  And, while class actions are authorized for

violations of the CSPA, they are limited.  *See* Ohio Revised Code § 1345.09(B).  A "consumer

may qualify for class-action status only when a supplier acted in the face of prior notice that its

conduct was deceptive or unconscionable."  *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31,

34 (Ohio 2006).  The prior notice must take a certain form.  A class action for a violation of the

CSPA is available only if: "the violation is an act or practice that was declared to be deceptive or

unconscionable by a rule adopted by the [Ohio] Attorney General before the consumer transaction

on which the action is based," or "if the violation is an act or practice that was determined by a

19

court to violate the CSPA and the court's decision was available for public inspection" by the Ohio Attorney General under Ohio Revised Code § 1345.05(A)(3).[4] *Marrone*, 850 N.E.2d at 33 (citing § 1345.09(B)). In *Marrone*, the Ohio Supreme Court was faced with the issue of "how similar the [supplier's] conduct must be to the conduct that was previously determined to be deceptive in order for a consumer to qualify for class-action certification under R.C. 1345.09(B) for a violation of the CSPA." *Id.* at 33. The *Marrone* Court held "that a consumer may qualify for class-action certification under Ohio's CSPA only if the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive by one of the methods identified in R.C. 1345.09(B)." *Id.*

Before addressing whether Defendant had sufficient prior notice, the Court will address Plaintiffs' threshold argument that judgment at this procedural juncture as to these class claims would be inappropriate. Plaintiffs cite *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 684 F. Supp.2d 942, 948-49 (N.D. Ohio 2009), in support of their argument that whether the CSPA claims can proceed as a class action is a question best reserved for the class certification stage.

In *In re Whirlpool Corp.*, the court declined to dismiss the plaintiffs' CSPA claims pursuant to Rule 12(b)(6) because: (1) in the court's view, the defendant's argument that the plaintiffs failed to identify sufficient prior notice would more properly be brought at the class certification stage, and (2) it was unclear at the time whether Section 1345.09(B)'s class action limitations apply in federal court. On these bases, the court found that the defendant's argument

---

[4] Section 1345.05(A)(3) charges the Ohio Attorney General with the task of establishing and maintaining a public inspection file ("PIF") of Ohio court cases that have determined that specific acts or practices violate the CSPA.

regarding the CSPA class claims was inappropriate at the Rule 12(b)(6) stage. *Id.*

This Court does not reach the same conclusion as the court in *In re Whirlpool Corp.* because it since has been determined that the class action limitations in Section 1345.09(B) do apply to CSPA class actions in federal court. *See, e.g., McKinney v. Bayer Corp.*, 744 F. Supp.2d 733, 748-49 (N.D. Ohio 2010). Thus, the uncertainty regarding the threshold legal issue no longer exists. Furthermore, the Court is not persuaded that the class action claims cannot be dismissed at this procedural juncture. As noted by Defendant, if Plaintiffs cannot identify sufficient prior notice at this time, they will be unable to so demonstrate in the future. A court should not allow class claims to continue if it only would be delaying inevitable dismissal. Consequently, the Court will proceed to determine whether there exists an insurmountable bar to relief as to Plaintiffs' CSPA and PECA class claims by virtue of an absence of sufficient prior notice.

Plaintiffs do not assert that there is an applicable rule adopted by the Ohio Attorney General that would be applicable here. To show prior notice, however, Plaintiffs cite six state court decisions that have been placed in the PIF by Ohio's Attorney General which, according to Plaintiffs, involved substantially similar conduct that was found to be in violation of the CSPA. The cases cited by Plaintiffs are as follows: *Celebrezze v. Livingwell (Midwest), Inc.*, No. 88-CV-107069, Franklin County Court of Common Pleas (PIF No. 10001053); *Celebrezze v. Scandinavian Health Spa, Inc.*, No. CV863-1158, Summit County Court of Common Pleas (PIF No. 10000744); *Fisher v. Lasson*, No. CV-92-10-193, Logan County Court of Common Pleas (PIF No. 10001148); *McClain v. RB Sportstore, Inc.*, No. 04-CVE-1118, Elyria Municipal Court (PIF No. 10002416); *Brown v. Silzar, Inc., dba Fred Astaire Dance Studio*, No. 7672,

Montgomery County Court of Appeals (PIF No. 10000402); and *Mid-America Acceptance Company v. Lightle*, 579 N.E.2d 721 (10th App. Dist. 1989) (PIF No. 10001146).

