UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AMBER GASCHO,** *et al.***,**
on behalf of themselves and all
others similarly situated,

            **Plaintiffs,**

                                  Case No. 2:11-CV-00436
                                  **JUDGE SMITH**
            **v.**
                                            **Magistrate**
                              **Judge King**

**GLOBAL FITNESS HOLDINGS, LLC,**

            **Defendant.**

**OPINION AND ORDER**

      This matter is before the Court on Defendant's Motion for Partial Judgment on the Pleadings (Doc. 61) and Plaintiffs' Motion for Certification or, in the Alternative, Motion for Reconsideration (Doc. 73).  These motions are fully briefed and ripe for disposition.  For the reasons that follow, the Court **DENIES** both motions.

      **I. Background**[1]

      On April 13, 2011, Plaintiffs initiated this class action against Defendant Global Fitness Holdings, LLC, d/b/a Urban Active ("Global Fitness"), in the Court of Common Pleas for Franklin County, Ohio.  Global Fitness is a Kentucky limited liability corporation that operates fitness facilities in Ohio.  Plaintiffs are residents of Ohio who entered into membership and/or personal training, child care, and/or tanning contracts at Global Fitness's Ohio Urban Active

---

[1] **The factual and procedural background of this case has been set forth in prior decisions.  (*See* Docs. 47 and 69).  The background discussion in those decisions is incorporated by reference herein and is summarized, restated, and supplemented as necessary to resolve the pending motions.**

gym facilities. Plaintiffs allege that they were financially wronged as members of Urban Active fitness clubs in Ohio.

Defendant removed this action to this Court on May 19, 2011, pursuant to the Class Action Fairness Act ("CAFA"), as codified at 28 U.S.C. §§ 1332(d) and 1453. In this lawsuit, Plaintiffs have alleged, *inter alia*, that Defendant engages in common practices of misrepresenting the terms and conditions of contracts at the time of sale, making unauthorized deductions from Plaintiffs' bank accounts, failing to provide consumers with copies of contracts at the time of signing, failing to orally inform consumers at the time of signing of their right to cancel, failing to provide copies of "notice of cancellation" documents in the form required under Ohio law, and failing to honor contract cancellations. As a result of this alleged activity, Plaintiffs assert the following claims: violation of the Ohio Consumer Sales Practices Act ("OCSPA") (Counts I and II); violation of the Ohio Prepaid Entertainment Contract Act ("OPECA") (Count III); violation of the Ohio Deceptive Trade Practices Act ("ODTPA") (Count IV); unjust enrichment (Count V); conversion (Count VI); and breach of contract (VII).

In August 2011, Defendant filed a Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendant moved for judgment in its favor on Counts I through VI, as outlined above. Defendant did not seek judgment on the pleadings as to Plaintiff's breach of contract claim (Count VII). In February 2012, Defendant filed a second Motion for Partial Judgment on the Pleadings, whereby it moved for partial judgment on the pleadings as to certain named Plaintiffs' claims of breach of contract, and claims under the OCSPA and the OPECA (Doc. 61). In support of its second Motion for Partial Judgment on the pleadings, Defendant submitted copies of documents purported to be contracts between Defendant and the Plaintiffs whose claims are the subject of this motion.

2

In March 2012, this Court issued a decision addressing the first Motion for Partial Judgment on the Pleadings, as well as objections and certain other motions (Doc. 69).  The Court granted in part and denied in part Defendant's first Motion for Partial Judgment on the Pleadings.  More particularly, the Court dismissed Plaintiffs' ODTPA claim (Count IV) and conversion claim (Count VI), and it limited Plaintiffs' class claims under the OCSPA and OPECA (Counts I, II, and III) to certain allegations, as set forth in the decision.  In reaching its determination as to the class claims, the Court ruled in part that consent judgments do not contain "determin[ations] by a court of this state[,]" as that phrase is used in Ohio Revised Code § 1345.09(B), a statute addressing when a consumer may bring a class action for deceptive or unconscionable conduct.  Because of the recency of the filing, the Court declined to resolve Defendant's second Motion for Partial Judgment on the Pleadings when it addressed the first Motion for Partial Judgment on the Pleadings.

In May 2012, Plaintiffs filed a Motion for Certification or, in the alternative, Motion for Reconsideration.  Plaintiffs challenge the Court's determination as it relates to whether consent judgments provide the notice necessary to allow a consumer to bring a class action for conduct that was deceptive or unconscionable.  Plaintiffs assert that the issue of whether consent judgments provide the requisite notice should be certified to the Ohio Supreme Court, or the Court should reconsider its ruling on this issue.

