**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| AMBER GASCHO, *et al.,* | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:11-cv-436 |
| | : | |
| v. | : | Judge Smith |
| | : | |
| GLOBAL FITNESS HOLDINGS, LLC, | : | Magistrate Judge King |
| | : | |
| Defendants. | : | |

**JOINT MOTION FOR AN ORDER PRELIMINARILY APPROVING THE CLASS
ACTION SETTLEMENT, PRELIMINARILY CERTIFYING A CLASS AND
SUBCLASSES FOR SETTLEMENT PURPOSES, APPOINTING CLASS
REPRESENTATIVES, APPOINTING CLASS COUNSEL, APPROVING AND
DIRECTING THE ISSUANCE OF A CLASS NOTICE,
AND SCHEDULING A FINAL FAIRNESS HEARING**

Plaintiffs Amber Gascho, Ashley Buckemeyer, Michael Hogan, Edward
Lundberg, Terry Troutman, Anthony Meyer, Rita Rose, Julia Snyder, Albert Tartaglia,
Michael Bell, Matt Volkerding, and Patrick Cary, individually and on behalf of all
members of the Class and Subclasses, and Defendant Global Fitness Holdings, LLC,
(formerly doing business as Urban Active Fitness), jointly move this Court for an order:
(1) preliminarily approving the proposed class action settlement, (2) preliminarily
certifying a Class and Subclasses for settlement purposes, (3) appointing the above-
named Plaintiffs as Class Representatives, (4) appointing William Porter, Thomas
McCormick, Kenneth Rubin, and James Lind of Vorys, Sater, Seymour and Pease, and
Mark Landes, Greg Travalio, and Mark Troutman of Isaac, Wiles, Burkholder & Teetor,
LLC (f/k/a Isaac Brant Ledman & Teetor, LLP) as lead counsel for the class, (5)

approving and directing the issuance of notice to the Class by the Claims Administrator, and (6) scheduling a final fairness hearing.

A Joint Memorandum in Support is included with this Motion and the Settlement Agreement and Release executed by the Parties on September 12, 2013 ("Settlement Agreement) is attached as Exhibit A.  In addition, a proposed ORDER granting this Motion is attached as Exhibit B.

Respectfully submitted,

s/ Thomas N. McCormick
William G. Porter (0017296)
wgporter@vorys.com
Thomas N. McCormick   (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
kjrubin@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone:  (614) 464-6400
Facsimile:  (614) 464-6350

James B. Lind (0083310)
jblind@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
301 East Fourth Street
Suite 3500
Great American Tower
Cincinnati, OH 45202
Telephone: (513) 723-4000
Facsimile: (513) 852-7835

s/ Mark H. Troutman
Mark Landes   (0027227)
mlandes@isaacwiles.com
Gregory M. Travalio   (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman   (0076390)

s/  Richard S. Gurbst
Richard S. Gurbst (0017672)
Richard.Gurbst@squiresanders.com
SQUIRE SANDERS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
United States of America
(216) 479-8607

Dan L. Cvetanovich (0021980)
Dan.Cvetanovich@baileycavalieri.com
Sabrina Haurin (0079321)
sabrina.haurin@baileycavalieri.com
BAILEY CAVALIERI LLC
One Columbus
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
Telephone:  (614) 221-3155
Facsimile:  (614) 221-0479

***Attorneys for Defendant Global Fitness Holdings, LLC***

mtroutman@isaacwiles.com
ISAAC, WILES, BURKHOLDER &
TEETOR, LLP
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121
Facsimile:  (614) 365-9516

***Attorneys for Plaintiffs***

## MEMORANDUM IN SUPPORT

## I.     PRELIMINARY STATEMENT

Plaintiffs and Defendant jointly seek this Court's approval of the Settlement Agreement and Release ("Settlement" or "Settlement Agreement") entered into on September 12, 2013.  A copy of the fully executed Settlement Agreement is attached hereto as Exhibit A.  The Settlement provides potential cash payments of between $5 and $75 to over 600,000 Class Members and will fully and finally resolve multiple class actions that have been vigorously litigated for over two years.

