**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| AMBER GASCHO<br>3881 Orchard Way<br>Shawnee Hills, Ohio 43065, | ) ) ) | CASE NO. 11-cv-436 |
| | ) | |
| ASHLEY BUCKENMEYER<br>202 N. Main Street<br>Swanton, Ohio 43558, | ) ) ) ) | JUDGE SMITH |
| | ) | MAGISTRATE JUDGE KING |
| MICHAEL J. HOGAN<br>447 Morse Road<br>Columbus, Ohio 43214, | ) ) ) | |
| | ) | **THIRD AMENDED COMPLAINT** |
| EDWARD LUNDBERG<br>146 East Gates Street<br>Columbus, OH 43206 | ) ) ) ) | JURY DEMAND ENDORSED HEREON |
| | ) | |
| TERRY E. TROUTMAN<br>7403 Falls View Circle<br>Delaware, OH 43015 | ) ) ) ) | |
| | ) | |
| ANTHONY MEYER<br>87 East College Avenue<br>Westerville, OH 43081 | ) ) ) ) | |
| | ) | |
| RITA ROSE<br>6148 Polo Dr. West Apt. D<br>Columbus, OH 43229 | ) ) ) ) | |
| | ) | |
| JULIA CAY f/k/a Julia Snyder<br>1359 Meadow Road<br>Columbus, OH 43212 | ) ) ) ) | |
| | ) | |
| ALBERT TARTAGLIA,<br>1331 Christie Ave., Apt. 2<br>Louisville, KY 40204, | ) ) ) ) | |
| | ) | |
| MICHAEL BELL<br>4101 Pecunnie Way<br>Louisville, KY 40218 | ) ) ) ) | |
| | ) | |
| MATT VOLKERDING<br>611 Laurelwood Dr. | ) ) | |

EXHIBIT
A

Cleves, OH 45002                         )
                                         )
AND                                      )
                                         )
PATRICK CARY                             )
2553 Evergreen Dr.                       )
Ft. Mitchell, KY 41017                   )
                                         )
**Individually and on behalf of all**   )
**others similarly situated**           )
                                         )
            Plaintiffs,                  )
                                         )
    vs.                                  )
                                         )
GLOBAL FITNESS HOLDINGS, LLC,            )
d/b/a/ URBAN ACTIVE                      )
1400, LLC                                )
300 West Vine Street                     )
Suite 1100                               )
Lexington, KY 40507,                     )
                                         )
            Defendant.                   )

Now comes Plaintiffs Amber Gascho, Ashley Buckenmeyer, Michael J. Hogan, Edward Lundberg, Terry E. Troutman, Anthony Meyer, Rita Rose, Julia Cay f/k/a Snyder, Albert Tartaglia, Michael Bell, Matt Volkerding, and Patrick Cary, on behalf of themselves and all others similarly situated, and for their Third Amended Complaint against Defendant Global Fitness Holdings, LLC d/b/a Urban Active, allege as follows:

### PRELIMINARY STATEMENT

1.  Plaintiffs Amber Gascho, Ashley Buckenmeyer, Michael J. Hogan, Edward Lundberg, Terry E. Troutman, Anthony Meyer, Rita Rose, Julia Cay f/k/a Snyder, Albert Tartaglia, Michael Bell, Matt Volkerding, and Patrick Cary bring this action to secure redress for themselves and others similarly situated for Defendant's Global Fitness Holdings, LLC d/b/a Urban Active Fitness, based upon claims for breach of contract,

2

unjust enrichment, and violations of the Ohio Consumer Sales Practices Act and Ohio's Prepaid Entertainment Contract Act ("CSPA"), O.R.C. 367.01 *et seq.,* the Kentucky Consumer Protection Act ("KCPA") KRS 367.170, and the Kentucky Health Spa Act KRS 367.900 *et seq.,* the Pennsylvania Health Club Act and Unfair Trade Practices and Consumer Protection Law 73 Pa. Cons. Stat. § 2161 *et seq.,* the North Carolina Prepaid Entertainment Contracts Act N.C. Gen. Stat. § 66-118 *et seq.,* the Tennessee Health Clubs Act and Consumer Protection Act Tenn. Code Ann. § 47-18-301 *et seq.,* and the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601. Plaintiffs seek equitable relief and damages on behalf of themselves and the class described herein.

## PARTIES

2.     Plaintiffs Amber Gascho, Ashley Buckenmeyer, Michael J. Hogan, Edward Lundberg, Terry E. Troutman, Anthony Meyer, Rita Rose, Julia Cay f/k/a Julia Snyder, Albert Tartaglia, Michael Bell, Matt Volkerding, and Patrick Cary are individuals who, during the relevant time period, signed a gym membership contract and/or a personal training, child care, and/or tanning contract with Defendant.

3.     Defendant Global Fitness Holdings, LLC d/b/a/ Urban Active ("Urban Active" or "Defendant") is a Kentucky limited liability corporation which conducted business throughout Ohio, Kentucky, Georgia, Nebraska, North Carolina, Pennsylvania, and Tennessee by operating fitness clubs, and offering personal training and other services.     In October, 2012, Defendant sold all of its assets in Urban Active to Fitness and Sports Clubs, LLC, doing business as LA Fitness.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Defendant because it transacts business in the State of Ohio by operating at least 18 Urban Active locations around the State, including multiple locations in Franklin County, Ohio.

