**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)**

| | |
|---|---|
| **AMBER GASCHO**, *et al.*, <br><br> on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **GLOBAL FITNESS HOLDINGS, LLC,** <br><br> Defendant. | **CASE NO. 2:11-CV-00436** <br><br> **JUDGE SMITH** <br><br> **MAGISTRATE JUDGE KING** |

### PLAINTIFFS' MOTION FOR AN AWARD OF CLASS REPRESENTATIVES' ENHANCEMENT PAYMENTS AND REASONABLE ATTORNEYS' FEES AND COSTS

After almost three years of hard fought litigation, Class Counsel negotiated a Settlement that allows 606,246 Class Members to recover up to $17.5 million. The Settlement does not involve coupons, rebates, or in-kind offerings, but instead provides cash payments ranging from $5 to $75 to all Class Members who submit a claim. Class Counsel negotiated these cash payments independent of, and prior to, negotiating Defendant's agreement to also pay the reasonable attorneys' fees and costs that Class Counsel incurred up to the time of Settlement.

Pursuant to the Settlement Agreement, Defendant's maximum exposure is approximately $20 million. For this reason, and for the reasons set forth in the attached Memorandum in Support, Class Counsel respectfully moves this Court for an Order (i) awarding Class Representative Enhancement Payments in the agreed upon amount of

$40,000 to be divided among the twelve Class Representatives based upon their level of respective contributions to the litigation, and (ii) awarding Class Counsel reasonable attorneys' fees and costs in the agreed upon amount of $2.39 million.

/s/ Thomas N. McCormick
William G. Porter, II (0017296)
  wgporter@vorys.com
Thomas N. McCormick (0075496)
  tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
  kjrubin@vorys.com
VORYS, SATER, SEYMOUR & PEASE, LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43215-1008
(614) 464-6400 (telephone)
(614) 464-6350 (facsimile)

/s/ Mark H. Troutman
Mark Landes (0027227)
  ml@isaacwiles.com
Gregory M. Travalio (0000855)
  gtravalio@isaacwiles.com
Mark H. Troutman (0076390)
  mtroutman@isaacwiles.com
ISAAC, WILES, BURKHOLDER & TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121 (telephone)
(614) 365-9516 (facsimile)

*Plaintiffs' Class Counsel*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

This Court should grant Plaintiffs' Motion requesting approval for Enhancement Payments of $40,000 split between 12 Class Representatives and $2.39 million in attorneys' fees and costs because such payments will reasonably compensate these parties for the resources, time, and effort expended for the benefit of the Class.

The Class Representatives' Enhancement Payments are appropriate because they are specifically tailored to compensate each Class Representative for their respective burdens and obligations undertaken during this litigation and because they will not decrease the cash payments available to Class Members. Moreover, payment of $1,000, $3,500, or $5,000 (depending on the Class Representative) is reasonable considering the Class Representatives' roles in initiating this litigation, their participation in the litigation, and the overall benefits being provided to the Class.

Likewise, Class Counsel's Motion for Reasonable Fees and Costs (the "Fee Request") is fair and reasonable because: (i) Payment of $2.39 million in fees and expenses is less than Class Counsel's current lodestar value; (ii) the Fee Request is below 20% of the total common fund benefits being provided to the Class/Subclasses; (iii) the Fee Request was not negotiated until after a deal was reached on Class/Subclass compensation, fees will be paid directly by Defendant, and the fees will not reduce, or in any way effect, the cash payments to Class members; and (iv) the Fee Request was agreed upon after years of hard fought litigation, including several months of arms-length, often heated, settlement negotiations.

## II. SUMMARY OF SETTLEMENT TERMS

Plaintiffs were members of Urban Active Fitness, a health club chain formerly owned and operated by Defendant Global Fitness Holdings, LLC ("Defendant" or "Urban Active"). In April, 2011, Plaintiffs brought class action claims alleging that Urban Active breached its contracts, unjustly enriched itself, and violated state consumer protection laws in the sales, contracting, servicing, billing, and cancellation of its gym and personal training contracts. Urban Active denied all allegations and aggressively defended against Plaintiffs' claims during every stage of the litigation. On June 13, 2013, Plaintiffs moved for Class Certification in the *Tartaglia* matter[1] and prepared to file its Motion for Class Certification in this action. Settlement discussions then commenced, and after mediation with William Hartgering, Esq., an accomplished mediator from JAMS Chicago, and additional months of negotiation, the parties reached a Settlement.

