## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION (COLUMBUS)

| | |
|---|---|
| AMBER GASCHO, *et al.*, | |
| Plaintiffs, | Case No. 2:11-cv-436 |
| v. | Judge Smith |
| | Magistrate Judge King |
| GLOBAL FITNESS HOLDINGS, LLC, | |
| Defendants. | |

---

## OBJECTION OF JOSHUA BLACKMAN

---

Adam E. Schulman (admitted *pro hac vice*)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com

Theodore J. Froncek
1208 Sycamore Street
Cincinnati, Ohio 45202
Phone: (513) 241-5670
Fax: (513) 929-3473
Email: tjfroncek@fuse.net

*Attorneys for Objector Joshua Blackman*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. I

TABLE OF AUTHORITIES ........................................................................................... II

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................. 1

I.      Objector Joshua Blackman is a class member and is represented by the Center for
        Class Action Fairness. .................................................................................... 2

II.     The court has a fiduciary duty to the absent members of the class. ............... 5

III.    There is no legitimate reason why this settlement does not issue direct payments to
        known, eligible class members. ....................................................................... 8

IV.     The claims-made process, in conjunction with other provisions of the settlement,
        unfairly enables class counsel to obtain a disproportionate amount of the settlement
        proceeds. ....................................................................................................... 13

        A.      Disproportionate fee request ........................................................... 15

        B.      The clear sailing agreement .............................................................. 18

        C.      The "kicker" / segregated fee fund ................................................. 19

V.      Adequacy of representation is undermined by the enhancement payments afforded to
        named plaintiffs. ........................................................................................... 21

VI.     In the alternative to denying settlement approval, the Court should limit counsel's fee
        award to a reasonable percentage of the amounts actually claimed; it should not base
        the award on a delusive 100% claims rate. ..................................................... 23

VII.    Rule 23(h) does not permit lead class counsel to privately divide a lump-sum fee
        award. 31

        CONCLUSION ............................................................................................... 34

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Trans Union, LLC,* 243 F.R.D. 377 (C.D. Cal. 2007) ........................................10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................21

*Boeing v. Van Gemert,* 444 U.S. 572 (1980)....................................................................29

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996) ...........................................29

*Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998)...........................23

*Burden v. Selectquote Ins. Servs.,* No. C 10-05966 SBA, 2013 U.S. Dist. LEXIS 16977 (N.D. Cal. Feb. 5, 2013) ........................................................................................................10

*Childs v. United Life Ins. Co.*, No. 10-cv-23-PJC, 2012 U.S. Dist. LEXIS 70113 (N.D. Okla. May 21, 2012) .......................................................................................................18

*DeLeon v. Bank of Am.*, No. 6:09-cv-1251, 2012 U.S. Dist. LEXIS 91124 (M.D. Fla. Apr. 20, 2012) ...............................................................................................................10

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ......................................2, 16, 17, 26-27

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375 (D. Mass. 1997) ...........................29

*Duncan v. United States*, 552 F.3d 442 (6th Cir. 2009) .....................................................33

*Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627 (W.D. Ky. 2006)...........................16

*Ferrington v. McAfee, Inc.,* No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012) ...........................................................................................................17

*Fraser v. Asus Computer Int'l.,* No. C 12-00652 WHA, 2012 U.S. Dist. LEXIS 22338 (N.D. Cal. Feb. 19, 2013) .......................................................................................................13

*Galloway v. Kan. City Landsmen, LLC.,* No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) ........................................................................ 9, 12

*Gooch v. Life Investors Ins. Co. of Am.,* 672 F.3d 402 (6th Cir. 2012).............................................18

*In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987)....................................33

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) ....................................12

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)....................................*passim*

*In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, No. 09-md-2023

(E.D.N.Y.).................................................................................................................12-13

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir.2011)..........................*passim*

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006)................................16

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio. 2007) ..................6, 24-25

*In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) ..........................................................................................................4

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277 (3d Cir. 2005) .........................................................................................................16

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013).......................................*passim*

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,  55 F.3d 768    (3d Cir. 1995) ...........................................................................................................7, 19, 24, 25

*In re High Sulfur Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008)........................ 2, 32

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013). .........................................26

*In re Livingsocial Mktg. & Sales Practies Litig.*, MDL No. 2254, __F.R.D__, 2013 U.S. Dist. LEXIS 40059 ...........................................................................................................14

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)...........................31-32

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 1029 (S.D. Ohio 2001) .............................16

*In re Wells Fargo Secs. Litig.*,  157 F.R.D. 467 (N.D. Cal. 1994)........................................12

*Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000) ..........................................30

*Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996).........................................................25

*Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404 (N.D. Ill. 2012)...................17

*Kirchoff v. Flynn,* 786 F.2d 320 (7th Cir. 1986) ...........................................................25

*Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875 (N.D. Cal. May 13, 2013) ...........................................................................................................14

*Manchouck v. Mondelez Int'l Inc.*,  No. C 13-02148 WHA, 2013 U.S. Dist. LEXIS 80132 (N.D. Cal. Jun. 3, 2013) ...........................................................................................10-11

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004)........................................5

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ..........................................14

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ..............................2, 21, 22, 23

*Rawlings v. Prudential-Bache Properties*, 9 F.3d 513 (6th Cir. 1993). .................................................24

*Richardson v. L'Oreal USA, Inc.*, \_\_\_\_F. Supp. 2d\_\_\_,  2013 WL 5941486 (D.D.C. Nov. 6, 2013) .............................................................................................................4, 7, 15-16

*Ross v. Trex Co.*, No. C 09-00670 JSW, 2013 U.S. Dist. LEXIS 74720 (N.D. Cal. May 28, 2013). ........................................................................................................................13

*Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992) ...........................................................................5-6

*Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012) ..........................................................................................10, 11

*Sobel v. Hertz*, No. 3:06-CV-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) ...................................................................................................19, 26

*Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ...............................................................................................................14

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .............................................................15, 16

*Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167 (W.D. La. 1997) ...........................................17

*Strong v. Bellsouth Telecoms. Inc.*, 137 F.3d 844 (5th Cir. 1998).............................. 19, 23-24, 30

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ..........................................................13-14

*Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005)...................................................20-21

*Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3. 2009) ..........................................................................................................29

*Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072 (D. R.I. May 3, 2012) ...................................................................................................................17

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ......................................................7-8

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) .....................................2, 7, 21, 22

*Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012).............................17, 18, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................25

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) .................................18

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) .............................................................. 7, 14

*Wise v. Popoff*, 835 F. Supp. 977 (E.D. Mich. 1993) ...................................................................29

**Rules and Statutes**

28 U.S.C. §1712(a) ...................................................................................... 27, 30

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Fed. R. Civ. P. 23(a)(4) ................................................................................ 21-23

Fed. R. Civ. P. 23(e) .................................................................................... 14, 23

Fed. R. Civ. P. 23(e)(3) ..................................................................................... 33

Fed. R. Civ. P. 23(e)(5) ....................................................................................... 3

Fed. R. Civ. P. 23(h) ............................................... 2, 23, 26, 28, 30-33, 34

Fed. R. Civ. P. 23(h)(1) ............................................................................. 31, 33

Ohio R. Prof. Conduct 1.5(e) ......................................................................... 31

