**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| AMBER GASCHO, et al., | : | |
| | : | **Case No. 2:11-CV-436** |
| Plaintiffs, | : | |
| v. | : | **Judge Smith** |
| | : | |
| GLOBAL FITNESS HOLDINGS, LLC, | : | **Magistrate Judge King** |
| | : | |
| Defendant. | : | |

## MEMORANDUM IN RESPONSE TO OBJECTIONS

Global Fitness Holdings, LLC ("Global Fitness") submits this response to the Objection to Proposed Class Settlement (Docket No. 118) filed by Robert J. Zik, April Zik (collectively, the "Ziks") and James Michael Hearon ("Hearon") (collectively the "Zik Objectors") and the Objection of Joshua Blackman[1] (Docket No. 122) filed by Joshua Blackman ("Blackman Objector"). The Zik Objectors and the Blackman Objector will be referred to collectively as "the Objectors."

## Summary

The Settlement Agreement and Release (Docket No. 97-1) ("Settlement") entered into between Global Fitness and the twelve plaintiffs in this case (referred to collectively as the "Gascho Plaintiffs") is fair, reasonable, and adequate, and complies with the requirements of Fed. R. Civ. P. 23. The Settlement provides for cash payments ranging from $5.00 to $75.00 to former members of Global Fitness through a simple and easy claims process, despite the fact that Global Fitness continues to dispute those claims.

---

[1] By separate filing (Docket No. 125), Global Fitness has moved to strike the Blackman Objector because he does not qualify as a member of the class. Global Fitness does not waive any rights related to that motion and offers the response contained herein in the alternative to the same.

The Objectors have failed to offer any valid reason why the settlement agreement is not fair and reasonable.  In particular, the Objectors apparently believe that a valid settlement can only be achieved if it results in a complete victory despite none of them, particularly the Zik Objectors, ever succeeding on any of their claims.  The Objectors further ignore the likelihood of success by Global Fitness, the cost of the proposed litigation and that many of Global Fitness' former members are receiving a cash benefit despite not having to prove any essential element of any claim.  Moreover, the Zik Objectors are effectively demanding that the class action lawsuits against Global Fitness proceed piecemeal in each state.  (*See e.g.*, Zik Objectors' Memo., at p. 3) (arguing that the "best" method is to separate claims by state and type of claim).  Such a plan could only delay resolution of the claims against Global Fitness, and would necessarily increase the time investment by the Zik Objectors' counsel and a corresponding demand for fees. Certainly, the Zik Objectors fail to offer any valid reason why that plan is preferable, and their unsupported demand only highlights why this settlement is fair and reasonable.

The claims process was necessary to ensure former members actually receive the benefits offered under the Settlement.  Although Global Fitness has attempted to maintain its databases over the years of its existence, it could not account for, *inter alia*, changes in address of former members, errors in data entry, and the names and addresses who signed up through company contracts through their employers.  Thus, for purposes of giving notice of the settlement, Global Fitness cannot determine whether any particular name and address combination in its database is correct.  The former members must provide some confirmation of their identity and their address, and the notice and claims process is the only fair way available to accomplish that necessary step.  For anyone who submitted a claim, Global Fitness was able to provide data to the

settlement administrator, Dahl Administration, Inc. ("Dahl" or the "Settlement Administrator"), that it used to verify class and subclass membership.

