**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| AMBER GASCHO, *et al.,* | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:11-cv-436 |
| | : | |
| v. | : | Judge Smith |
| | : | |
| GLOBAL FITNESS HOLDINGS, LLC, | : | Magistrate Judge King |
| | : | |
| Defendants. | : | |

**JOINT MOTION/UNOPPOSED MOTION FOR A FINAL JUDGMENT AND A FINAL
ORDER APPROVING THE CLASS ACTION SETTLEMENT, CERTIFYING A CLASS
AND SUBCLASSES FOR SETTLEMENT PURPOSES, APPROVING CLASS
REPRESENTATIVE ENHANCEMENT PAYMENTS, AND APPROVING CLASS
COUNSEL'S REASONABLE FEES AND EXPENSES**

Plaintiffs Amber Gascho, Ashley Buckemeyer, Michael Hogan, Edward
Lundberg, Terry Troutman, Anthony Meyer, Rita Rose, Julia Snyder, Albert Tartaglia,
Michael Bell, Matt Volkerding, and Patrick Cary, on behalf of all members of the Class
and Subclasses, and Defendant Global Fitness Holdings, LLC (formerly doing business
as Urban Active Fitness) jointly move this Court for a Final Order (1) approving the class
action Settlement, and (2) certifying a Class and Subclasses for Settlement purposes.
Plaintiffs' separately filed their Motion for an Award of Class Representative
Enhancement Payments and Reasonable Attorneys' Fees and Costs, December 9,
2013, (Docket No. 114), and pursuant to the Settlement Agreement, Defendant does
not oppose that Motion. *See* Notice of Non-Objection to Application for Attorneys' Fees,
January 23, 2014, (Docket No. 127).

In addition, the parties jointly request that this Court enter a Final Judgment dismissing all claims on the merits and with prejudice according to the terms and conditions set forth in the parties' Settlement Agreement and this Court's Orders.

A Joint Memorandum in Support is included with this Motion. Attached as Exhibits to this Motion and Memorandum in Support is a proposed Final Order (Exhibit 1) and a proposed Final Judgment (Exhibit 2).

Respectfully submitted,

s/ Thomas N. McCormick
William G. Porter (0017296)
wgporter@vorys.com
Thomas N. McCormick   (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
kjrubin@vorys.com
James B. Lind (0083310)
jblind@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone:  (614) 464-6400
Facsimile:  (614) 464-6350


Mark Landes   (0027227)
mlandes@isaacwiles.com
Gregory M. Travalio   (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman   (0076390)
mtroutman@isaacwiles.com
ISAAC, WILES, BURKHOLDER &
TEETOR, LLP
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121
Facsimile:  (614) 365-9516

***Attorneys for Plaintiffs***

s/  V. Brandon McGrath
V. Brandon McGrath (0072057)
BMcgrath@bgdlegal.com
Bingham Greenebaum Doll LLP
2350 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202
(513) 455-7600

Richard S. Gurbst (0017672)
Richard.Gurbst@squiresanders.com
SQUIRE SANDERS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
United States of America
(216) 479-8607

Dan L. Cvetanovich (0021980)
Dan.Cvetanovich@baileycavalieri.com
Sabrina Haurin (0079321)
sabrina.haurin@baileycavalieri.com
BAILEY CAVALIERI LLC
One Columbus
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
Telephone:  (614) 221-3155
Facsimile:  (614) 221-0479

***Attorneys for Defendant Global
Fitness Holdings, LLC***

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     PRELIMINARY STATEMENT**

Plaintiffs and Defendant, Global Fitness Holdings, LLC f/d/b/a Urban Active Fitness ("Urban Active") jointly seek this Court's Final Approval of the Class Action Settlement and subsequent dismissal with prejudice of this lawsuit. This Settlement should be finally approved because it provides significant value to the Class/Subclass members, eliminates the risk of an adverse judgment, and the Release is limited to the claims and causes of action at issue in this litigation. Thus, the Settlement is fair, reasonable, and adequate, and it is in the best interests of the Class/Subclasses.

