## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION (COLUMBUS)

| | |
|---|---|
| AMBER GASCHO, *et al.,* | |
| Plaintiffs, | Case No. 2:11-cv-436 |
| v. | Judge Smith |
| | Magistrate Judge King |
| GLOBAL FITNESS HOLDINGS, LLC, | |
| Defendants. | |

---

## REPLY OF JOSHUA BLACKMAN IN SUPPORT OF OBJECTION

---

*/s/ Adam E. Schulman*
Adam E. Schulman (admitted *pro hac vice*)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com


*/s/ Theodore J. Froncek*
Theodore J. Froncek
1208 Sycamore Street
Cincinnati, Ohio 45202
Phone: (513) 241-5670
Fax: (513) 929-3473
Email: tjfroncek@fuse.net

*Attorneys for Objector Joshua Blackman*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................I

TABLE OF AUTHORITIES................................................................................................ II

INTRODUCTION ......................................................................................................1

I.    There is still no legitimate reason why this settlement does not issue direct payments to known, eligible class members. ..................................................................................2

II.   The prevalence of named representative incentive awards is no reason to approve that misaligned structure in this case..................................................................................8

III.  The confluence of fee provisions demand rejection of the entire settlement as unfairly favoring class counsel..................................................................................9

IV.   If this Court approves the settlement, any fee award should be limited to 25% of the actual recovery..................................................................................13

V.    Class counsel's belated disclosure of the fee split between the Vorys and Isaac Wiles firms does not resolve the 23(h) issue.................................................................................15

VI.   The Court should not infer settlement approval from a low number of objectors, especially because the parties have artificially reduced the number of objections.......16

CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373 (D. Kan. 1971) .................................................................................................................17

*Burden v. Selectquote Ins. Servs.*, No. C 10-05966 SBA, 2013 U.S. Dist. LEXIS 16977 (N.D. Cal. Feb. 5, 2013) ..........................................................................................................5

*City of Livonia Employees' Retirement Sys. v. Wyeth*, 2013 U.S. Dist. LEXIS 113658 (S.D.N.Y. Aug. 7, 2013)............................................................................................................3

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ........................................................4

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ...................................................................12

*Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) ............................................................ 2-3

*Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373 (D.N.J. 2012) ............................................. 2-3

*Friedman v. 24 Hour Fitness USA*, 2010 U.S. Dist. LEXIS 143816 (C.D. Cal. Jul. 12, 2010)......4

*Galloway v. Kan. City Landsmen, LLC.*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) ............................................................................ 18, 19

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001).......................................6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).................................................................................13

*Hellum v. Prosper Marketplace, Inc.*, No.: CGC-08-482329 (Cal. Sup. Ct.)..................................18

*In re Apple Iphone4 Prods. Liab. Litig.*, 2012 WL 3283432, 2012 U.S. Dist. LEXIS 113876 (N.D. Cal. Aug. 10, 2012) .............................................................................................4

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013).........................................................6

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir.2011).............. 2, 3, 11, 12, 14, 15

*In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480, (W.D. Wash. Jun. 12, 2012).........................................................................................................3

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277 (3d Cir. 2005)........................................................................................................10-11

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013)....................................................*passim*

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 2006 WL

3332829, 2006 U.S. Dist. LEXIS 83479 (E.D. La. Nov. 15, 2006)....................................5-6

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ............................................................................................................................ 13, 17

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).............................15

*In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-md-1840-KHV-JPO, 2012 U.S. Dist. LEXIS 57981 (D. Kan. Apr. 24, 2012) .............................................................18

*Lemus v. H&R Block Enters. LLC.,* 2012 WL 3638550, 2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012)....................................................................................................6

*Kritzer v. Safeline Solutions,* 2012 U.S. Dist. LEXIS 74994 (S.D. Ohio. May 30, 2012) ...............4

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio. 2010) ............................ 3, 4, 14

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) .....17

*Martina v. L.A. Fitness Int'l, Inc.*, 2013 U.S. Dist. LEXIS 135285 (D.N.J. Oct. 8, 2013).............4

*McClintic v. Lithia Motors,* No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash. Jan. 12, 2012) .............................................................................................................19

*Milliron v. T-Mobile,* 2009 WL 3345762, 2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009) ....................................................................................................................4

*Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537 (W.D. Wash. 2009) .....................................4

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) .................................9

*Rawlings v. Prudential-Bache Properties*, 9 F.3d 513 (6th Cir. 1993). ....................................13-14, 17

*Richardson v. L'Oreal USA, Inc.*, __F.Supp.2d__, 2013 WL 5941486 (D.D.C. Nov. 6, 2013) ..17

*Shames v. Hertz Corp.*, 2012 WL 5392159, 2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) ....................................................................................................................4

*Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012) ............................................................................................18

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 2010 U.S. Dist. LEXIS 42357 (S.D. Ohio. Apr. 30, 2010) ................................................................................................................14

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) ......................................8, 9

*Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012).................................16

*Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal.

