# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION (COLUMBUS)

| | |
|---|---|
| AMBER GASCHO, *et al.,*  Plaintiffs,  v.  GLOBAL FITNESS HOLDINGS, LLC,  Defendants. | Case No. 2:11-cv-436  Judge Smith  Magistrate Judge King |

## OBJECTIONS OF JOSHUA BLACKMAN TO REPORT AND RECOMMENDATION

*/s/ Adam E. Schulman*
Adam E. Schulman (admitted *pro hac vice*)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com

*/s/ Theodore J. Froncek*
Theodore J. Froncek
1208 Sycamore Street
Cincinnati, Ohio 45202
Phone: (513) 241-5670
Fax: (513) 929-3473
Email: tjfroncek@fuse.net

*Attorneys for Objector Joshua Blackman*

Magistrate Judge King's Report and Recommendation ("R&R") was filed on April 4, 2014. Dkt. 141. Objections to the report are due within 14 days of its filing. R&R 79; *accord* Fed. R. Civ. P. 72(b)(2). Disputed portions of the R&R are reviewed *de novo*, and the district court may accept, reject, or modify the recommended dispositions, among other options. Fed. R. Civ. P. 72(b)(3).

Previously, Blackman filed an objection to the settlement and a reply memorandum in support of that objection. *See respectively* Dkt. 122 ("Blackman Obj."); Dkt. 133 ("Blackman Reply"). He then appeared through counsel at the fairness hearing to give argument and cross-examine the settlement administrator. Transcript, Dkt. 139 at 54-57, 70-81. He now objects to recommendations (a), (b), (c), (d), (e) and (f) of the R&R, which suggest that this Court fully approve the settlement, incentive, and fee awards. *See* R&R 78-79. By reference, Blackman now reaffirms and incorporates by reference his earlier filings and arguments into these objections to the R&R. To be specific though, he objects to the following reasoning and conclusions of law and fact (in sequential order as they appear in the R&R):

1. The R&R infers settlement fairness from a dearth of objections and opt-outs, despite finding that the objections were "vigorously presented and pursued." R&R 38-39. This inference is legal error, especially given the factual finding of vociferous objection. *See* Blackman Reply (Dkt. 133) 16-20; *see also In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013) ("*Pampers*") (reversing settlement approval where only three class members objected below and only one proceeded to appeal).

2. The R&R mistakenly concludes that the public interest favors approval of this settlement. R&R 39. While courts do espouse a preference for settlement of complex litigation, that preference is more than counterbalanced by the need to prevent any public appearance that the judiciary is affording red carpet treatment to attorneys. *See e.g.,*

*Pampers*, 724 F.3d 713 (6th Cir. 2013); *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir. 1985) ("When the class attorneys succeed in reaping a golden harvest of fees in a case involving a relatively small recovery, the judicial system and the legal profession are disparaged.") (internal quotation omitted). Approval here would reify the lamentable proverb that "[a] lawsuit is a fruit tree planted in a lawyer's garden." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) (internal citation omitted) (abrogated on other grounds by *Goldberger v. Integrated Res.*, 209 F.3d 43, 49 (2d Cir. 2000)).

3. Although the R&R correctly recognizes that preferential treatment to class counsel must be considered (R&R 39-41), it errs in departing from *Pampers* and *In re Bluetooth Headset Products Liability Litigation*[1] by recommending settlement approval despite the preferential treatment afforded to class counsel. *See* Blackman Obj. 13-21; Blackman Reply 9-13. The R&R seeks to justify its deviation from *Pampers* in two ways: (A) class counsel here has litigated this action vigorously for two and one-half years and (B) this settlement provides more monetary relief than the pittances in *Pampers*. R&R 43. Neither justification suffices. <u>First,</u> a vigorous litigation with much labor expended by class counsel does not justify a settlement that is disproportionately slanted in favor of counsel and against their clients. For example, in *Pampers*, the district court's unchallenged conclusion that a $2.73 million fee was "less than what the lodestar calculation would reflect, and [would] properly compensate[] class counsel for extraordinary work" could not justify a settlement where the fee was not "commensurate" with class relief. *Compare* Transcript of Fairness Hearing, No. 10-cv-301 (S.D. Ohio.), Dkt. 76, at 35, *with Pampers*, 724 F.3d at 720-21. As a rule, even a modest request relative to lodestar cannot justify approval of a settlement