Defendant challenges the effect of these decisions, arguing that each of these decisions fails to constitute notice under § 1345.09(B) for one or more reasons. Defendant argues that each of the decisions: (1) does not constitute a court "determination," (2) does not involve a "substantially similar" act or practice, and/or (3) does not contain the requisite specificity to place a reasonable person on notice of the prohibition. That is, according to Defendant, each case cited by Plaintiffs fails at least one of the requirements for a decision to constitute a prior court determination.

Defendant argues that three of the decisions are consent judgments, and therefore do not constitute a "determination" by a court of this state. Defendant challenges Plaintiffs' citation to the *Livingwell, Inc. (Midwest)*, *Scandinavian Health Spa*, and *Lasson* cases on this basis. Plaintiffs concede that these three cases involved consent judgments.

A consent judgment is essentially a court sanctioned settlement. *See Blakely v. U.S.*, 276 F.3d 853, 867 (6th Cir. 2002) (noting that "a consent judgment, although a judicial decree, is essentially an agreement between the parties and should be construed as a contract."); Black's Law Dictionary 846 (7th ed. 1999) (defining a "consent judgment" as a "settlement that becomes a court judgment when the judge sanctions it."). In *Kline v. Mortgage Electronic Sec. Systems*, No. 3:08-cv-408, 2010 WL 6298271, at *8 (S.D. Ohio 2010) (Ovington, M.J.), the court specifically determined that the *Livingwell, Inc. (Midwest)* case did not constitute "prior notice" to a defendant because it is a consent judgment.

As Plaintiffs note, the *Kline* court observed that the *Livingwell* decision "had no analysis

22

of any kind that could put a defendant on notice." *Id.*  But the court in *Kline* did not hold that a consent judgment with some analysis would constitute prior notice.  As Judge Rice noted in *Smith v. Transworld Sys., Inc.*, No. C-3-96-166, 1997 WL 1774879, at *6 (S.D. Ohio July 31, 1997), "consent judgments . . . are of little, if any, precedential value."  A court approving a settlement agreement must make certain determinations, as "[j]udicial approval . . . may not be obtained for an agreement which is illegal, a product of collusion, or contrary to the public interest." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983).  However, in the consent decree context, a "court has no occasion to resolve the merits of the disputed issues or the factual underpinnings of the various legal theories advanced by the parties." *Id.*  Although a consent judgment may contain analysis, courts do not view this analysis as precedential because the judgment does not reflect an adjudication by the court as to the underlying issues.  Thus, the matters resolved by a consent judgment have not been fully litigated or adjudicated, and the court, while approving the settlement, has not reached a determination on issues in dispute.

Plaintiffs argue that this Court should look to a decision of the Court of Common Pleas of Warren County for instruction on whether a consent decree constitutes sufficient notice.  In *Musuraca v. Kurlemann Builders, Inc.*, No. 05-CV-65246, Warren Cty. Ct. Com. Pl. (Oct. 25, 2007), the state trial court determined that consent judgments may provide the requisite notice under Section 1345.09(B).  The *Musuraca* court noted that there "is no such thing as a quasi judgment or second class judgment."  This Court is not persuaded by Plaintiffs' citation to the *Musuraca* decision.  First, said decision is a decision of a state trial court, not an intermediate appellate court, or the Ohio Supreme Court.  Second, the decision appears to assume that every "judgment" reflects a determination by the court on the merits of the issues presented.  It is true

23

that all valid judgments carry the force of law, but not all judgments are the result of a court reaching a determination after considering the merits of the arguments presented by both sides. Consent judgments are in this category because they constitute judicially approved negotiated settlements.

For these reasons, the Court finds that consent judgments do not contain "determin[ations] by a court of this state[,]" as that phrased is used in Ohio Revised Code § 1345.09(B). Accordingly, the *Livingwell, Inc. (Midwest)*, *Scandinavian Health Spa*, and *Lasson* cases do not constitute prior notice that Defendant's conduct was deceptive or unconscionable.