Defendant's second Motion for Partial Judgment on the Pleadings, and Plaintiffs Motion for Certification or, in the alternative, Motion for Reconsideration, are fully briefed and ripe for review.

      **II.**    **Plaintiffs' Motion for Certification or, in the Alternative, Motion for Reconsideration**

Plaintiffs move for certification of the following question to the Supreme Court of Ohio: "Does a consent judgment which contains findings of fact and conclusions of law and which the Attorney General has chosen to place in the Public Inspection File ("PIF") constitute prior notice under Ohio Revised Code § 1345.09(B)?" (Doc. 73, p. 1). In the alternative, Plaintiffs move for reconsideration of the Court's ruling "that consent judgments do not contain 'determin[ations] by a court of this state[,]' as that phrase is used in Ohio Revised Code § 1345.09(B)." (Doc. 69, p. 24).

### A. Motion for Certification

#### 1. Standard of Review

Ohio Supreme Court Rule of Practice 18.1 provides that it "may answer a question certified to it by a court of the United States." The Rule "may be invoked when the certifying court, in a proceeding before it, issues a certification order finding there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court." *Id.* Thus, Rule 18.1 is the procedural means for a federal court to certify a question to the Ohio Supreme Court, and it sets forth the standard for the Ohio Supreme Court's authority to answer a question certified to it.

The decision whether or not to certify a question to a state court "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Even "where there is doubt as to local law and where the certification procedure is available, resort to it is [not] obligatory." *Lehman Bros.*, 416 U.S. at 390–91. Certification "is most appropriate when the question is new and state law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). Late requests for certification are disfavored. *See Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (declining to

4

certify in part because moving party "failed to request certification . . . when the case was before the district court").

## 2. Discussion

Plaintiff argues that this Court should grant their Motion for Certification because the question proposed for certification is determinative of the proceeding, there is no controlling Ohio Supreme Court precedent on the issue, and the question is novel and unsettled.  Defendant argues that the Court should deny Plaintiffs' Motion for Certification because the United States District Court for the Southern District of Ohio and the United States District Court for the Northern District of Ohio previously have applied Ohio law on the issue and reached the same conclusion as this Court in this case, and because this Court is not divested of the authority to resolve the issue despite two Ohio lower court decisions reaching a different conclusion. Defendant also argues that certification of this issue to the Ohio Supreme Court would only serve to further delay resolution of this lawsuit and add unnecessary expenses.

The Court declines to certify the question as requested by Plaintiffs.  The Court recognizes that the precise issue proposed for certification is not settled under Ohio law – the Ohio Supreme Court has not addressed the issue.  But to certify the question at this procedural juncture would allow Plaintiffs another bite at the apple, which is not the function of the certification process.  Significantly, Plaintiffs request the certification after the issue has been resolved by this Court.  Had Plaintiffs made this request prior to the resolution of the issues, the request would have carried more weight.  Plaintiffs were clearly aware that this issue was potentially dispositive of their argument that certain cases provide the necessary notice to permit class certification.  Despite this, Plaintiffs did not suggest certification prior to this Court's resolution of the issue.  Accordingly, the Court denies Plaintiffs' requested certification.

### B.  Motion for Reconsideration

#### 1. Standard of Review

A motion to reconsider may be treated as a motion to alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617-18 (6th Cir. 2002). A motion to alter or amend pursuant to Fed. R. Civ. P. 59(e) is designed only to "correct manifest errors of law or fact or to present newly discovered evidence." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Such a motion is extraordinary and is seldom granted because it contradicts notions of finality and repose. *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995). Accordingly, a Rule 59(e) motion may be made for one of only three reasons: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or to prevent manifest injustice. *See Berridge v. Heiser*, 993 F. Supp. 1136, 1146-47 (S.D. Ohio 1997) (citing *Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996)).

A motion for reconsideration or to alter or amend is not a vehicle to reargue the case or to present evidence which should have been raised in connection with an earlier motion. *See Database America v. Bellsouth Advertising & Pub. Corp.*, 825 F. Supp. 1216, 1219-20 (D. N.J. 1993); 11 Charles Alan Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure, § 2810.1 (2d ed. 1995) (Motions to alter or amend judgment cannot be used to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment."). That is, Rule 59(e) is not designed to give an unhappy litigant an opportunity to relitigate matters already decided. *See Dana Corp. v. United States*, 764 F. Supp. 482, 488-89 (N.D. Ohio 1991).