Plaintiffs are former members of Urban Active Fitness ("Urban Active"), a health club chain formerly owned and operated by Defendant, Global Fitness Holdings, LLC.[1] Plaintiffs allege breach of contract, unjust enrichment, and violations of state consumer protection statutes related to the sales, contracting, billing, and/or cancellations of gym and personal training contracts.  Defendant denies these allegations and further denies any wrongdoing in any of the lawsuits filed against it.

The proposed Settlement is in the best interests of all parties because it provides that all Class/Subclass Members who file a Claim Form will receive a cash payment of $5, $25, $35, $45, $55, or $75[2] for alleged conduct which, for almost all Class Members, caused alleged damages of between $0 and $100.  The Settlement is also in the best interest of Defendant because it has sold Urban Active and no longer operates any health clubs.  Defendant is in the process of wrapping up its business operations.

---

[1]     On October 26, 2012, Defendant sold Urban Active to another entity.  Defendant is no longer in the business of operating health clubs in any state.

[2]     The amount of the cash payment will be based on which Subclass or Subclasses each Class Member belongs.

1

As discussed in more detail below, all of the requirements of Fed. R. Civ. P. 23 have been satisfied and the Settlement Agreement should be preliminary approved.

## II.    FACTS

### A.    *Procedural History*

On April 13, 2011, this lawsuit was filed as a proposed class action alleging violations of Ohio's Consumer Protection Act, Prepaid Entertainment Contract Act, and Fraud.  On August 4, 2011, a Second Amended Complaint was filed in this Court combining the *Gascho* litigation with *Lundberg, et al v. Global Fitness Holdings, LLC*, Case No. 2:11 cv 00329, a proposed class action alleging similar claims against the same Defendant.  *Gascho*'s Second Amended Complaint alleged as follows:  Counts 1, 2, and 3 - violations of Ohio's Consumer Sales Practices Act and Prepaid Entertainment Contract Act; Count 4 - violations of Ohio's Deceptive Trade Practices Act; Count 5 - unjust enrichment; Count 6 - conversion; and Count 7 - breach of contract.

In August, 2011, pursuant to Fed. R. Civ. P. 12(c), Defendant moved to dismiss all or a portion of Counts 1-6 of the Second Amended Complaint.  This Court granted in part and denied in part Defendant's Motion.  Specifically, this Court dismissed the class allegations of Counts 1 and 2, dismissed Counts 4 and 6 in their entirety, and allowed Counts 3, 5, and 7 to proceed as class claims.  In February 2012, Defendant filed a second motion pursuant to Fed. R. Civ. P. 12(c) to dismiss Plaintiffs' individual claims under the Consumer Sales Practices Act and Prepaid Entertainment Contract Act (Counts 1-3) and Plaintiffs' breach of contract claims (Count 7).  This Court denied Defendant's Motion.

On May 13, 2011, in parallel with the this litigation, Class Counsel filed a proposed class action on behalf of Kentucky members in Boone County Circuit Court,

Commonwealth of Kentucky, titled *Tartaglia v. Global Fitness Holdings, LLC*, Case No. 11 CI 1121, (the "*Tartaglia* Litigation"), alleging similar claims and causes of action against Defendant.  Approximately two months later, Plaintiffs filed a First Amended Complaint adding an additional class representative and clarifying its four counts: Count 1 - violations of Kentucky's Consumer Protection Act (KRS 367.110); Count 2 - violations of Kentucky's Health Spa Act (KRS 367.910); Count 3 - unjust enrichment; and Count 4 - breach of contract.  Defendant's Motion to dismiss Plaintiffs' First Amended Complaint was denied.

### B.    *Discovery*

Since filing the *Gascho* and *Tartaglia* Complaints, Class Counsel and Defendant have vigorously litigated both actions through (a) extensive motion practice; (b) far-reaching written discovery; (c) vast production and review of electronic data and other paper documents; (d) briefing and oral argument related to numerous discovery motions filed by both Parties; (e) investigation with and interviews of former members and former employees; (f) nine depositions of Defendant's employees, former employees, and corporate representatives; (g) depositions of class representatives; and (h) preparing for and filing Motions for Class Certification (a Motion for Class Certification was filed in the *Tartaglia* action on June 13, 2013).