5.     This Court has subject matter jurisdiction over all claims in this action pursuant to 28 USC § 1332(d).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## CLASS ALLEGATIONS

7.     Plaintiffs bring this action on their behalf, and as a class action, pursuant to Rule 23(a), (b)(3) and (c)(3) of the Federal Rules of Civil Procedure.  Plaintiffs bring this action on behalf of the following putative class and subclasses:

(A)     All persons who signed a gym membership or personal training contract with Defendant during the Class Period, which is January 1, 2006, to October 26, 2012.  The total number of Class Members is approximately 606,246 persons (the "Class");

(B)     All Class Members who paid a $15 Facility Improvement Fee ("FIF"), Club Administrative Fee ("CAF"), or any other biannual $15 fee charged by Defendant during the FIF Subclass Period, which is April 1, 2009, to October 26, 2012 ("the "FIF Subclass"). The total number of FIF Subclass members is approximately 316,721 persons;

(C)     All Class Members who cancelled their gym membership contract between January 1, 2006, and October 25, 2012 (the "Gym Cancel Subclass").  The total number of Gym Cancel Subclass members is approximately 387,177 persons;

(D)     All Class Members who cancelled a personal training contract between January 1, 2006, and October 25, 2012 ("Personal Training Cancel Subclass").  The total number of Personal Training Cancel Subclass members is approximately 64,805 persons.

8.     The members of the Class are so numerous and geographically diverse, that joinder of all of them is impracticable.

9.     There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members including, *inter alia*, the following:

a. Whether Defendant has a common policy and practice of knowingly misrepresenting the terms, conditions, and availability of its contracts in order to induce consumers to enter such contracts;

b. Whether Defendant has a common policy and practice of unconscionably taking advantage of customers' inability to reasonably protect their interests, entering into one-sided agreements, and entering into agreements which Defendant knows the customers will not receive a substantial benefit from;

c. Whether Defendant has a common policy and practice of failing to comply with the specific requirements of state law pertaining the sale and service of gym membership contracts including, among other things, failing to provide consumers with a list of available plans; selling membership plans which did not appear on required registration statements; failing to provide customers with copies of its contracts at the time of signing; failing to orally inform consumers of their right to cancel contracts at the time of signing; and failing to provide consumers with appropriate "notice of cancellation" forms.

    d. Whether Defendant has a policy and practice of intentionally avoiding, refusing to accept, and refusing to properly process notices of cancellation of its contracts in accordance with state law.

    e. Whether Defendant has a common policy and practice of failing to perform its contracts in good faith, using deceptive and misleading form contracts, and of breaching its contracts by failing to comply with contractual terms related to terminations, cancellations, and the provision of personal training sessions.

    f. Whether Defendant has a common policy and practice of charging members' accounts without authorization in violation of state law.

10. The claims of Plaintiffs are typical of the claims of the other members of the Class, and Plaintiffs have no interests that are adverse or antagonistic to the interests of the other members of the Class.

11. Plaintiffs will fairly and adequately protect the interests of the other members of the Class. Plaintiffs are committed to prosecuting this Class Action and have retained competent counsel experienced in litigation of this nature.

12. Plaintiffs envision no unusual difficulty in the management of this action as a Class Action. For all of the foregoing reasons, a Class Action is superior to the other available methods for the fair and efficient adjudication of this action.

## FACTUAL BACKGROUND

13. Defendant actively and aggressively solicited individuals to sign Urban Active membership contracts. Defendant actively and aggressively solicited members to sign personal training contracts and contracts for other services.

6

14. Defendant engaged in a common policy and practice of misrepresenting the terms of these contracts at the time of sale. Through communications from Defendant, its employees were encouraged and incentivized to do the same. In addition, Defendant failed to train its employees on the terms of its own contracts and the requirements of state law.

15. Regarding membership contracts, Defendant engaged in a common policy and practice of misrepresenting, among other things, the duration of the contract, the availability of special deals or terms, the terms of cancellation, the existence of a maintenance fee, and the total cost of the contract.

16. Regarding personal training contracts, Defendant engaged in a common policy and practice of misrepresenting, among other things, the duration of the contract, the number of training sessions purchased under the contract, the availability of special deals or terms, the terms of cancellation, and the total cost of the contract.

17. Defendant also engaged in a common policy and practice of selling membership plans and personal training plans that were not registered pursuant to state law and failing to provide customers with a comprehensive list of all membership plans and personal training plans, as also required by state law. In addition, Defendant represented to customers that membership and personal training plans constitute "limited time deals" or "specials," when in fact they did not. Defendant's employees were encouraged and incentivized to do the same.

18. Plaintiffs and Class members whom they seek to represent, including any Subclass members, relied on these misrepresentations.

19.     Urban Active required new members and those that sign personal training contracts and other service contracts to pre-pay for services and authorize payment from a credit, debit, or bank account.

20.     Defendant engaged in a common policy and practice of overcharging members' accounts and making unlawful and authorized charges to the accounts of its members and other customers of its services.