The Settlement Agreement creates one Class and three Subclasses with compensation as described below:

- The "Class" is all individuals who signed a gym membership or personal training contract with Defendant on or between January 1, 2006, to October 26, 2012. The total number of Class Members is approximately 606,246 persons. Any Class Member who files a Claim Form shall receive $5 in addition to any other Claim Award.

- The "FIF Subclass" is all Class Members who paid a $15 Facility Improvement Fee ("FIF"), Club Administrative Fee ("CAF"), or any other biannual $15 fee charged by Defendant between April 1, 2009, to October 26, 2012. The total number of FIF Subclass members is approximately 316,721 persons. Any FIF Subclass Member who files a Claim Form shall receive $20 in addition to any other Claim Award.

---

[1] The *Tartaglia* matter is parallel litigation filed in Kentucky State Court by the Vorys firm alleging violations of Kentucky law. Upon reaching a global settlement, the *Tartaglia* Plaintiffs and causes of action were incorporated into the Third Amended Complaint filed in *Gascho*. The *Tartaglia* matter has been stayed pending the final resolution of this Settlement, and will be dismissed when the Settlement is finally resolved.

- The "Gym Cancel Subclass" is all Class Members who cancelled their gym membership contract on or between January 1, 2006, to October 26, 2012. The total number of Gym Cancel Subclass members is approximately 314,268 persons. Any Gym Cancel Subclass Member who files a Claim Form shall receive $20 in addition to any other Claim Award.

- The "Personal Training Cancel Subclass" is all Class Members who cancelled a personal training contract with Defendant on or between January 1, 2006, to October 26, 2012. The total number of Personal Training Cancel Subclass members is approximately 64,805 persons. Any Personal Training Cancel Subclass member who becomes an Allowed Claimant shall receive $30 in addition to any other Claim Award.

When compared to the relatively small amount of damages suffered by the typical Class Member (*i.e.*, between $0 and $100), the Settlement Agreement provides a significant cash payment to every Class Member who files a claim. Indeed, all 606,246 Class Members are eligible to receive $5, and up to $75, by completing a simple one-page Claim Form and submitting it online or by U.S. Mail. Class Members do not need to provide any documents or proof of membership, but instead need only provide basic contact information, such as name, address, phone number, and indicate to what Subclass(es) they belong.

In conjunction with this incredibly easy claim filing process, Class Counsel also ensured that Class members were notified of the Settlement through multiple avenues. Specifically, (1) a postcard notice was mailed to every Class Member, (2) an email was sent to every Class member using the email addresses provided by the Class Member at the time of contract signing, (3) a reminder email was sent 30 days after the initial notice email, (4) publication notice was placed in the major newspaper of general circulation in all cities that Urban Active did business, and (5) a website was established by the Claims Administrator. In addition, Class Counsel drafted and distributed a joint press release to interested reporters and news wires. News of the Settlement and the

creation of the Settlement website was widely reported by the newspapers and television stations in the locations that Urban Active had significant operations.

III. **THE COURT SHOULD AWARD THE CLASS REPRESENTATIVES ENHANCEMENT PAYMENTS FOR SERVICE AND BENEFITS PROVIDED TO THE CLASS**

The Class Representatives' time and effort resulted in great benefit to the Class, and therefore, this Court should award Enhancement Payments to the Class Representatives, as agreed upon by the parties. Federal Courts, including those within the Southern District of Ohio, regularly award enhancement payments after considering several factors, such as the actions of class representatives to protect the rights of the class members, whether those actions resulted in substantial benefit to the class, whether the class representative assumed any direct or indirect financial risk, and the amount of time spent in the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 463 (9th Cir. 2000); *see also* Manual for Complex Litig., § 21.62 n.971 (4th ed. 2004); *Bower v. Metlife,* Case No., 1:09-cv-351, 2012 U.S. Dist. LEXIS 149117, at *25-26 (S.D. Ohio, Oct. 17, 2012); *Bert v. AK Steel Corp.*, Case No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711, at *10-11 (S.D. Ohio Oct. 23, 2008).