**Other Authorities**

Advisory Committee Notes on 2003 Amendments to Rule 23 ............................... 23, 28-29, 31

Am. Law Institute, *Principles of the Law of Aggreggate Litig.* § 3.05(c) (2010) ................................... 7

Brickman, Lester, LAWYER BARONS (2011) ...................................................................... 20

Brunet, Edward, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403 (2003) ................................................................................. 4

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf ............... 9

Federal Judicial Center, *Manual for Complex Litigation* § 21.612 (4th ed. 2004) ........................... 7

Federal Judicial Center, *Manual for Complex Litigation* § 21.7 (4th ed. 2004) ........................ 25-26

Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2004) ........................... 30

Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) ................ 5

Henderson, William D., *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813 (2003) .......................................................... 18-19

Isaacharoff, Samuel, *The Governance Problem in Aggregate Litigation*, 81 FORDHAM L. REV. 3165 (2013) ........................................................................................... 29

Karlsgodt, Paul & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat*

*to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) ................................... 4-5

MacLean, Pamela A., "Dealing for Dollars: Objectors allege that claims-made settlements short-change class members," CALIFORNIA LAWYER (Jun. 2011)........................................10

Rothstein, Barbara J. & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* (2010), *available at* www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf. ..........................10

Silver, Charles, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000).............................................................................................................. 20, 25

Zabcik, Brian, *Conscientious Objector*, AM. LAWYER (May 1, 2013), *available at* http://www.americanlawyer-digital.com/americanlawyer/lit2013spring/?lm=1367275927000&pg=11#pg11 ...............4

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

As the Sixth Circuit holds, settlement fairness depends not just on the total value of the settlement, but on the allocation between the class and their attorneys. *See In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ("*Pampers*"). The settling parties' papers focus on the first question, but do not fairly address the second.

As in *Pampers,* this Court now confronts a classic question of fiction versus reality. It has a choice. It can, as urged by the settling parties, close its eyes to reality, defer to settling counsel and reflexively adopt the unsupportable notion that this settlement provides a $17.5 million benefit to class members. Or it can, as required by Fed. R. Civ. P. 23 and Sixth Circuit case law, scrutinize the facts, closely inspect the terms of settlement, and demand explanations and evidence from the settling parties, all to faithfully discharge its fiduciary duty to class members and ferret out the true state of affairs.

If it takes this latter course, it will see a few things. It will see that the claims-made device is superfluous here, and is mathematically calculated to depress class payouts. It will see that the $17.5 million valuation of class relief is a pie-in-the-sky mirage proffered for the purpose of justifying an oversized $2.4 million fee award. It will see that the named representatives' perspectives have been compromised by conferring upon them the right to seek unopposed enhancement awards. It will see that the basic edifice of this settlement is designed to ensure that class attorneys rake in what will likely turn out to be an excessive 65% of the settlement proceeds.

It would be reversible error to approve the settlement and the fee award. The settling parties are entitled to reach an arms-length agreement that Urban Active's total settlement liability will only be about $3.6 million. They are not entitled to structure that liability so that

class counsel collects the lion's share of the proceeds.

Section I describes Joshua Blackman's status as a class member and thus his standing to object to the settlement.

Section II explains the Court's fiduciary duty to non-named class members. Principal authorities relied on include *Pampers*.

Section III discusses the problems in structuring this settlement as a claims-made settlement, rather than a direct payment one.

Section IV demonstrates how this settlement inequitably benefits class counsel at the expense of the class. Principal authorities relied on include *Pampers*, *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012), and *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ("*Bluetooth*").

Section V elucidates the 23(a)(4) infirmity arising out of the enhancement payments to named representatives. Principal authorities relied on include *Pampers*, *Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013), and *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013).

Section VI details why, even if the settlement is approved as fair, class counsel's fee request is not "reasonable" under Fed. R. Civ. P. 23(h). Principal authorities relied on include *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163 (3d Cir. 2013) ("*Baby Prods.*").

Section VII registers an objection to the usurpation of the Court's 23(h) authority and responsibility to divide the fees amongst class counsel. Principal authorities relied on include *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008).

I. **Objector Joshua Blackman is a class member and is represented by the Center for Class Action Fairness.**

Objector Joshua Blackman's mailing address is 7009 Almeda Road, Apt. 1032,

Houston, TX 77054. Blackman Decl. ¶2. His telephone number is (202) 294-9003. *Id.* During the 2011-12 term, he served as a law clerk for Judge Danny J. Boggs of the Sixth Circuit. *Id.* at ¶5. During this period of time, he resided in Louisville, Kentucky. *Id.* In approximately August of 2011, he entered into a membership contract at an Urban Active gym located in Louisville, Kentucky. *Id* at ¶6. Not long later, he cancelled that membership. *Id.* He is therefore a member of the class and the membership cancellation subclass as defined in the preliminary approval order and settlement agreement.[1] On December 19th, Blackman filed a claim form online with confirmation number 98717513. *Id.* at ¶10.[2]

Blackman's attorney, Adam Schulman of the non-profit Center for Class Action Fairness, is representing him *pro bono*, has been admitted *pro hac vice*, and will appear at the Fairness Hearing, as explained in Blackman's contemporaneously filed Notice of Intent to Appear.

CCAF, established in 2009, represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013)

---

[1] Blackman may also be a member of the Facility Improvement Fee Subclass, but he does not recollect whether or not he paid such a fee. Blackman Decl. at ¶11. This is a discrete way that he, and other class members, are harmed by the use of a claims process. *See infra* § III.

[2] Also on December 19, Blackman's attorney called the settlement administrator to inquire about whether the ambiguous acknowledgment on the claim form ("I acknowledge that I want to participate in the settlement and receive a claim award") meant that Blackman could not object if he were to participate in the claims process. The administrator responded that class members may both object and file a claim form. That is the legally correct answer, for otherwise class members' 23(e)(5) right of objection would be impermissibly taxed by requiring them to forego their claim awards. But who knows how many class members were deterred from objecting because they did not want to jeopardize a chance to make a claim.

(describing CCAF's client's objections as "numerous, detailed, and substantive.") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486, at *14 (D.D.C. Nov. 6, 2013) (Bates, J.) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement.") (rejecting settlement approval and certification).

CCAF has won millions of dollars for class members. *See, e.g.,* Brian Zabcik, *Conscientious Objector*, AM. LAWYER (May 1, 2013), *available at* http://www.americanlawyer-digital.com/americanlawyer/lit2013spring/?lm=1367275927000&pg=11#pg11; *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012) (noting that CCAF's client "was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel … at the expense of class members" and "significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second").

Because it has been CCAF's experience that class action attorneys often employ *ad hominem* attacks in attempting to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are often styled "professional objectors." A "professional objector" is a specific legal term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees. Some courts presume that such objectors' legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not CCAF's *modus operandi*. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF

from professional objectors). CCAF refuses to engage in *quid pro quo* settlements and does not extort attorneys; and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees.

Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, Blackman is willing to stipulate to an injunction prohibiting himself from accepting compensation in exchange for the settlement of this objection. Blackman Decl. ¶13. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). Blackman brings this objection through CCAF in good faith to protect the interests of the class.