In addition to giving proper notice through the best means available, the Settlement is fair, reasonable, and adequate based on the risks faced by the Gascho Plaintiffs (and the other plaintiffs as well) and Global Fitness. The claims asserted in all of the cases filed against Global Fitness consisted of breach of contract allegations along with statutory claims under state consumer protection laws. Both the Zik Objectors and the Gascho Plaintiffs asserted claims under the Kentucky Consumer Protection Act ("KCPA") and a subsection of that statute known as the Kentucky Health Spa Act ("KHSA"). <u>First</u>, there is nothing to suggest that the allegations made by either the Gascho Plaintiffs or the Zik Objectors in their cases under the KCPA and KHSA would succeed. There are no written decisions by any Kentucky Court interpreting the KHSA or defining its application to the facts of these cases. <u>Second</u>, the Zik Objectors' breach of contract claims hinge entirely on the interpretation of the gym membership contracts. Notably, the Zik Objectors **never** obtained a ruling from any Court as to the validity of their claims. <u>Third</u>, the Federal District Court for the Northern District of Ohio already dismissed similar claims under a Fed. R. Civ. P. 12(b) standard. <u>Fourth</u>, the claims alleged under the Kentucky Consumer Protection Act and the Ohio Consumer Sales Practices Act ("OCSPA") are individualized in nature, removing them from the possibility of class action resolution.

Moreover, the release agreed to by the parties is reasonable and appropriate for this case. The facts of the Gascho Plaintiffs' claims are the same as the facts of the claims asserted in all the other cases. Although the Zik Objectors argue they assert different legal theories, the claims to be released all arise from the same alleged factual predicates , namely, the facts related to member signup, discussion of fees and other plans, the charging of fees and cancellation of

3

member contracts.  The release appropriately includes all claims related to this factual basis and is narrowly tailored such that it does not release unrelated claims like those for personal injury or employment matters.

Finally, this Court is a proper venue for resolution of this case and final approval of the settlement.  All of the claims that will be resolved by the settlement are properly before this Court in the Third Amended Complaint.  This Court has extensive experience with this case and the parties involved.  Moreover, the Kentucky cases currently pending were either not being actively pursued or were rife with disputes between the parties such that settlement was impossible.

For the reasons stated herein and in the Motion for Preliminary Approval of the Settlement Agreement, this Court should grant final approval to the settlement.

<u>**Argument**</u>

I. **Under The Seven-Factor Test Used In The Sixth Circuit, The Settlement In This Case Is Appropriate And Should Be Approved.**

This Court is familiar with the procedural and legal requirements for settlement of class actions under Fed. R. Civ. P. 23(e) and the seven factors identified by the Sixth Circuit Court of Appeals:

1. Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

2. The complexity, expense and likely duration of the litigation;

3. The stage of the proceedings and the amount of discovery completed;

4. The judgment of experienced trial counsel;

5. The nature of the negotiations;

6. The objections raised by the class members; and

7. The public interest.

*See*, *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962, 2-3 (S.D. Ohio Aug. 18, 2009);  *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244-45 (6th Cir. 2011).  Applying these factors to the settlement, it is evident the settlement in this case is appropriate.

As set forth in the Joint Motion for Preliminary Approval of the Settlement Agreement (Docket No. 97), all factors weigh in favor of granting approval of this settlement.  Further, Global Fitness will address four issues raised by the Objectors: (1) the claims process was necessary; (2) the settlement was fair and reasonable based on the risks faced by the parties if the litigation continued; (3) the release agreed to by the parties is appropriate based on the claims asserted in the various lawsuits against Global Fitness; and (4) this Court is the proper forum for the settlement of these cases.  None of these issues, taken separately or together, supports rejection of the settlement.  Rather, it is clear that the settlement should be approved by this Court because it is fair, reasonable, and appropriate.

## II.    The Claims Process Was Necessary To Properly Identify Class Members

The claims process used to give notice of the settlement and allow for the submission of claims was necessary, reasonable and appropriate for this settlement.  First, the claims process utilized is common and appropriate for this type of settlement.  "There is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims-made settlements."  *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577, 31-32 (S.D. Cal. Nov. 5, 2012) citing *Guschausky v. Am. Family Life Assur. Co.*, 851 F. Supp. 2d 1252, 1259 (D. Mont. 2012); *Pelletz v. Weyerhaeuser Co.*, 255

F.R.D. 537, 544 (W.D. Wash. 2009) (approving claims-made process where class members were required to 'answer two reasonable claim forms and submit a total of 10 photographs of the mold spotting.'); *Lemus v. H&R Block Enters. LLC*, 2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants); *Morales v. Stevco, Inc.*, 2012 U.S. Dist. LEXIS 68640 (E.D. Cal. May 16, 2012) (recommending final approval of claims-made settlement); *Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797 (granting final approval of claims-made settlement) (N.D. Cal. Feb. 6, 2012).