Through the Joint Motion for Preliminary Approval (September 18, 2013, Docket No. 97); Plaintiffs' Motion for an Award of Class Representative Enhancement Payments and Reasonable Attorneys' Fees (December 9, 2013, Docket No. 114); Plaintiffs' Response to the Objection of Blackman and the Objection of Zik/Hearon (January 23, 2014, Docket No. 128); and Defendant's Memorandum in Response to Objections (January 23, 2014, Docket No. 126), the parties have provided this Court with facts and legal arguments establishing that this Settlement should be approved. Those facts and arguments are incorporated herein and, to the extent possible, will not be repeated. Instead, this Memorandum in Support of Final Approval will discuss the applicable Fed. R. Civ. P. 23 standards that must be met for this Court to grant Final Approval.

## II. FACTS

### A. *Discovery and Procedural History*

After two and a half years of litigation that included extensive written discovery, interviews of dozens of witnesses, third party subpoenas, costly ESI review, nine depositions, and approximately 15 conferences with this Court (most of which resolved ESI and other discovery disputes), as well as numerous hearings in Kentucky state court, the parties finally reached a Settlement on September 12, 2013. The Settlement resulted from a full-day mediation with William Hartgering, Esq., a JAMS mediation expert from Chicago, and extensive post-mediation negotiations. That Settlement received Preliminary Approval from this Court on September 30, 2013 (Docket No. 111).

### B. *Settlement Terms*

The Settlement creates a single Class and three Subclasses. Class/Subclass inclusion is based solely on simply defined, common, and objective criteria:

- The existence of a membership contract between January 1, 2006, and October 26, 2012, entitled approximately 606,000 <u>Class Members</u> to $5 in addition to other awards.

- The cancellation of a membership contract between January 1, 2006, and October 26, 2012, entitled approximately 323,518 <u>Gym Cancellation Subclass Members</u> to $20 in addition to other awards.

- The payment of a $15 Facility Improvement Fee ("FIF") or any other $15 administrative fee between April 1, 2009, to October 26, 2012, entitled approximately 300,017 <u>FIF Subclass Members</u> to $20 in addition to other awards.

- The existence of and cancellation of a personal training contract between January 1, 2006, and October 26, 2012, entitled approximately 50,038 <u>Personal Training Cancel Subclass Members</u> to $30 in addition to other awards.

In total, Urban Active pledged approximately $17,000,000 to Class/Subclass Members. Class Members needed only to complete a Claim Form with basic identifying

information, check applicable Subclasses, and then submit the Claim Form online or via U.S. Mail. No documentation or other proof of claim was required and the claims process was open to any Class Member, even those that did not receive direct Notice.

## C. *Notice, Claims, and Results.*

This Court approved a notice program involving a Notice Postcard, an email notice, a reminder email notice, general publication, and establishment of an internet site. Notice was published on October 30, 2013, and approximately 601,000 potential claimants were sent direct Postcard Notice and 259,195 emails were sent to those same members who provided an email address to Urban Active. *See* Affidavit of Jeffrey D. Dahl, January 21, 2014 ("Dahl Affidavit") at ¶¶ 12, 15, attached as Exhibit 3. Counsel also issued a press release and placed it on the PR Newswire receiving significant coverage by newspapers and television stations in Columbus, Cincinnati, Cleveland, Lexington, Louisville, and Harrisburg. *See* Exhibit 4. Numerous independent websites and other social media outlets also reported the Settlement and provided instructions on how to file a claim. *See* Exhibit 5.

In response to the Notice program, Dahl received 55,597 claim forms, of which 49,457 were deemed timely filed and valid, 3,965 are pending further review, 2,161 were invalid duplicates, and 14 were untimely. Dahl Affidavit. at ¶33. The 3,965 claims that are pending further review did not match any information contained in Urban Active records. *Id.* at ¶33. Thus, the Settlement Administrator is reviewing those potential Claims to determine if the Claimants are indeed Class Members that do not appear within Urban Active's records. *Id.* at ¶32.