Oct. 21, 2013) ............................................................................................14

**Rules and Statutes**

Fed. R. Civ. P. 23 .................................................................................*passim*

Fed. R. Civ. P. 23(e)(3) ............................................................................15

Fed. R. Civ. P. 23(h) ......................................................................... 15, 20

Fed. R. Civ. P. 23(h)(1) .............................................................................15

**Other Authorities**

Advisory Committee Notes on 2003 Amendments to Rule 23 ..................13

Eisenberg, Theodore & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004) .............................17

Eisenberg, Theodore & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. REV. 1303 (2006) ....................................................... 8

Klonoff, Robert H., *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. PITT. L. REV. 727 (2008) .............................................................19

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71 (2007) ............................................... 16, 19

## INTRODUCTION

In accordance with the scheduling Order of January 9 (Dkt. 124), Objector Joshua Blackman submits this Reply in support of his earlier Objection (Dkt. 122) ("Obj.").[1] In his objection, Blackman cautioned that the $17-19 million valuation ascribed to this settlement was a mirage. And now, like a game show where contestants are confronted with a blurred photograph, the pixilation has gradually become clearer. With the settlement administrator's declaration on file (Dkt. 126-1) ("Dahl Decl."), we now know (1) that the approved claims rate stands at about eight percent;[2] and (2) that unless any discrepancies are ultimately found in the defendant's records, the final class payout will be $1.54 million.[3] As such, class counsel is seeking unopposed 60%—$2.39 million— of the total proceeds of a settlement that leaves roughly 92% of class members with no benefit at all. In the language of *In re Dry Max Pampers Litigation*, this is "preferential treatment" that renders the settlement unfair and unfit for approval. 724 F.3d 713, 718 (6th Cir. 2013); *see also* Obj. 13-17.

The parties' responses[4] to the objections are notable both for what they say and what they do not say. They both offer the same justification for the claims process, namely, that some of the defendant's contact information for class members is outdated. As discussed below, this rationale is not persuasive and does not hold up under scrutiny. The plaintiffs

---

[1] Later today, Blackman intends to file a separate response in opposition to Defendant's Motion to Strike (Dkt. 125).

[2] This is calculated by dividing the number of valid claimants (49,457) by the number of total class members (606, 246). *See* Dahl Decl. ¶33.

[3] *See* Dahl Decl. ¶38. If all of the independent claims were eventually deemed valid , the final class payout would be $2 million.

[4] Plaintiffs' Response (Dkt. 128) will be designated "Pl. Resp." Defendant's Response (Dkt. 126) will be designated "Def. Resp."

(but not the defendant) argue that enhancement awards are prevalent and thus present no problem, but overlook recent binding Sixth Circuit case law. Most significantly, the parties give short shrift to Blackman's cardinal argument that the fee provisions of the settlement afford unduly favorable treatment to class counsel. Although this argument arises from *Pampers*, *In re Bluetooth Headset Products Liability Litigation*,[5] and other cases, neither the plaintiffs nor the defendant address it fully. The defendant is entirely silent on the issue, and the plaintiffs address it only as a matter of whether of the fee request is reasonable. Pl. Resp. 32-41. But it's more central than that. Disproportional fees, clear sailing agreements, and segregated fee awards bear not merely on the reasonableness of the fee award itself, but on the reasonableness of the entire settlement. Try as they might, the parties cannot waive away the "economic reality" that counsel's fees, even when negotiated separate and apart from class relief, affect settlement fairness. *Pampers*, 724 F.3d at 717 (quoting *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998)).

I.   **There is still no legitimate reason why this settlement does not issue direct payments to known, eligible class members.**

According to the plaintiffs, Blackman has asserted a "boilerplate objection [to the claims process], which is often raised by professional objectors, especially CCAF, [and] has been widely rejected despite CCAF's claims to the contrary." Pl. Resp. 26.[6] None of this is

---

[5] 654 F.3d 935 (9th Cir. 2011).

[6] Plaintiffs' unprofessional ad hominem attacks (Pl. Resp. 6-7) directed at the CCAF and its founder Ted Frank are unworthy of a response exceeding a footnote. Still, Blackman would be remiss not to point out the errors in plaintiffs' attempted impeachment of CCAF's credibility.

Plaintiffs cite three cases. The first, *Dewey v. Volkswagen,* was overturned and vacated after a successful CCAF appeal. *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012). Perhaps even more importantly, on remand the district court disavowed that any negative connotation should be drawn from its earlier use of the term "professional objector": "The Court's use of the term 'professional objector' did not intend to connote that the objections presented in

accurate. CCAF has achieved success in far more cases than not, including two for two in objections it previously filed in this Circuit: *Pampers, supra* (upholding CCAF objection); *Lonardo, supra* (awarding CCAF attorneys' fees for improving class recovery by $2 million).