---

[1] 654 F.3d 935 (9th Cir. 2011)("*Bluetooth*").

that gives class counsel an excessive allotment of the settlement proceeds. *E.g., Bluetooth*, 654 F.3d at 943 (reversing settlement approval notwithstanding district court's finding that the lodestar "substantially exceed[ed]" the fee requested and awarded); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 n.14 (3d Cir. 2013) (reversing settlement approval, finding that lodestar multiplier of .37 not "outcome determinative"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (same with multiplier of .32). The unfairness can be conceived of this way: "Class Counsel has requested for itself an uncontested cash award based on lodestar, rather than the value of the class recovery, with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011). The second reason for departing from *Pampers* and *Bluetooth* fares no better. Preferential treatment is not limited to situations in which "relief to the class is perfunctory" or "negligible." R&R 52. True, *Pampers* and *Bluetooth* are the egregious situations in which class counsel attempts to appropriate 80-90% of the settlement funds. But the contrast with such outlandish proposals by no means justifies a still unfair situation in which the division is 60-40 in class counsel's favor. This is an instance of "50 paces mocking 100 paces" [2] reasoning: warriors who flee by retreating 50 stides disparaging those who flee by retreating 100—a difference in degree, to be sure, but not in kind. Class counsel's request for 60% of the settlement proceeds, and the corresponding proposal to leave class members with less

---

[2]五十步笑百步 ("wu shi bu xiao bai bu"). *See* http://history.cultural-china.com/en/233History13427.html (last visited Apr. 7, 2014).

than 40%, is a dereliction of fiduciary duty just as when counsel elsewhere requests 100%. It is more than sufficient to invoke the *Pampers* rule against preferential treatment. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (Fee award of 38.9% would be "clearly excessive"); *Howell v. Jbi, Inc.,* 3:11-cv-00545-RCJ-WGC, 2014 U.S. Dist. LEXIS 44632, at *21-*23 (D. Nev. Apr. 1, 2014) (following *Bluetooth* and denying approval where class was only allotted 58.3% of the gross settlement).

4. Blackman objects to the R&R's conclusion that a clear sailing clause becomes acceptable "[w]here, as here, the value of the settlement to class members is reasonable." R&R 52. Rather, as *Gooch v. Life Investors Ins. Co* suggests, the focus should be whether the clear-sailing clause insulates an excessive fee. 672 F.3d 402, 425-26 (6th Cir. 2012); *see also* Blackman Obj. 18-19.

5. Blackman objects to the R&R's conclusion that the kicker provision was not objectionable because the fee was reasonable. *See* R&R 54. Although the legal precept may (or may not) be correct, Blackman disputes the premise that the negotiated $2.39 million fee—amounting to 60% of the constructive common fund—was reasonable. *See* Blackman Obj. 16-17, 23-30; Blackman Reply 9-15.

6. Notwithstanding the R&R's determination (R&R 54-58), Blackman reaffirms his initial objection to the named plaintiffs' "enhancement"/ incentive awards. *See* Blackman Obj 21-23; Blackman Reply 8-9. In support of the propriety of the supercompensatory awards, the R&R relies (R&R 55-56) on several cases in this District and the Northern District of Ohio; however, each of these cases predates the paradigm-changing *Pampers* decision. Although the R&R mentions the intervening *Pampers* and *Vassalle v. Midland Funding LLC*[3] decisions, it makes no discernible effort to distinguish the awards here

---

[3] 708 F.3d 747 (6th Cir. 2013).

from the improper ones in *Pampers* and *Vassalle*. *Compare* R&R 57 (describing class representatives' efforts in assisting class counsel) *with Pampers*, Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Representatives Plaintiff Award Payments, No. 10-cv-301 (S.D. Ohio.), Dkt. 10 at 16-17 (describing similar efforts). Nor can the awards be justified here "based on the benefits to the class members generated by the litigation." R&R 58. *Vassalle* and *Radcliffe v. Experian Info Solutions*[4] both explain how adequacy and fairness issues are present even when absent class members can obtain minor cash payments. *See* Obj. at 22-23 (discussing cases). In *Radcliffe*, class member awards ranged from $26 to $750, far more than the $31.99 average here. 715 F.3d at 1165.