Defendant argues that two of the remaining three cases, *McClain* and *Brown*, involve different industries than the "health spa" industry in which Defendant operates and therefore the cases are not "substantially similar" for the purpose of Section 1345.09(B). Defendant also argues that the facts of these three cases are too far removed from what is alleged in the case at bar to meet the substantial similarity test. Plaintiffs, however, contend that these two cases are "substantially similar."

In *Marrone*, the Ohio Supreme Court stated that "[c]ases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the CSPA." *Id.* at 36. " 'Substantial similarity' means a similarity not in every detail, but in essential circumstances or conditions." *Id.* In effect, the *Marrone* decision appears to require "that a company receive notice from a published court opinion or a rule of the Attorney General that a similar industry-specific practice is deceptive or unconscionable before a class-action lawsuit can be pursued." *Id.* at 42 (Pfeifer, J., dissenting). However, the dissent's view of the majority decision seems to overstate its breadth. While the *Marrone* majority states

24

that cases that "involve industries and conduct very different from the defendant's do not provide meaningful notice," it does not directly address the issue of whether substantially similar conduct in a different industry may provide the requisite notice.  Significantly, the court did not state that cases that "involve industries *or* conduct very different from the defendant's do not provide meaningful notice," leaving the possibility that substantially similar conduct, even in non-identical industries, may constitute the requisite notice.

Defendant points to the fact that the Ohio Attorney General categorizes cases in the PIF by industry as support for the idea that to be "substantially similar," the conduct must be in the same classified industry.  This Court does not interpret the *Marrone* decision in such a restrictive fashion.  The ultimate inquiry is whether there is "substantial similarity," which does not necessarily preclude a finding that conduct is "substantially similar" even though the industry is not identical.  *See Burge v. Subvest 4, LLC*, No. C-060354, 2007 WL 949802 (Ohio 1st Dist. Ct. App. Mar. 30, 2007) (automobile repair shop's failure to register fictitious name found as sufficient "prior notice" regarding sandwich shop's "substantially similar" conduct involving unregistered fictitious name).  Whether the same industry is involved is not a threshold test. Moreover, Defendant seems to suggest that they are only on notice of court decisions classified in the same subject matter (*i.e.* industry) by the Ohio Attorney General in the PIF.  But all decisions posted in the PIF are subject to public inspection, and therefore their posting provides notice to all of the contents therein.  Therefore, the Court must evaluate whether the cited PIF cases, which purportedly provided notice to Defendant, share "essential characteristics or conditions."

The *McClain* case involved misrepresentations made by a seller of golf clubs.  An agent of the supplier of the clubs promised a full refund if the consumer became dissatisfied with the clubs.

25

The consumer was not satisfied with the clubs and attempted to return the clubs pursuant to the guarantee, but he was met with various obstacles in this process, which prevented the return. The court found that the supplier had engaged in unfair and deceptive conduct under the CSPA by disavowing promises made by the agent; refusing to honor the written terms of the contract; failing to supply the consumer with a clear, complete, and unambiguous statement of its return policy prior to the sale; unreasonably delaying a return authorization; and having a return policy that is unfair and deceptive by its terms and in operation. While some of this conduct may have some similarity to that alleged in this case, this Court does not view the *McClain* case to be "substantially similar" to the case at bar to provide the requisite notice under Section 1345.09(B). The cases involve different industries, and the *McClain* case involved goods and not services. Furthermore, the *McClain* case centered on the unfair obstacles created by the supplier to prevent the return of the product. Because the *McClain* case does not share the essential characteristics or conditions alleged in the case at bar, it did not provide adequate notice.

Next, the Court will address the *Lightle* case, which involved the sale of a health spa membership to a consumer. The *Lightle* plaintiff sued a supplier for allegedly misrepresenting the terms of membership to a health spa. But, unlike the case at bar, the issue involved misrepresentations regarding a "two-for-one" offer. Essentially, the plaintiff was told by the health spa employee that she and a friend could take advantage of the "two-for-one" special, even though this representation was untrue and found by the court to be deceptive under the CSPA. In reaching this conclusion, the *Lightle* court focused on Ohio Administrative Code § 109:4-3-04, which sets forth parameters and requirements when the word "free" or a word of similar import is used in a consumer transaction.