**2.        Discussion**

Plaintiffs argue that this Court should grant their motion for reconsideration to correct a clear error of law and to prevent manifest injustice. Plaintiffs assert that the Court committed clear error in not finding that reasoned consent judgments in the PIF constitute prior notice under Ohio Revised Code § 1345.05(A). To support this assertion, Plaintiffs first argue that this Court should defer to the Ohio Attorney General's judgment as to whether or not consent judgments provide prior notice under the OCSPA. Plaintiffs next argue that this Court applied the holding in *Kline v. Mortgage Electronic Sec. Systems*, No. 3:08-cv-408, 2010 WL 6298271 (S.D. Ohio 2010) (Ovington, M.J.) too broadly, and failed to consider how *Kline* was interpreted by the court in *Robins v. Global Fitness Holdings, LLC*, No. 1:11 CV 1373, 2012 WL 163031 (N.D. Ohio Jan. 18, 2012). Third, Plaintiffs argue that this Court did not consider the holding of Ohio's Tenth Appellate District in *Charvat v. Telelytics, LLC*, 2006-Ohio-4623 (10th Dist. Aug. 31, 2006). Finally, Plaintiffs suggest that the Court's reasoning is contrary to the Ohio Code of Judicial Conduct. The Court is unpersuaded by these arguments.

Plaintiffs' assertion that the Court should defer to the Attorney General's decision to place a case in the PIF is not supported by the language of Ohio Revised Code § 1345.05(A)(3). This statute states in part that the Ohio Attorney General shall: "[m]ake available for public inspection . . . all judgments, including supporting opinions, by courts of this state that determine the rights of the parties and concerning which appellate remedies have been exhausted, or lost by the expiration of the time for appeal, determining that specific acts or practices violate section 1345.02, 1345.03, or 1345.031 of the Revised Code." This Court is not persuaded that the Ohio General Assembly delegated to the Ohio Attorney General the authority to determine what constitutes a "judgment" for the purposes of this statute. Rather, the Court views this delegation

7

as placing the Ohio Attorney General in an administrative role in assuring that judgments, and the opinions supporting the judgments, regarding matters of a certain substance are available for easy public inspection. In this way, the Ohio Attorney General identifies cases that, in his or her view, meet the requirements of the statute. Placement on the PIF is a condition precedent to the existence of the necessary notice. *See Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006) (class action is available "if the violation is an act or practice that was determined by a court to violate the CSPA *and* the court's decision was available for public inspection") (emphasis added). However, that identification and placement does not alter a reviewing court's authority to determine whether a particular case constitutes prior notice under Ohio Revised Code § 1345.09(B).

In arguing that this Court applied the holding in *Kline* too broadly, Plaintiffs state that the Court did not follow a principle that is implied by the holding of *Kline*: that consent judgments with an analysis of the merits do constitute prior notice. But the *Kline* court did not make this finding, and in fact based its decision at least in part on the idea that a consent judgment does not constitute "prior notice" under Ohio Revised Code § 1345.09(B) because consent judgments lack precedential value. *Id.* (citing, for comparison purposes, *Charvat v. Telelytics*, LLC, No. 05AP–1279, 2006 WL 2574019, at *11 (Ohio Ct. App. Aug. 31, 2006, which stated that "even within a consent judgment, 'an act or practice determined by a court' to violate the OCSPA is actionable under [Ohio Rev. Code §] 1345.09(B)"). And Plaintiffs' reference to the *Robins* court's interpretation of the *Kline* case is also unavailing because it does not state that a consent judgment with analysis may provide sufficient prior notice under § 1345.09(B).

Plaintiffs argue that it was clear error for the Court not to consider the *Charvat* decision. In *Charvat*, the court was faced with the issue of whether a consent judgment qualifies as a

8

determination of a court within the language of § 1345.09(B).  The court held that "even within a consent judgment, 'an act or practice determined by a court' to violate the OCSPA is actionable under R.C. 1345.09(B)." *Id.* at ¶ 43.  In reaching this conclusion, the court reasoned that a consent judgment's precedential value is not determinative under § 1345.09(B) because the statute "refers to a court's determination, not a judgment." *Id.*  While this may be true, the *Charvat* court did not acknowledge that § 1345.05(A)(3) states that the Ohio Attorney General shall make available for public inspection "all judgments, including opinions, by court of this state that determine the rights of the parties . . . determining that specific acts or practices violate" the OCSPA.  Thus, when both of these statutes are considered, it is clear that the reference to a court's "determination" in § 1345.09(B) is a reference to a court's final determination, *i.e.* a judgment with supporting reasoning.  Because the reasoning of a consent judgment is not necessarily that of the court, it has no precedential value, and cannot be considered the court's "opinion."  Accordingly, the Court rejects the reasoning of the *Charvat* court, and believes that the Ohio Supreme Court would as well.