### C.    *Plaintiffs' Position*

Following this extensive discovery, Plaintiffs continue to allege that Defendant used improper language in its form contracts; failed to comply with state law in the sales, servicing, and cancellation of its memberships; failed to adequately disclose to members all fees and costs, including $10 cancellation fees and $15 improvement fees; and adopted numerous cancellation policies that contradicted its own contracts and

confused members seeking to cancel, resulting in additional monthly charges. Defendant denies that it acted improperly or violated any laws.

### D.  *Defendant's Position*

Defendant believes that Plaintiffs' claims lack merit, that they are ill-suited for class certification purposes, and that its policies and procedures did not violate the law. Moreover, Defendant believes that Plaintiffs cannot prove damages on a class-wide basis and cannot prove that any individual class member suffered any significant damage.  Nevertheless, Defendant has agreed to this Settlement in order to bring closure to this venture.  Defendant is wrapping up its business operations and desires to avoid the risk of continuing litigation in multiple states.  Settlement at this time allows for certainty rather than the attendant risk to all that comes with further litigation.

### E.  *Sale of Urban Active*

On October 26, 2012, Defendant sold substantially all of its assets to a competing health club chain, Sports and Fitness Clubs, LLC, doing business as LA Fitness.  Since that time Defendant has not operated any gyms or health clubs in the United States.

### F.  *Mediation and Settlement*

On July 8, William Hartgering, Esq., a JAMS mediation expert from Chicago, met with the parties for a full-day mediation in Columbus.  As a result of that mediation, and extensive post-mediation negotiation, the parties eventually reached a settlement and executed the Settlement Agreement.

The Settlement Agreement provides for the certification of one Class and three Subclasses.  A person qualifies as a Class Member if (1) the person fits into one of the categories described below; (2) the person completes a timely and valid claim form;

and, (3) the Settlement Administrator approves the claim.  The Settlement Agreement

provides monetary compensation as set forth below:

- The "Class" is defined as: all individuals who signed a gym membership or personal training contract with Defendant on or between January 1, 2006 to October 26, 2012.  The total number of Class Members is approximately 606,246 persons.  Any Class Member who files a Claim Form **shall** receive $5 in addition to any other Claim Award.

- The "FIF Subclass" is defined as: all Class Members who paid a $15 Facility Improvement Fee ("FIF"), Club Administrative Fee ("CAF"), or any other biannual $15 fee charged by Defendant between April 1, 2009 to October 26, 2012.  The total number of FIF Subclass members is approximately 316,721 persons.  Any FIF Subclass Member who files a Claim Form **shall** receive $20 in addition to any other Claim Award.

- The "Gym Cancel Subclass" is defined as: all Class Members who cancelled their gym membership contract on or between January 1, 2006 to October 26, 2012. The total number of Gym Cancel Subclass members is approximately 387,177 persons.   Any Gym Cancel Subclass Member who files a Claim Form **shall** receive $20 in addition to any other Claim Award.

- The "Personal Training Cancel Subclass" is defined as: all Class Members who cancelled a personal training contract with Defendant on or between January 1, 2006 to October 26, 2012.  The total number of Personal Training Cancel Subclass members is approximately 64,805 persons.  Any Personal Training Cancel Subclass member who becomes an Allowed Claimant **shall** receive $30 in addition to any other Claim Award.

*See* Settlement Agreement, ¶¶ 6.1.1-6.1.4.

All Claim Awards are cumulative, meaning Class Members who receive $5 may

also recover once under each Subclass in which he/she qualifies (*e.g.* a Class Member

who qualifies under each Subclass will recover $75).  *See id.* at ¶ 6.2.  To receive a

Claim Award, a Class Member need only complete a Claim Form and submit it online or

via U.S. Mail.  Class Members do not need to attach any documents or provide any

other proof to file a claim.  Finally, notice will be provided to every Class Member by a

Notice Postcard, an email notice, a reminder email notice, by general publication, and

through the establishment of an internet site.

If all Class Members file a Claim Form, Plaintiffs and Defendant estimate that Defendant will pay in excess of $19 million to the Class and Subclasses.  The minimum total payment to the Class shall be at least $1.3 million.  *Id.* at ¶ 7.1  Under the Settlement, Class Counsel will seek, and Defendant will not oppose, Class Representative Enhancement Payments between $1,000 and $5,000 for the twelve Class Representatives, for a total amount of Class Representative Enhancement Payments of $40,000.  *Id.* at ¶¶ 8.1-8.2.  These Enhancement Payments are unrelated to, and will not reduce in any way, individual Class Members ability to recover the Claim Amounts set forth above.