21.     Defendant engaged in a common policy and practice of avoiding cancellations, making cancellations as difficult as possible, imposing unlawful cancellation fees and extra-contractual burdens to cancellation, and failing to honor cancellations by continuing to charge members after cancellation.     Through communications from Defendant, its employees were encouraged and incentivized to do the same.

22.     Defendant specifically instructed its employees to refuse to accept in-person cancellations unless the person seeking to cancel stated that such a refusal violated the law.

23.     Defendant effectuated this common pattern and practice by, among other things, not disclosing cancellation terms; refusing to accept cancellations; imposing a two billing cycle cancellation policy; providing inaccurate information regarding cancellations; and/or misdirecting customers seeking to cancel to other employees or departments within the company.

### Plaintiff Amber Gascho

24.     Plaintiff Amber Gascho was a member of Urban Active, a fitness center owned and operated by Defendant.

8

25. On or around December 12, 2009, Gascho signed a membership contract with Urban Active's facility previously located in Powell, Ohio,.

26. At the time of signing the membership contract, Gascho was not fully advised of the cost of the membership including, but not limited to, a semiannual maintenance fee. In addition, Gascho was never orally advised of her right to cancel the membership.

27. In late July 2010, employees of Defendant were promoting personal training sessions to members. During the course of her regular workout, two employees of Defendant approached Gascho and attempted to sell Gascho a personal training contract. The employees represented to Gascho that she could cancel the personal training contract at any time for a ten-dollar administrative fee.

28. Based on these representations, Gascho agreed to sign up for a personal training contract with the understanding that she could cancel that contract at anytime thereafter by paying the $10 administrative fee.

29. At the time Gascho signed the personal training contract, July 30, 2010, Defendant did not provide Gascho with a copy of the personal training contract or duplicate copies of a "notice of cancellation" form. Gascho was not provided any oral or written information regarding Defendant's cancellation policy, other than the false representation that she could cancel at anytime for a ten-dollar fee.

30. After several weeks, Gascho sought to cancel the contract. When Gascho tendered her notice of cancellation and $10 termination fee, Plaintiff was, for the first time, shown a copy of her contract and told that the early cancellation fee was actually $250.00.

9

31.     Gascho refused to pay the $250.00 termination fee.  Defendant continued to charge Gascho's credit card for the personal training contract.  Eventually, Gascho was forced to cancel payment through her debit card by contacting her bank.

32.     On numerous occasions, Gascho raised these issues to the managers at the Powell location.  On one such occasion, the Urban Active Manager indicated that he had heard of other gym members raising similar complaints.

### Plaintiff Ashley Buckenmeyer

33.     Plaintiff Ashley Buckenmeyer was a member of Urban Active, a fitness center owned and operated by Defendant.

34.     On or about February 11, 2011, Buckenmeyer signed a membership contract with Urban Active's facility previously located in Maumee, Ohio.

35.     At the time of signing the membership contract, Buckenmeyer was not fully advised of the cost of the membership including, but not limited to, a semiannual maintenance fee.

36.     On March 15, 2011, Buckenmeyer was approached by Joe – a personal training consultant at the Maumee, Ohio, Urban Active location -- who pressured Buckenmeyer into signing up for a personal training contract.

37.     Joe did not orally advise Buckenmeyer of her right to cancel the contract, nor was she provided duplicate copies of a "notice of cancellation" form.

38.     Less than four *hours* after signing the personal training contract, Buckenmeyer called Joe and told him that she had changed her mind and wanted to cancel the contract.

39.     Joe told Buckenmeyer it was "too late" to cancel and that there was "no turning back."   Joe then attempted to sell Buckenmeyer a less expensive personal training contract.   Joe eventually relented and told Buckenmeyer that he would "take care of" cancelling the contract on the website.

40.     Several days later, Buckenmeyer called Joe to verify that the contract had been cancelled as Joe had promised.

41.     Joe told Buckenmeyer that he did not have the authority to cancel the contract and that it had not been cancelled because Buckenmeyer did not follow the cancellation procedure on Defendant's website.

42.     Despite Buckenmeyer providing notice of cancellation less than four hours after signing, Defendant refused to cancel the contract and continued to charge Buckenmeyer's bank card.

43.     Buckenmeyer was forced to contact her bank to dispute the charges from Defendant.

### Plaintiff Michael J. Hogan

44.     Plaintiff Michael J. Hogan was a member of Urban Active, a fitness center owned and operated by Defendant.

45.     In 2008 Hogan signed a membership contract with Urban Active's facility previously located in Columbus, Ohio, at the Graceland Shopping Center.

46.     At the time he signed up for his gym membership, Hogan was not orally advised of his cancellation rights nor was he provided with duplicate copies of a "notice of cancellation" form.

11

47.    In October, 2010, Hogan sought to cancel his gym membership and provided written notice of cancellation to Defendant's corporate offices.

48.    Defendant continued to charge Hogan's bank card through February of 2011. When Hogan called Defendant to determine why his bank card was still being charged, Defendant's representatives informed Hogan that they had not received his notice of cancellation.

49.    Hogan was forced to resend his notice of cancellation in order to cancel and, as a result, was charged over $100.00 in additional gym membership fees. Defendant refused to refund these overcharges.

### Plaintiff Edward Lundberg

50.    In February 2008, Edward Lundberg joined an Urban Active in New Albany, Ohio, under a contract that was supposed to last 18 months.