From the outset, the Class Representatives were aware of their fiduciary duties to the class and acted to protect the interests of the class during the litigation and Settlement. Most importantly, the Class Representatives initiated this litigation by bringing their concerns about Defendant's conduct to the attention of Class Counsel. The Class Representatives have been actively involved in the litigation and have been eager to participate and assist the Class, including providing Class Counsel with information for initial disclosures, assisting Class Counsel with several sets of discovery

requests, and submitting to depositions. The Class Representatives poured through their personal files, emails, and bank/credit card records to provide important information to Class Counsel that advanced the litigation and the Class's interests.

Plaintiffs seek $5,000 Enhancement Payments for Class Representatives Albert Tartaglia and Michael Bell because they have served as Class Representatives since July 2011, were involved and contributed to the drafting of the Complaint and amended Complaints, responded to written discovery, assisted Class Counsel with requests for information, and reviewed and provided input regarding the settlement. In addition, Tartaglia and Bell met with Class Counsel to prepare for and to be deposed in March, 2012. Tartaglia and Bell also engaged in all necessary follow-up to their depositions.

Plaintiffs seek $3,500 Enhancement Payments for Class Representatives Amber Gascho, Ashley Buckenmeyer, Michael Hogan, Edward Lundberg, Terry Troutman, Anthony Meyer, Rita Rose, and Julia Cay (f/k/a Julia Snyder) because, while none were deposed, they served as Class Representatives since April, 2011, were involved in the drafting of the Complaint and amended Complaints, responded to written discovery, assisted Class Counsel with requests for information, and reviewed and provided input regarding the settlement. Last, Plaintiffs seek $1,000 Enhancement Payments for Matt Volkerding and Patrick Cary because they served as Class Representatives since June, 2013, were involved in the drafting of the amended Complaints, assisted Class Counsel with requests for information, and reviewed and provided input regarding the settlement.

As noted above, modest and fair incentive awards promote public policy by encouraging individuals to participate as class representatives in class actions. *Bert*, 2008 U.S. Dist. LEXIS 111711, at *10-11. Here, the Enhancement Payments are

7

modest, fair, and reflect the effort expended by each Class Representative. Thus, this Court should award each of the 12 Class Representatives an Enhancement Payment, as set forth above and agreed to by Defendant.

## IV. THIS COURT SHOULD APPROVE CLASS COUNSEL'S FEE REQUEST.

The Sixth Circuit recognizes two methods for determining the reasonableness of an attorney fee award. One method is the "common fund," or "common benefit" approach where the Court awards a percentage of the total benefit conferred upon the class. The second is the lodestar approach, where the Court awards a reasonable fee for the time attorneys have spent prosecuting the case, with or without a multiplier for good results. *See, e.g.*, *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993). "Trial courts within the Sixth Circuit have discretion to calculate an award of attorneys' fees by using either (1) a percentage of the fund calculation, or (2) a lodestar/multiplier approach." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) (*citing Rawlings*, 9 F.3d at 516-17). Here, because the Fee Request is fair and reasonable under either approach, this Court should approve the request.[2]

### A. The Lodestar Approach.

"The lodestar method necessitates that the court calculate the reasonable number of hours submitted multiplied by the attorneys' reasonable hourly rates." *In re*

---

[2] As discussed herein, Class Counsel is entitled to the recovery of its fees and costs pursuant to the Settlement Agreement, and the common fund doctrine. While not thoroughly explored in this Motion, Class Counsel is also entitled to the recovery of its fees and costs pursuant to the applicable Consumer Sales Practices Acts fee-shifting provisions. Settlement agreements that provide "comparable relief" to the relief sought in the litigation qualify for prevailing party status. *See Farrar v. Hobby*, 506 U.S. 103, 111 (U.S. 1992) ("to qualify as a prevailing party….[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.") (internal citations excluded); *see also Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("We also find no merit in petitioner's suggestion that respondent was not the "prevailing party" within the meaning of § 1988. The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees.").