## II.    The court has a fiduciary duty to the absent members of the class.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Pampers*, 724 F.3d at 715."Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004); *Baby Prods.*, 708 F.3d at 175 (same). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697,

701 (9th Cir. 1992). *See also In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 757 (S.D. Ohio 2007) ("[T]he Court must zealously protect the class's interest by acting as a fiduciary for the class") (internal quotation omitted).

The Court's oversight role does not end at making sure that the settling parties engaged in properly adversarial arm's length settlement negotiations. "In class-action settlements, the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members. For the economic reality [is] that a settling defendant is concerned only with its total liability, and thus a settlement's allocation between the class payment and the attorneys' fees is of little or no interest to the defense… And that means the courts must carefully scrutinize whether [class counsel's and the named representatives'] fiduciary obligations have been met." *Pampers*, 724 F.3d at 717-18 (internal quotations omitted).

While it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient*. "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948 (internal quotation omitted). Due to the defendant's indifference as to the allocation of funds between the class, the named representatives and class, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

"In reviewing a proposed settlement, a court should not apply any presumption that

the settlement is fair and reasonable." Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010) ("*ALI Principles*"). "The burden of proving the fairness of the settlement is on the proponents." *Pampers*, 724 F.3d at 718 (compiling cases and authorities).

In this case, that burden is yet heightened because this settlement has been proposed before class certification. Delaying certification until settlement poses various problems, *see In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786-800 (3d Cir. 1995) ("*GM Trucks*"), and calls for heightened judicial scrutiny of the certification and the accompanying settlement. *Id.* at 807; *Pampers,* 724 F.3d at 721; *Bluetooth*, 654 F.3d at 946-47 (9th Cir. 2011) (citing cases from Second, Third, Seventh and Ninth Circuits); *Richardson*, 2013 WL 5941486, at *2, *13; Federal Judicial Center, *Manual for Complex Litigation* § 21.612 (4th ed. 2004).

Be alert! In their approval papers, the settling parties will doubtlessly focus on the seven factors for settlement fairness discussed in *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007). *See* Preliminary Approval Motion (Dkt. 97) at 7-14 (expounding upon *UAW* factors). It cannot be overemphasized that—like the factor test of other circuits—the *UAW* test is not exhaustive. *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) ("While the [district] court did not abuse its discretion in its determination of any of the seven listed factors… the district court abused its discretion in finding that the settlement was fair, reasonable, and adequate."). *UAW*'s seven factor test does not provide an exclusive list of reasons to reject a settlement. The Sixth Circuit will reverse when the settlement accords "preferential treatment" to class counsel or to the class representatives at the expense of absent class members. *See Pampers*, 724 F.3d at 718; *Vassalle*, 708 F.3d at 755; *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983).

Preferential treatment to class counsel is the gist of Blackman's objection here.

Blackman does not argue that this case must settle for an actual $17.5 million or for $25 million or $30 million. His cardinal objection is that the settlement is unfair because class counsel is appropriating an excessive 65%[3] of the settlement value for itself. As such, the inevitable discussion of *UAW*'s factors should be seen for what it is: a red herring.

### III. There is no legitimate reason why this settlement does not issue direct payments to known, eligible class members.

Structurally, this settlement is not overly complicated. The parties are aware of approximately 606,246 class members (*i.e.* "all individuals who signed a gym membership or personal training contract with the Defendant during the Class Period."). Settlement Agreement (Dkt. 97-1) §6.1.1. Then, there are several objectively-delineated subclasses: (A) those who paid facility improvement fees, club administrative fees or other $15 biannual fee during the class period; (B) those who canceled their gym membership during the class period; and finally (C) those who cancelled a personal training contract during the class period. *Id.* at §§6.1.2-6.1.4.

The settlement permits base class members to file a claim for $5. *Id.* at §6.1.1. For members of subclasses (A)-(C), the base claim payment is augmented by $20, $20 and $30 respectively. *Id.* at §§6.1.2-6.1.4. Thus, an individual who is a member of all three subclasses is eligible to recover $75 ($5 + $20 + $20 +$30). *Id.* at §6.2. Defendant's records contain the identifying information for class members and subclass members. *Id.* at §12.1. Indeed, that contact information was the foundation of the individual postcard and email notification scheme for which the parties enlisted the settlement administrator. *Id.* at §§12.1-12.4.

Rather than establishing a system of direct payment to the known class members in the agreed-upon amounts, however, the parties erected an artificial and perfunctory hurdle:

---

[3] The calculation is as follows: $2.39 million fee request/ (2.39 million fee request + 1.3 million class recovery) = 64.7% of the true settlement value.

the filing of a claim form. *See* Claim Form (Dkt. 97-2). This is known as a "claims-made settlement." Its distinguishing characteristic is that "[w]ith the exception of the named plaintiff…[it] provides relief only to eligible class members who fill out paperwork and submit a valid claim." *Galloway v. Kan. City Landsmen, LLC*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *10 (W.D. Mo. Oct. 12, 2012).

The parties may retort that a claims process is unexceptional in class action settlement administration. As a general matter they are correct, but in this particular context they are not. When a claims-made process is employed—in lieu of direct payment mechanisms—the court should assure itself that there is a valid reason for its use. Often, a claims-made structure can be justified by the fact that the defendant either is unable to identify specific class members or is unable to identify the value of those class members' claims. Neither situation obtains here, where the defendant's records house the class members' identifying information and the objective criteria upon which their award value is based.

"In too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms". Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* ("*FJC Guide*"), at 6 (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf. Here, the claims-made mechanism is employed for no ostensible reason other than to depress class recovery (and thus maximize the share of the settlement received by the attorneys). Accordingly, the settlement should be rejected as unreasonable.

The abuse of claims-made settlements to inflate attorneys' fees and deflate defendants' obligations to class members has been the subject of substantial criticism. *E.g.*

Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* 30 (2010)[4]; Pamela A. MacLean, "Dealing for Dollars: Objectors allege that claims-made settlements short-change class members," CALIFORNIA LAWYER (Jun. 2011). More and more frequently, courts are refusing to accept superfluous claims processes. *Burden v. Selectquote Ins. Servs.*, No: C 10-05966 SBA, 2013 U.S. Dist. LEXIS 16977, at *3 (N.D. Cal. Feb. 5, 2013) (refusing to grant preliminary approval where parties had proposed an unnecessary claims process instead of direct payment); *Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8 (N.D. Cal. Nov. 15, 2012) (expressing mystification at use of claims submission process when 75-80% of class members could already be identified); *DeLeon v. Bank of Am.*, No. 6:09-cv-1251, 2012 U.S. Dist. LEXIS 91124, at *62 (M.D. Fla. Apr. 20, 2012) (finding that a low-value claims-made settlement would "surely result in a low claims rate" and rejecting the claims procedure as "not reasonable"); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 391 (C.D. Cal. 2007) (questioning necessity of claims process and denying settlement approval). As Judge Alsup details in his well-respected notice to potential settling parties, "A settlement that imposes a claim procedure rather than cutting checks to class members for the appropriate amount may impose too much of a burden on class members… The best approach is to calculate settlement checks from defendant's records … and to send the checks to the class members along with a notice[5] that cashing the checks will be deemed acceptance of the release and all other terms of the settlement." *Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148 WHA, 2013

---

[4] This Federal Judicial Center publication is available online at www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf.