In this case, the claims process was necessary to properly identify class members.  As discussed above, by simply utilizing Global Fitness' database alone, Global Fitness could not independently verify the names and addresses of the potential class members.  Thus, a multistep process was used to give notice to the class and to request claims from potential class members.  First, postcard notices were mailed to the over 600,000 prospective class members based on the name/address combinations in Global Fitness's records.  (*See* Declaration of Jeffrey D. Dahl, a copy of which is attached as Exhibit A, at pp. 3-4.)  For postcards marked as undeliverable and returned, Dahl used an address location company to acquire new addresses for those individuals and deliver as could be located.  (*Id*. at p. 4.)  For those members who had not received notice by postcard, notice was further provided through a website operated by Dahl, through email addresses to the extent they were known, and through newspaper publications in cities where fitness centers were previously operated by Global Fitness.  (*Id*. at pp. 4-6.)

For anyone who submitted a claim in response to a postcard, Dahl verified that claim by the unique claim identification number listed on the postcard and attached to each particular name/address combination.  In cases where claimants responded without using the unique claim identification number, Dahl attempted to match the claimant's name/address combination to the

information provided by Global Fitness. Of the over 52,000 claims received, Dahl was unable to identify approximately 3,900 claimants as former members of Global Fitness even after reviewing Global Fitness's source data.

Direct payments in this case would not serve the purpose of providing a payment to former Global Fitness members. There is no way to guarantee the checks sent out would actually reach the intended recipients. Given the multiyear timeframe addressed in the settlement (January 1, 2006 to October 25, 2012) and the fact that many of the proposed class members moved frequently (e.g. college students away from their family residence), a mass mailing of checks would create an effective post office "lottery" with a significant risk of non-class members receiving checks while class members received nothing. Thus, the fallacy of any direct payment scheme is that the class member identifying information cannot be verified without some affirmative act by the claimant. None of the Objectors present any evidence that they can select any particular name/address combination and then confirm that particular name/address combination is accurate.

The Zik Objectors cite no case law to support their position that a claims process is unfair to the class members. The case law relied on by the Blackman Objector is misleading at best. In *Burden v. Selectquote Ins. Servs.*, 2013 U.S. Dist. LEXIS 16977 (N.D. Cal. Feb. 6, 2013), the Court did not reject the settlement. Instead, the Court required the plaintiff to "file a supplemental memorandum which provides an explanation of why Class Members are being required to submit a Claims Form as a prerequisite to receiving a payment under the settlement, and why direct payments are not being made to Class Members." *Id*. Subsequently, the Court **approved** the postcard notice process after certain basic information regarding objections was

included.  *Burden v. SelectQuote Ins. Servs.*, 2013 U.S. Dist. LEXIS 41522 (N.D. Cal. Mar. 18,

2013).

      In *Smith v. Levine Leichtman Capital Partners, Inc.*, 2012 U.S. Dist. LEXIS 163672

(N.D. Cal. Nov. 15, 2012), the Court refused final approval for numerous reasons, including lack

of adequate notice, an improper class definition, an overly broad release, and an unduly

burdensome objection process, not just because the parties represented that they had **accurate**

mailing addresses.  *Id*. at \*5-9.  Conversely, Global Fitness has no way to verify whether any

particular name/address combination is accurate.

      In *De Leon v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 91124 (M.D. Fla. Apr. 20,

2012), the Court refused to grant preliminary approval of a settlement for numerous reasons.