The total payout to the 49,457 Allowed Claimants will be between $1,542,505

and $2,003,416. *Id.* at ¶38. The Settlement Administrator is currently resolving this variance pursuant to its duties in paragraph 10.4 of the Settlement Agreement. *Id.* The variance exists because Claim Forms submitted by approximately 20,459 Allowed Claimants indicated membership in additional subclass(es) not matching Urban Active's records. *Id.* The Settlement Administrator thus requested additional information from Defendant and is following up with those Allowed Claimants. *Id.* The average confirmed cash payment to each Allowed Claimant is **$36.41**. *Id.* at ¶36.

## III.    LEGAL STANDARD

"A class settlement is presumptively reasonable upon preliminary approval, and an individual who objects consequently has 'a heavy burden' of demonstrating that the settlement is unreasonable." *See Brent v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 98763, 32-35 (N.D. Ohio Sept. 1, 2011)(*quoting Williams,* 720 F.2d at 921). The law favors settlement, particularly in class actions where substantial judicial resources can be conserved by avoiding formal litigation. *Id.* (*citing* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2002); *Int'l Union, United Auto, Aerospace, and Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions").

In considering whether the settlement is fair, reasonable, and adequate, the trial court considers the following factors: (1) reaction of absent class members; (2) amount of discovery engaged in by the parties; (3) likelihood of success on the merits; (4) risk of fraud or collusion; (5) complexity, expense, and likely duration of the litigation; (6) opinions of class counsel and class representatives; (7) public interest. *Brent,* 2011 U.S. Dist. LEXIS 98763 at 34; (*citing Int'l Union*, 497 F.3d at 631).

## IV.  ARGUMENT

### A.  *The Settlement Agreement is Fair, Reasonable, and Adequate.*

Analysis of the above factors demonstrates that the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate.

#### 1.  The reaction of absent class members.

The reaction of absent Class Members has been overwhelmingly positive.  Of the approximately 606,000 Class Members only **90 Class Members** opted-out resulting in an opt-out rate of **0.014%.**  Dahl Affidavit ¶ 30.  This incredibly low opt-out rate shows that the vast majority of the Class Members believe that the Settlement is fair and adequate.[1]  In addition, only **2 Objections** were filed.  Again, the absence of Objectors demonstrates unusually broad support for the Settlement.[2]

As discussed on pages 6-8 of Plaintiffs' Response to Objections (Docket No. 128), neither of these objections were filed by Class Members who truly believe the compensation is inadequate.  Instead, one Objector is a professional objector whose client rescinded his contract and therefore paid Urban Active nothing.  The other Objection was made by Zik/Hearon's counsel who seek an award of $640,000 in attorneys' fees despite not participating in the prosecution, negotiation, or settlement of this action, and, despite failing to prosecute its own claims against Urban Active as described on pages 18-19 in Urban Active's Response to Objections (Docket No. 126).

---

[1]  *See Garner v. State Farm Mut. Auto: Ins. Co.*, 2010 WL 1687832, at * 15 (N.D, Cal. 2010) (0.4%.opt-out rate "is a further indication of the fairness of the Settlement"); *see also, e.g.*, *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Il. 2001); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.1998); *Churchill L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004).

[2]  *See Browne v. Am. Honda Motor Co., Inc.*, 2010 WL 9499072, at * 18 (C.D. Cal. July 29, 2010) (finding that low percentage of objections favors settlement approval); *Churchill LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming final approval with 45 objections out of 90,000 notices); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *10 (N.D. Cal. Apr. 1, 2011) (finding 0.02% objection rate "strongly supports approval of the settlement"); *see also, e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897 F,2d 115, 118-19 (3d Cir. 1990)*; D'Amato v. Deutsche Bank*, 236 F.3d 78 86-87 (2d Cir. 2001).

## 2. Plaintiffs have conducted extensive and adequate factual discovery.

The stage of the case and the discovery taken must be considered, "[t]o insure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962, at *13 (S.D. Ohio Aug. 18, 2009) (citations omitted).