---

2010 or now were motivated by a desire to hold up the settlement for personal profit, even though some academic commentary assigns such a meaning to the term.… The phrase was not meant to be pejorative and this professional focus does not bar counsel from receiving an appropriate fee award where counsel has advocated for and helped secure an improved settlement to the benefit of the class." *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012). The district court found that CCAF's clients had "improved the settlement" by "identif[ying] a deficiency in the adequacy of the representative plaintiffs and successfully pursu[ing] their argument on appeal, such that a new settlement was negotiated..." *Id.* at 396. Thereupon, Judge Shwartz awarded CCAF fees of "10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery." *Id.* at 396.

*Lonardo v. Travelers Indem. Co.* no more substantiates the denunciations than does *Dewey*. *Lonardo* criticized only one particular argument as "long on ideology"; it otherwise held that "Frank's policy arguments contribute to the legal discussion regarding this important area of law," and upon reconsideration the *Lonardo* court awarded fees to CCAF based on the $2 million benefit to the class caused by the objection of Frank's client. 706 F. Supp. 2d 766, 807, 816 (N.D. Ohio. 2010). The court's other findings were similarly complimentary. *Id.* at 807 ("[T]he Court is convinced that Mr. Frank's goals are policy-oriented as opposed to economic and self-serving."); *id.* at 812 ("it appears that the parties' decision to propose it without a Court order was prompted, at least in part, by Objector Greenberg's filing.") Even more significantly, the Ninth Circuit was ultimately persuaded that the singular argument which *Lonardo* had described as "long on ideology and short on law" was legally correct. The Ninth Circuit held that the segregation of fee funds (i.e. "a kicker") is a sign of a self-dealing unfair settlement. *Contrast In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), *with Lonardo*, 706 F. Supp. 2d at 785. That dictum from *Lonardo*—"long on ideology but short on law"—is now incorrect as a matter of law.

The final case, *City of Livonia Employees' Retirement Sys. v. Wyeth*, 2013 U.S. Dist. LEXIS 113658 (S.D.N.Y. Aug. 7, 2013) did uncharitably find that CCAF's client's challenge to class counsel's 4.2 lodestar multiplier was not "grounded in the facts" of the case. Despite this criticism however, the Court ultimately partially concurred with the objection, and lowered the fee by 20%.

Perhaps now the Court can see why Blackman endeavored to preempt such accusations in his initial objection. *See* Obj. 3-5. As has been CCAF's all-too-customary experience in its short history, class counsel here adopts a "hammer and tongs" approach that is unwarranted. *See In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480, at *35 (W.D. Wash. Jun. 12, 2012) (imposing $100,000 sanction against class counsel).

---

The only "boilerplate" is the boilerplate response by class counsel that CCAF files boilerplate objections, a baseless accusation class counsel probably repeats often in their briefs in other cases. It is quite evident that CCAF's briefs in this case are unique to this case.

Blackman's objection to the claim process here is unique, because as he noted previously, claims processes are generally warranted by necessities of the settlement. Obj. 9. The vast majority of cases that plaintiffs and defendant muster in their responses are examples of justified claims process mechanisms. *See* Pl. Resp. 26-27; Def. Resp. at 5-6 (citing *e.g.*, *In re Apple Iphone 4 Prods. Liab. Litig.*, 2012 WL 3283432, 2012 U.S. Dist. LEXIS 113876 (N.D. Cal. Aug. 10, 2012) (claims process necessary so that class members could choose between cash and product relief); *Shames v. Hertz Corp.*, 2012 WL 5392159, 2012 U.S. Dist. LEXIS 158577 (S.D. Cal. Nov. 5, 2012) (same); *Lonardo v Travelers Indem. Co.*, 706 F. Supp 2d 766, 784 (N.D. Ohio 2010) (claims process needed to establish presumption of subjective reliance); *Milliron v. T-Mobile*, 2009 WL 3345762, 2009 U.S. Dist. LEXIS 101201, at *19 (D.N.J. Sept. 10, 2009) (claims process necessary to require class members to "submit certain information proving that they are entitled to collect the relief awarded in this case."); *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537 (W.D. Wash. 2009) (similar); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 314 (W.D. Tex. 2007) (claims process "necessary to confirm class membership" and "determine the amount of the monetary payment")).[7]

Thus, Blackman does not allege that "a claims process is [] inherently inconsistent

---

[7] In the two "gym cases" referenced by plaintiffs, *Martina v. L.A. Fitness Int'l, Inc.*, 2013 U.S. Dist. LEXIS 145285, at *27 (D. N.J. Oct. 8, 2013), and *Friedman v. 24 Hour Fitness USA, Inc.*, 2010 U.S. Dist. LEXIS 143816, at *9 (C. D. Cal. Jul. 12, 2010), there were no apparent objections to the claims process itself, and in *Martina* there were no objections at all. In *Kritzer v. Safeline Solutions* too there were no objections and the court did not discuss the propriety of the claims process itself. 2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012). That class members failed to protect their rights in other cases does not bind an objecting class member in this case.

with a fair and reasonable settlement." (Pl. Resp. 27 (quoting *Spark v. MBNA Corp.*, 48 Fed. Appx. 385, 390 (3d Cir. 2002))), nor that a claims process is "inherently objectionable" (Def. Resp. 5 (quoting *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577, 31-32 (S.D. Cal. Nov. 5, 2012))). He only maintains that a claims process must be justified by a legitimate reason beyond depressing class recovery while simultaneously creating the illusion of class benefit.[8] Because none of the reasons given in the preceding paragraph can legitimate the claims process here, the parties have grasped for another.