7. The R&R next erred in accepting the parties' refusal to remit settlement payments to known, eligible class members directly without requiring a claims process. *Contrast* Blackman Obj. 8-13 and Blackman Reply 2-8, *with* R&R 58-63. It is no answer to rely on Mr. Dahl's testimony as to the ubiquity of claims processes generally; class members deserve a valid justification for why they are being asked to jump through a hoop in this case. *See* Blackman Reply 4-5; R&R 60. And the only putative justification relied upon by the R&R is that Global Fitness's database contained old information. R&R 61. The R&R claims that Blackman "misconstrue[d]" Administrator Dahl's declaration as saying that 90.8% of distributed notices were actually received by class members. *Id.* Not so. As Blackman stated, "even assuming that after conducting the multiple address traces/look-ups, 10% of the delivered checks inadvertently failed to reach class members, direct payment would still enable over 80% of class members to participate in the recovery

---

[4] 715 F.3d 1157 (9th Cir. 2013) (cited by *Pampers*, 724 F.3d at 722).

here, rather than merely 8.15%."[5] Blackman Reply 5-6. The R&R condones a settlement that disregards the definite interest of that 80% of the class, presumably (but not explicitly stated in the R&R) because of a concern that non-class members who inadvertently received checks would commit fraud by cashing them. *See* Blackman Reply 6 (refuting this position that been adopted by the settling parties).

8. Blackman maintains that the attorneys' fee request was not reasonably noticed as required by Fed. R. Civ. P. 23(h) because the division between the two lead firms was not disclosed prior to the objection deadline. *See* Blackman Obj. 31-34; Blackman Reply 15. The R&R overrules this objection because "Class Counsel's motion for attorneys' fees and notice of intent to divide a fee award in proportion to each firm's lodestar value were also filed well in advance of the fairness hearing." R&R 67-68. This is insufficient. The plaintiffs did not pronounce the intended lodestar-based division until almost a month after the December 30, 2013, objection deadline. *Compare* Plaintiff's Response to the Objection of Joshua Blackman and the Objection of Zik/Hearon, Dkt. 128 at 37-38 (filed Jan. 23, 2014). As a matter of law, notice disseminated only after the set objection deadline has passed cannot constitute reasonable notice. Absent class members had no opportunity to respond to that notice. *See* Preliminary Approval Order, Dkt. 111 at 8 ("Any Class or Subclass Member who does not timely file and serve a written objection pursuant to the terms set forth above shall be deemed to have waived any objection to the settlement, and any objection that is not timely made shall be barred.").

9. Blackman contests the R&R's finding that utilizing the lodestar method is preferable to the percentage of recovery ("PoR") methodology as the primary fee methodology in this

---

[5] Observing Mr. Dahl's final report on administration, the claims rate rests at 8.21%.

case. For the reasons elucidated in Blackman's briefing, the PoR methodology is superior to the lodestar method both in general and in this case. Blackman Obj. 24-26; Blackman Reply 13. But not only is PoR superior in a vacuum, the fee declarations in front this Court (Dkts. 114-1, 114-2) lack the requisite detail to even permit the Court to award fees on a lodestar basis. The R&R drastically understates the problem when it notes that "[a]lthough the best practice may have been to submit more detailed records of the costs and time expended in the litigation, the Court is satisfied that the number of hours billed and hourly rates of Class Counsel are reasonable." R&R 72-73 (citing several cases requiring detailed timesheet records). Summaries lacking most accounting detail may be acceptable when the lodestar is just being utilized as a cross-check against a base PoR calculation. *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) (when petitioner is relying on a base percentage of recovery methodology, with a lodestar crosscheck, submission of detailed timesheets for "bean-counting" is not necessary); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 465 (D.P.R. 2011) (same); *Young v. Polo Retail, LLC*, 2007 WL 951821, 2007 U.S. Dist. LEXIS 27269, *15 (N.D. Cal. Mar. 28, 2007) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours."). But where the lodestar is the primary methodology relied upon, a detailed breakdown—beyond just the claimed hourly rates and total number of hours expended—**is required**. *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984) ("The documentation offered in support of the hours charged **must** be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.") (emphasis added); *Keener v.*