Although the *Lightle* case involved misrepresentations to a consumer in the health spa industry, as is generally alleged here, the substance of the misrepresentation was different than what is alleged in this case.  And the substance of the misrepresentation in *Lightle* was specifically addressed by an administrative rule, unlike the case at bar.  Plaintiffs do not allege that they were deceptively offered free services; their claims center on cancellation rights, representations that were made regarding these rights, and consequences resulting from the application of Defendant's policies regarding these rights.  That *Lightle* and this case both involve alleged misrepresentations does not, in and of itself, reflect substantial similarity, as similarity requires specificity as to the wrongful conduct.  *See Marrone*, 850 N.E.2d at 35-36. While this specificity requirement does not mandate identical facts (which would be virtually impossible to show because every situation has distinguishable facts), the level of specificity must go beyond the general prohibitions of the CSPA.  In this Court's judgment, the degree of factual similarity between the case at bar and the *Lightle* case does not meet this standard.  Therefore, the Court finds that the *Lightle* case did not provide the requisite notice to Defendant as to the misconduct alleged in the case at bar.

The Court finds, however, that the *Silzar* case provided adequate notice that certain conduct alleged by Plaintiffs was unlawful under the CSPA.[5]  The *Silzar* case involved the unlawful sale of dancing lessons by a dance studio to consumers who were seeking membership in a social club.  The case generally involved a "bait-and-switch" scheme in which the consumers who were initially interested in joining a social club were pressured into purchasing dancing lessons.  Additionally, the case involved unfair tactics concerning the cancellation of these

---

[5] The Court notes that the plaintiffs in the *Robins* case apparently did not cite the *Silzar* case as providing the requisite notice.  Thus, this circumstance distinguishes *Robins*, and the conclusion reached therein as to the CSPA and PECA class claim, from this case.

27

contracts. In this regard, the court determined that the suppliers had violated provisions of the CSPA and PECA relating to cancellation of contracts by consumers. Specifically, as to cancellation rights, the court determined that the suppliers had failed to orally inform the consumer of the right to cancel, failed to provide the consumer with the required "notice of cancellation" form when the contract was entered, and failed to honor a valid notice of cancellation, all in violation of the CSPA or PECA. Although *Silzer* did not involve a "health spa," it involved prepayment for personal services designed to enhance physical coordination and rhythmic skill. Thus, personal training and dance contracts involving the prepayment of "sessions" or "lessons" similarly address physical well-being and deficiencies (whether perceived or actual). In this way, the industry involved in *Silzer* was similar to the industry involved in the case at bar.

Furthermore, Plaintiffs' allegations of misconduct against Defendant regarding cancellation issues are akin to specific conduct found to be unfair or deceptive in *Silzer*. The underlying facts alleged here are not identical to those found in *Silzer*, and this case does not involve a "bait-and-switch" scheme. However, these cases are substantially similar as it relates to the cancellation of membership issues so as to place Defendant on notice that specific conduct regarding these issues is unlawful. In the case at bar, Plaintiffs allege that Defendant violated Ohio law by failing to orally inform them of their right to cancel membership contracts, failing to provide them with copies of the notice of cancellation form, and failing to honor notices of cancellation that comply with Ohio law. Therefore, the Court finds that these cases share essential characteristics or conditions so as to place Defendant on notice that this alleged conduct regarding cancellations is in violation of the CSPA and PECA.