Plaintiffs assert that judges are not required to accept consent judgments, and that they must exercise independent authority and judgment before sanctioning a consent judgment.  Indeed, the Ohio Code of Judicial Conduct provides that a judge must uphold and comply with the law and perform all duties independently and impartially.  *See* Ohio Code of Judicial Conduct Rules 1.1, 1.2, and 2.2.  Even so, when a court approves a settlement between the parties, the resulting consent judgment or decree, and the reasoning applied therein, does not reflect the considered judgment of the court.  If it did, the determination would have precedential value.  As the court in *Charvat* correctly noted, "a consent judgment typically is not a judgment on the merits, but a contract between the parties that the court reduces to a judgment." *Id.* at §

9

43.

Plaintiffs argue that granting their Motion for Reconsideration would prevent a manifest injustice. In support, Plaintiffs assert that the policy behind the OCSPA is to protect consumers from the unfair and deceptive practices of suppliers. (Mot. for Recons. at 12, citing, among other cases, *Crye v. Smolak*, 674 N.E.2d 779, 784 (Ohio Ct. App., 10th Dist. 1996)). Plaintiffs further assert that the exclusion of consent judgments from the definition of a "court determination" undermines this policy of protecting consumers. Plaintiffs argue that consent judgments are functionally the same as other judgments as it relates to notice to suppliers, and therefore consent judgments should be found to satisfy the requirements for bringing a class action. These contentions are essentially a recasting of Plaintiffs' clear error of law argument or constitute arguments for why their position is better public policy. The statutory language does not support Plaintiffs' position, and thus any change in the law as to this issue must be left to the Ohio General Assembly.

For these reasons, Plaintiffs' Motion for Reconsideration must be denied.

### I. Second Motion for Partial Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant moves for partial judgment on the pleadings. Specifically, Defendant moves for judgment on the pleadings as it relates to Plaintiffs Amber Gascho, Ashley Buckenmeyer, Rita Rose, and Julia Snyder's[2] breach of contract claims and individual claims for alleged violations of the OCSPA and the OPECA. According to Defendant, these claims fail as a matter of law because it was authorized to withdraw or otherwise charge all fees alleged in the Second Amended Complaint, such as cancellation and semiannual maintenance fees, pursuant to the express terms of these Plaintiffs'

---

[2] For the purpose of resolving this motion, references to "Plaintiffs" only apply to the plaintiffs whose claims are the subject of this motion.

10

membership and personal training contracts. Plaintiffs contend that Defendant is attempting to circumvent Ohio law by citing boilerplate contractual language intended to insulate it from any liability. Plaintiffs further argue that Defendant wrongfully assumes that the contracts, upon which it relies, are valid, enforceable contracts incapable of rescission.

### A. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." It is well-settled that the standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6). *See, e.g., Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) (noting that where a Rule 12(b)(6) defense of failure to state a claim upon which relief can be granted is raised by a Rule 12(c) motion for judgment on the pleadings, the Court must apply the standard for a Rule 12(b)(6) motion).

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled

11

to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950.  While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Accordingly, the Court will grant a motion for judgment on the pleadings if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Little v. UNUM Provident Corp.*, 196 F. Supp.2d 659, 662 (S.D.

12

Ohio 2002) (Graham, J.) (citing *Rauch*). Stated differently, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted).

### B.  Discussion

Defendant's second Motion for Partial Judgment on the Pleadings challenges Plaintiffs' breach of contract and individual OCSPA and OPECA claims. To address this motion, the Court will detail Plaintiffs' allegations of fact, determine whether it should consider evidentiary exhibits Defendant submitted in support of its second Motion for Partial Judgment on the Pleadings, and then analyze the merits of Defendant's arguments.

#### 1.  Allegations set forth in Second Amended Complaint

The following facts relating to Plaintiffs are set forth in the Second Amended Complaint.

##### a.  Amber Gascho

Plaintiff Gascho became a Global Fitness member in December 2009, and she was not fully advised of the cost of the membership or orally advised of her right to cancel the membership. (Second Am. Compl. ¶¶ 23-25).