Last, the payment of Settlement Administration Costs and attorneys fees and costs were negotiated separately from the Class relief and will not reduce in any way payments made to the Class Members.  Settlement Administration Costs are estimated to be approximately $400,000.  Defendant has agreed not to oppose Class Counsel's Motion for an award of attorneys' fees and costs in the amount of $2,390,000.  *Id.* at ¶ 9.2.

## III.   LEGAL STANDARD

"[T]he law generally favors and encourages the settlement of class actions."  *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962, at *2-3 (S.D. Ohio Aug. 18, 2009) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981)).  Civil Rule 23(e) requires three steps for the approval of a proposed class action settlement: (1) Preliminary approval of the proposed settlement; (2) Issuance of notice of the proposed settlement to class members; and (3) A fairness hearing, after which the court must

determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e); *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983); *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 71 (S.D. Ohio 1984).

A Court's duty at the preliminary approval stage is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation.  *See Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982).  Several factors guide the preliminary inquiry as to whether a settlement is fair, reasonable, and adequate, including: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; and (6) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). In considering these factors, the court "is not to decide whether one side is right.... The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

IV.    **ARGUMENT**

A.    ***The Settlement Agreement is Fair, Reasonable, and Adequate.***

This Court should grant preliminary approval because an analysis of the above factors demonstrates that the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate to the Class and Subclasses.

1.    **Plaintiffs have conducted extensive and adequate factual discovery.**

"To insure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement, the stage of the

proceedings and the discovery taken must be considered." *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962, at *13 (S.D. Ohio Aug. 18, 2009) (citations omitted).

Here, Plaintiffs have conducted extensive discovery, including discovery from the Defendant and numerous third parties.  Specifically, Plaintiffs have:

- Served extensive written discovery on Defendant which included multiple sets of interrogatories and requests for production;

- Reviewed approximately 400,000 documents, emails, and other Electronic Data related to Defendant's policies and practices;

- Subpoenaed from Defendant's customer database and billing services providers (MotionSoft and Paramount) additional Electronic Data, emails, and customer databases related to Plaintiff's claims, and reviewed those numerous documents;

- Conducted extensive interviews of numerous Urban Active members to learn more about their customer experiences;

- Conducted extensive interviews with several former Urban Active employees to learn about the corporate culture, training that was provided, and Defendant's policies and procedures as it related to the sales, service, billing, and cancellations of its membership contracts; and

- Deposed nine of Defendant's current and/or former employees, including those individuals responsible for sales and renewals, customer billing, cancellations, and customer service, and a corporate representative.

Defendant has also served extensive written discovery on Plaintiff and deposed several of the Class Representatives.  As such, the Parties have engaged in far-reaching discovery and have vigorously litigated this Action enabling a full determination as to the likelihood of success on class certification and the merits.

### 2.    Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Nationwide Fin. Servs. Litig.*, 2009 U.S.

Dist. LEXIS 126962 at 5-6 (quoting *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).  "Thus, in assessing the Settlement, the Court should balance the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery for them, against Plaintiffs' likelihood for success on the merits." *Id.* (citations omitted).

Plaintiffs are confident they will succeed on the merits of their claims against Defendant.  However, Plaintiffs' confidence is certainly tempered by the following:

- In this Action, this Court granted in part Defendant's Motion for Judgment on the Pleading, dismissing with prejudice many of Plaintiffs' Class allegations under the Ohio Consumer Sales Practices Act;

- The plaintiffs in a similar (but distinct) action filed in the Northern District of Ohio, *Robins v. Global Fitness Holdings, LLC,* Case No.*,* No. 1:11CV01373 (N.D. Ohio), alleged some of the same claims and causes of action alleged here.  Judge Polster dismissed every one of *Robins*'s claims under Fed. R. Civ. P. 12(b)(6), including claims for breach of contract, unjust enrichment, and violations of Ohio's Consumer Sales Practices Act and Kentucky's Consumer Protection Act;

- A number of Plaintiffs' claims under the Kentucky Health Spa Act, KRS 367.910, have never been litigated or decided by any court.  Because no court has ever interpreted the Kentucky Health Spa Act, uncertainty exists regarding its applicability as the parties move forward to litigating the merits of those claims;

- Plaintiffs' claims are based on hundreds and thousands of individual consumer transactions which involved individual Class Members and thousands of different employees of Defendant.  Defendant will use this fact to argue the Plaintiffs' Claims are not suitable for Class Certification.