51.    Lundberg used the Urban Active facilities and paid all dues owed to Defendant according to the member contract he signed.

52.    Under the terms of the contract, Lundberg agreed to pay Defendant installment payments in the amount of $42.69 per month.

53.    When Lundberg agreed to the contract, Defendant required that Lundberg provide bank account information so that these payments could be deducted on a monthly basis. The only acceptable form of payment was an automatic deduction from a checking or credit account.

54.    In March, 2011, after his initial 18-month contract expired, Lundberg attempted to transfer his membership to another Urban Active facility in Grandview, Ohio, also owned and operated by Defendant.

55.    Lundberg spoke with the Grandview gym manager concerning transferring his membership. The Grandview gym manager assured Lundberg that the Grandview gym manager would take care of having Plaintiff's New Albany membership cancelled immediately so that it was transferred to the Grandview facility.

56.    Despite the terms of his contract and the promises and assurance of Defendant's employees, Lundberg has been continually charged his membership dues by the New Albany gym, in addition to being charged by the Grandview gym.

57.    Upon being improperly billed these unauthorized charges, Lundberg met with staff from the Grandview and New Albany locations for several hours in an effort to resolve these issues. To date, Urban Active has not remedied the improper and unauthorized deductions from his account.

### Plaintiff Terry E. Troutman

58.    On August 20, 2010, Terry Troutman joined an Urban Active owned and operated by Defendant in Powell, Ohio, by entering into a consumer installment contract.

59.    Troutman used the Urban Active facilities and paid all dues owed to Defendant according to the membership contract he signed.

60.    Under the terms of the contract, Troutman agreed to pay Defendant installment payments in the amount of $26.63 per month in order to use the gym facilities. Troutman also pays an additional $10.00 per month for the additional child care services offered by Defendant.

61.    When Troutman agreed to the contracts, Defendant required Troutman to provide credit account information so that these payments could be deducted on a

monthly basis. The only acceptable form of payment was an automatic charge to a checking or credit account.

62. On January 27, 2011, March 3, 2011, and April 8, 2011, Defendant improperly charged payments to the credit account of Troutman without his authorization or permission.

63. These deductions referred to as "late payments" in the amount of $20.00 were never authorized in the contract that Troutman signed with Defendant. Indeed, Defendant itself deducts all necessary payments according to the contract's terms.

64. Troutman contacted Urban Active on several occasions in an effort to correct the improper deductions; however, Defendant continued to take payments from Troutman's account without authorization or permission.

65. After Troutman filed a lawsuit against Urban Active, Defendant made three attempts to correct the improper deductions. Those attempts did not include the immediate refund of the money, but rather Defendant credited future payments in following months. Such after-the-fact actions are not permitted under the terms of the contract or Ohio law.

### Plaintiff Anthony Meyer

66. On May 26, 2009, Anthony Meyer joined an Urban Active owned and operated by Defendant in Westerville, Ohio, by entering into a consumer installment contract with Defendant.

67. Meyer used the Urban Active facilities and paid all dues owed to Defendant according to the contract he signed upon initiation.

68. Under the terms of the contract, Meyer agreed to pay Defendant

14

installment payments in the amount of $32.16 per month.

69.     Under the terms of the contract, Meyer agreed that Defendant would deduct all monthly payments for membership from a bank account.   The only acceptable form of payment was an automatic deduction from a checking or credit account.

70.     Meyer entered into the contract because he was assured that he could cancel at any time with proper notice under the contract.

71.     This allowance for cancellation was important to Meyer because he knew that he would be leaving for Mississippi to attend U.S. Navy boot camp in April, 2010.

72.     On March 24, 2010, Plaintiff Meyer went to the Westerville Urban Active location, completed a cancellation form, and paid a $10.00 administrative fee to cancel his member contract.   The Urban Active representative confirmed that he properly canceled the contract so that his billing would end.

73.     Since that time, Defendant billed Plaintiff Meyer $32.16 on April 26, 2010, May 27, 2010, June 28, 2010, and August 27, 2010, plus what appears to be a maintenance fee improperly billed on June 28, 2010. All of these charges were made after Defendant accepted cancellation of Meyer's contract and the associated $10 cancellation fee.

74.     After the charge on August 27, 2010, Meyer faxed a copy of his Navy orders. Meyer has received no additional charges since that time.

75.     Meyer sought reimbursement for the improper charges, but Defendant has never refunded the improperly taken amounts from his account.

15

### Plaintiff Rita Rose

76.    On May 15, 2010, Rita Rose entered into a contract that provided membership for her minor son at an Urban Active owned and operated by Defendant in Columbus, Ohio, in the Graceland area.

77.    Rose's minor son used the gym facilities under the terms of the purported contract signed by his mother.

78.    When Plaintiff Rose entered into the contract for her son to use the facilities offered by Defendant, she entered into a consumer installment contract with Defendant.

79.    Before Rose agreed to the contract, the salesperson represented to her that it was a month-to-month contract and that she could cancel at any time by providing the proper notice with no additional charges.

80.    Based upon this representation, Rose signed electronically without being provided any contract terms other than the $21.34 monthly charge and the cancellation terms described above.

81.    Defendant did not provide Rose a copy of any contract because it represented that its printer was broken that day.