*Telectronics Pacing Sys.*, 137 F.Supp.2d 1029, 1041 (S.D. Ohio 2001). After the lodestar is calculated and confirmed, it can be adjusted upward to reflect that the attorneys took the case on a contingent fee basis, were not guaranteed success, and/or to "sustain the incentive of attorneys to continue to represent [their clients] on an inescapably contingent basis." *Florin v. NationsBank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995). In approving class counsel fee requests, Federal Courts regularly grant multipliers of the lodestar. For example, in *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, *17 (S.D. Ohio Dec. 12, 2012), this Court held that a **3.06** multiplier was "very acceptable under the facts and circumstances of this case and especially in light of the extraordinary service rendered by counsel on behalf of the Class." In *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 767 (S.D. Ohio 2007), this Court applied a lodestar multiplier of ***six***. While the result obtained by Class Counsel here would certainly justify a multiplier, Class Counsel agreed to cap its lodestar request and is not seeking a multiplier.

### 1. Class Counsel's billing records support the requested fees and costs.

Class Counsel kept contemporaneous and detailed billing records describing the billable hours spent, the work performed, and the costs incurred leading to this Settlement. Class Counsel judiciously divided and assigned work in a balanced and efficient manner to accomplish a successful result. This complex matter involved simultaneous class litigations, novel theories of law, and evolving fact patterns. Moreover, opposing counsel does not oppose Class Counsel's Fee Request. *Cf. Citizens Against Pollution v. Ohio Power Co.,* 484 F.Supp. 2d 800, 814 (S.D. Ohio

2007) (acknowledging that this Court is not in the business of nor interested in second guessing or micro-managing law firms' business practices).

All of the work performed by Class Counsel was vital to advancing this litigation and negotiating a successful Settlement. Among other things, this work included:

- Researching and drafting the initial complaints;
- Interviewing dozens of former members and former employees of Urban Active to learn about the customer experiences and the internal policies and procedures at issue;
- Negotiations concerning the parties' Fed. R. Civ. P. 26(f) report, which included preliminary negotiations concerning ESI;
- Drafting, reviewing, and responding to numerous sets of written discovery;
- Negotiating and resolving discovery disputes, including numerous Motions to Compel and attending discovery conferences with the Court related to such topics and the production of membership databases and information related to the sale of Urban Active's assets to LA Fitness;
- A multi-phased and time intensive document and ESI production which included numerous Court conferences; the retention of third-party and in-house ESI experts; the testing and implementation of predictive coding software and sophisticated search term technology to globally review the millions of potentially responsive documents; and the ultimate production by Defendant, and review by Class Counsel, of over 350,000 emails and other ESI to support Plaintiffs' claims;
- Subpoenaing, negotiating the production of, and then reviewing well over ten thousand emails and database records from Urban Active's third party vendors MotionSoft and Paramount;
- Reviewing, researching, and responding to two Fed. R. Civ. P. 12(c) motions in *Gascho* and one Motion to Dismiss in *Tartaglia*;
- Preparing for and conducting nine depositions of current and former Urban Active employees;
- Objecting to and appearing at the Final Fairness Hearing to oppose the proposed settlement in the *Seeger v. Global Fitness* matter, which, if approved by that Court, would have extinguished a significant portion of the Class's claims in exchange for relatively worthless coupons. The Kentucky Court sustained Class Counsel's objections and rejected the proposed Settlement;

- Drafting and filing of a Motion for Class Certification in the *Tartaglia* action and outlining and preparing a Motion for Class Certification, which would have been due within a couple of weeks of the Settlement in *Gascho*;

- Months of negotiations, including a full-day mediation with a JAMS mediator, that resulted in the Settlement;

- Continued negotiations over the language in the various Settlement documents, including, but not limited to, the Settlement Agreement, Motion for Preliminary Approval, and all class notices and forms used by the Settlement Administrator; and,

- Ongoing monitoring and communications with Urban Active and the Settlement Administrator to ensure fairness for the Class/Subclasses with the claims procedure.