[5] The feasibility of sending such a notice directly with the claim payment immediately undercuts any counterargument that the "Verification" and acknowledgment section somehow made the claim form indispensable.

U.S. Dist. LEXIS 80132, at *5 (N.D. Cal. Jun. 3, 2013).

That the claims process is superfluous is confirmed by the perfunctory claim form itself. *See* Dkt. 97-2. If the parties contend that the claims process was necessary for those class members who changed their name and are unreachable with the defendant's record information, there are two responses. <u>First</u>, any underinclusiveness of the defendant's files is not a reason to abandon a direct payment process for those class members who are included in the records. *See, Smith*, *supra*. <u>Second</u>, the parties bear the burden of proving reasonableness, which requires them to introduce evidentiary support that a claims mechanism was necessary. *See Pampers*, 724 F.3d at 719.

Blackman requests that upon expiration of the claims deadline on December 30, the parties voluntarily submit the number of claimants to whom the parties would not have been able to yield payment on their own. This will demonstrate how necessary or not the claims process actually is. If they do not voluntarily submit such information, the Court should compel it of them.[6] Blackman strongly suspects that this will show that no allowed claimants will come from outside those already detailed in the defendant's records. And if any such previously unidentified individuals come forward, it's rather unclear that any of them will be allowed to make a claim. *See* Settlement §10.4 ("All eligibility and Claim Award determinations shall be based on data and information provided by Defendant, Class Counsel, and/or the Class Member.").

The needless claims process here is even more disheartening because it contradicts a

---

[6] In this vein, the Court must also "affirmatively seek out such information" if the parties do not introduce the overall claims information (number of claims and value of those claims) of their own accord. *Baby Prods*, 708 F.3d at 174. To fail to do so would be reversible error. *Id.*

stated policy agreement of the settlement to minimize unnecessary administrative expenses. *See* Settlement §10.2 ("The parties and their counsel agree…to make all reasonable efforts to control and minimize the costs and expenses incurred in the administrative of the terms of this settlement."). This policy statement is a beneficial, pro-class stipulation because minimizing expenses is in the class's interest. *See In re Wells Fargo Secs. Litig.*, 157 F.R.D. 467, 470 (N.D. Cal. 1994) (Walker, J.); *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) (Easterbrook, J.) (recognizing that notice and class administration expenses are a social cost that present an argument against class certification, rather than a benefit to the class).

A gratuitous claims process violates this policy and the Court should ask *why*. Why would the defendant willingly add to an administrative expense that it is paying? Why would the defendant agree to add extraneous layers of administrative review, filtering and manual labor, when the administrative process could have been as seamless as cutting a check? And the answer is simple. It's because the increase in administrative costs is more than offset by the gains in having to pay fewer class members.

This Court should hold that depressing class relief is not a legitimate reason to use claims-made mechanism. "The fairness of the settlement must be evaluated primarily based on how it *compensates class members.*" *Pampers*, 724 F.3d at 720 (emphasis in original). Although this Court cannot compel the settling parties to employ a direct payment process, it can and should refuse to approve a settlement until the parties do so of their own accord. *See Galloway*, 2013 U.S. Dist. LEXIS 92650, at *9 (W.D. Mo. Jul. 2, 2013) (noting how after initial settlement rejection settlement was "altered . . . from a "claims made" settlement to a "direct notification and payment" settlement"); *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, No. 09-md-2023 (E.D.N.Y. 2013) (parties voluntarily

transmuted claims-made settlement to direct payment one after CCAF filed an objection); *In re Baby Prods. Antitrust Litig.*, No. 06-cv-00242, Motion for Preliminary Approval of Settlement (Dkt. 847) (E.D. Pa. Dec. 18, 2013) (proposing, on remand from the Third Circuit, a settlement that provided for direct payments to class members whose contact information was available in the defendants' records).[7]

## IV. The claims-made process, in conjunction with other provisions of the settlement, unfairly enables class counsel to obtain a disproportionate amount of the settlement proceeds.

A claims-made process doesn't merely benefit the defendant (by diminishing class value). What makes it a truly anti-class provision is that it enables class counsel to seek a disproportionate percentage of the settlement fund, by inflating the appearance—but not the reality—of class relief. Note how the plaintiffs fixate on the maximum potential class recovery, whether that number is $19 million (Preliminary Approval Motion (Dkt. 97-2) at 6, 10) or $17.5 million (Fee Motion (Dkt. 114) at 1, 15 n.8). All reasonable probability, however, suggests that ultimate class relief here will be no more than the minimum $1.3 million. *See* Settlement §7.1. The only vexing question is amongst how few class members that $1.3 million will be spread.

The reason we can know that payouts will not exceed $1.3 million is that empirical evidence reveals claims rates in these types of consumer settlements are exceedingly low. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*) (noting evidence that

---

[7] Another viable option for the parties is limiting the release to those class members who submit claims forms. *See Fraser v. Asus Computer Int'l*, No. C 12-00652 WHA, 2012 U.S. Dist. LEXIS 181315, at *7-*10 (N.D. Cal. Dec. 21, 2012) (release should be limited to those who submit claim forms), *revised settlement granted preliminary approval* at 2013 U.S. Dist. LEXIS 22338 (N.D. Cal. Feb. 19, 2013); *Ross v. Trex Co.*, No. C 09-00670 JSW, 2013 U.S. Dist. LEXIS 74720, at *5 (N.D. Cal. May 28, 2013) (same as *Fraser*).

"consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns."). If recent cases are any indication, the rate will likely be well below 7%, perhaps even under 1%. *See Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (.27% claims rate); *Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) ("[A] mere 1,259 timely claims were submitted for the $10 refund, which represents 0.17% of the total number of class members and 0.18% of the total number of class members who received notice."); *In re Livingsocial Mktg. & Sales Practices Litig.*, MDL No. 2254, __F.R.D__, 2013 U.S. Dist. LEXIS 40059, at *52 (.25% claims rate). These rates accord with intuition. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Given the tiny sum per person, who would bother to mail a claim?").

Even if we take the generous assumption that 7% of the $17.5 million potential dollars will be claimed, that works out to $1.225 million. And that is realistically the best case scenario. Thus, this is a settlement where absent class members will recover $1.3 million, their member representatives will seek $40,000 unopposed and class counsel will seek $2.39 million unopposed. *See* Settlement §§7.1, 8.1, 9.1.

It matters because in analyzing the fairness of a proposed settlement under Rule 23(e), this Circuit has long commanded district courts to "insure that the interests of counsel and the named plaintiffs are not unjustifiably advanced at the expense of unnamed class members." *Williams,* 720 F.2d at 923. Earlier this year, the Sixth Circuit explained that one focus of evaluation is whether the settlement gives "preferential treatment" to the named plaintiffs or to class counsel. *Pampers*, 724 F.3d at 718 (quoting *Vassale*, 708 F.3d at 755). "Such inequities in treatment make a settlement unfair" for neither class counsel nor the named representatives are entitled to disregard their "fiduciary responsibilities" and enrich

themselves while leaving the class behind. *Pampers*, 724 F.3d at 718 (internal quotation omitted).