One issue raised by the Court was that the claims process required class members to provide

information that "is not readily available to putative class members," which will likely attract

few takers.  *Id*. at \*62.  The Court further noted the "defendant presented evidence that [it]

maintains databases that enabled it to **identify** approximately 500,000 cardholders…." (emphasis

added).  Here, the claims process did not require the class members to provide information not

"readily available" to them.  Rather, it required their name, address, and basic information about

their membership with Global Fitness (*e.g.*, location, timeframe and whether they signed

personal training contracts).  Moreover, as explained above, Global Fitness cannot verify the

accuracy of its name/address combinations, nor do the Objectors propose any alternative method

through which verification could occur.  It is further worth noting that the court in *De Leon Bank*

did not address this issue.

      As part of their attack on the notice and claims process, the Zik Objectors also make a

statement they know to be untrue.  The Zik Objectors claim that the settlement Administrator

used in the *Seeger* settlement is the same as the Settlement Administrator used in this case, with the implication being that the claims rate in this case will be similar to the one in *Seeger*. (Zik Objection at p. 32.) The Zik Objectors know this statement is false because the Zik Objectors know the settlement administrator in *Seeger* was BMC Group Class Action Services. The Zik Objectors were present at the *Seeger* fairness hearing, cross-examined the settlement administrator's representative, and had a copy of the settlement administrator's report. In this case, the settlement website, which the Zik Objectors specifically reference in their brief (Zik Objection at p. 32), prominently displays the brand Dahl Administration. Moreover, the Preliminary Approval Order identifies the settlement administrator as Dahl. (Preliminary Approval Order at ¶ 5.) (Docket No. 111). It is evident the Zik Objectors are willing to toss any innuendo at the Court to confuse the issues.

It is indisputable that no one, including Global Fitness, can identify any particular class member such that automatic payments could be issued in this case. Unless and until a particular individual provides some additional, confirming information to Global Fitness to verify their identity, it is impossible for Global Fitness to know whether it is paying the appropriate class member. Claims made settlements are routinely approved unless there is something that makes the claims process unnecessary or unfair. *See e.g., Shames*, 2012 U.S. Dist. LEXIS 158577 at 31-32; *Pelletz*, 255 F.R.D. at 544. In this case, the claims process is both necessary and fair to ensure proper payment to class members.

The amount of class participation in the settlement bears this out. Specifically, over 55,000 former members applied for payments under the settlement, and over 49,000 members

were approved by Dahl for compensation.[2]  Not only does this prove that notice was properly given, but it also demonstrates that the class considers the settlement to be reasonable, fair and appropriate.

**III.     The Settlement Is Fair And Reasonable Based On The Risks Associated With Continued Litigation.**

The Objectors ignore the fact that not only did they face significant hurdles in certifying a class, but they (and other plaintiffs) were unlikely to succeed on their claims against Global Fitness.  "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at *5-6 (quoting *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d at 1086)).  "Thus, in assessing the Settlement, the Court should balance the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery for them, against Plaintiffs' likelihood for success on the merits." *Id.* (citations omitted.)

One of the key problems with many of the claims asserted by all the plaintiffs in the various cases is that these claims require examination of the individual interactions between Global Fitness employees and the class members.  Claims that must be resolved on a transaction-by-transaction basis are not capable of class-wide resolution because the individual issues will predominate over any class claims. *Stone v. Advance Am., Cash Advance Ctrs. Inc.*, 278 F.R.D. 562, *24 (S.D. Cal. 2011).  In *Stone*, the District Court denied class certification to claims arising from a California law regulating payday loans.  *Id.*  The law required certain information be conveyed in Spanish to Spanish-speaking customers.  The plaintiffs alleged the defendant had a policy of not providing the required disclosures in Spanish.  Regardless of the policy, each claim

---

[2]     The report by Dahl will be finalized and submitted to the Court at the fairness hearing.  Moreover, Dahl is reviewing the remaining applications and, when appropriate, contacting the applicants by mail to determine if they qualify for compensation under the settlement agreement.

had to be analyzed separately on a transaction-by-transaction basis to determine whether there was a violation of the act based on the language requirements – i.e., whether a potential claimant qualified as a class member and was actually injured.