Here, Plaintiffs have conducted extensive discovery, including discovery from Urban Active and numerous third parties. Specifically, Plaintiffs have:

- Served extensive written discovery on Urban Active, which included multiple sets of interrogatories and requests for production;

- Reviewed and coded approximately 400,000 documents, emails, and other Electronic Data related to Urban Active's policies and practices;

- Subpoenaed from Urban Active's third party customer database and billing services providers (MotionSoft and Paramount) additional electronic data and emails related to Plaintiff's claims, and reviewed those documents;

- Conducted interviews of numerous Urban Active members to learn about their customer experiences;

- Conducted interviews with many former Urban Active employees to learn about the corporate culture, training that was provided, and policies and procedures as it related to the sale, service, billing, and cancellation of its contracts; and

- Deposed nine of Urban Active's current and/or former employees, including those individuals responsible for sales and renewals, customer billing, cancellations, customer service, and a corporate representative.

The extensive ESI review and former member/former employee interviews are noteworthy because no other plaintiffs' group engaged in these fact finding activities. This fact gathering allowed Class Counsel to allege broader and more far-reaching claims than any other plaintiffs' group and to better understand the strengths and weaknesses of the those claims.

Defendant has also served extensive written discovery on Plaintiffs and deposed several of the Class Representatives. Thus, the Parties in this case have engaged in far-reaching discovery and have vigorously litigated this Action enabling a full determination as to the likelihood of success on class certification and the merits.

### 3.    Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at 5-6. Plaintiffs are confident they would have succeeded; however, as discussed on pages 14-16 of Plaintiffs' Response to Objections (Docket No. 128), Plaintiffs considered the following:

- The Northern District of Ohio's ruling in *Robins v. Global Fitness Holdings, LLC*, Case No. 838 F.Supp.2d 631 (2012), which dismissed in their entirety similar breach of contract, Kentucky Health Spa Act (KHSA), Ohio Consumer Sales Practices Act (OCSPA), and Ohio Prepaid Entertainment Contract Act (PECA) claims against Urban Active.

- *Robins*' appeal, and the potential negative effects on the Plaintiffs' claims of an affirmation of that dismissal by the Sixth Circuit. *See Robins et al v. Global Fitness Holdings, LLC*, Case No: 12-3231 (6th Cir.). The appeal was being briefed at the time this Settlement was reached.

- The fact that the KHSA and PECA have rarely been litigated with few judicial decisions on point regarding rescission/voiding a contract. This combined with Urban Active's strong equitable arguments created a risk that even after class certification and success on the merits, damages could be limited to the amount already negotiated as part of this Settlement, or even less.

- The fact that Urban Active is no longer in business and therefore had no income stream.

Urban Active's position, as clearly set forth on pages 10-14 of their Response to Objections (Docket No. 126), is that none of these claims, or any other claims against it, are appropriate for class certification. Moreover, Urban Active believes that even if a

class was certified, the merits of any such claims would ultimately meet that same fate as those in *Robins* - - dismissal as a matter of law.

These factors must be balanced against the benefits provided to the Class and the **immediacy** and **certainty** of the recovery. *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at 5-6 (*citing In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1010 (S.D. Ohio 2001)) (emphasis added).

Urban Active committed $17,000,000 to the Class, and based upon claims filed, the total Class Payment is between $1,542,505 and $2,003,416. Dahl Affidavit at ¶38. Each Allowed Claimant will receive between $5 and $75 with the average Allowed Claimant recovering **$36.41**, and the average Allowed Claimant who is a member of the Gym Cancel Subclass recovering **$44.54**. *Id.* at ¶36. This is significant because the average membership sold by Urban Active cost **$26.00** per month,[3] meaning the average Allowed Claimant will recover **140%** of one month's dues and the average Gym Cancel Subclass Member will recover **170%** of one months dues.