They profess that the defendant's records are out of date and thus would result in some payments to addresses where class members no longer live. Pl. Resp. 4, 27; Def. Resp. 2, 5-10. Plaintiffs argue that *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 2006 WL 3332829, 2006 U.S. Dist. LEXIS 83479 (E.D. La. Nov. 15, 2006) supports this rationale, but a closer examination of that case reveals its inapplicability here. The objector in *Educational Testing Service* proposed that checks should be sent out with the initial notice, which would have resulted in significant over-inclusion of non-class members. Blackman made no such recommendation here. Rather, his recommendation was and remains that checks be mailed after the settlement is approved. Crucially, this means that the checks would only be mailed after the notice administrator had undertaken multiple measures to update class members' address information. *See* Dahl Decl. ¶¶7-14; Def. Resp. 6. Ultimately, Mr. Dahl concluded that "90.8% of the Postcard Notices were delivered" and that "the Notice reached at least 90.8% of potential Class Members." Dahl Decl. ¶¶14, 45. Therefore, even assuming that after conducting the multiple address traces/look-ups, 10%

---

[8] That the parties in *Burden v. Selectquote Ins. Servs.*, No. C 10-05966 SBA, 2013 U.S. Dist. LEXIS 41522 (N.D. Cal. Mar. 18, 2013) eventually obtained preliminary approval by alleviating Judge Armstrong's concerns about the use of claims process says nothing about the settling parties' proffered justifications here.

of the delivered checks inadvertently failed to reach class members, direct payment would still enable over 80% of class members to participate in the recovery here, rather than merely 8.15%.

Plaintiffs allude to the threat of fraud, presumably by which they mean that unintended recipient non-class members would commit crimes (felonies?) by endorsing and depositing checks that were issued to class members. Given the potential criminal consequences and the relatively low sums at stake (between $5 -$75),[9] it defies common sense to believe there would be a significant fraud issue, or as the defendants refer to it a "lottery" issue. Def. Resp. 7. Beyond that, fraud-proofing a settlement should not take precedence over remitting benefit to class members. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013) (rejecting requirement of proof of purchase as an anti-fraud mechanism where as a practical matter it served to severely suppress class recovery). Here, the approved claims rate sits at just over 8%. If the parties had agreed to issue checks directly, more than ten times as many class members would be receiving compensation.

Plaintiffs note that the open claims process resulted in 3900 potential more claimants. This is correct but not responsive to Blackman's objection. No one said there shouldn't be

---

[9] Contrast these sums with *Education Testing Service*, which involved payments of at least $500 per class member. 2006 U.S. Dist. LEXIS 83479, at *4-*5.

Similarly, in the only case cited by the parties that affirmatively concluded that a claims-made settlement demanded no justification, *Lemus v. H&R Block Enters. LLC*, the court qualified its approval noting that "[w]hile, in general, claims-made settlements with reversions to the defendants are disfavored, here a significant portion of the class participated in the settlement, and the average class member recovery is at least $1,200." 2012 WL 3638550, 2012 U.S. Dist. LEXIS 119026, at *18 (N.D. Cal. Aug. 22, 2012). That contrasts with the 8.15% allowed claims rate in this case, and the maximum $75 award. Also significantly, the court in *Lemus* lopped off more than half of class counsel's $11.66 million request so that the attorneys would not obtain 50% of the actual payout. Because that court allowed the defendant to capture the excess, by rejecting only the fee request rather than the entire settlement, one can glean why only the defendants' cite this case. *See* Def. Resp. 6.

an open claims process accompanying the direct payment for known class members. *See* Obj. 11 ("any underinclusiveness of the defendant's files is not a reason to abandon a direct payment process for those class members who are included in the records") (citing *Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012)). Second, there is no suggestion by either the parties or the settlement administrator that *any*—let alone *many*—of these claims are valid allowable claims. *See* Obj. 11 ("Blackman strongly suspects that this will show that no allowed claimants will come from outside those already detailed in the defendant's records."). Rather, the only concrete fact is that the parties paid for the added expense of having the administrator "compare[] the subclass eligibility data provided by Defendant with the subclasses claimed by the Class Member on a claim-by-claim basis." Dahl Decl. ¶34. Moreover, the fact that 20,000 individuals "indicated subclass membership in an amount greater than the data provided" Dahl Decl. ¶38, suggests that concomitantly, some class members claimed too few subclasses on their claim form. *See* Obj. at 3 n.1. Both problems could and should have been avoided with a direct distribution mechanism.