*Department of Army*, 136 F.R.D. 140, 147 (M.D. Tenn. 1991) ("At a minimum, the documentation offered by an attorney seeking an award of fees 'should identify the general subject matter of his time expenditures.'") (quoting *Hensley v. Eckerhart*, 437 U.S. 424, 461 n.12 (1983)). Indeed, in *United Slate*, the Sixth Circuit declared that a district court "would do violence to its judicial obligations were it to accept the amounts claimed at their value" "where the documentation is inadequate." 732 F.2d at 502. Thus, although the Sixth Circuit normally permits a district court the discretionary of which fee methodology to adopt, the plaintiffs' fee papers can only justify a PoR based award. Here, the plaintiffs have not satisfied their "burden of providing for the court's perusal a particularized billing record." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008); *Postier v. Louisiana-Pacific Corp*, No. 09-cv-03290-JCS, 2014 U.S. Dist. LEXIS 33611, at *8 (N.D. Cal. Mar. 13, 2014) ("[N]o billing records…makes it impossible for the Court to determine whether the hours expended on the litigation were reasonable."). A lodestar-based award would be reversible error.

10. In conducting a cross-check using the PoR method, the R&R errs by using the *Lonardo v. Travlers Indem. Co.*[6] mid-point approach to determine the denominator from which the fee is taken. R&R 75-76. Blackman's briefing comprehensively explains why *Boeing v. Van Gemert*, 444 U.S. 472 (1980) has been superseded and would never have applied to a settlement such as this. *See* Blackman Obj. 26-31; Blackman Reply 14. Yet using a midpoint "compromise" approach and valuing the class benefit here at $8.5 million has no jurisprudential basis outside of *Lonardo*, and is no less fictional than using the entire hypothetical fund. As *Pampers* makes perfectly clear, class action settlement "[c]ases are

---

[6] 706 F. Supp. 2d. 766, 799-802 (N.D. Ohio 2010).

better decided on reality than on fiction." 724 F.3d at 721 (internal quotation omitted). It is a well-known fact that class member take-rates are uniformly low in these types of consumer settlements. *See* Blackman Obj. 13-14. In fact, the evidence in this record, as averred by Administrator Dahl, is that rates range from "one point something…up to 11 or 12 percent…in consumer cases." Transcript 43. In any given case, a PoR award premised on midpoint methodology will yield no less than 50% of the mythical maximum, even if not a single class member submits a claim. The approach only barely tracks reality more than using the hypothetical maximum. A realistic approach would entail the conclusion that the fee award here is an excessive 60% of the constructive common fund, not 20% of it. *See* R&R 77. Further, any resort to the equitable notion that class counsel may bear no responsibility for the low claims rates rings hollow here, where class counsel could have negotiated for direct payment to the vast majority of the class yet did not do so.

**Conclusion**

Blackman appreciates Magistrate Judge King's considered examination of the issues, record and briefing. Nonetheless, for the foregoing reasons, Blackman respectfully urges the district court to reject recommendations (a), (b), (c), (d), (e) and (f) of the R&R.

Dated:  April 17, 2014    Respectfully submitted,

/s/ Adam E. Schulman
Adam E. Schulman (admitted *pro hac vice*)
CENTER FOR
CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (610) 457-0856
Email: shuyande24@gmail.com

/s/ Theodore J. Froncek
Theodore J. Froncek
Ohio Reg. No.: 016116
1208 Sycamore Street
Cincinnati, Ohio 45202
Phone: (513) 241-5670
Fax: (513) 929-3473
Email: tjfroncek@fuse.net

*Attorneys for Joshua Blackman*

## CERTIFICATE OF SERVICE

 I certify that pursuant to Local Rule 5.2(b), I have filed the foregoing document through the Court's ECF system, which has effectuated service of this Objection upon the following all attorneys of record in this matter.

 I declare under penalty of perjury that the foregoing is true and correct.


Dated: April 17, 2014            */s/ Adam E. Schulman*
                   Adam E. Schulman