For these reasons, the Court resolves that only *Silzer* provided the requisite notice under Section 1345.09(B).  The *Silzer* case provided meaningful notice that specific acts or conduct, as alleged in the case at bar, are in violation of certain provisions of the CSPA and PECA relating to cancellation of contracts.  But alleged conduct not previously determined to be in violation of the CSPA or PECA cannot form the basis of class claims under these acts.  Accordingly, while Defendant's motion for judgment in its favor as to Plaintiffs' CSPA and PECA class claims must be denied, Plaintiffs' CSPA and PECA class claims are limited to the alleged conduct relating to cancellation of memberships previously determined to be in violation of these acts by the *Silzar* court.  Specifically, Plaintiffs' class claims under the CSPA and PECA are limited to Plaintiffs' allegations that Defendant failed to orally inform them of their right to cancel membership contracts, failed to provide them with copies of the notice of cancellation form, and failed to honor notices of cancellation that comply with Ohio law.  Conversely, Plaintiffs are not permitted to pursue class claims under the CSPA or PECA based on any other alleged conduct.

### 2. Ohio Deceptive Trade Practices Act Claim (Count IV)

Defendant argues that Plaintiffs' Ohio Deceptive Trade Practices Act ("DTPA") claim fails because Plaintiffs lack standing to bring the claim, and alternatively, because Plaintiffs fail to allege any form of advertising that the  DTPA regulates.  Plaintiffs argue that they, as natural persons, are entitled to bring the DTPA claim, and that the claim under the DTPA has no counterpart under the Lanham Act.

The threshold issue relating to Plaintiffs' DTPA claim is whether they have standing to bring the claim.  In resolving this issue, this Court must apply Ohio's statutory rules of construction.  Ohio's rules of statutory construction generally require that the words be given

their ordinary and natural meaning unless the statute indicates that the legislature intended an alternative meaning. *See Layman v. Woo*, 678 N.E.2d 1217, 1218 (Ohio 1997). The goal is to give effect to the legislature's intention. *See Cline v. Ohio Bur. of Motor Vehicles*, 573 N.E.2d 77, 80 (Ohio 1991). In determining intent, it is the duty of the court to give effect to the words used, not to delete words used or insert words not used. *State ex rel. General Elec. Supply Co., v. Jordano Elec. Co.*, 558 N.E.2d 1173, 1177 (Ohio 1990).

Ohio Revised Code § 4165.03(A) permits a "person" to seek injunctive relief or actual damages if the person is damaged or injured by a "person who commits a deceptive trade practice." For the purpose of the DTPA, a "person" is defined as "an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, limited liability company, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity." Ohio Rev. Code § 4165.01(D). The dispute over standing as to this claim centers on the issue of whether an "individual," as used in the definition of a "person" set forth in § 4165.01(D), includes an individual consumer. This Court finds that it does not.

The DTPA states that "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following: [list of deceptive activities]" Ohio Rev. Code § 4165.02. The definition of "person" applies to this provision, just as it applies to § 4165.03, which sets forth who may sue under the DTPA. By its terms, Section 4165.02 applies only to commercial activity by a person, and the provision assumes the person is engaged in commercial activity. Similarly, Section 4165.03 only applies to deceptive trade practices by a person engaged in commercial activity. That is, it is implicit in

30

these statutes that the definition of "person" only includes persons engaging in some type of "business, vocation, or occupation."  Any contrary interpretation would be nonsensical.  Based on this reasoning, a person who seeks recovery under the DTPA must also be engaged in some type of commercial activity, as that is how the term "person" is used in these statutes.  Thus, while an individual may be able to sue a person engaged in deceptive trade practices during the course of his or her commercial activities, it must be in that individual's capacity as a participant in commercial activity.

The Court acknowledges that Judge Rice of this District determined, in *Bower v. Internatl. Business Machines, Inc.*, 495 F. Supp.2d 837, 842-44 (S.D. Ohio 2007), that a consumer can bring a cause of action based on a violation of the DTPA.  The undersigned Judge respectfully disagrees with the conclusions reached by Judge Rice in the *Bower* case.  Judge Rice reasoned that because the statute does not place any limitations on the type of individuals who can pursue a claim and because the statute is silent on the issue of consumers, individual consumers may assert a cause of action under the DTPA.  Judge Rice also emphasized that a DTPA complainant "need not prove competition between the parties to the civil action."  *Id.* at 842 (citing Ohio Rev. Code § 4165.02(B)).