In July 2010, Global Fitness employees approached Ms. Gascho to sell her a personal training contract. *Id.* at ¶ 26. The employees misrepresented to her that she could cancel the personal training contract at any time for a $10 administrative fee. *Id.* at ¶ 27. Relying on this information, Ms. Gascho signed the personal training contract. *Id.* at ¶ 28. However, she was not provided a copy of the personal training contract or a duplicate copy of its "notice of cancellation" form. *Id.* at ¶ 29. Nor did Defendant provide any oral or written information

13

regarding its cancellation policy, other than informing Ms. Gascho that she could cancel at anytime for a $10 fee. *Id.*

Several weeks later, Ms. Gascho attempted to cancel the contract by tendering her notice of cancellation and $10. *Id.* at ¶ 30. At that time, she was, for the first time, shown a copy of her contract and informed that the cancellation fee was actually $250, not the $10 she tendered. *Id.* Ms. Gascho refused to pay the $250, and Defendant continued to charge her credit card for the personal training contract. *Id.* at ¶ 31.

### b. Ashley Buckenmeyer

Plaintiff Buckenmeyer signed a membership contract with Defendant in February 2011, but she was not fully advised of the cost of the membership, including a semiannual maintenance fee. *Id.* at ¶¶ 34-35. In March 2011, a Global Fitness employee, "Joe", approached Ms. Buckenmeyer to sell her a personal training contract. *Id.* at ¶¶ 36-37. When she signed the contract, she was not orally advised of her right to cancel the contract, nor was she provided with duplicate copies of a "notice of cancellation" form. *Id.* at ¶ 38.

Less than four hours after signing the contract, Ms. Buckenmeyer called Joe and asked to cancel the contract. *Id.* at ¶ 39. Joe told Ms. Buckenmeyer that he would take care of cancelling the contract. *Id.* at ¶ 40. Several days later, however, when Ms. Buckenmeyer contacted Joe to confirm the cancellation of the contract, Joe indicated that he did not have authority to cancel the contract, and that because she had not followed the cancellation instructions on Defendant's website, her contract was not cancelled. *Id.* at ¶¶ 41-42. Defendant continued to charge Ms. Buckenmeyer's card for personal training services. *Id.* at ¶ 43.

### c. Rita Rose

In May 2010, Plaintiff Rose joined Global Fitness on behalf of her minor son. *Id.* at ¶ 77. In soliciting this membership, Defendant's salesperson represented to Ms. Rose that it was a month-to-month contract and that she could cancel at any time by providing the proper notice with no additional charges. *Id.* at ¶ 80. Based on this representation, Ms. Rose signed an electronic signature pad but was not provided any contract terms other than the $21.34 monthly charge and the cancellation terms as described above. *Id.* at ¶ 81. Ms. Rose was not provided a copy of the contract. *Id.* at ¶ 82. Contrary to Ms. Rose's understanding at the time she electronically signed, the signature was placed on a 12-month term contract, and not on a month-to-month contract as promised. *Id.* at ¶ 84. Ms. Rose was never fulled advised of the terms of the contract or given a copy of its cancellation policy. *Id.* at ¶¶ 85-86. In January 2011, Ms. Rose attempted to terminate the contract at an Urban Active facility. *Id.* at ¶ 86. She was advised to send a certified mail letter to Defendant's home offices with a $10 fee, which she did. *Id.* at ¶¶ 87-88. Despite proceeding as directed, Ms. Rose continued to be charged by Defendant. *Id.* at ¶ 89. In April 2011, Ms. Rose first received a copy of the contract that Defendant created using her electronic signature. *Id.* at ¶ 91.

    d.  **Julia Snyder**

Plaintiff Snyder became a Global Fitness member in August 2010. *Id.* at ¶ 92. In October 2010, Global Fitness employee "Ahmed" solicited Ms. Snyder to enter into a personal training contract. *Id.* at ¶ 93. In discussions with Ahmed, Ms. Snyder confirmed at least three times that she could provide notice and cancel her personal training services contract at any time at no charge. *Id.* at ¶ 93. The ability to cancel at any time was important to Ms. Snyder in deciding to enter the agreement. *Id.* at ¶ 94. After receiving assurance from Ahmed that she could cancel her personal training services at any time with no charge, Ms. Snyder signed the

15

first page of Defendant's personal training contract and may have initialed the second page. *Id.* at ¶ 96. Defendant did not provide Ms. Snyder a complete copy of the contract. *Id.* at ¶ 97. In January 2011, Ms. Snyder sought to cancel the personal training services contract. *Id.* at ¶ 100. Ms. Snyder then learned that she could not cancel without additional fees, and that she never received the second page of the contract that Defendant referred to when denying her attempt to cancel. *Id.* at ¶ 103.