These factors, and others such as the general risks inherent in any litigation, contribute to the inevitable balancing of risks that all parties must perform when engaging in settlement negotiations.

Importantly, the substantial relief provided to every Class/Subclass Member under the Settlement is balanced against these risks and burdens.  Any Class Member

who files a Claim Form online or by mail will receive between $5 and $75.  The claim process is simple, efficient, and no proof or other evidence of entitlement to a recovery is required of Class Members.   Through this claims process, Defendant's potential exposure in Class/Subclass Member payments exceeds $19 million.  This value to the Class is significant, especially when compared to the risk of continued litigation and the relatively small amount of actual damages suffered by each Class/Subclass Member.

The significant value being provided to the Class is further highlighted by comparing this Settlement to other class action settlements that have been preliminarily and/or finally approved and involve similar claims against health clubs.  For example, in *Vaughn v. L.A. Fitness*, United States District Court for the Eastern District of Pennsylvania, Case No. 10-cv-2326-MMB, 2013, Plaintiffs alleged similar contract and cancellation claims against L.A. Fitness.  In the settlement of that case, Class Members who submit a Claim Form are eligible to receive a 45-day free pass or 1/3 of one month's membership dues (i.e. between $10 and $15).   Only class members who submit written proof of cancellation and records showing continued charges were eligible to receive additional cash payments, whereas here, Class/Subclass Members need only complete and file a Claim Form.

Likewise, in *Friedman v. 24-Hour Fitness USA*, United States District Court for the Central District of California, Case No. CV 06-06282 AHM, 2010, plaintiffs alleged that defendant used improper contract forms with unfair or unlawful terms, and continued to charge members after receiving notice of cancellation.  The settlement of that case provides that a class member who submitted a claim would recover $20 or a 3 month pass.   Here, by submitting a Claim Form any Class Member who cancelled

his/her membership will receive a minimum of $25 (a $5 Class payment and a $20 Gym Cancel Subclass payment).  In addition, other payments are available if the Class Member qualifies under other Subclasses.

### 3.     No Risk Of Fraud Or Collusion Exists.

No risk of fraud or collusions exists because this Settlement was negotiated after two-plus years of hard fought litigation, at arms-length by experienced and reputable counsel, and was facilitated by an experienced mediator.  *See* Declaration of Thomas McCormick ("McCormick Decl.") at ¶¶ 5-10 and Declaration of Mark Troutman ("Troutman Decl.") at ¶¶ 9-14 , (Counsel for Plaintiffs), attached as Exhibit C.  *See also* Declaration of Richard Gurbst ("Gurbst Decl.") at ¶¶ 4-8 (Counsel for Defendant), attached as Exhibit D.   Settlement negotiations extended over a five-month period and were interrupted by depositions and the filing of a Motion for Class Certification in the *Tartaglia* matter.   McCormick Decl., ¶¶ 2, 6.   These factors demonstrate that the Settlement was not the product of fraud or collusion.[3]  Moreover, attorneys' fees were not negotiated until after an agreement on payment to the Class and Subclasses was achieved.  McCormick Decl., ¶ 10; Troutman Decl., ¶ 14; and Gurbst Decl., ¶ 8.  The negotiation of attorneys' fees did not affect, in any way, the monetary relief negotiated for the Classes and it cannot be argued that any collusion existed between the parties with respect to any aspect of this Settlement.

### 4.     Continued Litigation would be Complex, Lengthy, and Uncertain.

---

[3]     *See Moulton v. United States Steel Corp.*, 581 F. 3d 344, 351 (6th Cir. 2009) (finding objectors' claim that agreement was a product of collusion meritless where the case involved lengthy and complex litigation and the agreement was a product of months of supervised negotiations, including two mediation sessions).