82.    Under the terms of the agreement, Rose agreed to allow Defendant to deduct all monthly payments for membership from a bank account.    The only acceptable form of payment was an automatic deduction from a checking or credit account.

83.    Instead of placing Rose's signature on a month-to-month contract as promised, Defendant placed her signature on a 12-month term contract that provided

for monthly payments and automatic renewals after completion of the original 12-month term.

84.     Defendant never advised Rose that she had to provide a 30-day notice for cancellation, payment of last month's dues in advance, an early termination penalty or "buyout," or a bi-annual $15.00 maintenance fee that Defendant deducted from her account on two occasions.

85.     In January, 2011, Rose decided to terminate her contract. When she went to the Urban Active facility to cancel the contract, she was advised that the cancellation policy, of which she had not yet received a copy, had changed.

86.     Instead of being allowed to immediately cancel her contract, Rose was advised that she had to forward a certified mail letter to Defendant's home offices with a $10.00 cancellation fee.

87.     Rose forwarded the cancellation request and $10.00 fee to Defendant as directed by the Graceland Urban Active facility on January 14, 2011, which was received by Defendant on January 18, 2011.

88.     On February 15, 2011, March 15, 2011, and April 15, 2011, Defendant improperly deducted payments from the credit account of Rose without her authorization or permission.

89.     Defendant promised on numerous occasions to reimburse the money, but never did. Only after Rose filed a lawsuit against Defendant did Defendant takes steps in an attempt to remedy is unlawful deductions.

90.     Rose first received a copy of the contract that Defendant created using her electronic signature in April, 2011, while investigating her potential claims for

improper deductions from her bank account.

### Plaintiff Julia Cay f/k/a Julia Snyder

91.     After entering into a gym membership contract in August 2010, Julia Cay f/k/a Julia Snyder entered into a personal training contract on October 4, 2010, at the Grandview Urban Active location owned and operated by Defendant.

92.     When Cay met with Defendant's sales representative known as "Ahmed," she confirmed at least three times that she could provide notice and cancel her personal training services contract at any time at no charge.

93.     This was important to Cay because she wanted a flexible contract for personal training.  She was concerned about professional and personal issues that could change her financial position.

94.     Cay was not willing to sign a one-year contract for personal training unless she was allowed to cancel the contract at any time with no charge.

95.     After "Ahmed" verified that she could cancel her personal training services at any time with no charge, she signed the first page of Defendant's personal training contract and may have initialed the second page.

96.     Cay did not receive a copy of the second page when she initially signed the personal training contract.

97.     The personal training contract constituted a consumer installment contract and under the terms of the contract, Cay agreed to allow Defendant to deduct $213.50 per month from her credit account.  The only acceptable form of payment was an automatic charge to a checking or credit account.

98.     Cay used the personal training services at Urban Active and paid all dues

18

owed to Urban Active according to the first page of the member contract that she signed.

99.     In early January, 2011, financial issues caused Cay to seek to cancel her contract.  She requested a 30-day cancellation notice, assuming that she would have one additional month to pay because she canceled before the fourth of the month and she prepaid her last month's dues.

100.    Contrary to what "Ahmed" had told her, Defendant required that Cay pay a "buyout" of $250.00 or 15% of the value of her total personal training contract, whichever was greater, plus lose her $200.00 that she paid at the onset of the contract for the last month's dues without obtaining any further personal training services from Defendant.

101.    After being threatened with these additional fees, Cay returned home to again review her contract based upon the prior representations of "Ahmed."

102.    At that time, Cay first learned that she never received the second page that Defendant referred to when denying her cancellation.    After discovering Defendant's misrepresentations, Cay emailed the manager and the corporate office at least three times.  She received no response.

103.    The next time Cay went to the gym, she asked for a complete copy of her personal training contract.  After waiting 40 minutes and talking with five different people, she finally received it.

### Plaintiff Albert Tartaglia

104.    In October 2010, Tartaglia signed a membership contract with Urban Active's Taylorsville Road facility in Louisville, Kentucky.

105.    Prior to signing the membership contract, Urban Active's representatives told Tartaglia, a prospective purchaser, that it was offering a special deal at the time and that the special deal would expire in a couple of days. The special deal was a one-year contract for $29 per month.

106.    In violation of state law, Tartaglia was never presented with any other membership plans nor was he shown a comprehensive list of all membership plans offered for sale that included the respective price and duration of each plan.    Also, Mr. Tartaglia was sold a plan that costs more than any comparable membership plan listed on any registration statements filed pursuant to state law.

107.    Semi-annual $15 Facility Improvement Fees and a $10 cancellation fee were not disclosed on any comprehensive list, AG registration statement, or in the "Monthly (MM) Membership Terms" section of his contract.

108.    A few days later, on October 28, 2010, employees of Urban Active were promoting personal training contracts. Tartaglia was approached by Andy, a personal training consultant employed by Defendant.

109.    Andy encouraged Tartaglia to sign up for a long-term personal training contract.

110.    Prior to signing the personal training contract, Andy provided Tartaglia, a prospective purchaser, a list of five or six personal training plans. In violation of state law, Tartaglia was not presented with a comprehensive list of all personal training plans offered for sale by Urban Active that included the respective price and/or duration of each plan.