Class Counsel performed all of this work at reasonable hourly rates. Attorney rates ranged from $180/hour to $450/hour, based on the experience of the attorney. *See* Affidavit of Thomas McCormick ("McCormick Affd.") at ¶¶ 8-9 (Exhibit 1); Affidavit of Mark Troutman ("Troutman Affd.") at ¶¶ 9-10 (Exhibit 2). A significant amount of work was done by attorneys billing toward the lower end of the spectrum. *Id.*

Class Counsel's rates are relatively low when compared to other approved rates. *See Weitz & Luxenberg, P.C. v. Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005) (*eight* years ago, approving rates in the following categories: 1-5 years, $200/hour; 6-9 years, $300/hour; 10-14 years, $400/hour; and 15+ years, $500/hour).[3]

---

[3] *See also Lowther v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 181476, at *16 (S.D. Ohio 2012) (finding that requested rates of $500/hour for senior attorneys are within the range of rates approved by courts in other actions and within the range of hourly rates charged by large defense law firms); *Liberty Legal Found. v. Democratic Nat'l Comm.*, 2012 U.S. Dist. LEXIS 171708, at *25 (W.D. Tenn. 2012) (finding that reasonable rates for counsel in that District for the work performed for Defendants would be $225/hour for associates and $500/hour for services from senior partners); *In re Oral Sodium Phosphate Solution-Based Prods. Liab. Action*, 2010 U.S. Dist. LEXIS 128371, at *24 (N.D. Ohio 2010) (Court applying rates of $500/hour for senior partners, $300/hour for associates, and $150/hour for paralegals). Moreover, Class Counsel's rates easily fit within the Laffey Matrix, which includes hourly rates of $510/hour for attorneys with 20+ years experience to $250/hour for attorneys with 1-3 years experience. *See, e.g., Lowther,* 2012 U.S. Dist. LEXIS 181476, at *5 (applying the Laffey Matrix to check reasonableness of Plaintiffs' fees); *see also* www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf (confirming rates provided above that far exceed Class Counsel's requested fees).

Almost all of Class Counsel's hours were billed at rates lower than those approved in *Weitz*. *See* McCormick Affd. at ¶¶ 8-9; Troutman Affd. at ¶¶ 9-10.

The reasonableness of Class Counsel's fees is further confirmed by reviewing the *average* hourly rates charged by attorneys and other time-keepers. Class Counsel's total *attorney* hours are 7,462.21.[4] Thus, even without subtracting for costs, the *average* rate equals $320.28.[5] This is lower than the average attorney rate of $375 that was approved by this Court in *Johnson v. Midwest Logistics Sys.*, 2013 U.S. Dist. LEXIS 74201, at *17 (S.D. Ohio May 24, 2013). Likewise, across all time-keepers, *including legal support staff*, Class Counsel devoted 8,684.50 hours.[6] Thus, the average hourly rate without subtracting for costs is $275.20. Again, this is significantly less than the $375 blended hourly rate for all time keepers that was approved in *Date v. Sony Elecs., Inc.*, 2013 U.S. Dist. LEXIS 108095, at *39-40 (E.D. Mich. 2013).

### 2. Class Counsel's Fee Request is less than the current lodestar value.

After compensation to the Class/Subclass was fully resolved and agreed, Class Counsel recognized that significant benefits had been achieved for the Class, and therefore, as the discussion turned to attorneys' fees, Class Counsel agreed to cap its

---

[4] *See* McCormick Affd. at ¶ 6; Troutman Affd. at ¶ 6.

[5] Pursuant to the Settlement Agreement, the Fee Request for $2.39 million includes the out of pocket costs and expenses incurred by Class Counsel while prosecuting the litigation. Class Counsel incurred $65,308.82 in out-of-pocket costs and expenses, which, for simplicity, was included into the $2.39 Million agreement with Defendant and the Fee Request presented here. *See* McCormick Affd. at ¶¶ 4 and 11; Troutman Affd. at ¶¶ 4 and 12. These minimal expenses were necessary to prosecuting this complex litigation and they include such items as deposition expenses, travel, ESI vendor charges, mediator expenses, and copy/imaging charges. *Id*. "[C]lass counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation related expenses." *New England Heath Care Empl. Pension Fund*, 234 F.R.D. at 634-35; *Bower*, 2012 U.S. Dist. LEXIS 149117, at *24-25.