## A.    Disproportionate fee request

The most common settlement defects are ones of allocation. This is because "the adversarial process—or 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Id.* at 717 (emphasis in original). Adversarial negotiation does not ensure that class relief is appropriately "commensurate with [the] fee award." *Id.* at 720. "[I]f the 'fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.'" *Id.* at 718 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003)).

Allocational issues cannot be waived away simply by structuring the settlement as a constructive common fund, rather than a traditional common fund. *See Pampers*, 724 F.3d at 717; *Bluetooth*, 654 F.3d at 943; *contra* Fee Motion (Dkt. 114) at  3. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief does not detract from the need carefully to scrutinize the fee award." *Staton*, 327 F.3d at 964. For either way, "the economic reality is that a settling defendant is concerned only with its total liability." *Pampers*, 724 F.3d at 717 (internal quotation omitted).

Nor are the issues resolved by delaying agreement on fees until after the terms of the settlement were negotiated. *Pampers*, No. 10-cv-301 (S.D. Ohio.), Dkt. 10-1, ¶¶17-19 (not only were fee negotiations separate, the mediator proposed the fee arrangement on a take it or leave it basis); *Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486, at *13

(D.D.C. Nov. 6, 2013) ("Negotiations regarding the terms of the settlement and the fee award appear to have been properly segregated—though that does not necessarily cure any allocation problems."). The only apparent way to effectively divorce class relief from fees is to reach an accord on class relief while simultaneously agreeing to litigate the issue of fees. *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005). In other words, as long as the defendant willingly foots both bills, there is no way to avoid the "truism that there is no such thing as a free lunch." *Staton*, 327 F.3d at 964.

Here, class counsel reserves to themselves the right to seek $2.39 million, which we estimate will be roughly 65% of the settlement proceeds. This is nearly double the 38.9% figure that the Ninth Circuit recently referred to as "clearly excessive." *Dennis*, 697 F.3d at 868. A proportionate attorney award adheres to the 25% of the fund benchmark established in the Ninth Circuit and followed by courts of this circuit.[8] There should be little doubt that 65% qualifies as a "disproportionate distribution of the settlement" and as the first (and perhaps most important) warning sign of an inequitable settlement. *Bluetooth*, 654 F.3d at 947.

But there is doubt, and it is generated by an argument that the proper denominator should include half or all of the unclaimed amounts that revert to the defendant. *See* Fee Motion at 15 n.8. When calculated in this way, 65% of the actual settlement can be turned into less than 25% of a much larger phantom settlement. But this latter calculation is pure

---

[8] *See e.g., Bluetooth*, 654 F.3d at 942; *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 1029, 1042 (S.D. Ohio 2001) (citing the Ninth Circuit's 25% benchmark and awarding 27% plus expenses); *Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627 (W.D. Ky. 2006)(25% awarded); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) (23% awarded).

fiction, and violates the principle that "[c]ases are better decided on reality than on fiction." *Pampers*, 724 F.3d at 721 (internal quotation omitted); *accord Dennis*, 697 F.3d at 868 (chronicling the problem of "fictitious" fund valuations that "serve[] only the 'self-interests' of the attorneys and the parties, and not the class.").

With increasing frequency, especially after *Bluetooth*, courts around the country now make the proper comparison between the fee award and the amount actually claimed by class members. *Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be paid out, ultimately denying approval of settlement); *Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404, 407 (N.D. Ill. 2012) (finding a vast disparity between attorneys' fees and class claims' values to be "troubling and ultimately unacceptable."); *Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *8 (D. R.I. May 3, 2012) (finding an attorney award that consumed 66% of the settlement to be "excessive" and grounds for denying final approval); *Ferrington v. McAfee, Inc.*, No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160, at *36-*37 (N.D. Cal. Apr. 6, 2012) (finding an attorney award that constituted 83% of the settlement amount was disproportionate and grounds for denying final approval); *Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167, 172 (W.D. La. 1997), *aff'd* 137 F.3d 844 (5th Cir. 1998) ("A request for $ 6 million in attorneys' fees where counsel has provided no more than $ 2 million in benefits to the class is astonishing. It is a sad day when lawyers transmogrify from counselors into grifters.")

Naturally low claims rates are the "[t]he reality" here, and mean that "this settlement benefits class counsel vastly more than it does the consumers who comprise the class." *Pampers*, 724 F.3d at 721. This Court should deny final approval until class counsel are no longer "the foremost beneficiaries of the settlement." *Baby Prods.*, 708 F.3d at 179.

**B.     The clear sailing agreement**

In addition to a discrepancy between fees and class benefit, the settlement contains *Bluetooth's* second warning sign on an unfair deal: a "clear sailing" agreement. 654 F.3d at 947. A clear sailing clause stipulates that attorney awards will not be contested by opposing parties. *See* Settlement §9.2. ("Defendant agrees not to oppose…"). "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 518, 525; *Childs v. United Life Ins. Co.,* No. 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113, at *13-*14 & n.6 (N.D. Okla. May 21, 2012). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger,* 925 F.2d at 524; *accord Bluetooth,* 654 F.3d at 948. *Gooch v. Life Investors Ins. Co. of Am.* found that a clear-sailing agreement that awarded class counsel disproportionate fees could be evidence of settlement unfairness. 672 F.3d 402, 425 (6th Cir. 2012) (finding potentially problematic clear-sailing clause acceptable because class counsel received only 2.3% of settlement value; reversing on other grounds).

"Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Vought,* 901 F. Supp. 2d at 1100 (quoting *Int'l Precious Metals Corp. v. Waters,* 530 U.S. 1223, 1224 (2000) (O'Connor, J., respecting the denial of the petition for a writ of certiorari)); *accord* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements,* 77 TUL. L. REV.

813, 816 (2003) (urging courts to "adopt a per se rule that rejects all settlements that include clear sailing provisions."). "[W]hile the present case does not utilize a classic reversionary fund in which attorneys' fees are paid from a common pool that directly reduces the class's recovery, it undoubtedly did not escape either party's attention that every dollar not claimed from the fund was one dollar that [defendant] could use to pay class counsel's fees." *Vought*, 901 F. Supp. 2d at 1101. Clear sailing also undermines any conceivable benefit of separate negotiation of fees and terms. *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *45 (D. Nev. Jun. 27, 2011).

## C.    The "kicker" / segregated fee fund

Not only does the settlement contain a "clear sailing" provision forbidding defendant from challenging the fee amount, but there is a "kicker" providing that any reduction in the fee award reverts to the defendant, rather than the class. The settlement agreement effectuates this by stipulating that fees will be paid separate and apart from class relief. Settlement §9.2.[9] Thus, the "parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth,* 654 F.3d at 947. This "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *Id.* at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.* In a typical common fund settlement, the district court may, at its discretion, reduce the fees requested

---

[9] This is no cherry on top of the class's sundae. Despite purportedly not affecting class relief, in "economic reality" (*Pampers*, 724 F.3d at 717; GM *Trucks,* 55 F.3d at 820; *Strong*, 137 F.3d at 849), the defendant will cut every check and is concerned only with its total liability. The interrelation between fees and class relief cannot be undone with the fiat of a single sentence.

by plaintiffs' counsel—and when it does so, the class will benefit from the surplus.