The problems with class certification in *Stone* are present here. Although Global Fitness does not oppose certification of the class and subclasses for the purposes of settlement, Global Fitness has strong defenses to both the class allegations and the substantive claims asserted by the groups of plaintiffs. Any misrepresentation claims, which are contained in all of the various complaints filed against Global Fitness, require each individual plaintiff to offer proof of the particular misrepresentations made to them, what actions they took, and the circumstances of any cancellation or attempted cancellation of their membership agreements. *See e.g.*, *United Parcel Serv. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). Thus, a determination of whether a potential claimant was a class member would involve the same analysis as whether they had suffered an injury – the exact problem that prevented certification in *Stone*. Many of the contract breach claims suffer from the same flaw.

For example, and contrary to their statements in their objection, the Zik Objectors allege Global Fitness employees made misrepresentations about the terms of the membership contracts during the sales process, which is before any cancellation is processed. (Zik Objection at p. 3.) In their Amended Complaint, the Zik Objectors alleges:

> 12. Urban Active represented in the Ziks' membership agreement and via its salespersons that the membership can be cancelled upon 30 days notice, without begin charged additional dues or fees. The Ziks relied on these representations to their detriment….
>
> 23. Urban Active misrepresented Hearon's membership as a "Month to Month" membership in both the membership agreement and via its sales representative.
>
> 24. Neither the membership agreement nor the Urban Active sales representative disclosed to Hearon that his last month's dues could not be used to satisfy the

> final bill or that notice of cancellation actually needed to be provided more than
> two months prior to the membership ending to prevent additional charges.

*Id*. These allegations necessarily require an examination of the individual transactions that

occurred. Even references to "common policies" regarding representations made to members

raise individual issues because, regardless of the existence or non-existence of any purported

policy, these claims are still governed by the individual interactions between plaintiffs and

Global Fitness staff members.

Even the Zik Objectors' contract claims are not as straightforward as they would lead the

Court to believe. For example, April Zik asserts a contract claim in direct contravention to the

terms of her contract – namely, she agreed to a $10 cancel fee that she now claims should not

have been charged. To succeed on such a claim, April Zik must prove individual circumstances

that allow her to ignore the plain terms of the agreement that she signed. Similarly, Robert Zik

alleges that the same fee language was missing from his contract, yet he was charged the same

fee as April Zik. Notably, the Zik Objectors have failed to present evidence of how many Global

Fitness members actually signed contracts similar to the one allegedly signed by Robert Zik and

were charged the alleged fee. Thus, they have failed to present any evidence of typicality,

numerosity or commonality of Robert Zik's claim as required under Rule 23. Regardless, under

the settlement, any former member who signed a contract and cancelled it is entitled to

compensation for the $10 cancel fee. Thus, this settlement provides the remedy sought.

Separate from the class certification hurdle is the high likelihood that the various

plaintiffs would fail to prove their individual claims. The plaintiffs in *Robins v. Global Fitness*

*Holdings, LLC,* Case No. 1:11-CV-1373, U.S. District Court for the Northern District of Ohio

(the "Robins Action"), asserted similar claims to those asserted in this action, yet the *Robins*

claims were dismissed.[3]  The *Robins* plaintiffs alleged claims against Global Fitness, in part, for breach of contract, unjust enrichment, fraud, and for alleged violations of the Kentucky Health Spa Act ("KHSA").  In addition to alleging these claims, the *Robins* plaintiffs sought to certify a nationwide class, including a Kentucky sub-class.