*Importantly*, these cash payments will be sent to the Class 14 days after the Effective Date of this Settlement – not years from now after briefing on class certification, multiple trials in Kentucky, Ohio, and other states, and the resolution of appeals. This fact is especially significant here because Urban Active is a defunct company that no longer has an income stream. Last, the Class will also benefit through Urban Active's additional payment of Settlement Administration Costs, Class Representative Enhancement Payments, and Class Counsel's reasonable costs and

---

[3] *See* McCormick Affidavit attached as Exhibit 4 to Plaintiffs Response to Objections (Docket No. 128).

attorneys' fees.[4]  In summary, the general risks associated with any litigation, and the specific risks set forth above, firmly establish that Final Approval is in the Class'/Subclasses' best interests because it provides significant value immediately and without any risk of an adverse judgment.

The significant value provided here can be quantified by comparing this Settlement to recent class action settlements involving similar claims against health clubs - - all of which received final approval.  In *Vaughn v. L.A. Fitness*, Case No. 10-cv-2326-MMB, (E.D. Penn., 2013) (Docket No. 85, p. 1) (final approval granted September 27, 2013) class members alleged additional monthly charges after they attempted to cancel and that they were subjected to misleading form contracts and other practices. Class members who submitted a claim were eligible to receive a 45-day free pass or 1/3 of one month's dues valued at approximately **$15**. *Id.* at 2.[5]  In *Martina v. L.A. Fitness*, Case No. 2:12-CV-02063 (D. N.J. 2013) (Docket No. 49, p. 3) (final approval granted October 8, 2013) class members alleged the same claims as in *Vaughn* and all members that filed a claim were entitled to almost identical relief; a 45 day coupon or 1/3 of one month's dues valued at **$11.67**.  *Id.*  Finally, in *Friedman v. 24-Hour Fitness USA*, Case No. CV 06-06282 AHM, 2010 (C.D. California, Docket No. 580, p. 2-3)(final approval granted on July 12, 2010) class members alleged that defendant charged

---

[4]    Urban Active's agreement to separately pay the Settlement Administration Costs (estimated to be $500,000) and Class Counsel's reasonable fees and costs constitute a benefit to the Class.  See *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496, 501 (6th Cir. 2011); *Lonardo v. Travelers Indem. Co.*, 706 F.Supp. 2d 766, 803 (N.D. Ohio 2010).

[5]    Class Members who submitted written proof of cancellation and records showing continued charges were eligible to receive additional cash payments, however, as noted by the Court, the settlement was largely a "coupon" settlement and the monetary aspect was "not really significant in terms of dollars."  *Id.* at 7-9.

additional dues after cancellation. Class Members who submitted a claim recovered **$20** or a 3 month pass. *Id.* at 5.

Here, the average Allowed Claimant will be paid **$36.41**, more than <u>**242%**</u> of what was paid in *Vaughn*, <u>**312%**</u> of what was paid in *Martina*, and <u>**182%**</u> of what was provided in *Friedman*. Moreover, because *Vaughn, Martina*, and *Friedman* all involved claims of additional charges *after cancellation,* comparison to the average recovery of each Gym Cancel Subclass Member is appropriate. As noted above, the average Gym Cancel Subclass Member will be paid <u>**$44.54**</u>, which is more than <u>**296%**</u> of that paid in *Vaughn*, <u>**381%**</u> of that paid in *Martina*, and <u>**222%**</u> of that paid in *Friedman*.

### 4.  No Risk Of Fraud Or Collusion Exists.

The objective fairness of this Settlement, as just shown above, proves the absence of fraud or collusion. Further evidence includes that this Settlement was negotiated after two and a half years of hard-fought litigation, at arms-length, by experienced and reputable counsel, and was facilitated by an experienced mediator. *See* Declaration of Thomas McCormick ("McCormick Decl.") at ¶ 5-10 and Declaration of Mark Troutman ("Troutman Decl.") at ¶ 9-14, (Counsel for Plaintiffs), attached as Exhibit 6. *See also* Declaration of Richard Gurbst ("Gurbst Decl.") at ¶4-8 (Counsel for Defendant), attached as Exhibit 7. Negotiations extended over a five-month period and stalled several times resulting in the filing a Motion for Class Certification in *Tartaglia* and additional depositions in *Gascho*. McCormick Decl., ¶¶ 2,6. These factors demonstrate that the settlement was not the product of fraud or collusion.[6]

---

[6]    *See Moulton v. United States Steel Corp.*, 581 F. 3d 344, 351 (6th Cir. 2009) (finding objectors' claim that agreement was a product of collusion meritless where the case involved lengthy and complex litigation and the agreement was a product of months of supervised negotiations, including two mediation sessions).