If the settling parties had a genuine concern regarding outdated contact information—as opposed to merely an *ex post* rationalization for the unreflective use of the claims process—they could have made address confirmation as simple as clicking a link on the email notice, or a button on the settlement website. But they didn't do this. Instead, they turned to the filing of claim forms because it is a tried and true method of reducing actual class recovery (to the benefit of the defendant), without reducing the appearance of class recovery (to the benefit of class counsel). Such an inference is not only justified by the above considerations, but also by its consistency with other red flags in this settlement. *See infra* §III (discussing the inequitable fee provisions of the settlement).

At the end of the day, the parties are asking this Court to place the burden to disprove the fairness of the claims procedure upon the objectors. Def. Resp. 9 ("Claims made settlements are routinely approved unless there is something that makes the claims process unnecessary or unfair.")). That is backward. The Sixth Circuit's command is clear: "it [i]s the parties' burden to prove the fact [of fairness], rather than [objector's] burden to disprove it." *Pampers*, 724 F.3d at 719. The settling parties have not done so and so the settlement's use of a claims process in lieu of direct payment cannot be approved.

## II. The prevalence of named representative incentive awards is no reason to approve that misaligned structure in this case.

As with the rationalization of the claims process, the plaintiffs' defense of the representatives' enhancement awards basically amounts to "everyone's doing it." *See* Pl. Resp. 29 (citing several cases that predate *Pampers* and *Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013)). Claims processes are deployed and independently justified in many settlements;[10] ubiquity alone indicates nothing about their legitimacy. Likewise, the relative ubiquity[11] of incentive awards proves little.  As *Pampers* made forcefully clear, with respect to incentive awards, the "everyone's doing it" rationale does not provide "much comfort." 724 F.3d at 722 ("[T]o the extent that incentive awards are common, they are like dandelions on an unmowed lawn — present more by inattention than by design.").

*Pampers* demonstrates that when a settlement affords class representatives the privilege of seeking unopposed incentive awards worth many times the value of their underlying claim, it undermines the representatives' incentive to care about what individual

---

[10] *See supra* §I.

[11] Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303, 1307 (2006) (finding that 28% of class actions include incentive awards to class representatives).

class members recover on their actual claims. *Id.* at 722; Obj. 22. In such a scenario, named representatives cannot be expected to fulfill their supervisory obligations in an unbiased way. Not unexpectedly (Obj. 22), the plaintiffs attempt (Pl. Resp. 30) to distinguish *Pampers* because class members in *Pampers* obtained only injunctive, *cy pres*, and burdensome restitutionary relief. However, this attempt at distinguishing runs headlong into two obstacles. First, the focus of *Pampers* was primarily a comparison between the named representative' incentive awards and the amount that would make them whole, not a comparison between the incentive award and the award of absent class members. 724 F.3d at 722. Second, *Vassalle* and *Radcliffe v. Experian Info Solutions*,[12] both explain how adequacy and fairness issues are present even when absent class members can obtain minor cash payments. *See* Obj. at 22-23 (discussing cases).

## III. The confluence of fee provisions demand rejection of the entire settlement as unfairly favoring class counsel.

The settling parties have negotiated a settlement that entitles plaintiffs' counsel to seek an excessive 60% of the proceeds of the settlement without opposition from the defendant, and discourages scrutiny of that award by stipulating that the overage will revert to the defendant, not the class. Such an attorneys' fee-driven settlement cannot stand. *See* Obj. 16-17 (citing cases). Blackman has made it pellucidly clear that this "preferential treatment to class counsel is the gist of [his] objection here." Obj. 7-8; *see also* Obj. 13-21 (expanding this argument in detail). Nevertheless, the defendant ignores this objection entirely, and the plaintiffs relegate it to a short subsection within a larger section arguing that "Class Counsel's fee request is reasonable under both the lodestar and common fund approach as adopted by Courts in the Sixth Circuit." *See specifically* Pl. Resp. 36-37

---

[12] 715 F.3d 1157 (9th Cir. 2013) (cited by *Pampers*, 724 F.3d at 722).

("Plaintiff's Fee Request is Reasonable in Proportion to Damage Actually Suffered by the Class."); 39-41 ("The CCAF's "clear sailing" and "kicker" arguments are without merit.").

In those subsections, the plaintiffs make the exact same formalistic and unrealistic arguments that Blackman warned against in his initial filing. *Compare* Pl. Resp. 39 (claiming that Blackman's objection is premised on the erroneous notion that fees and class relief were negotiated simultaneously) *with* Obj. 15-16 (explaining how there can still be distributional unfairness regardless of whether the negotiation of fees and class relief was separate); *compare also* Pl. Resp. 40 (asserting the independence of the class relief from the fee agreement) *with* Obj. 15, 19 n.9, 20 (documenting "the economic reality [] that a settling defendant is concerned only with its total liability.") (quoting *Pampers*, 724 F.3d at 717 (internal quotation omitted)).[13]

As a matter of law, the plaintiffs are just incorrect to maintain that by separating negotiation of fees and class relief, they can effectively isolate the effect of the fee award from that of the class relief. *See* Obj. 15-16. Again, as the Third Circuit has explicitly stated, "even if counsel did not discuss fees until after they reached a settlement agreement, [such a fact] would not allay our concern since the Task Force recommended that fee negotiations be postponed until the settlement was judicially approved, not merely until the date the parties allege to have reached an agreement." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank*