Simply because the statute does not expressly place any limitation on the type of individuals who can pursue a claim does not mean that none exists.  The definition contained in Section 4165.01(D) is not clear because it suggests that an individual may constitute a "legal or commercial entity."  As discussed above, however, it is clear from a review of the statutory scheme, that it addresses commercial activity of "persons."  Furthermore, although a DTPA complainant need not prove competition between the parties to the civil action, *see* Ohio Rev.

31

Code § 4165.02(B), the absence of this requirement does not lead to the inference that a consumer may sue under the act.  Lastly, the *Bower* opinion does not acknowledge that Ohio courts look to the Lanham Act when adjudicating claims under the DTPA.  *See Chandler & Assoc. v. Am.'s Healthcare Alliance*, 709 N.E.2d 190, 195 (Ohio Ct. App. 1997) ("When adjudicating claims arising under the Ohio Deceptive Trade Practices Act, Ohio courts shall apply the same analysis applicable to claims commenced under analogous federal law.").  And a number of Circuit Courts have found that consumers lack standing under the Lanham Act.  *See Made in the USA Found. v. Phillips Foods, Inc.,* 365 F.3d 278, 280 (4th Cir. 2004) (collecting cases).

Consequently, at least one Ohio appellate court has found that consumers lack standing to file suit under the DTPA, *see Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769, at *4 (Ohio App. 8 Dist. Mar. 16, 2006), and judges in the Northern District of Ohio have consistently found that consumers lack standing under the DTPA.  *See Robins*, 2012 WL 163031, at *14 (finding that a consumer may not pursue a claim under the DTPA); *Chamberlain v. Am. Tobacco Co.*, No. 1:96 cv 2005, 1999 WL 33994451, at *18 (N.D. Ohio Nov. 19, 1999) (finding that a consumer cannot state a claim under the DTPA); and *Glassner v. R.J. Reynolds Tobacco Co., No. 5:99 cv 796*, 1999 WL 33591006, at *6 (N.D. Ohio Jun. 29, 1999) (holding that the DTPA "governs conduct between commercial entities, not between a commercial entity and a consumer").

For these reasons, this Court agrees with Defendant's assertion that the DTPA addresses commercial injury, and not consumer injury (which is addressed by the CSPA).  Thus, plaintiffs who allege consumer injury lack standing to bring a DTPA claim.  Accordingly, Plaintiffs' DTPA claim must be dismissed.

### 3. Unjust Enrichment (Count V)

Defendant argues that Plaintiffs' unjust enrichment claim fails because Ohio law precludes recovery under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject. Plaintiffs argue that it is permissible to plead unjust enrichment when the contract itself is alleged to be invalid or procured through fraud or bad faith, and when there are allegations of fraud, bad faith, or illegality not covered by the terms of the contract. Plaintiffs also argue that they are permitted to plead a cause of action for unjust enrichment as an alternative theory of recovery.

In Ohio, the elements of an unjust enrichment claim are as follows: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *L & H Leasing Co. v. Dutton*, 612 N.E.2d 787, 791 (Ohio Ct. App. 1992) (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298 (Ohio 1984)). Unjust enrichment arises out of a contract implied in law. *Hummel v. Hummel*, 14 N.E.2d 923, 925-26 (Ohio 1938). A "contract implied in law" is not a true contract, but is a "quasi-contract" implied by a court when a party "retains money or benefits which in justice and equity belong to another." *Id.* at 926-27. Ohio law does not allow parties to "seek damages under quasi-contractual theories of recovery" such as a claim of unjust enrichment when a contract governs the relationship. *Davis & Tatera, Inc. v. Gray-Syracuse*, Inc., 796 F. Supp. 1078, 1085 (S.D. Ohio 1992). Recovery under an unjust enrichment theory is precluded because the terms of the agreement define the parties' relationship. *Wolfer Ent., Inc. v. Overbrook Dev. Corp.*, 724 N.E.2d 1251, 1253 (Ohio Ct. App. 1999). A claim for unjust enrichment may be pled in the alternative, however, when the existence of an

33

express contract is in dispute and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality.  *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F. Supp.2d 763, 772 (N.D. Ohio 2004).