### e. Allegations Common to Plaintiffs

As set forth above, Plaintiffs have alleged, *inter alia*, that Defendant engages in common practices of misrepresenting the terms and conditions of contracts at the time of sale, making unauthorized deductions from Plaintiffs' bank accounts, failing to provide consumers with copies of contracts at the time of signing, failing to orally inform consumers at the time of signing of their right to cancel, failing to provide copies of "notice of cancellation" documents in the form required under Ohio law, and failing to honor contract cancellations. *See id.* at ¶¶ 14-22.

### 1. Consideration of Exhibits Attached to Defendant's Motion

If a court considers materials outside the pleadings, a motion to dismiss generally must be treated as a motion for summary judgment under Rule 56. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). While Courts generally do not consider matters outside the pleadings when reviewing Rule 12(b)(6) or Rule 12(c) motions, they may consider exhibits attached to the pleadings if those exhibits are referenced in the pleadings and are central to the claims. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88-89 (6th Cir. 1997); *see Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) ("the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the

document does not require conversion of the motion to one for summary judgment.").

Here, Defendant has submitted copies of documents purported to be contracts between Defendant and Plaintiffs. Plaintiffs assert that, while courts may consider pertinent contracts not attached to a complaint when deciding a motion brought under Rule 12(c), this Court should not consider Defendant's exhibits as establishing Plaintiffs' contracts. Plaintiffs assert that Defendant has not authenticated the documents, and as it relates to Ms. Rose, the Second Amended Complaint specifically alleges that her electronic signature was wrongfully placed on a contract that she had never seen and that contradicted the oral terms described to her. Additionally, Plaintiffs assert that Mses. Gascho, Buckenmeyer, and Snyder have stated, in sworn interrogatory responses, that they signed an electronic keypad displaying little or no contractual terms, and thus were not shown what Defendant purports are complete contracts at the time of signing. Consequently, Plaintiffs assert that there is reason to doubt the authenticity and validity of the documents submitted by Defendant.

Defendant argues that, while Plaintiffs state that they are unwilling to concede authenticity of the documents attached to the motion, Plaintiffs, like the non-movants in *Robins*, *supra*, do not challenge the substantive validity, accuracy, or completeness of any of the documents attached to the motion. In *Robins*, the court considered copies of contracts attached to a Rule 12(b)(6) motion to dismiss because the non-movants did not question the "validity, accuracy, or completeness of the contracts," even though they asserted that the Court could not consider the exhibits because they were not authenticated. *Id.*, 838 F. Supp.2d at 642. However, Defendant does not dispute Plaintiffs' assertion regarding sworn statements they made in response to interrogatories.

Contrary to Defendant's suggestion, Plaintiffs have presented, in view of their

17

allegations, a reasonable basis to question the validity, accuracy, or completeness of these documents. Plaintiffs allege that Defendant transfixed Ms. Rose's electronic signature on a contract containing terms she did not agree with. Such an allegation, combined with the allegations common to all Plaintiffs, suggests that Defendant had a practice of making certain representations to potential customers, obtaining their electronic signature, and then affixing the signature to an unprovided document containing terms materially different from the earlier representations. Moreover, Plaintiffs' unchallenged assertion that they have made sworn statements describing such a deceptive practice directly places the validity of the purported contracts at issue.

### 2. Merits of Second Motion for Partial Judgment on the Pleadings

In arguing for judgment on the pleadings, Defendant exclusively relies on language and terms of the documents it has submitted. That is, Defendant argues that the express terms of the contracts between Plaintiffs and Defendant, as demonstrated by the attachments, entitles it to judgment as a matter of law on Plaintiffs' breach of contract and individual OCSPA and OPECA claims. However, for the reasons expressed above, the Court is unwilling to rely on the documents attached to Defendant's second Motion for Partial Judgment on the Pleadings, and the language and terms contained therein, as conclusory proof of the terms of contracts between Plaintiffs and Defendant. Therefore, Defendant's reliance on the language of these documents as the exclusive basis of its Rule 12(c) motion is unavailing.

### I. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's second Motion for Partial Judgment on the Pleadings (Doc. 61), and **DENIES** Plaintiffs' Motion for Certification or, in the Alternative, Motion for Reconsideration (Doc. 73).

The Clerk shall remove Documents 61 and 73 from the Court's pending motions list.

**IT IS SO ORDERED.**

    *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**