"In determining the fairness of the Settlement, courts also consider '[t]he complexity, expense and likely duration of the litigation.'" *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at *10 (quoting *In re Telectronics*, 137 F. Supp. 2d at 1013 (citations omitted)).   Class actions are inherently complex and settlement "avoids the costs, delays, and multitude of other problems associated with them.'" *Id.* (citations omitted).  "As such, avoiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *Id.* (citation omitted).

As detailed above, this litigation has already lasted two-plus years, it has involved extensive motions, included hard fought and voluminous discovery, and raised several complex legal issues, including some unsettled areas of the law.  A settlement at this stage avoids the substantial expense of additional discovery, continued motion practice, briefing on Class Certification, hiring of expert witnesses regarding damages, and a complex and expensive trial - - all of which would likely not materially increase the Classes recovery and could result in a reduction of the amounts available to the class. In addition, a multitude of policies and procedures have been implicated by Plaintiffs' allegations and Defendant possesses numerous affirmative defenses to these claims, meaning the time and effort required to litigate this matter through trial would be substantial and the issues raised would be complicated.  *See Burka v. New York City Transit Auth.*, 129 F.R.D. 80, 83 (S.D.N.Y. 1990) (stating that because the issues of law and fact before the court were complex, the decision to avoid trial by settlement "appears to have been a wise one").

In contrast, the proposed settlement provides Class/Subclass Members with a significant monetary award in light of actual damages suffered.   Moreover, that monetary award is being provided without having to endure the risks, effort, duration, and expense if this litigation continued.

### 5.    Opinions of Class Counsel and the Class Representatives.

In assessing the settlement, this Court must also consider the experience of counsel and their views of the settlement.   *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference").

Here, Class Counsel includes experienced trial attorneys and published experts on consumer protection laws.  Class Counsel is experienced in both the litigation and settlement of class actions of this type, has conducted extensive direct and third party discovery, and has thoroughly evaluated the merits of this case.  Given the experience of Class Counsel in this matter and in similar matters, their opinions that the terms of this settlement are fair, adequate, and reasonable should be given substantial weight in approving the settlement.

### 6.    The Strong Public Interest In The Amicable Resolution Of Class Action Lawsuits Favors The Proposed Settlement

"There is an overriding public interest in favor of settlement of class action lawsuits."  *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at *22 ("The proposed Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources.").   "Settlement agreements should . . . be upheld

whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

Here, in light of provision of substantial benefits to the Class and Subclass Members, this "overriding public interest" would be well-served by approval of the settlement.

**B.    *The Class and Subclasses should be conditionally certified.*[4]**

To grant certification of a settlement class, the requirements of Rule 23 must be satisfied.  *See* Fed. R. Civ. P. 23.  Rule 23(e) governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class.  All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.  *Amchem Prods.*, 521 U.S. at 620.  As discussed below all Rule 23 prerequisites for certification are satisfied.

**1.    Numerosity**

Numerosity is presumed when there are at least 40 class members. *Adams v. Anheuser-Busch Companies, Inc.*, No. 2:10-cv-826, 2012 WL 1058961, at *3-4 (S.D. Ohio Mar. 28, 2012); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.) ("[n]umerosity is presumed at a level of 40 members . . . ."), *cert. denied*, 515 U.S. 2277 (1995) (citation omitted).

---

[4]    Defendant supports class certification for settlement purposes only.  If the settlement fails to be approved or is terminated for whatever reason, Defendant reserves all rights to object to the maintenance of this lawsuit as a class action and does not waive any right to do so through actions taken in furtherance of this settlement.

Here, the proposed Class contains over 600,000 members and the proposed Subclasses contain between 380,000 and 64,000 members.  Numerosity is satisfied because it would be impossible to join all of these members into one action.

### 2.  Commonality

Commonality requires "a common issue the resolution of which will advance the litigation." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F. 3d 592, 619 (6th Cir. 2007); See also *Young v. Nationwide Mut. Ins. Co.*, 693 F. 3rd 532, 542-43 (6th Cir. 2012) (finding that commonality and typicality requirements were satisfied where a single practice or course of conduct by defendant gives rise to the claims of plaintiffs and the class).