111.    Andy told Tartaglia that he would receive a workout plan and a meal plan

to assist him in his training goals and that he could cancel the personal training contract at any time without any penalty.

112. Based on these representations, Tartaglia agreed to sign a personal training contract.

113. When Tartaglia signed the personal training contract, he was not provided a copy of the personal training contract and he was not given any oral or written information regarding the cancellation policy, other than the false representations described above.

114. In December, and before he ever received a copy of his personal training contract, Tartaglia attempted to cancel his personal training contract both in person at the Taylorsville Road facility and via telephone calls to Urban Active's Corporate Headquarters. Contrary to the representations made by Andy, Tartaglia was told that Urban Active would not cancel his personal training contract absent payment of a $250 fee or a doctor's note saying he was physically not capable of training. Urban Active continued to charge Plaintiff for training services at a cost of $90 per month.

115. In May 2011, after Tartaglia contacted the Better Business Bureau, Urban Active finally stopped charging Tartaglia $90 per month for the alleged personal training contract; however, Urban Active has refused to refund money taken from Tartaglia under the alleged personal training contract.

116. In addition, Urban Active continued to charge Tartaglia, pursuant to an alleged membership contract.

117. Urban Active's unlawful actions directly and proximately caused damage to Tartaglia in an amount greater than $400.

### Plaintiff Michael Bell

118.   In March 2010, Bell signed a membership contract with Urban Active's Taylorsville Road facility in Louisville, Kentucky.

119.   Prior to signing the membership contract, Urban Active's representatives told Bell, a prospective purchaser, that the membership contract costs $29 per month for a one-year contract and that this was a special deal that needed to be acted on right away.

120.   In violation of state law, Bell was not presented with any other membership plans nor was he shown a comprehensive list of all membership plans offered for sale by Urban Active that included the respective price of each plan.  In addition, Mr. Bell was sold a plan that cost more than any comparable membership plan listed on the registration statements filed with pursuant to state law.

121.   Bell was never told about any $15 Facility Improvement Fee that would be charged twice during his one-year membership contract or a $10 cancellation fee. These fees are not contained in the "Monthly (MM) Membership Terms" section of his contract.

122.   Over the course of his membership, Bell was charged at least two $15 fees that were not disclosed at the time he signed the membership contract, he incurred multiple other charges of approximately $20 that were not disclosed in his membership contract, and a $10 cancellation fee that was not disclosed at the time of sale.

123.   In February 2011, Bell attempted to cancel his membership contract and terminate the authorized and unauthorized charges by completing the required form at

the Taylorsville Road facility. Bell was told that he could not cancel his contract in person, but instead had to print a cancellation form from Urban Active's website and send it in via certified mail.

124. Despite complying with these extra-contractual requirements, Bell's cancellation was not accepted and he was billed in March and April of 2011. After this lawsuit was filed, some, but not all of these unlawfully charges have been returned.

125. Urban Active's unlawful actions have directly and proximately caused damage to Bell in an amount greater than $100.

### Plaintiff Matt Volkerding

126. Plaintiff Matt Volkerding was a member of Urban Active, a fitness center owned and operated by Defendant. On or around February 2, 2010, Volkerding signed a membership contract with Urban Active at its Erlanger, Kentucky, location. The membership plan was all club access for a 12-month term. After the 12-month term, the contract would convert to a month to month plan. The monthly dues for this plan were $29.99.

127. Because several friends and his wife were considering joining at the same time, the Urban Active employee told Volkerding that if the entire group joined, each person would get a special deal that was only available for a limited time and was only available to his group.

128. In violation of state law, Volkerding was not shown a comprehensive list of all membership plans offered for sale by Urban Active that included the respective price of each plan. In addition, Volkerding was sold a plan that was not listed on the registration statements filed state law pursuant to state law.

23

129. In early 2012, Volkerding called Urban Active in an attempt to cancel his membership. He was told that he could not cancel over the phone but instead had to come into the gym. When he got to the gym, he was told, for the first time, that a $10 cancellation fee was required to process the cancellation.

130. During the sale process, Volkerding was never told that his membership plan required him to pay two $15 fees per year and a $10 cancellation fee. In addition, none of these fees are contained in the "Monthly (MM) Membership Terms" section of his contract. In fact, Volkerding's contract does not contain any mention of the $15 improvement fees. Nevertheless, Volkerding was charged numerous $15 fees and a $10 cancellation fee.

131. During that same conversation, Volkerding was also told that to be effective, he had to send his cancellations to the corporate office.

132. Defendant's unlawful actions have directly and proximately caused damage to Volkerding in an amount greater than $100.

### Plaintiff Patrick Cary

133. Plaintiff Patrick Cary was a member of Urban Active and is currently a member of LA Fitness.

134. On June 14, 2009, Cary signed a membership contract with Urban Active at its Florence, Kentucky, location. The agreement was a 24 month term agreement with all club access. Cary paid a $29.99 processing fee and monthly dues of 39.99.

135. In violation of state law Cary was not presented with a comprehensive list of all membership plans offered for sale by Urban Active that included the respective price of each plan. In addition, Cary was sold a plan that cost more than any

comparable membership plan listed on the registration statements filed pursuant to state law.