[6] *See* McCormick Affd. at ¶6; Troutman Affd. at ¶6.

demand to fees and costs incurred as of the moment the Settlement Agreement was reached. (*i.e.*, September, 2013). *See* McCormick Affd. at ¶ 4, Troutman Affd. at ¶ 4. Stated another way, Class Counsel agreed to forego payment for all time, costs, and efforts expended since September, 2013. This is significant because considerable fees and costs have been incurred since September, 2013. Through November 30, 2013, Class Counsel's lodestar value increased by more than $125,000 and now exceeds $2.5 Million. *See* McCormick Affd. at ¶6; Troutman Affd. at ¶6. Significant events remain including administration of the Settlement, resolving issues related to Class/Subclass members' claims, briefing final approval, responding to any potential objections, and preparing for and attending the Final Approval Hearing. These tasks, while necessary to conclude the case and ensure payment to the Class, will result in additional uncompensated fees and costs.

### B. The "Common Fund" Cross-Check

Courts commonly perform a "cross-check" to ensure that fee awards are "reasonable" under both the lodestar and common fund approach. *Rawlings*, 9 F.3d at 516 (Court applied the lodestar method with a common fund cross-check); *Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996) (upholding District Court's fee award where common fund method applied with a Lodestar cross check). "At bottom, the court must ensure that class counsel are fairly compensated for the amount of work done as well as the results achieved." *Rawlings*, 9 F.3d at 516. Here, a cross-check strongly supports granting Class Counsel's Fee Request.

The common fund doctrine rests on principles of *quantum meruit* and unjust enrichment. *In re Indirect Purchasers Microsoft Corp. Antitrust Litig.*, 140 N.M. 879

(N.M. App. 2006) (*quoting* 4 Alba Conte & Herbert Newberg, *Newburg on Class Actions* § 14: at 547 (4th Ed. 2002)). An award of fees based on a common fund is less taxing on the time and resources of the judiciary because the Court simply confirms fairness by calculating a percentage of the fund. *In re Copley Pharmaceutical, Inc., "Albuterol" Prod. Liab. Litig.*, 1 F.Supp. 2d 1407, 1411 (D. Wyo. 1998).

In the Sixth Circuit, "fees range from 20-50%" of the total value of the recovery. *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *88 (M.D. Tenn. Aug. 11, 1999). Recent decisions from Federal Courts in Ohio further support these general guidelines.[7] Moreover, "Empirical studies show that regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *See* 4 Conte & Newburg, *Newburg on Class Actions*, § 14:6 at 551 (4th ed. 2002) (emphasis added); *Johnson,* 2013 WL 2295880, at *6-7 (awarding 33% of the common fund for attorneys' fees and costs).

Here, the Fee Request is well below the 33% that is typically awarded and at the low end of the 20% to 50% range described above. Indeed, application of the common fund approach shows that a Fee Request of $2,390,000 ranges from 13.66% of the common fund to 19.4% of the common fund, depending upon how the common fund

---

[7] *See Kritzer v. Safelite Solutions, LLC,* No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *20 (S.D. Ohio May 30, 2012), at *31 (awarding 52% of common fund as attorneys' fees); *Rotuna v. West Customer Mgmt. Group, LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *22-23 (N.D. Ohio June 15, 2010) (award attorneys' fees of 33% of the total settlement fund); *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *52-54 (N.D. Ohio Sept. 1, 2011) (approving award of attorneys' fees of 29% of the common fund); *Lonardo v. Travelers Indem. Co.*, 706 F.Supp. 2d 766 (N.D. Ohio 2010) (25% of the common fund); *Van Horn* at *24 (22% of the common fund) (aff'd on appeal in *Van Horn v. Nationwide Prop. and Cas. Co.*, 436 F. App'x 496 (6th Cir. 2012); *Bower*, 2012 U.S. Dist. LEXIS 149117, at *20-21 (20% of the common fund); and *Connectivity Sys. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at *33 (S.D. Ohio Jan. 26, 2011) (citing cases approving attorneys' fees of 20%-50% of the common fund).

denominator is calculated.[8]  Regardless of which authority is followed, both 13.66% and 19.4% constitute modest attorney fees awards.