Under the proposed settlement, however, if the Court awards less than the $2,390,000 fee that defendant has already agreed to pay to class counsel, the defendant will be the only beneficiary. Because of the "economic reality that a settling defendant is concerned only with its total liability," this settlement is therefore worse for the class than a traditional common fund. *Pampers*, 724 F.3d at 713 (quoting *Strong v. BellSouth Telecomns., Inc.*, 137 F.3d 844, 859 (5th Cir. 1998)). In effect, the parties have prevented the Court from returning the fees and class relief to natural equilibrium.

A "kicker" has the additional self-serving effect of protecting class counsel by deterring scrutiny of the fee award. A court has less incentive to scrutinize a fee award, because the kicker combined with the clear sailing agreement means that any reversion benefits only the defendant that had already agreed to pay that initial amount. Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, LAWYER BARONS 522-25 (2011) (same; further arguing that reversionary kicker should be considered *per se* unethical). At a minimum, clear-sailing in conjunction with fee segregation is a red flag of a self-serving settlement that merits justification: why was this negotiated in such a manner as to make the class worse off? *In re Bluetooth*, *supra*.

The $2.39 million should be considered part of a constructive common fund, and the fact that it is shielded from the class is inherently unfair. No settlement should be approved until the parties agree to modify the settlement so that any reduction in the proposed fee award reverts to the class.

Eight years ago, in a case in federal court in the District of Maine, Chief Judge Singal hit the nail on the head in a way that is directly applicable here: "Stripped to its essence, the

Court believes that three factors combined to create this untenable distribution scenario: (1) a claims made settlement premised on a 100 percent response rate, (2) a reverter clause, and (3) a clear sailing provision." *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005).

## V. Adequacy of representation is undermined by the enhancement payments afforded to named plaintiffs.

Class counsel are not the only ones benefiting handsomely from the terms of the settlement. All 12 named representatives gain the right to seek incentive awards of between $1000 and $5000 in addition to the amount due them under their regular claims. Settlement §8. Binding Sixth Circuit law, precedent that was not cited by the plaintiffs in their Fee Motion (*see* Dkt. 114 at 7-8), dictates that these awards render the representatives inadequate under Rule 23(a)(4) and render the settlement unfair. *Pampers*, 724 F.3d at 722 (representatives inadequate); *Vassalle*, 708 F.3d at 756 (settlement unfair).

As a bedrock principle, the specifications of rule 23(a)(4) "demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997); *Pampers*, 724 F.3d at 721. It is "altogether proper" to inspect the terms of settlement when evaluating whether adequacy is met. *Amchem*, 521 U.S. at 619-20; *accord Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1166 (9th Cir. 2013) ("[O]ur [23(a)(4)] analysis focuses on the agreement."); *Pampers*, 724 F.3d at 722. "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Pampers*, 724 F.3d at 721.

In *Pampers*, approximately 50 class representatives had signed off on a settlement that granted them "incentive awards" of $1000 each per affected child, awards amounting to $41,000 in the aggregate. Absent class members were entitled to no cash, other than the right to participate in a money-back guarantee program. The Sixth Circuit found that under the

terms of the agreement, adequacy of representation was lost because in essence, "there [was] no overlap between" the deal obtained by the class representatives and that obtained by the class itself. *Id.* at 722. Upon attaining the defendant's consent to supercompensatory recovery, the class representatives had no remaining "interest in vigorously prosecuting the interests of unnamed class members." *Id.* They are no longer in the same boat as class members.

The Sixth Circuit found no comfort in the fact that bargaining for incentive awards was common practice. *Id.* It announced a general rule that courts "should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *Id.*

The parties may attempt to distinguish *Pampers* on the ground that at least this settlement entitles all class members to a minimal cash recovery. This is unavailing because a "[small cash payment] can only be described as de minimis, especially in comparison to the [enhancement award of several thousand dollars]" realized by the named plaintiffs. *Vassalle*, 708 F.3d at 756.

Earlier this year, in a case cited by *Pampers*, the Ninth Circuit also disavowed disproportionate incentive awards. *Radcliffe*, 715 F.3d 1157. *Radcliffe* held that incentive awards conditioned upon endorsement of the settlement proposed were impermissible. But more than that, "the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." *Id.* at 1165. "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." *Id.* In such

situations there is a well-founded fear that named representatives will be "more concerned with maximizing [their own gain] than with judging the adequacy of the settlement as it applies to class members at large." *Id.* (quoting *Staton*, 327 F.3d at 977).[10]

These cases are important because they recognize the principle that "[t]he premise of a class action is litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). The conflict cannot be assuaged by any *ipse dixit* that the class representatives were aware of their duties and acted in accordance with them (*contra* Fee Motion at 6). *See Radcliffe*, 715 F.3d at 1166 (rejecting argument that conflict of interest was mitigated because "no actual conflict developed" according to named plaintiffs' "own testimony").

This settlement agreement offends Rule 23(a)(4).

## VI. In the alternative to denying settlement approval, the Court should limit counsel's fee award to a reasonable percentage of the amounts actually claimed; it should not base the award on a delusive 100% claims rate.

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." Advisory Committee Notes on 2003 Amendments to Rule 23. As a fiduciary for the class, the Court maintains a duty of keen oversight of all settlement proceedings. *See supra* §II. "[R]eview of the attorneys' fees component of a settlement agreement is . . . an essential part of its role as guardian of the interests of class members. To properly fulfill its Rule 23(e)[11] duty, the district court must not cursorily approve the attorney's fees provision of a class settlement or delegate that duty to the parties." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998)

---

[10] *Staton* had also repudiated disproportionate incentive awards.

[11] Rigorous oversight of fee awards is now also required by Rule 23(h).

(constructive common fund); *GM Trucks*, 55 F.3d 768, 819-20 (requiring "a thorough judicial review of fee applications . . . in all class action settlements" because "'a defendant is interested only in disposing of the total claim asserted against it'" and "'the allocation between the class payment and the attorneys' fees is of little or no interest to the defense'") (constructive common fund). Federal case law, in *Strong*, *GM Trucks,* and subsequent decisions,[12] has eschewed the unduly formalistic approach that the plaintiffs advance here. Fee Motion (Dkt. 114) at 3 (arguing that the fees "will not reduce, or in any way effect [sic]" the class recovery).

Judicial involvement is all the more important "since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiff and class counsel." *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir. 1993).

While Sixth Circuit law permits this Court to award fees using either the lodestar method or the percentage of recovery ("PoR") method, the PoR method is almost always preferable. As this Court aptly described in *In re Cardinal Health Inc Secs. Litig.*,

> "the percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class in large securities cases. While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead rewards counsel for success and penalizes it for failure. Not only is the Court spared from the costly task of scrutinizing counsel's billable hours, but attorneys are discouraged from padding hours and encouraged to work more efficiently. Furthermore, because the attorneys receive a higher fee if they obtain a higher settlement, the interests of the class and the attorneys are aligned. As Professor John C. Coffee concludes, the percentage approach 'relies on

---

12 *E.g., Pampers*, 724 F.3d 713; *Bluetooth*, 654 F.3d 935.

incentives rather than costly monitoring' to ensure that Lead Counsel is 'essentially self-policing.'" [528 F. Supp. 2d 752, 762 (S.D. Ohio 2007)]

"This interest-alignment device is not perfect. . . . But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). *See generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach.").