The *Robins* court dismissed the case in its entirety.  The court dismissed the KHSA claims because a review of the "contracts shows that they comply with the statutory provisions and contain, verbatim, the quoted statutory language." *Id*. at p. 27.  The court found that the breach of contract claims were precluded by the express language of the contracts themselves. *Id*. at 13-17.  The unjust enrichment claims were barred because the terms and conditions of the plaintiffs' agreements with Global Fitness were covered by the express terms of their membership and personal training contracts. *Id*. at pp. 17-18.  The fraud claims were dismissed because "none of the Plaintiffs allege that Global [Fitness] charged any fees that were inconsistent with the unambiguous terms of their written contracts." *Id*. at 20-21.

To the extent any of the Zik Objectors' breach of contract claims are subject to class resolution, those claims rest entirely on the interpretation of the contracts. *See e.g., id*. at pp. 13-14.  In April Zik's contract, the challenged fee provisions are clearly included in the terms of the Agreement.  If the Court ultimately determined Global Fitness had the contractual right to charge those amounts, as the *Robins* Court did, then those claims evaporate.

In addition, the Zik Objectors' reliance on the alleged strength of the claims asserted under the KHSA ignore the strong defenses to those claims asserted by Global Fitness.  For example, certain plaintiffs allege that Global Fitness's contracts did not include certain language required by the KHSA, or that certain required processes were not followed.  Even if such claims are susceptible to class-wide resolution – a contention never proven by any plaintiff – those

---

[3]        A copy of the cited opinion is attached as Exhibit B.

claims rest on statutes that have **never** been interpreted by any court.  Moreover, the Zik Objectors ignore several factors supporting Global Fitness' argument that such claims are not subject to class resolution: specifically, that the process used as to each member varied, and that the language of the member contracts varied over time.  Similarly, other plaintiffs claim they were not shown certain information as required under, *inter alia*, the KHSA – a determination that cannot be made without examining the facts of each person's interaction with Global Fitness employees.

Acceptance of Objector's position requires a wholesale surrender by Global Fitness based on claims that are not capable of being resolved in class action litigation and/or faced significant hurdles on the merits.  Despite these challenges, Global Fitness agreed to compensate a wide range of members in close alignment with many of the allegations set forth by the various plaintiffs.  As such, the Objectors' arguments lack merit, and the settlement should be approved.

**IV.     The Release Included In The Settlement Agreement Is Reasonable And Appropriate Based On The Claims Alleged In The Various Lawsuits Against Global Fitness.**

A release included in a class action settlement agreement is proper if the released claims share a factual predicate with the claims pled in the complaint.  *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009).  Specifically, the "factual predicate" requirement refers to the general facts from which the claims are drawn, not that the claims asserted must be "identical" to the claims released.  *Id.* ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with the 'claims pled in the complaint'").  This view of "factual predicate" is well supported.

In *Moulton*, the defendant corporation purchased a steel mill whose pollution-control equipment was in disrepair. *Id* at 347. The plaintiffs brought several tort and statutory claims, all of which were related to allegations that the mill had "wrongfully discharged harmful 'metal-like dust and flakes' that settled on their real and personal property." *Id*. The release discharged all "continuing-nuisance claims relating to pollutants emitted 'at any time up to and including' the agreement's execution date…," including

> [claims for] [a]ll alleged damages, past, present, or future… under any theory of continuing nuisance, arising out of or relating to the maintenance of any structures, any acts, any operations, or any conditions that existed, began, or were initiated [at the mill] prior to the Settlement Effective Date and that continue for an indefinite period of time, [including pollutants] emanating from [the mill] prior to the Settlement Effective Date or during all periods of time that any such structures, any such acts, any such operations, or any such conditions continue.

*Id*. at 348. Thus, the release extended beyond the limited number of pollutants identified in the pleadings and extended to releases of all pollutants that had been discharged up to the time of the settlement. The Sixth Circuit approved the release, finding that the release was fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23(e)(2). *Id*. at 350. Specifically, the Sixth Circuit held that the released claims shared the same factual predicate as the claims alleged by the plaintiffs. *Id*. at 349.