Moreover, attorneys' fees were not negotiated until after an agreement on payment to the Class and Subclasses was achieved.  McCormick Decl., ¶10; Troutman Decl., ¶ 14; and Gurbst Decl., ¶8.  This is not a "common fund" Settlement, so the payment of attorneys' fees and costs does not affect, in any way, the recovery of the Class/Subclasses.  Likewise, the subsequent negotiation of attorneys' fees did not affect, in any way, the earlier monetary relief negotiated for the Class.

### 5.    Continued Litigation would be Complex, Lengthy, and Uncertain.

"In determining the fairness of the Settlement, courts also consider '[t]he complexity, expense and likely duration of the litigation.'" *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at *10 (*quoting In re Telectronics*, 137 F. Supp. 2d at 1013 (citations omitted)).  Class actions are inherently complex and settlement "avoids the costs, delays, and multitude of other problems associated with them.'" *Id.* (citations omitted).  "As such, avoiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *Id.* (citation omitted).

This litigation is almost 3 years old, and has involved extensive motion practice and voluminous discovery.  A settlement at this stage avoids additional discovery, class certification, continued motion practice, the hiring of expert witnesses, complex and expensive trials, and related appeals.  In addition, a multitude of policies and procedures have been implicated by Plaintiffs' allegations and Urban Active is prepared to assert numerous affirmative defenses to these claims, meaning the time and effort required to litigate this matter through trial would be substantial and the issues raised would be complicated.  *See Burka v. New York City Transit Auth.*, 129 F.R.D. 80, 83

(S.D.N.Y. 1990) (stating that because the issues of law and fact before the court were complex, the decision to avoid trial by settlement "appears to have been a wise one").

While it is possible that continued litigation would lead to additional compensation to the Class, a real and apparent risk also exists that continued litigation would result in the same recovery (*i.e.*, $36.41 per class member), a reduced recovery, or no recovery at all. Moreover, given the complexity of the issues and the caliber of Urban Active's defense, if any recovery was achieved it would not be paid for several years.

**6.     Opinions of Class Counsel and the Class Representatives.**

In assessing a settlement, "the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference" *See Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010).

Here, Class Counsel includes experienced class action and trial attorneys and published experts on consumer laws. Class Counsel has conducted extensive direct and third party discovery, and has thoroughly evaluated the merits. Given the experience of Class Counsel, their opinions that the terms of this settlement are fair, adequate, and reasonable should be given substantial weight. In addition, all of the Class Representatives support the Settlement and believe its terms are fair, reasonable, and adequate. As set forth on pages 6-8 of Plaintiffs' Motion for Class Representative Enhancement Payments (Docket No. 114), the Class Representatives brought this litigation to Class Counsel, actively participated in the litigation, and carefully reviewed and provided input regarding Settlement. As evidence by the Class Representatives signing of the Settlement Agreement, filing Claim Forms, and becoming Allowed Claimants all believe that this Settlement is fair, reasonable, and adequate.

### 7. The Strong Public Interest In The Amicable Resolution Of Class Action Lawsuits Favors The Proposed Settlement.

"There is an overriding public interest in favor of settlement of class action lawsuits." *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at *22 ("The proposed Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources."). "Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens whose taxes support the latter." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

Here, given the substantial benefits to the Class/Subclass Members, the "overriding public interest" favors Final Approval.