---

[13] Plaintiffs profess not to understand "constructive common fund" doctrine, although Blackman defined the term in his objection. *Compare* Pl. Resp. 41 n.25, *with* Obj. 25-26. Contrary to the plaintiffs' accusation, CCAF does not believe that "an attorney fee can never be independent of the [class relief]." Pl. Resp. 33. It just so happens that in this case the terms of the settlement, in particular the $2.39 million clear sailing provision and the segregation of that amount from the class proceeds, established a constructive common fund. Had the parties adopted the *Community Bank* approach and had the settlement's non-fee provisions approved before agreeing to a compromise on appropriate fees, then there would be no contention that this was a constructive common fund.

*of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005) (quoting *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 804 (3d Cir. 1995) (cited by *Pampers*, 724 F.3d at 717, 718, 720, 721)).  Nor is this merely some idiosyncratic legal principle of the Third Circuit. In *Bluetooth*, the Ninth Circuit adopted the troika of disproportionate fee request, clear sailing provision and segregated fee fund, as three hallmarks of a unfair fee-driven settlement, repudiated any reliance on the parties "self-serving remarks" that fees are independent of class relief. 654 F.3d at 948. Neither settling party even cites *Bluetooth*.

Plaintiffs claim that *Pampers* says nothing about a constructive common fund or "kicker" structure. Pl. Resp. 40 n.24. This is wrong; *Pampers* speaks volumes. The result in *Pampers*, the very holding that the preferential treatment of class counsel rendered the settlement unfair, logically entails the rejection of the plaintiffs' theory. As here, the parties in *Pampers* continuously propounded the argument that the fee award did not affect the class relief because it came from a separate fund and was separately negotiated only after agreement on class relief had occurred. *See Pampers*, No. 11-4156, Brief of Plaintiffs, 44-55 (6th Cir. Mar. 20, 2012); Petition for Rehearing *En Banc* of Defendants, 8-11 (Aug. 16, 2013). Moreover, unlike here, the parties in *Pampers* contended that the fee number was further independent because it was actually proposed by a neutral mediator rather than the parties themselves. *See Pampers*, No. 10-cv-301 (S.D. Ohio.), Dkt. 10-1, ¶¶17-19. As is self-evident from the final opinion, the Sixth Circuit disagreed with this theory. *See Pampers*, 724 F.3d at 721 ("[O]ne fact about this settlement is concrete and indisputable: $2.73 million is $2.73 million.").

Whether a fee is "disproportionate" under *Bluetooth* or "commensurate" under *Pampers* had nothing to do with whether the negotiated class relief is a fair approximation of

the value of class members' claims. *Contra* Pl. Resp. 37. Rather, disproportionality can only be evaluated by examining what percentage of the settlement is being consumed by the fee award. *See* Obj. 15-17. Here that number is most likely 60%, and has no possibility of being less than 54%. Either figure is well beyond the 38.9% ratio that the Ninth Circuit recently found "clearly excessive." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012).

Plaintiffs are also mistaken when they suggest that Blackman is alleging "collusion between the Plaintiffs and Defendant." Pl. Resp. 39, 40 n.23 (implying that the only problem with clear sailing is explicit collusion). Blackman has not alleged explicit collusion. Since he was not a fly on the wall in the negotiating room, he has no basis to opine on that matter. Yet, he doesn't have to allege collusion to succeed in his objection, because "the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717.

While it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient*. "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948 (internal quotation omitted). Due to the defendant's indifference as to the allocation of funds between the class, the named representatives and class, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (quoting *Dennis*, 697 F.3d at 864).

IV.     **If this Court approves the settlement, any fee award should be limited to 25% of the actual recovery.**

Blackman has already described why the percentage of recovery fee approach is superior to the lodestar one. Obj. 24-26. Plaintiffs suggest two reasons for their opposite conclusion that the lodestar approach is best-suited for this settlement: that some of the underlying claims "involved fee shifting statutes" and that "the award of attorneys fees does not diminish the fund available to the class." Pl. Resp. 32-33. The fallacy of the latter rationale is detailed above and need not be repeated. *See also In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("*GM Trucks*") (even in a constructive common fund scenario "the court should probably use the percentage of recovery rather than the lodestar method as the primary determinant, although the ultimate choice of methodology will rest within the district court's sound discretion."). As to the fee shifting rationale, fee shifting in its platonic form occurs after counsel litigates a case to a successful adjudicated judgment. Needless to say, that did not occur here. Rather, the parties have settled in such a way that creates a constructive common fund. The settlement presents no difficulty with monetizing injunctive relief. And while fee shifting statutes underlie some class members claims in this case, the common benefit doctrine and percentage of recovery approach applies evenly to all class members. As such, the percentage approach is superior.