In substance, Plaintiffs' unjust enrichment claim challenges or alleges conduct that is at least part of Plaintiffs' breach of contract claim.  In asserting unjust enrichment, Plaintiffs essentially allege that Plaintiffs and class members agreed to permit Defendant to deduct money from their accounts according to the terms of their "agreements and purported contracts," and that "contrary to their agreement," Defendant deducted money "without any basis in the contracts or any agreement from the Plaintiffs and Class members."  (Second Am. Compl., ¶ 150-51).  However, Plaintiffs' unjust enrichment claim is conceptually broader than their contract theory because it is not contingent on the existence of a contract between the parties.  This distinction is significant because one of Plaintiffs' factual allegations is that they were fraudulently induced into entering the contracts, thereby placing the validity of the contracts themselves into question.  *Cf. Robins*, 2012 WL 163031, at *10-11 (dismissing unjust enrichment claim on basis that contract covered the relationship between the parties).  Under these circumstances, the Court finds that Plaintiffs' unjust enrichment claim, which is pleaded in the alternative, survives Defendant's motion for partial judgment on the pleadings.

### 4.    Conversion (Count VI)

Defendant argues that it is entitled to judgment on the pleadings as to Plaintiffs' conversion claim because Plaintiffs do not allege that they are entitled to particular, segregated, and an identifiable collection of money, and because the underlying conduct is governed by an express contract.  Plaintiffs argue that they have met their pleading burden in regard to this claim.

34

Typically, the elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.  *Dice v. White Family Cos., Inc.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007).  Where conversion is premised on the unlawful retention of property, the plaintiff must establish that (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner.  *Id.*

Where an action for conversion is based on the conversion of cash, the action will "only lie if identification is possible and there is an obligation to deliver the specific money in question." *Id.* (Internal quotation omitted).  Stated more succinctly, "'[a]n action alleging conversion of cash lies only where the money involved is 'earmarked' or is specific money capable of identification, *e.g.*, money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.'"  *Haul Transport of VA, Inc. v. Morgan*, Case No. 14859, 1995 WL 328995 (Montgomery Ct. App. June 2, 1995) (quoting *Gray v. Liberty Nat. Life Ins. Co.*, 623 So.2d 1156, 1160 (Ala. 1993)).  Thus, while it is the general rule in Ohio that money is intangible property that cannot be subject to conversion, there is an exception when specifically identified monies are at issue.  *See Williamson v. Recovery Ltd. P'ship*, No. 2:06-cv-292, 2011 WL 2181813 (S.D. Ohio June 3, 2011) (Sargus, J.).

Here, Plaintiffs assert a claim of conversion of money, but they do not allege that Defendant converted specific segregated, identifiable money, as opposed to a sum certain.  *See NPF IV v. Transitional Health Services*, 922 F. Supp. 77 (S.D. Ohio 1996) (Graham, J.)

35

("conversion of money will not lie unless identification is possible and there is an obligation to deliver the specific money in question."); *see also Macula v. Lawyers Title Ins. Corp.*, No. 1:07–CV–1545, 2008 WL 3874686 (N.D. Ohio Aug. 14, 2008) (noting that conversion of money occurs when there is an obligation to deliver specific money, "rather than to merely deliver a certain sum."). The absence of such an allegation is fatal to Plaintiffs' conversion claim under Ohio law. Accordingly, their conversion claim must be dismissed.

## IV.    Conclusion

For the foregoing reasons, the Court **OVERRULES** Plaintiffs' Objection to the Report and Recommendation Recommending Denial of Plaintiffs' Motion to Remand, **DENIES** Plaintiffs' Motion to Remand (Doc. 11), and **GRANTS in part** and **DENIES in part** Defendant's first Motion for Partial Judgment on the Pleadings (Doc. 36). Accordingly, Plaintiffs' Deceptive Trade Practices Act claim (Count IV) is **DISMISSED**, Plaintiffs' conversion claim (Count VI) is **DISMISSED**, and Plaintiffs' class claims under the Ohio Consumer Sales Practices Act and Prepaid Entertainment Contract Act (Counts I, II, and III) are limited to certain allegations, as set forth herein. All other claims remain pending.

The Clerk shall remove Documents 11 and 36 from the Court's pending motions list.

**IT IS SO ORDERED.**

 *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**