Here, Plaintiffs allege that common policies, common practices, and the language contained in common form contracts resulted in common injuries to the Classes.  By way of example, the Class Members assert that at the time of sale Defendant did not comply with state consumer protection statutes by failing to provide copies of the its written contracts, by failing to provide verbal notice of cancellation rights, by making inaccurate representations regarding the terms and conditions of the contract, and by failing to provide required lists of all plans available for sale.  Likewise, the FIF Subclass Members assert that Defendant failed to properly disclose the $15 Facility Improvement Fees at the time of sale.  The Contract Cancellation Subclass Members assert that Defendant failed to properly disclose cancellation fees and adopted cancellation policies that were intentionally confusing, in direct violation of its form contracts to the individual Members, and that Defendant refused to accept cancellation notices and/or continued to bill members monthly dues after cancellation.  Last, the Personal Training Cancellation Subclass Members assert that Defendant

failed to properly disclose cancellation fees and adopted cancellation policies that were intentionally confusing, in direct violation of its form contracts, and that Defendant refused to accept cancellation notice and/or continued to bill members after cancellation.

### 3.    Typicality

Typicality is satisfied if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claim of other class members, and if his or her claims are based on the same legal theory."  *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996), *citing* 1 Newberg & Conte, *Newberg on Class Actions*, § 3-13 at 3-76.   "Commonality and typicality 'tend to merge' because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Young, at* 542-43, *citing Dukes*, 131 S.Ct. at 2551 n. 5.

Here, typicality is satisfied because the claims of the Plaintiffs are based upon the same legal theories and the same alleged conduct as the claims for all Class Members.   Because Defendant's form contracts and enforced procedures were consistent and uniform, all Class/Subclass Members suffered the same harm.

### 4.    Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem,* 521 U.S. at 625.  The Sixth Circuit has held that "'[t]here are two criteria for determining whether the representation of the class will be adequate: (1) The representative must have common interests with

unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Powell v. Tosh*, 2012 U.S. Dist. LEXIS 27912, 31-32 (W.D. Ky. Mar. 1, 2012) (citing *Senter v. GMC*, 532 F.2d 511, 524-25, (6th Cir. 1976)).

Here, the Representative Plaintiffs and Class/Subclass Members share common interests because the legal and remedial theories raised by the Representative Plaintiffs are shared with the Class/Subclass Members. No conflict exits between the Class Representatives and the Class/Subclass Members they seek to represent. Moreover, the Settlement Agreement itself, by providing Claim Awards based on a claims made process with no maximum cap ensures that the Class Representatives and the Class/Subclass Members both benefit by maximizing recovery from the Defendant without any sacrifice by some Class/Subclass Members for the interests of others.

Last, as discussed above, Class Counsel in this case has experience in the litigation and settlement of class actions, and is clearly qualified to represent the Plaintiffs and Class/Subclass Members in this action. Class Counsel has devoted significant time and resources in reviewing hundreds of thousands of documents, emails, and information collected from third parties. Class Counsel are experienced, skilled trial attorneys in consumer law. In this case, the settlement negotiations were intense, often contentious, and lasted over a five month time period. Only after Class Counsel was satisfied that the best recovery had been negotiated for the Class and Subclasses did the parties negotiate payment of attorneys fees and costs.

### 5.    Rule 23(b) Requirements

"[T]he potential class must also satisfy at least one provision of Rule 23(b)." *Rosario*, 963 F.2d at 1017; *see also Gen. Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982). Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and […] a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  "'Predominance is usually decided on the question of liability, and if the liability issue is common to the class, common issues are held to predominate over individual questions.'" *In re Revco Securities Litig.*, 142 F.R.D. 659, 662 (N.D. Ohio 1992).

Here, Class Members assert that that the common questions of law and fact that predominate are whether the alleged policies and practices and the form contracts of Defendant violated the law.  Predominance exists because determination of liability for the claims asserted by the Class Members will rest upon common questions as to actions taken by the Class Members and Defendant.  .

Also, this class action is clearly superior to other available methods for the fair and efficient adjudication of this controversy because joinder of 600,000 Class Members is impracticable.  Fed. R. Civ. P. 23(b)(3).  In addition, the damages suffered by individual Class Members are relatively small, so the expenses and burden of individual litigation would make it impossible for Class Members to individually redress the harm done to them.[5]

---

[5]    In the context of settlement, issues regarding manageability (such as the calculation of damages) are irrelevant.  *Amchem Prods.*, 521 U.S. at 620 (where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial).