136.  The Urban Active employee who sold Cary the plan only described two plans: the one selected and a paid-in-full agreement which required a larger up-front fee.  No other plans or prices were discussed.  Cary was told that both of these plans were specials that were running for a limited time.

137.  Cary was never told that his membership plan required payment of a $15 Facility Improvement Fees twice per year and a $10 cancellation fee.  These fees are not contained in the "Monthly (MM) Membership Terms" section of his contract.

138.  Nevertheless, over the course of the contract, Cary was charged $15 every January and July for the alleged "Facility Improvement Fees."

139.  Upon expiration of that 24 month term contract, Cary's membership converted to a month to month agreement and Urban Active continued to charge Cary the $39.99 per month fee, despite the fact that they were selling the same plan to other members at the Florence gym for less money.

140.  In late 2011 or early 2012, Cary spoke an Urban Active employee about reducing his monthly fees.  The employee offered him another 24 month term agreement which reduced his monthly fees down to 29.95 per month.  No other membership plans were discussed.

141.  In violation of state law, Cary was not presented with a comprehensive list of all membership plans offered for sale by Urban Active that included the respective price of each plan and Cary was sold a plan that was not listed on any registration statements filed pursuant to state law.

142.    During this sales process, Cary was never told that this new membership plan required payment of biannual $15 Facility Improvement Fees and a $10 cancellation fee.

### CAUSES OF ACTION

### COUNT ONE
### BREACH OF CONTRACT

143.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 142 as if fully rewritten here.

144.    Defendant has breached the terms and conditions of its contracts with Plaintiffs and Class members.

145.    Plaintiffs satisfied all conditions and performed all obligations under the contracts and state law.

146.    Defendant, on the other hand, has a common policy and practice of failing to comply with the terms and conditions of its contracts. Copies of the membership contracts and personal training contracts are not attached to this Complaint because they are form contracts prepared and maintained by Defendant and because, as alleged above, in many instances Plaintiffs and Class members were not provided with copies of the contracts as required.

147.    Defendant engaged in a common policy and practice of breaching its contracts by, among other things, making unauthorized charges to members' bank, credit, or debit accounts; refusing to honor contract cancellations; charging additional monthly dues after cancellation; failing to comply with terms and conditions regarding contract cancellations; and intentionally thwarting Plaintiffs' ability to cancel contracts.

148.    The policies and practices described above also breach the implied

covenants of good faith and fair dealing imposed by state law.

149.    Plaintiffs and Class members have been damaged by Defendant's contractual breaches and request injunctive and declaratory relief from Defendant's actions, as well as damages as described in the prayer for relief.

**COUNT TWO**
**UNJUST ENRICHMENT**

150.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 150 as if fully rewritten here.

151.    Plaintiffs and the Class members agreed to permit Defendant to deduct money from their accounts according to the terms of their agreements and purported contracts. No further amounts should have been deducted.

152.    Contrary to their agreement, Defendant deducted money from the accounts of Plaintiffs and the Class members without any basis in the contracts or any agreement from the Plaintiffs and the Class members.

153.    Through Defendant's unlawful and improper deductions, Plaintiffs and Class members conferred a benefit on Defendant, to which Defendant is not entitled and which lawfully belongs to Plaintiffs and Class members.

154.    Defendant has accepted and retained the benefits conferred from the Plaintiffs and the Class members under circumstances that make it inequitable for Defendant to continue to retain the benefit without paying the value of the benefit conferred.

155.    Plaintiffs request injunctive and declaratory relief from Defendant's actions, as well as damages as detailed in their prayer for relief.

## COUNT THREE
## FALSE, DECEPTIVE and UNCONSCIONABLE CONSUMER PRACTICES

156. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 156 as if fully rewritten herein.

157. Plaintiffs and all of the members of the Class are consumers or buyers under state law.

158. At all relevant times, Defendant was a seller or supplier under state law.

159. Defendant's membership contracts, personal training contracts and contracts for other services are consumer transactions under state law.

160. Defendant engaged in a common policy and practice of unfair, false, deceptive and unconscionable conduct in violation of state law by knowingly misrepresenting and failing to disclose the terms and conditions of its membership contracts and personal training contracts. This included, but was not limited to, misrepresenting the total cost of the contract, failing to disclose all hidden fees, and misrepresenting terms and conditions of cancellations.

161. Defendant also engaged in a common policy and practice of making it unduly burdensome to cancel member contracts, intentionally avoiding, and/or refusing to accept and honor cancellations, overcharging members accounts, and making unlawful and authorized charges to the accounts of its members .

162. Defendant also engaged in a common policy and practice of knowingly taking advantage of the inability of customers to reasonably protect their interests, entering into consumer transactions that Defendant knew were substantially one-sided in favor of Defendant, entering into consumer transactions that Defendant knew customers were unable to receive a substantial benefit from, and representing that

special discounts or limited time sales existed when they did not.

163. Defendant also engaged in a common policy and practice of unconscionable acts by, among other things, refusing to provide copies of membership contracts, personal training contracts and other contracts for services at the time they are signed; misrepresenting the terms, conditions, and availability of its contracts; intentionally avoiding, making it unduly burdensome and/or refusing to honor valid notices of cancellation; and knowingly taking payment from Plaintiffs and other Class members' accounts without authorization.