In reviewing the reasonableness of a fee request, the Sixth Circuit utilizes a six-factor test:

> [a]n award of attorneys' fees and costs must be reasonable, meaning an award adequate enough to attract competent counsel but one that does not produce a windfall to attorneys. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (*quoting Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1451, 79 L. Ed. 2d 891 (1984)).  In determining whether the amount of an award is reasonable, courts consider (1) the value of the benefit rendered for the class, (2) society's stake in rewarding attorneys who produce such benefits, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of the attorneys involved. *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

*Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20.  Each of these factors is addressed below:

### 1. The value of the benefit rendered for the Class.

The most important factor in determining reasonableness of fees is the result obtained.  *Citizens Against Pollution*, 484 F.Supp. 2d at 812.  Here, the Settlement provides cash payments of between $5 and $75 to over 600,000 Class Members upon

---

[8] Ohio's Federal District Courts are split regarding how the denominator of the common fund is calculated when, as here, unclaimed settlement funds revert back to Defendant.  In *Physicians of Winterhaven, LLC v. Steris Corp.,* No. 1:10-cv-264, 2012 U.S. Dist. LEXIS 15581, *25-26 (N.D. Ohio Feb. 6, 2012), the Court calculated the common fund by including all unclaimed settlement funds into the common fund total.  Applying that holding here makes Class Counsel's Fee Request equal to **13.66%** of the approximately $17,500,000 common fund. In *Winterhaven*, the Court explicitly acknowledged that attorneys fees and administration expenses *should* be included in the common fund total, but then declined to do so to further support its acceptance of *all* unclaimed settlement funds into the common fund total.  *Id.*

Other Ohio District Courts have calculated the common fund to include the average between the actual claims paid and the maximum potential award. *See Londardo*, 706 F.Supp. 2d at 802; *Van Horn*, 436 F. App'x at 500.  Applying that methodology here, and even assuming that actual claims filed do not exceed the Minimum Class Payment of $1,300,000, then the Common Fund denominator would equal $12,290,000 (*i.e.*, an average Class Payment of $9,400,000, $2,390,000 in attorneys' fees, and approximately $500,000 in administration costs).  Following this authority, the Fee Request is **19.4%** of the common fund.

15

submission of a simple claim form. Without Class Counsel's vigorous prosecution of these claims, including the careful analysis of authorities, review of over 350,000 documents, and weeks of interviewing former members and former employees, this exceptional outcome could not have been achieved. Class Members would have never pursued individual claims because they were unaware of the law and/or the relatively small individual damage claims rendered such action impractical. Class Counsel's success here is further evidenced by the fact that similar claims were filed against Urban Active in the Northern District of Ohio and all those claims were summarily dismissed pursuant to Urban Active's Fed. R. Civ. P. 12(b)(6) Motion. *See Robins v. Global Fitness Holdings, LLC*, 838 F. Supp.2d 631 (N.D. Ohio 2012).

### 2. Society's stake in rewarding attorneys who produce such benefits.

Granting the Fee Request will ensure that Class Counsel and future counsel are encouraged to take such cases. "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class action [cases] . . . benefits society." *In re Cardeziam*, 218 F.R.D. at 534. "Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Kritzer*, 2012 U.S. Dist. LEXIS 74994 at *29; *see also In re Telectronics Packing Sys.*, 137 F.Supp.2d at 1043 ("[a]ttorneys who take class action matters service a benefit to society and the judicial process by enabling claimants to pool their claims and resources to achieve a result they could not obtain alone."). Here, the results obtained by Class Counsel will inure to the benefit of all consumers, not just gym member. Indeed, the class payments required here will deter all businesses from engaging in the conduct alleged by Plaintiffs. *See, e.g.*, *Munger v. Deutsche Bank*, No. 1:11-CV-00585,

2011 U.S. Dist. LEXIS 77790, at *31 (N.D. Ohio July 18, 2011) (observing the broad remedial purposes of the Ohio Consumer Sales Practices Act).

### 3. Whether the services were undertaken on a contingent fee basis.

The contingent fee factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *In re Cardinal Health*, 528 F.Supp. 2d at 766. "[S]ome courts consider the risk of non-recovery as the most important factor in fee determination." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *29 (*citing In re Cardinal Health*, 528 F.Supp. 2d at 766). Within the set of colorable legal claims, the higher risk of loss supports an opportunity for higher fee. *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011); *see also O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) (determining it is appropriate to pay attorneys several times their hourly fee because of the risk of non-payment). Recently, the Western District of Kentucky Court stated that "attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process and should be award for their efforts." *In re Skechers Toning Shoe Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 67441, at *42 (W.D. Ky. 2013).