The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In contrast, judicial reliance on the lodestar will "create an unanticipated disincentive to early settlements, tempt lawyers to run up their hours, and compel district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.*

Percentage of recovery is still preferable even though this settlement is structured as a constructive common fund, rather than a pure common fund. *GM Trucks*, 55 F.3d at 821 ("[T]he court should probably use the percentage of recovery rather than the lodestar method as the primary determinant…. [P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal."). "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees" then "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees

that can be awarded to counsel." Federal Judicial Center, *Manual for Complex Litigation* § 21.7 (4th ed. 2004).

Plaintiffs' extensive lodestar analysis in their Fee Motion (Dkt. 114 at 8-13), is unavailing. Lodestar is unsuitable for class settlement fee awards for an yet another reason (in addition to the misalignment of ex-ante agential incentives and the extra burden on the judiciary of "gimlet-eyed" review). Simply, it's just unfair for the class to make pecuniary sacrifices while its counsel does not. As best articulated by the court in *Sobel*, "[c]lass counsel has requested for itself an uncontested cash award based on lodestar . . . with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to "settle," yet Class Counsel has applied for fees as if it had won the case outright." 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011).

 It goes without saying that a even a modest request relative to base lodestar cannot justify an unfair settlement in which class counsel obtains a disproportionate sum of the proceeds. *See Baby Prods.*, 708 F.3d at 180 n.14 (lodestar multiplier of .37 not "outcome determinative"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (same with multiplier of .32); *Bluetooth*, 654 F.3d 935 (reversing settlement approval notwithstanding district court's finding that the lodestar "substantially exceed[ed]" the fee requested and awarded). A lodestar award amounting to 65% of the proceeds is not "reasonable" as mandated by Rule 23(h).

When the plaintiffs' do get into the PoR analysis (Fee Motion at 13-15), they commit the grievous error mentioned *supra* §IV.A, of using a faulty denominator. As a result, they calculate their request to be 13-20% of the fund. Fee Motion at 15 & n.8. Although they rely on two district level cases for their methodology, both those cases preceded *Pampers*, where the Sixth Circuit admonished reliance on "assertions…premised upon a fictive world" and

prescribed decisions based on "reality." 724 F.3d at 721; *accord Dennis*, 697 F.3d at 868 (eschewing "fictitious" valuations); *Baby Prods.*, 708 F.3d at 174 (instructing that "inquiry needs to be, as much as possible, practical and not abstract.").

A fee award needs to be attuned to the result actually achieved for the class, to the money the settlement actually puts in class members' hands. *See, e.g., Baby Prods.*, 708 F.3d at 179 (reversing district court that hypothesized $8 million in class value instead of making a genuine inquiry); *cf.* 28 U.S.C. §1712(a). If this Court endorses a rule that class counsel should be indifferent between a settlement that awards cash directly to class members and a settlement with a claims process where less than 3% of the class will find it worthwhile to make claims, the parties will always agree to the more burdensome claims process that ensures class counsel extracts the maximum amount of fees and defendants pay the minimum amount of money to settle the case, and the unnamed class members will be left in the cold.

The claim that potential class benefits should be treated as identical to actual class receipts leads to absurd results. Imagine two hypothetical settlements of the hypothetical class action *Coyote v. Acme Products*:

| Settlement One | Settlement Two |
| --- | --- |
| Acme Products mails a $50 check to each of one million class members who purchased their mail-order rocket roller skates. | One million members have the right to fill out a twelve-page claim form requesting detailed product and purchase information, with a notarized signature attesting to its accuracy under penalty of perjury. The claim form must be hand-delivered in person between the hours of 8:30 a.m. and 9:30 a.m., on July 4, 2014, at Acme's offices in Walla Walla, Washington. Class members with valid claim forms receive $100. |

It would be malpractice for a class attorney to refuse Settlement One and insist on Settlement Two. The overwhelming majority of class members, if polled, would prefer Settlement One to Settlement Two. A defendant would clearly prefer Settlement Two to Settlement One as substantially cheaper. But under the settling parties' apparent proposed legal rule for calculating settlement value, Settlement Two is worth twice as much as Settlement One, and would entitle the class attorneys to twice as much in attorneys' fees. This Court should reject a rule that creates such perverse incentives.

Maybe the plaintiffs will rejoin, "but wait this claims process is not bad as Settlement Two." True, but making that argument concedes the point that a claims process reduces the value of a settlement, and that valuing "potential" benefits is improper without taking into account the likelihood that a class member will *actually* obtain the benefit. There is no principled dividing line, other than to say that the way to judge the validity of a claims process—and to incentivize class counsel to maximize the result actually obtained by the class—is to consider the amount that the claims process will *actually* pay the class.

It is therefore not appropriate to award fees based on a speculative, maximized estimate of potential claims. It is in the defendant's interest to make it as difficult as possible for class members to make claims. Absent class members can only be protected if class counsel negotiates for a process that maximizes payment to the class, but if fees are based on "potential" benefits, class counsel has the incentive to inflate the hypothetical number of claims as much as possible so as to ensure itself the maximum baseline from which to draw its fee.

And for this reason that the Advisory Committee Notes counsel that the "fundamental focus is the result actually achieved for class members" and advise "defer[ring] some portion of the fee award until actual payouts to the class are known." Notes of

Advisory Committee on 2003 Amendments to Rule 23(h); *accord Baby Prods.*, 708 F.3d at 179. Even before Rule 23(h), courts deferred or staggered fees just so, to account for success or failure of the claims process. *E.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1283-84 (S.D. Ohio 1996), *aff'd Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).[13]

Admittedly, some courts that have awarded fees on a percentage-of-recovery basis have made this calculation on the basis of the entire fund, not just the amount of the fund that is claimed by the class. *E.g., Boeing v. Van Gemert*, 444 U.S. 572 (1980).[14]

Nonetheless, this Court should find *Boeing* inapplicable for at least two reasons. <u>First</u>, *Boeing* was superseded by the 2003 amendments to Federal Rule of Civil Procedure 23, which created Rule 23(h) and the passage of the Class Action Fairness Act in 2005 (28 U.S.C. §1711 *et seq.*). *See* Samuel Isaacharoff, *The Governance Problem in Aggregate Litigation*, 81 FORDHAM L. REV. 3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually "prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members"). The new rules reflect common-sense intuitions: attorneys' fees should be tied directly to

_____

[13] Here, deferring should not be necessary given that actual claims rates will be known more than a month before the fairness hearing, assuming that the parties promptly submit the claims data unto the record.

[14] As a threshold matter, even if *Boeing* retains vitality, it would not render the claims data irrelevant. For example, a court may choose to depart downward from the 25% benchmark, due to the class' apathetic reaction that is demonstrated by the absence of claims. *Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *12 (N.D. Cal. Nov. 3, 2009). Or alternatively, a trial court can in its discretion determine that "a more reasonable fee results from calculating a percentage of the actual recovery." *Wise v. Popoff*, 835 F. Supp. 977, 982 (E.D. Mich. 1993).

what clients receive, and permitting a class member to fill out a claim form in order to receive a check simply is not equivalent to sending that class member a check directly.