In *Olden v. Gardner*, No. 07-1953, 2008 U.S. App. LEXIS 20092 at *4 (6th Cir. Sept. 18, 2008), a class action involving the alleged emission of pollutants. In pertinent part, the claims referred specifically to certain particulates and toxic substances such as mercury, but the settlement agreement included a broad release of claims related to any "alleged emissions". *Id*. at **4, 29. The objectors to the settlement argued the release was unfair because it was overly

broad, but the Sixth Circuit Court of Appeals approved the release despite its terms reaching

beyond the particular pollutants alleged in the complaint:

> Like any other settlement, this one requires the plaintiffs to release
> their claims against the defendant.  The release covers all claims
> against Lafarge – even those that were unknown or had not
> accrued at the time of settlement – relating to any alleged
> emissions from Lafarge's Alpena plant that were, or could have
> been, pleaded in the instant case.  Specifically, the release
> covers claims based on "alleged airborne pollution, emissions, releases,
> spills and discharges, exposure to hazardous substances, air
> contaminants, toxic pollutants, particulate, or odors [emanating
> from the Alpena plant]."  Because such claims have an identical
> factual predicate as the claims pled in the complaint, no problem is
> posted by their release.

*Id*. at \*29.

The Gascho Plaintiffs' claims, the Zik Objectors' claims, and the claims to be released

are all based on the same factual predicate.  The facts alleged by the Zik Objectors in their

complaint are virtually identical to the facts alleged by the Gascho Plaintiffs claims.  In both

cases, the parties allege Global Fitness breached its contracts and violated certain consumer

protection statutes based on conduct by Global Fitness employees and conduct related to the

contracts themselves.  The Zik Plaintiffs claim they were improperly charged monthly dues and

improperly charged a cancellation fee.  *See* Amended Class Action Complaint at ¶10, 11.

Plaintiff Hearon claims he was improperly charged membership fees.  *Id.* at ¶30.  The facts of

these claims arise out of signed membership contracts and alleged representations made by

Global Fitness employees related to the contract.  *Id*. at ¶¶12, 23-24.

At their core, the factual allegations asserted by the Zik Objectors are (1) the existence of

a membership agreement, (2) a breach of that agreement, (3) misrepresentations by Global

Fitness employees related to that agreement and (4) damages as a result of these actions.Whether

the Zik Objectors have asserted all of the same legal claims that may arise from this set of facts

is not relevant.  *Freeman v. MML Bay State Life Ins. Co.*, 445 Fed. Appx. 577, 579 (3d Cir. N.J.

2011) ("The plaintiffs' claims in [the settled class action] included challenges to the

administration of policies and the calculation of policy charges. The fact that the plaintiffs in [the

settled class action] were challenging different MML practices with respect to the policies does

not mean that the factual predicates are different.").  Moreover, this factual predicate, shared

with the claims asserted by the Gascho Plaintiffs, is the exact same factual predicate underlying

the claims to be released.  *See* Settlement Agreement, Section 2.23, a copy of which is attached

as Exhibit A to the Memorandum in Support of Joint Motion for Preliminary Approval of the

Settlement Agreement, *et al*.) (Docket No. 97-1.)  As such, the Objectors' challenge to the

release fails.


V.    **This Court Is A Proper Forum For Settlement Of The Class Action Lawsuits.**

Resolution of these class actions before this Court is proper for several reasons.  First, a

majority of Global Fitness' business was conducted in Ohio.  Although Global Fitness operated

fitness centers in Ohio, Kentucky, Tennessee, Georgia, Nebraska, North Carolina and

Pennsylvania, the majority of its club locations were in Ohio.  Second, a majority of the plaintiffs

actively asserting class action claims against Global Fitness were in this action.  Prior to the

filing of the Third Amended Complaint, eight individual plaintiffs had asserted claims in this

action.  An additional six plaintiffs had filed claims in *Robins*.