### B. The Class and Subclasses should be Certified. [7]

To grant certification of a settlement class, the requirements of Rule 23 must be satisfied. *See* Fed. R. Civ. P. 23. All criteria for certification of a class for litigation purposes apply to certification for settlement purposes; however, the fact of settlement should be considered and courts should not inquire into manageability because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-620 (1997). The "dominant concern" is whether "sufficient unity exists" so absent class members can be bound by the decisions of the Class Representatives. *Id.* at 22. As discussed below sufficient unity exists and the Rule 23 prerequisites for certification are satisfied.

---

[7] Urban Active supports class certification for settlement purposes only. If the settlement fails to be approved or is terminated for whatever reason, Urban Active reserves all rights to object to the maintenance of this lawsuit as a class action and does not waive any right to do so through actions taken in furtherance of this settlement.

### 1. Numerosity

Numerosity is presumed when there are at least 40 class members. *Adams v. Anheuser-Busch Companies, Inc.*, No. 2:10-cv-826, 2012 WL 1058961, at *3-4 (S.D. Ohio Mar. 28, 2012). Here, the Class contains over 600,000 members, thus, numerosity is satisfied.

### 2. Commonality, Typicality, and Rule 23(b) Predominance Requirements.

Commonality requires "a common issue the resolution of which will advance the litigation." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F. 3d 592, 619 (6th Cir. 2007). Typicality is satisfied if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claim of other class members, and if his or her claims are based on the same legal theory." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996), *citing* 1 Newberg & Conte, *Newberg on Class Actions*, § 3-13 at 3-76. Predominance requires that a plaintiff "establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *See Randleman v. Fidelity National Title Insurance Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011) (*citing Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)). "The fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie*, 511 F.3d at 564.

"Commonality and typicality 'tend to merge' because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately

protected in their absence.'" *See Young v. Nationwide Mut. Ins. Co.*, 693 F. 3rd 532, 542-43 (6th Cir. 2012) (*citing Dukes v. Walmart Stores*, Inc., 131 S. Ct. 2541, 2551 n. 5 (2011). Likewise, commonality and predominance are related because "[w]hile the commonality element of Rule 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b)(3) class must show that common questions will predominate over individual ones." *See Young*, 693 F.3d at 544.

As discussed on pages 20-24 of Plaintiffs Response to Objections (Docket No. 128), common policies, common practices, and the common language contained in Urban Active's form contracts resulted in common injuries to the Class/Subclass Members. Indeed, each Class/Subclass alleges a course of conduct that was applied uniformly and resulted in the unlawful sale of a contract and/or the unlawful charging of fees/dues. Each Subclass is defined by an objective action that subjected that Subclass Member to policies or practices that Plaintiffs allege violated the law and resulted in damages.[8] As such, Commonality, Typicality, and Predominance exist because the same policies that caused harm to the Class Representatives also harmed the Class/Subclass Members that they represent, and therefore, sufficient unity exists.

Last, this Settlement is a superior method of adjudication because joinder of 606,000 Class Members is impracticable. Fed. R. Civ. P. 23(b)(3). The damages suffered by individual Class Members are relatively small, so the expenses and burden of individual litigation would make it difficult for Class Members to individually redress

---

[8]     *See also Vaughn v. L.A. Fitness,* Case No. 10-cv-2326-MMB, (E.D. Penn., 2013) (Docket No. 85, p. 3-4) finding commonality, typicality, and predominance in overbilling claims based on defendant's "largely uniform" membership agreement and other common practices which resulted in Class members being treated similarly; *Friedman v. 24-Hour Fitness USA*, Case No. CV 06-06282 AHM, 2010 (C.D. California, Docket No. 580, p. 3-4) (finding commonality, typicality, and predominance in claims alleging continued billing after cancellation).

their harms.  In summary, the Settlement Class/Subclasses are suitable for certification, and the Court should certify them pursuant to Rule 23(a) and (b)(3), for purposes of Finally Approving this Settlement.

### 3.    Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625.  The Sixth Circuit has held that class representatives must have common interests with unnamed members and the representatives must vigorously prosecute the interests of the class through qualified counsel.  *Powell v. Tosh*, 2012 U.S. Dist. LEXIS 27912, 31-32 (W.D. Ky. Mar. 1, 2012) (citing *Senter v. GMC*, 532 F.2d 511, 524-25, (6th Cir. 1976)).