But even if this Court were to apply the lodestar method, the award could not stand as requested. Under any methodology, the "fundamental focus is results achieved *for class members*." Advisory Committee Notes on 2003 Amendments to Rule 23(h) (emphasis added). When applying the lodestar method, the district court must "consider[] the relationship between the amount of the fee awarded and the results obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). *See also Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 517 (6th Cir. 1993) ("[O]ne of the primary determinants of the quality of work performed is the result

obtained."); *Bluetooth*, 654 F.3d at 942 (foremost consideration in adjusting the lodestar is the benefit obtained for the class). To avoid an unpalatable distribution in which class counsel escapes with 60% of the proceeds, the fee would need to be lowered significantly below the baseline lodestar. *See Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180 (N.D. Cal. Oct. 21, 2013) (reducing fee by 25% from baseline lodestar to avoid class counsel obtaining a disproportionate 44% of the settlement).

In their percentage of recovery cross-check analysis, plaintiffs repeat and compound their earlier missteps. *See* Obj. 26-31. They claim that "[a] recent Sixth Circuit decision reviewed these same arguments (also presented by the CCAF), and soundly rejected them. *See Van Horn*, 2010 U.S. Dist. LEXIS 42357 (S.D. Ohio), *aff'd* 436 F. App'x [496] (6th Cir. 2011)." Pl. Resp. 35. Plaintiffs are again wrong on all counts. CCAF did not participate whatsoever in the *Van Horn* litigation. Nor did the court consider the arguments that Blackman makes here. *Compare* 2010 U.S. Dist. LEXIS 42357 *with* Obj. at 26-31. Both *Lonardo*[14] and *Van Horn* recognized the "unsettled" nature of the question regarding how to calculate a fund's denominator, and both decided to adopt the midpoint methodology. However, they both did so without the aid of several relevant appellate decisions, most notably the binding *Pampers* decision. *Pampers* not only discussed how district courts should decide cases on "reality" rather than "fiction," *Pampers*, 724 F.3d at 721, it also explicitly held that the settling parties have the burden of proving that supposed relief actually confers a benefit on absent class members. *Id.* at 719. Here, the parties, via the Dahl Declaration, have only proved that 8.16% of class members have been benefitted, but they ask this court to

---

[14] Although CCAF did represent a class member in *Lonardo*, plaintiffs are flatly incorrect when they say that the *Lonardo* court "considered an identical CCAF Objection." Pl. Resp. 35. Time, experience and intervening precedent and authority allows far deeper development of the arguments now.

conclude, contrary to the evidence, that 100% of class members have been benefitted.

If the Court approves the settlement as is, fees should be limited to 25% of the actual recovery. (The appropriate calculation is x = .25 *( x+ $1.54 million). Solving for x equates to fees of $513,000). But, again, because of the segregation of fee and benefit funds, approving the settlement and reducing fees is a distant second-best solution. It allows money to revert to the defendant even though they were willing to put that money on the table to settle the case. As in *Bluetooth*, there is "no apparent reason the class should not benefit from the excess allotted for fees." 654 F.3d at 949.

## V.    Class counsel's belated disclosure of the fee split between the Vorys and Isaac Wiles firms does not resolve the 23(h) issue.

Blackman has called out class counsel for seeking to divide a lump sum fee award, in contravention of Fed. R. Civ. P. 23(h). Obj. 31-34. Class counsel, without admitting error, now seek to remedy the defect by announcing that the division will be 72% to Vorys and 28% to Isaac Wiles. Pl. Resp. 38. Obviously, a disclosure that comes only after the objection deadline cannot comply with Rule 23(h)(1)'s directive to give "reasonable notice" to absent class members. *See In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010).

Secondly, there remains an outstanding issue of how much money, if any, class counsel have paid to lead counsel in the *Seeger* and *Robins* actions, to prevent them from pursuing objections in this case. *See* Fed. R. Civ. P. 23(e)(3) (requiring the parties seeking approval to file a statement identifying any agreement made in connection with the proposal). The Court should not approve the settlement without apprising itself of the posture of those negotiations.

**VI.    The Court should not infer settlement approval from a low number of objectors, especially because the parties have artificially reduced the number of objections.**

In their response, the plaintiffs argue that because only a small fraction of the class has objected the settlement, the silence of the rest demonstrates endorsement or approval. Pl. Resp. 6 n.2. This is an impoverished argument that has been refuted by authorities time and again.

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). Another common response is from non-lawyers will be the affirmative avoidance, whenever possible, of anything involving a courtroom.

Class counsel argue that this understandable tendency to ignore notices or free-ride on the work of other objectors is best understood as acquiescence or even affirmative support for the settlement. This is wrong. Silence is simply *not* consent. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 73 (2007).

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *GM Trucks*, 55 F.3d at 812 (internal citation omitted); *accord Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir. 1993) ("[I]t is to be expected that class members with small individual stakes in the outcome will not file objections"). Moreover, "where notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-81 (7th Cir. 1987).