In summary, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class and Subclasses pursuant to Rule 23(a) and (b)(3), for purposes of granting preliminary approval of the Settlement.

### C.    *The Proposed Notice is Adequate.*

 Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  The notice must provide an opportunity to opt out, indicate that the judgment will bind all class members who do not opt out, and specify that any member who does not opt out may appear through counsel.  Fed. R. Civ. P. 23(c)(2).  When attorneys' fees and costs are requested, the notice must so inform class members. Fed. R. Civ. P. 23(h)(1).   The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, (1985); *see also Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008).  The notice is satisfactory so long as it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard."  *In re Cement & Concrete Antitrust Litig.*, 817 F.2d 1435, 1440 (9th Cir. 1987) (citations omitted), rev'd on other grounds, 490 U.S. 93 (1989).

Here, the Notice, attached as Exhibit 6 to the Settlement Agreement meets all the requirements of Rule 23:  it identifies the Plaintiffs and the Defendants; explains the lawsuit and the settlement classes in a straightforward manner; succinctly describes the essential terms of the proposed settlement; identifies all parties against whom claims are being released; provides class members with information on how to opt-out and

provides all applicable deadlines for such action; informs Class Members that if they do not exclude themselves from the Class and the settlement is approved they will be bound by the resulting judgment; advises Class Members that Class Counsel will seek an award of $2,390,000.00 in attorney's fees and costs; informs Class Members that Class Representative Enhancement Payments of between $1,000 and $5,000 per representative will be requested.  In addition, the Notice instructs Class Members to contact Class Counsel or the Claims Administrator to obtain more detailed information. In short, the notice provides all the necessary information for Class Members to make an informed decision regarding the proposed Settlement.

As a general rule, due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort," *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 177 (1974), and "is appropriate, for example, if class members are required to take action—such as filing claims—to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3)."  *See* Fed. R. Civ. P. 23(e)(1), 2003 Committee Note.

Here, the proposed Settlement provides for direct mail notice to the last known addresses of settlement class members, direct email to the last known email address, a reminder email, general publication notice, and internet availability for researching the Settlement and/or filing a Claim Form.  The notice program here more than sufficiently satisfies all due process requirements.

## V.    CONCLUSION

For the reasons set forth above, the Court should: (1) preliminarily approve the proposed class action settlement, (2) preliminarily certify a Class and Subclasses for settlement purposes, (3) appoint the above-named Plaintiffs as Class Representatives,

(4) appoint William Porter, Thomas McCormick, Kenneth Rubin, and James Lind of Vorys Sater, Seymour and Pease, and Mark Landes, Greg Travalio, and Mark Troutman of Isaac, Wiles, Burkholder & Teetor, LLC (f/k/a Isaac Brant Ledman & Teetor, LLP) as lead counsel for the Class and Subclasses, (5) approve and direct the issuance of notice to the Class by the Claims Administrator, and (6) schedule a final fairness hearing.

Respectfully submitted,

s/ Thomas N. McCormick
William G. Porter (0017296)
wgporter@vorys.com
Thomas N. McCormick   (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
kjrubin@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone:  (614) 464-6400
Facsimile:  (614) 464-6350

James B. Lind (0083310)
jblind@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, OH 45202
Telephone: (513) 723-4000
Facsimile: (513) 852-7835

s/ Mark H. Troutman
Mark Landes   (0027227)
mlandes@isaacwiles.com
Gregory M. Travalio   (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman   (0076390)
mtroutman@isaacwiles.com

s/  Richard S. Gurbst
Richard S. Gurbst (0017672)
Richard.Gurbst@squiresanders.com
SQUIRE SANDERS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
United States of America
(216) 479-8607

Dan L. Cvetanovich (0021980)
Dan.Cvetanovich@baileycavalieri.com
Sabrina Haurin (0079321)
sabrina.haurin@baileycavalieri.com
BAILEY CAVALIERI LLC
One Columbus
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
Telephone:  (614) 221-3155
Facsimile:  (614) 221-0479

***Attorneys for Defendant Global Fitness Holdings, LLC***

ISAAC, WILES, BURKHOLDER &
TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121
Facsimile:  (614) 365-9516

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 18, 2013, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.

/s/ Mark H. Troutman
Mark H. Troutman (0076390)
mtroutman@isaacwiles.com