164. Defendant's conduct violates the Ohio Consumer Sales Practices Act and Prepaid Entertainment Contract Act,[1] O.R.C. §§ 1345.02, 1345.03, and 1345.41-1345.45; the Kentucky Consumer Protection Act and Kentucky Health Spa Act, KRS 367.170, 367.910-367.920; the Pennsylvania Health Club Act and Unfair Trade Practices and Consumer Protection Law 73 Pa. Cons. Stat. § 2161 *et seq.*, the North Carolina Prepaid Entertainment Contracts Act N.C. Gen. Stat. § 66-118 *et seq.*, the Tennessee Health Clubs Act and Consumer Protection Act Tenn. Code Ann. § 47-18-301 *et seq.*, and the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601.

165. As a result of Defendant's conduct, Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

---

[1] In addition, Defendant's conduct has been previously found to be unfair, false and deceptive by Ohio State Courts. *See Mid-American Acceptance Company v. Lightle*, 63 Ohio App. 3d 590, 605, (10th App. Dist, 1989) (PIF#10001146); *Celebrezze v. Scandinavian Health Spa*, CV 8631158, Summit County Court of Common Pleas, 1986 (PIF#10000744); *McClain v. RB Sportstore, Inc.*, 04 CVE 01118, Elyria Municipal Court, 2005 (PIF#10002416); *Brown v. Silzar, Inc., dba Fred Astaire Dance Studio*, Case No. 6810, (2nd App. Dist., 1981) (PIF#10000402); *Fisher v. Lasson, et al.*, CV 92 10 0193, Logan County Court of Common Pleas, 1994 (PIF#10001448); *Celebrezze v. Peer*, 81CV-04-1742 (PIF#10000075).

166.    Plaintiffs request injunctive and declaratory relief from Defendant's actions, rescission of all contracts, and/or damages as detailed in their prayer for relief.

## COUNT FOUR
## VIOLATIONS OF HEALTH SPA AND PREPAID ENTERTAINMENT CONTRACT ACTS

167.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 167 as if fully rewritten herein.

168.    Plaintiffs, and all members of the Class, are consumers or buyers under state law.

169.    Defendant engages in the sale of contracts for instruction, training, assistance in physical culture, exercising, and the use of facilities of a gymnasium, among other things, and is therefore a health spa, health club, or similar facility under state law.

170.    The membership contracts, personal training contracts and contracts for other services between Class members and Defendant are health spa, health club, or prepaid entertainment contracts under state law.

171.    Defendant has knowingly engaged in a pattern and practice of conduct prohibited by state law, which includes but is not limited to the following action:

  a. Failing to provide Plaintiffs and Class members with a copy of membership contracts and personal training contracts at the time they are entered into, and failing to orally inform Plaintiff and Class members of their right to cancel contracts within the specified number of days of execution of the contract;

  b. Misrepresenting the existence of special or limited time deals, failing to

30

provide purchasers a list of plans for sale, and selling plans not contained on any registered lists in violation of state law;

c. Failing to provide Plaintiff and Class members with an easily detachable duplicate "notice of cancellation" form complying with state law at the time the membership contracts, personal training contracts, and contracts for other services are entered into; and

d. Misrepresenting the terms of cancellation before, during, and after the sale and failing to honor notices of cancellation that comply with state law.

172. Pursuant to state law, and as cited in paragraph 164 above, Defendant's actions constitute deceptive, unconscionable, or unfair acts and practices.

173. Plaintiffs request injunctive and declaratory relief from Defendant's actions, rescission of all contracts, and/or damages as detailed in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully requests this Court grant the following relief:

a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the members of the Class, appointing Plaintiffs and their counsel to represent the Class;

b. A declaratory judgment that the practices complained of herein are unlawful under state law (*see* ¶ 1);

c. An injunction against Defendant and its employees from engaging in each of the unlawful practices described herein;

d. Rescission of all contracts pursuant;

31

e. An award of damages in an amount in excess of $25,000 for the Class and to compensate for financial loss, damages to credit, frustration, humiliation, anxiety, and inconvenience;

f. An award of punitive damages in an amount to be determined at trial;

g. An award of costs and expenses of this action together with reasonable attorneys' fees as permitted under state law; and

h. Such other relief as this Court deems just and appropriate.

Respectfully submitted,

s/ Thomas N. McCormick
William G. Porter (0017296)
wgporter@vorys.com
Thomas N. McCormick (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
kjrubin@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-6433
Facsimile: (614) 464-6350

Attorneys for Plaintiffs

s/ Mark H. Troutman
Mark Landes (0027227)
ml@isaacbrant.com
Gregory M. Travalio (0000855)
gmt@isaacbrant.com
Mark H. Troutman (0076390)
mht@isaacbrant.com
ISAAC, WILES, BURKHOLDER & TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121 (telephone)
(614) 365-9516 (facsimile)
*Attorneys for Plaintiffs*

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September ___, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

/s/ Mark H. Troutman
Mark H. Troutman (0076390)
mtroutman@isaacwiles.com

## JURY DEMAND ENDORSED HEREON

Plaintiffs hereby demand a trial by jury of all issues so triable.

/s/ Mark H. Troutman
Mark H. Troutman (0076390)