Here, Class Counsel accepted these cases on a contingent fee basis and advanced all of the time and costs necessary to the litigation. *See* McCormick Affd. at ¶3; Troutman Affd. at ¶3. Success and recovery for the Class was never guaranteed. In fact, Urban Active mantains that it did nothing wrong and, as noted above, Urban Active successfully obtained an early dismissal of similar class claims in the *Robins* matter that was pending in the Northern District of Ohio. The substantial risk borne by

Class Counsel for the benefit of the Class serves as another, very significant, factor supporting the reasonableness of Class Counsel's Fee Request.

### 4. The value of the services on an hourly basis.

When analyzing a percentage award, "the lodestar figure is used to confirm the reasonableness of" the percentage award. *In re Broadwing*, 252 F.R.D. 369, 381 (S.D. Ohio 2006). Courts used the term "lodestar cross-check" to define this process. *In re Cardinal Health*, 528 F.Supp.2d at 764. As discussed in detail above, Class Counsel's Fee Request is reasonable because it is below the current lodestar value.

### 5. The complexity of the litigation.

Not only did this case involved class allegations impacting hundreds of thousands of class members, but many of Plaintiffs' legal claims were based on relatively novel legal theories and seldom litigated provisions of law. For example, Plaintiffs' claims were based in part on sections of the Kentucky Health Spa Act for which no reported cases exist. The voluminous ESI production added to the complexity and cost of the litigation, and Urban Active retained a number of highly-skilled attorneys who challenged Plaintiffs at every opportunity and vigorously defend its interests. This case presented a myriad of challenges atypical to a run-of-the-mill consumer case. *See, e.g.*, *Citizens Against Pollution v. Ohio Power Co.*, 484 F.Supp. 2d 800, 814 (S.D. Ohio 2007) (recognizing the novelty and complexity of plaintiffs' claims as a factor in determining a reasonable fee award).

### 6. The professional skill and standing of the attorneys involved.

Class Counsel are highly skilled consumer protection, class action, and complex litigation lawyers. *See* McCormick Affd. at ¶ 13; Troutman Affd. at ¶ 15. In addition,

18

both Vorys and Isaac Wiles have extensive experience litigating complex matters, class actions, and consumer protections claims. *Id.*

The Court should also evaluate the quality of opposing counsel. "The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi Securities, Derivative & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008). Here, Urban Active employed a number of renowned law firms to vigorously defend its interests, including Squire Sanders LLP; Bingham Greenebaum Doll LLP; Jones Day; and Bailey Cavalieri LLC. All of these law firms are accomplished defense firms, experienced at handling complex litigation, and well known to litigants and judges in the Sixth Circuit. In the face of these adversaries, Class Counsel was able to achieve a superb result for the Class.

A review of these 6 factors demonstrates that Class Counsel's Fee Request of $2.39 Million is beneath the generally accepted range of 20% to 50%, it is well below the average of 33%, and thus it is fair, reasonable, and should be granted.

**V.    CONCLUSION**

For all of these reasons, this Court should approve Class Representative Enhancement Payments in the aggregate amount of $40,000, to be paid in accordance with the terms of the Settlement Agreement, and this Court should approve payment of attorneys' fees, costs, and expenses to Class Counsel in the amount of $2,390,000.

Respectfully submitted,

/s/ Thomas N. McCormick
William G. Porter, II (0017296)
wgporter@vorys.com
Thomas N. McCormick (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
kjrubin@vorys.com
VORYS, SATER, SEYMOUR & PEASE, LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43215-1008
(614) 464-6400 (telephone)
(614) 464-6350 (facsimile)

/s/ Mark H. Troutman
Mark Landes (0027227)
ml@isaacwiles.com
Gregory M. Travalio (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman (0076390)
mtroutman@isaacwiles.com
ISAAC, WILES, BURKHOLDER & TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121 (telephone)
(614) 365-9516 (facsimile)
*Plaintiffs' Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 9, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

/s/ Mark H. Troutman
Mark H. Troutman (0076390)
mtroutman@isaacwiles.com
*One of the Attorneys for Plaintiffs*