Speculative, maximized estimates are not the appropriate measure of benefit. *Baby Prods.*, 708 F.3d at 179 n.13 ("[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees."); Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2004) ("In cases involving a claims procedure…,the court should not base the attorney fee award on the amount of money set aside to satisfy potential claims. Rather the fee should be based only on the benefits actually delivered."); *see also Pampers*, 724 F.3d at 721 (rejecting settlement-value "assumptions… premised upon a fictive world"). A class member is not indifferent between a $17.5 million common fund that pays roughly $15 million to the class (the gross fund less fees and expenses) and a "$17.5 million" settlement that pays only $1.3 million to the class. *See Int'l Precious Metals Corp. v. Waters,* 530 U.S. 1223 (2000) (O'Connor, J) (respecting denial of certiorari but noting that fund settlements that allow attorney fees to be based upon the total fund may "potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class" and, in turn, "could encourage the filing of needless lawsuits").

<u>Second</u>, Even before Rule 23(h), Boeing never had application where "no money was paid into escrow or any other account" and each member of the class has no claim to a set piece of the "lump-sum judgment," *Strong v. BellSouth Telcoms*., 137 F.3d 844, 852 (5th Cir. 1998). Given there is no litigated judgment here and no pure common fund, even before Rule 23(h) and the Class Action Fairness Act, *Boeing* would have had no application here.

If this Court determines that *Boeing* is still good law and is applicable here, Blackman wishes to preserve that issue for appeal: he believes that it has been legislatively superseded

and that it should, ideally, be judicially reversed.

## VII. Rule 23(h) does not permit lead class counsel to privately divide a lump-sum fee award.

Not only does the fee request violate the substantive prong of Rule 23(h) by exceeding the bounds of what is "reasonable," it also violates the procedural prong of Rule 23(h)(1). Settlement §9.3 provides in part that "Class Counsel further agrees that any allocation of fees between or among Class Counsel and any other attorney representing the Class Representatives and/or the Class Members shall be the sole responsibility of Class Counsel." Rule 23(h) authorizes the Court to award "reasonable" attorneys' fees only when notice of the fee request is "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h), (h)(1) "Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances." Notes of Advisory Committee on 2003 Amendments to Rule 23. Again, "active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." *Id.* Yet Section 9.3 impermissibly attempts to delegate the Court's role to Lead Class Counsel, without any oversight from absent class members. *Cf. also* Ohio. R. Prof. Conduct 1.5(e) (explaining heightened duties of client oversight where two lawyers from different firms attempt to divide legal fees).

It is not sufficient that class members are able to make "generalized arguments about the size of the total fee"; the notice must enable them to determine which attorneys seek what fees for what work. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). The fee request in this case lacks basic information; it fails to provide even the bare bones of who seeks what, instead providing a lump sum for Lead Class Counsel to distribute

at their sole discretion. This extra-judicial award undermines Rule 23(h)'s policy of "ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee." *Id.*

As the Fifth Circuit recently noted: "In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008). The district court "must not . . . delegate that duty to the parties." *Id.* at 228 (internal quotation omitted). The appellants in *High Sulfur* complained that the district court had sealed the fee allocation list, such that they could not compare their fee awards to those of other attorneys. The Fifth Circuit agreed: "One cannot compare apples to oranges without knowing what the oranges are." *High Sulfur*, 517 F.3d at 232.

That court also held that it was impermissible for the district court to defer to the allocation proposed by the attorneys themselves. "It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because 'counsel have inherent conflicts.' As Judge Ambro of the Third Circuit had noted earlier, 'They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?'" *Id.* at 234-35 (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005)). Furthermore, given the case at hand, the *High Sulfur* fee agreement is comparatively inoffensive: in *High Sulfur,* at least the district court judge had the fee committee's recommendation available. Here, not only is

there no recommendation for the both the Court and class,[15] there isn't even an assurance that class counsel will determine a "fair and reasonable" allocation at some time in the future. This Court should not presume that the Sixth Circuit would create a split with the Fifth and Ninth Circuit's interpretation of 23(h). *See Duncan v. United States*, 552 F.3d 442, 447 (6th Cir. 2009) (desire to avoid circuit split "informing [the] decision").

Even long before the implementation of 23(h), at least one court held this unfettered discretion to be improper. In *In re Agent Orange Prods. Liab. Litig*, the Second Circuit "reject[ed] this authority… to the extent it allows counsel to divide the award among themselves in any manner they deem satisfactory under a private fee sharing agreement." 818 F.2d 216, 223 (2d Cir. 1987). "Such a division overlooks the district court's role as protector of class interests under Fed. R. Civ. P. 23(e) and its role of assuring reasonableness in awarding of fees in equitable fund cases." *Id.* The Second Circuit decreed that "in all future class actions counsel must inform the court of the existence of a fee sharing agreement at the time it is formulated." *Id.* at 226.

This Court must inquire whether there is any fee-division agreement between Lead Class Counsel and ancillary class counsel. If so, it must be revealed both to the Court and to the class. Fed. R. Civ. P. 23(h); *see also* Fed. R. Civ. P. 23(e)(3) (requiring the parties seeking

---

[15] The parties can certainly present a suggested allocation to the class and the Court. But what is not permissible is for the parties to divide up the spoils *ex post,* outside the view of the class and the public, purely according to the whim of class counsel. This way, if an objecting class member thinks X attorney or X firm did a bad job and Y attorney did a particularly good job—maybe they had contacted the attorneys at some point during the proceeding—then they receive notice and can register their objection with the court. That is the proper procedure. Rule 23(h) is the product of a desire for greater oversight, transparency, and "active judicial involvement" in the awarding of fees. Subsequent case law reflects that.

approval to file a statement identifying any agreement made in connection with the proposal). The violation of 23(h) can and should be ameliorated by awarding each of the firms individual sums rather than allocating a lump sum to class counsel, and by enjoining counsel from redistribution.

## CONCLUSION

For the foregoing reasons, this settlement should be rejected as unfair and unreasonable. At the very least, the fee request must be reduced and individuated in accordance with Rule 23(h).

Dated: December 27, 2013          Respectfully submitted,

> /s/ Adam E. Schulman
> Adam E. Schulman (admitted *pro hac vice*)
> CENTER FOR
> CLASS ACTION FAIRNESS
> 1718 M Street NW, No. 236
> Washington, DC 20036
> Telephone: (610) 457-0856
> Email: shuyande24@gmail.com
>
> /s/ Theodore J. Froncek
> Theodore J. Froncek
> Ohio Reg. No.: 016116
> 1208 Sycamore Street
> Cincinnati, Ohio 45202
> Phone: (513) 241-5670
> Fax: (513) 929-3473
> Email: tjfroncek@fuse.net
>
> *Attorneys for Joshua Blackman*

## CERTIFICATE OF SERVICE

I certify that pursuant to Local Rule 5.2(b), I have filed the foregoing document through the Court's ECF system, which has effectuated service of this Objection upon the following all attorneys of record in this matter.

I declare under penalty of perjury that the foregoing is true and correct.


December 27, 2013                                    */s/ Adam E. Schulman*
                                                     Adam E. Schulman