In Kentucky, the plaintiffs in *Seeger v. Global Fitness Holdings, LLC*, Case No. 09-CI-

3094, Commonwealth of Kentucky, Boone Circuit Court (the "*Seeger*" action) had taken no

substantive action since the proposed settlement of those claims had been denied in January

2013.  Indeed, counsel for the plaintiffs in *Seeger* was suspended for a significant portion of that

time.  (*See* http://www.wlwt.com/news/local-news/news-northern-kentucky/prominent-attorneys-practice-suspended-in-ky-again/-/13608792/20271600/-/gpeqaf/-/index.html, last visited on January 12, 2014).  The four plaintiffs in *Tartaglia, et al. v. Global Fitness Holdings, LLC*, Case No. 11-CI-1121, Commonwealth of Kentucky, Boone Circuit Court (the "*Tartaglia*" action) were represented by the same counsel as the claimants in this case, and they reasserted their claims here through the Third Amended Complaint.

The only remaining Kentucky case was the action filed by the Zik Objectors.  Following the dismissal of the *Seeger* settlement, Global Fitness continued to defend against all claims asserted against it.  The Jefferson Circuit Court lifted the stay on the Zik Objectors' case and allowed discovery to move forward.  Despite discovery being re-opened, the Zik Objectors took painstaking efforts to avoid conducting the most basic of discovery.  For example, the Zik Objectors took months to respond to written discovery requests and then repeatedly flip-flopped on whether to appear for deposition.  *See* Memorandum in Support of Motion to Compel, attached as Exhibit C, at p. 1-5.  After about five months, the Zik Objectors finally agreed to appear for depositions on July 24, 2013.  *Id*. at p. 5.

Given the status of the Kentucky cases, the majority of claims having been asserted in Ohio, and representation by the Vorys and Isaacs firms of plaintiffs in both *Gascho* and *Tartaglia*, Global Fitness engaged in settlement negotiations with counsel for the Gascho Plaintiffs in mid-2013.  The parties to these cases conducted extensive discovery over several years, took depositions of both class representatives and Global Fitness's employees, reviewed hundreds of thousands of documents, conducted numerous appearances before judges in the Boone Circuit Court, the Jefferson Circuit Court, and this Court, and ultimately reached a settlement after months of negotiation and a formal mediation with a neutral third-party mediator

from the Judicial Arbitration and Mediation Service ("JAMS"). *See, e.g., New Eng. Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631-632 (W.D. Ky. 2006) (approving settlements where the parties "conducted extensive discovery" and "the settlement agreements [we]re the product of arm's length negotiations").

Given the status of the various cases, the reach of various claims across state lines and the conduct of the Kentucky cases, this Court was viewed as the best court for reviewing the settlement agreement. To the extent that the Zik Objectors claim that this Court is somehow incapable of reviewing this settlement for fairness and reasonableness, or that the Boone Circuit Court's experience with the wholly different settlement in *Seeger* somehow precluded any other court from evaluating this settlement, the Zik Objectors noticeably refrain from providing any valid support for those arguments. This Court is a proper venue for settlement, and the settlement should be approved.

### Conclusion

For the foregoing reasons, Global Fitness respectfully requests that the Court overrule the objections filed by the Zik Objectors and the Blackman Objector.

*s/ V. Brandon McGrath*
V. Brandon McGrath (0072057)
BINGHAM GREENEBAUM DOLL LLP
255 E. Fifth Street, 2350 First Financial Center
Cincinnati, Ohio 45202
(513) 455-7641
(513) 762-7941 (fax)
bmcgrath@bgdlegal.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that foregoing was filed with the Court's ECF system on January 23, 2014, which will send notification of this filing to the registered parties.


<u>*s/ V. Brandon McGrath*</u>
Attorney for Defendant

15058484_1.docx