Here, the Class Representatives and Class/Subclass Members share common interests because, as discussed above, the legal and remedial theories raised by the Class Representatives are shared with the Class/Subclass Members.  In addition, no conflict exits because the Settlement provides Claim Awards based on objective criteria with no "common fund" cap.  Instead, any Class Member who filed a claims would recover the Claim Awards for each Subclass in which they qualify.  This ensures that the Class Representatives and the Class/Subclass Members both benefit by maximizing recovery from Urban Active without any sacrifice by some for the interests of others.

Last, as discussed numerous times in other papers, Class Counsel is experienced in the litigation and settlement of class actions, is qualified to represent the Class Representatives and Class/Subclass Members, and devoted significant time and resources to this litigation.  Settlement negotiations were intense, often contentious, and lasted over a five month time period.  Only after Class Counsel was satisfied that the

best recovery had been fully and finally negotiated for the Class and Subclasses did the parties negotiate payment of attorneys' fees and costs.

**C.** ***The Proposed Notice was more than Adequate.***

Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, (1985); *see also Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008). Due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173, 177 (1974).

Here, as discussed on pages 24-25 of Plaintiffs' Response to Objections (Docket No. 128), the Notice Program was previously approved by this Court and meets all of the requirements of Rule 23 and due process. Direct Postcard Notice was sent to all 601,494 Class Members for whom valid addresses existed, a website was created, and general publication was made. Dahl Affidavit at ¶¶ 12,16,17,27,28. In addition, the parties supplemented these standard notice procedures with an email notice, a reminder email notice, and the issuance of a press release that resulted in significant coverage in both newspapers and on television. *See* Exhibit 4 and 5. Indeed, the Notice Program used here was not just "'reasonably calculated, under all the circumstances" but it went above and beyond to inform class members of the Settlement and provide instructions on how to file a claim.

## V.     CONCLUSION

For the reasons set forth above, the Court should grant the parties Joint Motion for a Final Order (1) approving this Class Action Settlement, and (2) certifying the Class and three Subclasses for settlement purposes.  This Court should also rule on Plaintiffs' unopposed and separately filed Motion for an Award of Class Representative Enhancement Payments and Reasonable Attorneys' Fees and Costs.  In addition, this Court should grant Final Judgment dismissing all claims and causes of action on the merits and with prejudice according to the terms and conditions set forth in the Settlement Agreement and this Court's Orders.

Respectfully submitted,

s/ Thomas N. McCormick
William G. Porter (0017296)
wgporter@vorys.com
Thomas N. McCormick   (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
kjrubin@vorys.com
James B. Lind (0083310)
jblind@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone:  (614) 464-6400
Facsimile:  (614) 464-6350


Mark Landes   (0027227)
mlandes@isaacwiles.com
Gregory M. Travalio   (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman   (0076390)
mtroutman@isaacwiles.com
ISAAC, WILES, BURKHOLDER &
TEETOR, LLP
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121
Facsimile:  (614) 365-9516

*Attorneys for Plaintiffs*

s/  V. Brandon McGrath
V. Brandon McGrath (0072057)
BMcgrath@bgdlegal.com
Bingham Greenebaum Doll LLP
2350 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202
(513) 455-7600

Richard S. Gurbst (0017672)
Richard.Gurbst@squiresanders.com
SQUIRE SANDERS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
United States of America
(216) 479-8607

Dan L. Cvetanovich (0021980)
Dan.Cvetanovich@baileycavalieri.com
Sabrina Haurin (0079321)
sabrina.haurin@baileycavalieri.com
BAILEY CAVALIERI LLC
One Columbus
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
Telephone:  (614) 221-3155
Facsimile:  (614) 221-0479

*Attorneys for Defendant Global
Fitness Holdings, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 4, 2014, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.

/s/ Thomas N. McCormick
Thomas N. McCormick (0075496)