As such, the response from class members cannot be seen as something akin to an election or a public opinion poll. *See GM Trucks*, 55 F.3d at 813; Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1561 (2004) ("Common sense dictates that apathy, not decision, is the basis for inaction.").

"[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *GM Trucks*, 55 F.3d at 812-13; *Vought*, 901 F. Supp. 2d. at 1093. "One good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement." *Richardson v. L'Oreal USA, Inc.*, ___F. Supp. 2d___, 2013 WL 5941486, at *14 (D.D.C. Nov. 6, 2013) (Bates, J.) (sustaining CCAF's client's objection).

Yet more conducive to apathetic inaction, the parties have designed a process of objecting and opting out which is "unnecessarily onerous". *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *16 (W.D. Mo. Oct. 12, 2012) (denying settlement in part based on parties' failure to allow class members to opt out via email alone), *later proceeding reported at* 2013 U.S. Dist. LEXIS 92650, at *10-*11 (W.D. Mo. Jul. 2, 2013) (noting that after the initial settlement rejection "[t]he parties have simplified the opt-out provision so that in order to opt-out, class members need only send a single email to defense counsel."). The requirement that unrepresented objectors print and post multiple copies of their objection/exclusion is both expensive and outdated in 2014. *See Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8-*9 (N.D. Cal. Nov. 15, 2012) ("[T]he parties have made the procedures for filing objections unduly burdensome. There is no reason to require … the objectors to mail their objections to three different locations."). Other courts permit the relatively efficient (indeed, close to costless) method of transmitting objections by a single electronic submission. *See e.g., In re Motor Fuel Temperature Sales Practices Litig.*, No 07-md-01840-KHV-JPO, Order (Dkt. No. 3019), at 2 (D. Kan. Nov. 10, 2011) ("If Costco plans to proceed with email notification, it must allow class members to opt out of the class and object to the settlement electronically"); *Hellum v. Prosper Marketplace, Inc.*, No.: CGC-08-482329 (Cal. Sup. Ct.), *case documents available at* http://www.prosperclassaction.com/ (last visited Jan. 29, 2014).

Where electronic modes of opting-out and objecting are available, the "vast majority" of participating class members will use those avenues. *Motor Fuel Temperature*, 2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012); *id.* at *74 n.13 (nearly three times more people opted-out electronically than by mail); *Fraley v. Facebook, Inc.*, No. 11-cv-01726 RS (N.D. Cal. Jun. 7, 2013), Declaration of Jennifer M. Keough Regarding Settlement Administration (Dkt.

341) at ¶12 (6,884 of 6,946 opt-out requests (99.1%) were submitted electronically via the settlement website when that option was available).

Preferring a more costly, inefficient alternative over seamless electronic processes can only give rise to the inference that the parties wished to undermine the autonomous decisions of class members. It has been known for at least a half-decade that "the ease and cost-efficiency of such direct internet submissions increases the likelihood of absent class member participation." Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet,* 69 U. Pitt. L. Rev. 727, 766 n. 251 (2008); Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. at 128-29. Indeed, notice was distributed in large part via email, 97% of claims forms were submitted online,[15] yet absent class members' expressions of dissent cannot be made in the same medium. Class counsel is not licensed to consign objectors or opt-outs to second class status.

"One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) (critiquing equivalent opt-out and objection process and ultimately rejecting settlement). Together, the hurdles here create doubt as to whether the settlement appropriately respects class members' Fed. R. Civ. P. 23 rights to object to the settlement and opt-out of the class certification. Not only do they constitute a reason to reject the settlement in this case, *see e.g., Galloway*, 2012 U.S. Dist. LEXIS 147148, at *16, they provide an added reason to discredit the argument that the lack of objectors signals the class members' approval of the settlement.

---

[15] Dahl. Decl. ¶31 (attesting that more than 97% of claims filed were submitted online).

## CONCLUSION

For the foregoing reasons, this settlement should be rejected as unfair and unreasonable. At the very least, the fee request must be reduced and individuated in accordance with Rule 23(h).

Dated:  February 5, 2014                      Respectfully submitted,

                                              */s/ Adam E. Schulman*
                                              Adam E. Schulman (admitted *pro hac vice*)
                                              CENTER FOR
                                              CLASS ACTION FAIRNESS
                                              1718 M Street NW, No. 236
                                              Washington, DC 20036
                                              Telephone:  (610) 457-0856
                                              Email:  shuyande24@gmail.com

                                              */s/ Theodore J. Froncek*
                                              Theodore J. Froncek
                                              Ohio Reg. No.: 016116
                                              1208 Sycamore Street
                                              Cincinnati, Ohio 45202
                                              Phone: (513) 241-5670
                                              Fax: (513) 929-3473
                                              Email: tjfroncek@fuse.net

                                              *Attorneys for Joshua Blackman*

## CERTIFICATE OF SERVICE

I certify that pursuant to Local Rule 5.2(b), I have filed the foregoing document through the Court's ECF system, which has effectuated service of this Objection upon the following all attorneys of record in this matter.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: February 5, 2014                         */s/ Adam E. Schulman*
                                                Adam E. Schulman