**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| AMBER GASCHO, *et al.,* | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:11-cv-436 |
| | : | |
| v. | : | Judge Smith |
| | : | |
| GLOBAL FITNESS HOLDINGS, LLC, | : | Magistrate Judge King |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF JOSHUA  BLACKMAN AND ZIK/HEARON TO THE REPORT AND RECOMMENDATION**

s/ Thomas N. McCormick
William G. Porter (0017296)
wgporter@vorys.com
Thomas N. McCormick   (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
kjrubin@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone:  (614) 464-6400
Facsimile:  (614) 464-6350

James B. Lind (0083310)
jblind@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, OH 45202
Telephone: (513) 723-4000
Facsimile: (513) 852-7835

*Attorneys for Plaintiffs*

s/  Mark H. Troutman
Mark Landes   (0027227)
mlandes@isaacwiles.com
Gregory M. Travalio   (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman   (0076390)
mtroutman@isaacwiles.com
ISAAC, WILES, BURKHOLDER &
TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121
Facsimile:  (614) 365-9516

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ..................................................................................... iii

I.      PRELIMINARY STATEMENT ............................................................... 1

II.     PRIOR ARGUMENT AND THE COURT'S R&R.................................... 1

        A.      The R&R's Relevant Findings .................................................. 2

                1.      The Settlement provides great monetary value to the Class ........... 2

                2.      The claims process was easy and user friendly ............................. 3

                3.      The Settlement eliminated all risk of an adverse judgment ............. 3

                4.      Class Counsel independently negotiated attorneys' fees and
                        costs ........................................................................................ 4

        B.      The Objectors' Interests are adverse to the Class .................................... 4

        C.      The Objectors rely on easily distinguishable case law and
                inapplicable factual arguments .................................................. 5

III.    THE CCAF AND ZIK/HEARON OBJECTIONS ARE WITHOUT MERIT
        AND SHOULD BE OVERRULED ........................................................ 6

        A.      Zik/Hearon Objection II and CCAF Objection 7 fail because the
                claims process was fair, reasonable, and appropriate ............................. 6

        B.      Zik/Hearon Objection V has no support because the Release is
                limited and appropriate .............................................................. 8

        C.      Zik/Hearon Objection III fails because the adequacy, commonality,
                and predominance requirements of Rule 23 are easily satisfied ............... 8

        D.      Zik/Hearon Objections IV and VI(A) fail because the value of this
                Settlement and the *Seeger* settlement are not comparable ..................... 10

        E.      Zik/Hearon Objection VI(B) should be denied because the opinions
                of Class Counsel and the Class Representatives were properly
                considered .............................................................................. 12

        F.      Zik/Hearon Objection VI(C) fails because success on the merits
                was uncertain .......................................................................... 12

G.     Zik/Hearon Objection VI(D) and CCAF Objection 1 are without merit because the R&R properly considered the reaction of the class .............. 13

H.     Zik/Hearon Objection VII and CCAF Objection 3, 9, and 10, which allege preferential treatment and oppose the award of Class Counsel's attorneys' fees misstate the law, are factually inaccurate, and have been waived ............................................................. 15

     1.     The R&R's use of the Lodestar methodology was appropriate ..................................................................... 15

     2.     While unnecessary, the R&R properly applied the percentage of the fund cross-check ................................ 16

     3.     Class Counsel's Lodestar award was adequately documented and supported ........................................... 17

     4.     Allegations of preferential treatment are unfounded and without support .................................................................. 19

I.     CCAF Objection 4 (clear sailing clause) and Objection 5 (kicker provision) lack merit ................................................................... 20

J.     Zik/Hearon Objection VIII should be denied because Zik/Hearon is not entitled to attorneys' fees ................................................... 21

K.     CCAF Objection 2 has no merit because the public interest favors approval ............................................................................. 21

L.     CCAF Objection 6 is without merit because the Class Representative Enhancement Payments are fair and reasonable .......... 21

M.     CCAF Objection 8 alleging a failure to disclose Class Counsel's fee division is without legal support and entirely frivolous ............................. 22

IV.     CONCLUSION .................................................................. 23

CERTIFICATE OF SERVICE ..................................................... 24

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

<u>CASES</u>

*Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 WL 3173972
(W.D. Mich. Oct. 26, 2007) ........................................................................ 22

*Boeing Co. v. Van Gemert, 444 U.S. 472 (1980)* ......................................... 16

*Borden v. Sec'y of Health and Human Servs.,* 836 F.2d 4 (1st Cir.1987)...................... 17

*Clark Equipment Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878 (6th
Cir. 1986).................................................................................................... 2

*Cobell v. Salazar*, 679 F.3d 909 (D.C. Cir. 2012) ........................................... 9

*Connectivity Sys., Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008
(S.D. Ohio Jan. 26, 2011) ......................................................................... 19

*Dennis v. Kellog Co.,* 697 F.3d 858 (9th Cir. 2012) ....................................... 19

*Greenhow v. United States,* 863 F.2d 633 (9th Cir. 1988)............................. 17

*Howell v. Jbi, Inc.*, 2014 U.S. Dist. LEXIS 44632 (D. Nev. 2014) .................. 19

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir.
2001) ................................................................................................ 5, 19

*In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013) ................. 5, 14, 19, 21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir.
Pa. 1995) ........................................................................................ 5, 12, 14

*In re Porsche Cars North American Inc.*, Case No. 2:11-md-2233............................... 14

*Jesselson v. Outlet Assoc. of Williamsburg,* 784 F.Supp. 1223, 1228 (E.D.
Va. 1991) .................................................................................................. 17

*Jones–Bey v. Caruso,* No. 1:07–cv–392, 2009 WL 3644801 (W.D. Mich.
Oct. 30, 2009)........................................................................................... 17

*Lonardo v. Travelers Indem. Co.*, 706 F.Supp. 2d 766 (N.D. Ohio 2010)................. 4, 20

*Lonardo v. Travelers Indemnity Co.*, 206 F.Supp. 2d 766 (S.D. Ohio 2010) ........... 16, 18

*Marr v. Foy,* No. 1:07–cv908, 2010 WL 3061297 (W.D. Mich. Aug.3, 2010)................. 17

*Murr v. United States,* 200 F.3d 895 (6th Cir. 2000)........................................................ 17

*Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d
    985 (1st Cir.1988)........................................................................................................ 17

*Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513 (6th cir. 1993) ......................... 15

*Robins v. Global Fitness Holdings, LLC,* 838 F.Supp. 2d 631 (N.D. Ohio
    2012) ...................................................................................................................... 3, 4, 13

*Thompson v. Midwest Found. Independent Phys. Ass'n,* 124 F.R.D. 154
    (S.D. Ohio 1988)........................................................................................................... 18

*United States v. Hardesty,* 977 F.2d 1347 (9th Cir.1992).............................................. 17

*United States v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998)......................................... 17

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 F. App'x 496 (6th Cir.
    2011) ......................................................................................................................... 4, 15

*Van Horn,* 2010 U.S. Dist. LEXIS 42357 (S.D. Ohio) ................................................... 16

## **STATUTES**

28 U.S.C. § 631.............................................................................................................. 17

## **RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 3

Fed. R. Civ. P. 72(a).......................................................................................................... 17

Rule 23.................................................................................................................... 7, 8, 22

I.    **PRELIMINARY STATEMENT**

After extensive briefing that included more than 200 pages of argument, and after presiding over a Final Fairness Hearing on February 13, 2014, that included both argument and live testimony, Magistrate Judge King issued a seventy-nine page Report and Recommendation on April 4, 2014 (Docket No. 141) (the "R&R").  The R&R is comprehensive, well-reasoned, and legally sound.  It thoroughly considers, analyzes, and rejects every Objection to, and argument against, this Settlement.

Despite the Magistrate Judge's thoughtful analysis, the Center for Class Action Fairness ("CCAF"), filed Objections to Report and Recommendation on April 17, 2014, (Docket No. 142) ("CCAF Objection").  Zik/Hearon filed its Objections to Report and Recommendation on April 21, 2014, (Docket No. 143) ("Zik/Hearon Objection").  These Objections rehash the same unsupported arguments and rely on the same distinguishable cases that were already rejected in the R&R and rebutted in the Motions and Responses filed by Class Counsel.  Moreover, the objectors completely ignore the relevant facts and pertinent cases cited to, and relied on, in the R&R.  As discussed below, the CCAF and Zik/Hearon Objections are without merit and should be overruled.

II.    **PRIOR ARGUMENT AND THE COURT'S R&R**

The Objections were thoroughly rebutted in Plaintiffs' Response to the Objections, January 23, 2014 (Docket No. 128), and the parties' Joint Motion/Unopposed Motion for Final Approval, February 4, 2014 (Docket No. 132). Plaintiffs incorporate those arguments here.  Moreover, the Objections are contradicted by, and inconsistent with, the specific findings in the R&R.

### A. The R&R's Relevant Findings.

A court's core responsibility in granting final approval is to ensure "that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equipment Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir. 1986). The R&R's findings establish that, taken as a whole, this is a good settlement.

### 1. The Settlement provides great monetary value to the Class.

Defendant ("Global Fitness")[1] pledged more than $17,000,000[2] to the Class and Subclasses in the form of cash payments - not coupons. If the Settlement is approved 49,808 Allowed Claimants will recover an aggregate amount of $1,593,240. *See* R&R at 14, PAGEID 2812. The average class member will recover $31.99, and the average Gym Cancel Subclass Member will recover $41.28. *Id.* As discussed in the Joint Motion for Final Approval, the average recovery per class member here is significantly higher than the cash awards provided in other settlements involving similar claims against health clubs. *See* Docket No. 132 at 8-10, PAGEID 2452-2454.

As stated several times in the R&R, this monetary recovery is "significant" and "substantial." *See, e.g.*, R&R at 46, PAGEID 2844 ("[t]his is a *significant* recovery because it exceeds the $26.76 average monthly fee of a gym membership" …. "[t]his recovery is also *substantial* considering the bases of plaintiffs' claims."); R&R at 47, PAGEID 2845 ("the Settlement Agreement provides an immediate and *significant*

---

[1] Defendant, Global Fitness Holdings, LLC, formerly operated health clubs in seven states doing business under the name Urban Active Fitness.

[2] The total available benefit to the Class is $17,000,515. This is calculated as follows: (605,725 Class Members x $5) + (300,017 FIF Subclass Members x **$20**) + (323,518 Gym Cancel Subclass Members x $20) + (50,038 personal training Subclass Members x $30) = $17,000,515. Footnote 11 of the R&R (page 75, PAGEID 2873), miscalculates the total available benefit as $15,500,430 by using a **$15** payment to the FIF Subclass rather than the **$20** payment required by the Settlement Agreement.

monetary benefit to class members."); R&R at 52, PAGEID 2850 ("the settlement in this case provides for an immediate and *substantial* cash payment to class members, considering the value of the claims and the risks of protracted litigation.); R&R at 71, PAGEID 2869 ("Where, as here the results achieved are *substantial*, the interest in fairly compensating counsel for the amount of work done is great."); R&R at 56-57: PAGEID 2854-2855 ("[t]he Class Representatives' initiative, time, and effort were essential to the prosecution of the case and resulted in a *significant* recovery…") (emphasis added).

### 2.    The claims process was easy and user friendly.

To receive a cash payment of between $5 and $75, Class Members could file a claim online or by mail and only needed to provide basic contact information and, if applicable, check box(es) indicating Subclass membership. R&R at 61-62, PAGEID 2859-2860. The claim form was short, simple, easy to understand, and took only minutes to complete. No further proof or documentation was needed.

### 3.    The Settlement eliminated all risk of an adverse judgment.

Similar claims brought by a class of consumers against Global Fitness were dismissed pursuant to Defendant's Fed. R. Civ. P. 12(b)(6) Motion in *Robins v. Global Fitness Holdings, LLC*, 838 F.Supp. 2d 631, 654 (N.D. Ohio 2012); thus, the risk of an adverse judgment was authentic and significant. As stated in the R&R, "the viability of the bulk of plaintiffs' claims is called into question by Judge Polster's dismissal in the Northern District of Ohio of class action claims in the *Robins* action…. [t]hese claims are further clouded by the pendency of the appeal in *Robins…* which was being briefed at the time of settlement." *See* R&R at 35, PAGEID 2833.

4. **Class Counsel independently negotiated attorneys' fees and costs.**

After reaching an agreement on Class recovery and payments, the parties independently negotiated the separate payment of attorneys' fees and costs, and *Class Counsel agreed to accept less than their current lodestar value*. R&R 52-53, 73-74, PAGEID 2850-2851, PAGEID 2871-2872. The payment of attorneys' fees and costs by Global Fitness is an additional benefit to the Class. R&R at 77, ft.12, PAGEID 2875, ft. 12. *See also Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011**)**; *Lonardo v. Travelers Indem. Co.*, 706 F.Supp. 2d 766, 803 (N.D. Ohio 2010).

B. **The Objectors' Interests are adverse to the Class.**

In addition to lacking merit, CCAF's Objections are an affront to the tens of thousands of Class Members waiting to receive payment. CCAF's client, Joshua Blackman, ultimately paid Global Fitness no money, suffered no damages, yet will recover $25 under this Settlement.[3] CCAF ignores this fact and now delays what *it admits are appropriate cash payments* to approximately 50,000 Class Members so that it can make ideological arguments that are inapplicable to this Settlement. R&R at 44.

The Zik/Hearon Objections likewise undermine the Class's interests. First, Zik/Hearon's claims mirror the *Robins* claims*,* which, as noted above, were dismissed.[4] Final Approval of this Settlement will guarantee a significant recovery and eliminate the risk of an adverse judgment. Second, even assuming the Zik/Hearon claims could succeed on the merits, the average recovery in this Settlement exceeds the average

---

[3]      Blackman received a full refund of his initial membership fee from Urban Active because he cancelled his contract, pursuant to the 3-day cancellation provisions.

[4]      For a more detailed discussion of how the Zik/Hearon claims are identical to the claims in *Robins*, are subsumed by the claims of the Gym Cancel Subclass, and are less valuable than the recovery guaranteed by this Settlement, *see* Plaintiffs' Response to Objections, pages 11-14, PAGEID2265-2268.

Zik/Hearon recovery. Specifically, the average Gym Cancel Subclass Member will immediately receive $41.28 under this Settlement, whereas, under Zik/Hearon's best case scenario, the average member would recover $36.00. ($26 monthly fee plus $10 cancellation fee). *See* Plaintiffs' Response to Objections (Docket No. 128) at 13-14, PAGEID 2267-2268; R&R at 17, PAGEID 2812. *See also* Transcript of February 13, 2014, Final Fairness Hearing ("Transcript"), filed on March 5, 2014, (Docket No. 139) at 13-14, PAGEID 2692-2693; and Exhibit 1, page 9.[5]

### C. The Objectors rely on easily distinguishable case law and inapplicable factual arguments.

CCAF's Objections rely almost exclusively on two readily distinguishable cases: *In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013) and *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2001). After a thorough analysis, the R&R rejected application of *Pampers* to this Settlement. *See* R&R 42-43, PAGEID 2840-2840 ("This action is distinguishable from *Pampers*."). Likewise, the R&R devotes 5 pages to *Bluetooth*, and concludes that none of the factors in *Bluetooth* exist here. R&R at 49-54; PAGEID 2847-2852.[6] *Pampers* and *Bluetooth* have little or nothing in common with this case, and therefore, this Court should reject CCAF's efforts to cherry-pick quotes and sound bites from these cases.

Likewise, Zik/Hearon's Objections are littered with citations to *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. Pa. 1995), a case from the Third Circuit that is easily distinguishable. *In re GMC* was a coupon settlement, it was

---

[5] Exhibit 1 is the PowerPoint Presentation used by Class Counsel at the Fairness Hearing. It was admitted as Plaintiffs' Exhibit 1 at the Fairness Hearing. *See* Transcript at 110, PAGEID 2789.

[6] At the Fairness Hearing, Class Counsel provided a side-by-side comparison distinguishing *Pampers* and *Bluetooth* from this Settlement. *See* Transcript at 61-64, PAGEID 2740-2743. *See also* comparison slides attached as Exhibit 1, pages 21-22.

negotiated and agreed to less than 4 months after the consolidated complaint was filed, and the value of the settlement to the Class was inadequate. *Id.* at 780, 782, 806-807. The Third Circuit rejected the settlement because:

> [T]he case was simply settled too quickly with too little development on the merits for certificates that may well be worth significantly less than the $1.98 to $1.18 billion estimate accepted by the district court…. ***The settlement was inadequate and unreasonable, and may even have been a marketing boon to GM***.

*Id.* at 818-819 (emphasis added). Here Class Counsel negotiated "significant" and "substantial" cash awards after two and a half years of contested litigation.

## III. THE CCAF AND ZIK/HEARON OBJECTIONS ARE WITHOUT MERIT AND SHOULD BE OVERRULED

CCAF objects to 10 findings of the R&R. Zik/Hearon lodges 9 Objections. Each Objection is addressed below. To the extent possible, responses to overlapping CCAF and Zik/Hearon Objections have been combined.

### A. Zik/Hearon Objection II and CCAF Objection 7 fail because the claims process was fair, reasonable, and appropriate.

Zik/Hearon and CCAF falsely assert that the simple and user-friendly claims process renders this Settlement unfair. CCAF argues that direct payment would have enabled 80% of the Class to receive a cash award whereas Zik/Hearon claims the percentage would be 90%.

Both arguments are wrong and, as evidenced by their inconsistency, are unsupported in the record. As noted in the R&R, these arguments "misconstrue the Dahl Declaration and Mr. Dahl's testimony." *See* R&R at 61, PAGEID 2859. Dahl testified that after processing and working with the Class Member data provided by Global Fitness, "90.8 percent of the Postcard Notices were delivered, but there is ***'no***

***way of definitively saying they actually reached the class member.***'" *See* R&R at 61, PAGEID 2859 (*citing* Transcript at 39, PAGEID 2718) (emphasis added).

Uncertainty exists because the data was outdated and unreliable. Specifically, the data contained addresses collected over *a six year period* - between 2006 and 2012. R&R at 61, PAGEID 2859. Some of these addresses were also incomplete and errors existed relative to what subclasses each member belonged. So, while Dahl's testimony proves that Notice was directed in a robust manner that exceeded the requirements of Rule 23, *Dahl did not say, and could not say*, that 80% or 90% of the notices were received by actual Class Members.

Dahl also testified that he has been involved in approximately 3,000 settlements over his career and all have involved a claims process, except 10 to 20. R&R at 59-61, PAGEID 2857-2859. In the rare circumstances where direct payments were made, the data was current, not two to eight years old. *Id.* Thus the R&R found, "given the age of Global Fitness' data and in light of Mr. Dahl's testimony, the Court is satisfied that the claims made process is appropriate in this case." *See* R&R at 61, PAGEID 2859.

Moreover, the Objectors' argument is without legal support. The Objectors have not cited a case from any jurisdiction in which a settlement that provides "significant" and "substantial" value was rejected because of a simple claims process like the one used here. In contrast, Plaintiffs' Response to Objections provides a wealth of authority from this Court, and other jurisdictions, showing that a claims process is common and expected in consumer class actions, including those against health clubs. *See* Docket 128 at 26-28, PAGEID 2280-2282; and Transcript at 14-22; PAGEID 2693-2701.

**B.    Zik/Hearon Objection V has no support because the Release is limited and appropriate.**

Objection V claims that because the release does not contain the precise words "identical factual predicate" it includes claims beyond those in the Complaint.  This is wrong.  The R&R reviewed this argument and found that "the release in question is limited to claims that share the same factual predicate as the settled claims, and therefore is not unfair to that extent."  *See* R&R at 64, PAGEID 2862.  *See also* Plaintiffs' Response to Objections, Docket No. 128 at 16-18, PAGEID 2270-2272.

Zik/Hearon also argues that Zik's claims are based on a different factual predicate because his contract contained language that was different from the other Class Members.  As discussed in the Section below, this allegation is false and it ignores the basic premise of the Class's claims and the findings of the R&R.

**C.    Zik/Hearon Objection III fails because the adequacy, commonality, and predominance requirements of Rule 23 are easily satisfied.**

Zik/Hearon alleges that Class Counsel did not adequately protect the Ziks and that commonality and predominance do not exist.  These arguments were thoroughly briefed in Plaintiffs' Response to Objections, Docket No. 128 at 10-14, 20-24, PAGEID 2264-2268, 2274-2278; and the Joint Motion for Final Approval, Docket No. 132 at 14-17, PAGEID 2458-2461.  Moreover, the R&R devoted more than 15 pages to addressing and rejecting these arguments.  R&R at 19-31, 44-48.  Given the R&R's thorough analysis, this Response will only discuss Zik/Hearon's new lines of attack.

First, Zik/Hearon claims that Class Representative Edward Lundberg ("Lundberg") never cancelled his contract and is not a member of the Gym Cancel Subclass.  This is false.  Lundberg was required to cancel his New Albany membership to effectuate a transfer to the Grandview location.  R&R at 25, PAGEID 2823 (*citing*

¶¶55-57 of the Third Amended Complaint).  Thus, contrary to Zik/Hearon's assertion, Lundberg is a member of the Gym Cancel Subclass as established by the cancellation form he submitted on April 6, 2011.  *See* Exhibit 2.  This cancellation form was submitted by Lundberg to cancel his February 21, 2008, contract.  A review of that contract shows that it contained the same cancellation provision as the Ziks, which further undercuts Ziks' repeated argument that his claims are unique or different than the other class members.  *See* Exhibit 3.

Second, Zik/Hearon's allegation that Class Counsel did not "adequately protect" the Class's interests is incorrect because, as discussed in Section II(B) above, the average Gym Cancel Subclass member will recover $41.28, which is $5.28 more than if Zik/Hearon's claims were 100% successful on the merits ($41.28 vs. $36.00).  Thus, Class Counsel adequately protected and secured significant compensation to the Class given the value of the claims.

If the Ziks believe their compensation is inadequate, the ability to opt-out protects their rights.  *See Cobell v. Salazar*, 679 F.3d 909, 920 (D.C. Cir. 2012) (holding that "any … class member who is allegedly under-compensated by the distribution formula, could have opted out" and "the opt-out provision fulfilled its purpose of protecting objecting class members").  The R&R said that, "although individual class members had the opportunity to opt out of the settlement if they concluded that the value of their individual claims exceeded the value of the immediate relief provided by the Settlement Agreement, only 90 did so."  *See* R&R at 47, PAGEID 2845.

Last, in stretching to make an argument, Zik/Hearon puts forth a view of their case and this case that is both confusing and misleading.  Specifically, Zik/Hearon

contradicts their own statements that they represent a class of all members who cancelled between 1996 and 2012 by arguing that Ziks' claims are different than Hearon's and other Class Members. *Compare* R&R at 21-22 to Zik/Hearon Objections at 10-11. These mischaracterizations aside, the R&R properly recognized that all members of the Gym Cancel Subclass alleged a common injury: "i.e. each was improperly charged, pursuant to a common policy or practice of defendant, monthly dues and a cancellation fee after cancellation." *See* R&R at 45, PAGEID 2843. Final Approval of this Settlement guarantees that members of this Subclass, regardless of when they signed their contract, will recover an appropriate cash award for the alleged common conduct of Global Fitness.

### D. Zik/Hearon Objections IV and VI(A) fail because the value of this Settlement and the *Seeger* settlement are not comparable.

Zik/Hearon Objection IV claims Judicial Estoppel should prevent Final Approval because Class Counsel objected to Final Approval in *Seeger*. Relying on the same mischaracterizations, Objection VI(A) then alleges collusion. These arguments have no merit. Class Counsel's position is not inconsistent because the absence of value and the overbroad release in *Seeger* make it incomparable to this Settlement. Because no inconsistency exists, Judicial Estoppel does not apply.

*Seeger* was a coupon settlement that provided little or no value to the Class, Seeger's counsel did little or no discovery on the claims it was releasing, and the release was unlimited in time and scope. *See* R&R at 5-6. In Plaintiffs' Response to Objections, Class Counsel included the following chart to highlight the differences between the settlements. *See* Docket 128 at 9, PAGEID 2263 (*italicized numbers have been updated to include final claims data*).

|  | *Seeger* | *Gascho* |
|---|---|---|
| Notice | Email *or* Postcard | Email *and* Postcard |
| Class Member Benefit | 30 Day Coupon | Cash Refund (between $5-$75, with an average of *$31.99*). |
| Release | General Release: Unlimited in time or scope. | Specific Release: Limited to class period and alleged claims. |
| Minimum payment | $0.00 | $1,300,000.00 |
| Approved Claims | 1,444 | *49,808* |
| Claim Rate | 0.6% | *8.2%* |
| Payment to the Class | $0.00 | *$1,593,240.00* |

To not oppose the *Seeger* settlement would have been inconsistent with Class Counsel's fiduciary duty. In contrast, this Settlement makes available over $17,000,000 to the Class, has an average payment of $31.99; provides a greater recovery to the average Gym Cancel Subclass member than Zik/Hearon; and provides *"an immediate and substantial cash payment to class members, considering the value of the claims and the risks of protracted litigation." See* R&R at 52, PAGEID 2850 (emphasis added). Moreover, the release here is narrowly tailored. Because these settlements are worlds apart, Zik/Hearon's efforts to tarnish Class Counsel's conduct with accusations of "collusion" and playing "fast and loose with the Court" fail miserably.

In their Objection, Zik/Hearon cite a number of alleged instances of improper conduct by Class Counsel that were "ignored" by the R&R. Not true. The R&R analyzed and discussed the arguments concerning the value of the claims, the potential for success on the merits, the release, the risk of fraud or collusion, and the allegations of unfairness related to settlement negotiations and intervention. R&R at 5, 33, 35-36,

62-63.  Like all other Objections to this Settlement, these arguments were thoroughly reviewed and rejected.[7]  In addition, Class Counsel rebutted these arguments in its Response to Objections and at the Fairness Hearing.  *See* Docket 128 at 10-20, PAGEID 2264-2274; and Transcript at 66-67, PAGEID 2745-2746.

> **E.    Zik/Hearon Objection VI(B) should be denied because the opinions of Class Counsel and the Class Representatives were properly considered.**

The R&R properly considered the opinions of Class Counsel and the Class Representatives in finding this Settlement fair, reasonable, and adequate.  R&R at 37-38, PAGEID 2835-2836.  The Class Representatives signed the Settlement Agreement thereby fulfilling their duty and representing to this Court that they believed the Settlement to be fair, reasonable, and adequate.    Likewise, Mr. McCormick, Mr. Troutman, and Mr. Travalio presented at the Fairness Hearing and were available to answer any questions related to the fairness of this Settlement.  Transcript at 4, 58, and 95, PAGEID 2683, 2737, 2774.  Finally, the Zik/Hearon Objection lacks any legal support because it is based entirely on the already distinguished *In re GMC* case.

> **F.    Zik/Hearon Objection VI(C) fails because success on the merits was uncertain.**

The R&R properly noted the importance of the "success on the merits" analysis and highlighted numerous factors which posed serious roadblocks to success of the claims. R&R at 35-36, PAGEID 2833-2834.  Chief among these roadblocks was the

---

[7]    This District Court originally denied Zik/Hearon's attempts to intervene, (s*ee* Opinion and Order, Docket No. 110) and the R&R specifically found that Zik/Hearon failed to persuade the Court to revisit this prior Order and that Zik/Hearon's interests are the same as every other unnamed Class member.  *See* R&R at 62-63, PAGEID 2860-2861.

decision in *Robins*, 838 F.Supp. 2d at 654[8]; the pendency of *Robins*' appeal to the Sixth Circuit; Global Fitness's defense to class certification; and "various defenses" that presented financial risk to the Class. R&R at 35-36, PAGEID 2833-2834. Regarding these "various defenses," the R&R recognized that even assuming the Class overcame *Robins* and succeeded on the merits, little judicial authority existed to support a damages theory that would provide the Class Members a monetary award much in excess of what has already been achieved through this Settlement. R&R at 36, PAGEID 2834. The R&R said:

> The average Class Payment is $31.99 and the average Gym Cancel Subclass Payment will be $41.28. This is a significant recovery because it exceeds the $26.76 average monthly fee of a gym membership with Global Fitness between January 1, 2009 and July 2012. This recovery is also substantial considering the bases of plaintiffs' claims, i.e., improperly charged dues, a $10 cancellation fee, and/or a $15 FIF or CAF.

*See* R&R at 46, PAGEID 2844 (internal citations omitted).

Zik/Hearon asks the Court to set aside this significant recovery, to ignore *Robins,* and to disregard all other challenges inherent in litigation by arguing that Ziks' claims are different and that this Settlement is comparable to *Seeger.* As discussed in Section III(C) and III(D) above, *Seeger* is irrelevant and attempts to distinguish Ziks' claims are unconvincing and inaccurate.

> **G.    Zik/Hearon Objection VI(D) and CCAF Objection 1 are without merit because the R&R properly considered the reaction of the class.**

As one of many factors, this Court must consider the reaction of the absent class members. *See* R&R at 38, PAGEID 2836. In complying with this requirement, the R&R

---

[8]      The *Robins* decision is particularly significant because it dismissed both Ohio Prepaid Entertainment Contract Act ("PECA") claims and Kentucky Health Spa Act ("KHSA") claims.

concluded that the "number of objectors and opt-outs in relation to the size of the class supports a finding that the Settlement Agreement is fair, reasonable, and adequate." See R&R at 39, PAGEID 2837.  This finding was firmly supported by Sixth Circuit precedent and numerous district cases from within the Sixth Circuit.  R&R at 38-39, PAGE ID 2836-2837.  In fact, less than 45 days ago, this Court again reaffirmed this legal principle.  *See In re Porsche Cars North American Inc.*, Case No. 2:11-md-2233, Final Approval Order, Docket No. 152 at ¶8(f), PAGEID 3930, (March 19, 2014, Judge Frost) (Of 167,544 class notices sent, only 4 opts-out and 12 objections were received resulting in the Court's finding that "the minimal number of objectors/Opt-Outs suggests that the settlement if fair, reasonable, adequate").

CCAF ignores these cases and misstates the law by citing to *Pampers.*  In addition to being entirely distinguishable, *Pampers* never once says that the R&R's conclusion would constitute "legal error."  Zik/Hearon's argument is also unavailing because it relies on *In re GMC*, another ill-fitting case that does not support the overbroad conclusion that reliance on a small number of objections and opt-outs in approving a settlement is legal error.  Last, as discussed in Section II(B) above, all objections in this case were filed by Class Members with ulterior motives; *no* objections came from Class Members who truly believe that the Settlement is inadequate.  This, combined with only 90 opt-outs from over 600,000 Class Members evidences strong support for Final Approval.

**H.**     **Zik/Hearon Objection VII and CCAF Objection 3, 9, and 10, which allege preferential treatment and oppose the award of Class Counsel's attorneys' fees misstate the law, are factually inaccurate, and have been waived.**

CCAF Objection 9 alleges error because the R&R relied on the lodestar method to calculate Class Counsel's fee award as opposed to the percentage of the fund methodology. Zik/Hearon Objection VII and CCAF Objection 10 then claim additional error because the R&R cross-checked the lodestar award using a percentage of the fund calculation that took into consideration the total available to the Class as opposed to just the amount actually recovered. Finally, CCAF Objection 3 and Zik/Hearon Objection VII alleged "preferential treatment" in the award of Class Counsel's fees. Each of these Objections is without merit.

In determining the appropriateness of a fee petition, District Courts have broad discretion and are permitted to select the best methodology given the unique facts and circumstances of each particular case. *See* R&R at 68, PAGEID 2866 (*citing Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011 and *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir. 1993)). Courts are "perfectly justified in awarding a fee based on the lodestar analysis alone." R&R at 74, PAGEID 2872 (*citing Van Horn,* 436 F. App'x at 501).

**1.     The R&R's use of the Lodestar methodology was appropriate.**

The R&R explains in detail why the lodestar method was appropriate. It cites a number of specific factors such as the contingent fee, the fee shifting statutes, the absence of a common fund, and the substantial public interest in compensating counsel for the amount of work done. R&R at 70-71, PAGEID 2869-2870. The R&R also states, "where, as here, the results achieved are substantial, the interest in fairly

compensating counsel for the amount of work done is great." R&R at 71, PAGEID 2869. CCAF Objection 9 ignores these factors and cites no credible authority to suggest that the R&R's application of the lodestar methodology was incorrect.

> **2. While unnecessary, the R&R properly applied the percentage of the fund cross-check.**

CCAF Objection 10 and Zik Hearon Objection VII allege that the R&R misapplied the percentage of the fund cross-check by using the mid-point of the total available benefits and the actual benefit claimed by the Class. *See* e.g. R&R at 75-76, PAGEID 2873-2874. Without credible support, the Objectors argue that Class Counsel should only be compensated based on the actual amount claimed by the Class.

The Objectors' position has been rejected by the Sixth Circuit. *See Van Horn*, 2010 U.S. Dist. LEXIS 42357 (S.D. Ohio), *aff'd* 436 F. App'x (6th Cir. 2011). Such an argument also conflicts with the "*Boeing* principle;"[9] it has been found to constitute an abuse of discretion by both the Second and Ninth Circuits; and it was previously rejected by this Court in *Lonardo*, 206 F.Supp. 2d at 796. *See* R&R at 75-77, PAGEID 2873-2875. The R&R's application of the *Lonardo* "mid-point" analysis was legally sound and entirely appropriate.[10] *Id.*

---

[9]  In *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), the United States Supreme Court upheld a fee award that was based on the total fund available to the class rather than the amount actually recovered. *Id.* at 480 ("Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.").

[10]  As noted in footnote No. 2 herein, the R&R slightly miscalculated the total available benefit to the Class by using a *$15* award to all members of the FIF Subclass rather than the *$20* award agreed to in the Settlement. This correction does not fundamentally change the mid-point calculation other than reducing Class Counsel's award to slightly less than 20% of the fund.

### 3.     Class Counsel's Lodestar award was adequately documented and supported.

Given the dearth of support for its positions, it is not surprising that the Objectors attempt to bring a new argument not previously presented. Specifically, the Objectors argue that Class Counsels' affidavits in support of its fee requests were insufficient. Despite a number of opportunities to do so, this Objection was never made prior to the R&R, and therefore, it has been waived. In fact, the R&R specifically commented on the absence of any objection to Class Counsels' rates or hours by saying, "despite vigorous objections to other aspects of the settlement, there has been no objection to the reasonableness of the hourly rates or the hours expended on the litigation." *See* R&R at 73-74, PAGEID 2871-2872.

The failure to object before the R&R is significant because Class Counsel's fee request was filed on December 9, 2013 (Docket No. 114). The Objectors had the fee request 21 days prior to the Objection Deadline and more than two months before the Fairness Hearing. Because no Objection was raised prior to the R&R, the Objection has been waived. *United States v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). "It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a District Judge that was not fairly presented to the Magistrate Judge." *Marr v. Foy,* No. 1:07–cv908, 2010 WL 3061297, at *4 (W.D. Mich. Aug.3, 2010).[11]

---

[11]     The Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, does not allow parties to raise at the district court stage new arguments or issues. *Jones–Bey v. Caruso,* No. 1:07–cv–392, 2009 WL 3644801 (W.D. Mich. Oct. 30, 2009) (*citing Murr v. United States,* 200 F.3d 895, 902 n. 1 (6th Cir. 2000)). The Act was not intended "to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court." *Jones–Bey* at *1 (*quoting Greenhow v. United States,* 863 F.2d 633, 638– 39 (9th Cir. 1988), *rev'd o.g. sub nom, United States v. Hardesty,* 977 F.2d 1347 (9th Cir.1992) (en banc)). Moreover, under Fed. R. Civ. P. 72(a), a district court's review is limited. Objections not raised before the magistrate should not be considered by the District Judge. *Jesselson v. Outlet Assoc. of Williamsburg,* 784 F.Supp. 1223, 1228 (E.D. Va. 1991) (*citing Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988)); *see also Borden v. Sec'y of Health and*

Even assuming this Objection was timely, the R&R found Class Counsel's Declarations sufficient to establish the reasonableness of the hours and rates billed. Class Counsel averred under penalty of perjury that the hours expended were necessary to prosecute the action and Class Counsel provided a detailed list of the primary activities performed in prosecution of this case. *See* R&R at 72-73, PAGEID 2870-2871; and Plaintiff's Motion for an Award of Fees (Docket No. 114) at 10-11, PAGEID 1854-1855; McCormick Declaration ¶¶ 6-10, PAGEID 1867-1869; and Troutman Declaration ¶¶ 5-10, PAGEID 1882-1884. The Court found Class Counsel's rates to be consistent with those in the market, and importantly, the Court noted that Class Counsel has *not billed* for the significant number of hours expended after the date the Settlement Agreement was signed. R&R at 73, PAGEID 2871.

The R&R also discussed Class Counsel's time and effort noting that the litigation was "highly contested" since its inception more than two and a half years ago and the Court cited the "numerous contested pre-trial motions" that required resolution. *See* R&R at 33-34, PAGEID 2831-2832. In addition, the Court recalled that discovery and ESI issues were extensive and that the "enormity of that undertaking" necessitated "significant Court involvement" and several extensions of the pretrial schedule. *Id*.

In short, this Court had more than enough information to satisfy itself that the hours and rates of Class Counsel were reasonable and necessary to successfully prosecute this action. *See Lonardo,* 706 F.Supp.2d at 793, (documentation "must be of sufficient detail and probative value to enable the court to determine with a high degree

---

*Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987). "This rule is based upon the same concept which prevents parties from arguing in the appellate courts issues and arguments not raised below." *Jesselson,* 784 F.Supp. at 1228 (*citing Borden,* 836 F.2d at 6).

of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."); *Thompson v. Midwest Found. Independent Phys. Ass'n*, 124 F.R.D. 154, 162 (S.D. Ohio 1988) ("The Court's **active involvement** in the supervision, management, and trial of this litigation during the past two years places the Court in a prime position to evaluate the amount and propriety of the attorneys fees awarded.) (emphasis added); *Connectivity Sys., Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) (relying on Declarations of counsel to support attorney fee award).

Class Counsel's detailed billing and time records are voluminous. Had the Objectors contested the hours or this Court indicated that additional support was needed, Class Counsel would have readily provided these records in advance of the Final Fairness Hearing. Likewise, if the District Judge requires these records prior to its decision on Final Approval, then Class Counsel will swiftly provide them.

### 4. Allegations of preferential treatment are unfounded and without support.

CCAF Objection 3 alleges generally that the award of attorneys' fees constitutes preferential treatment toward class counsel. In many ways, this argument overlaps with Zik/Hearon's Objection VII. Regardless of where they are made, or how they are presented, the R&R thoroughly vetted and soundly rejected all of these allegations. *See* R&R at 39-49, PAGEID 2837-2847.

CCAF principally relies on *Pampers* and *Bluetooth,* which as noted above are distinguishable. The only new case cited by CCAF is *Howell v. Jbi, Inc.*, 2014 U.S. Dist. LEXIS 44632 (D. Nev. 2014); however, this case is likewise inapplicable because, unlike here, it is a common fund settlement and the Court had concerns about the

adequacy of the class award. *Id.* at 21-23, 26. Most importantly, the Court denied preliminary approval because the class notice was misleading and inadequate, not because of the attorney fee award. *Id.* at 31-33. To suggest, as CCAF does, that the Court denied preliminary approval because of a misallocation of funds is simply wrong.

Zik/Hearon cites *Dennis v. Kellog Co.,* 697 F.3d 858, 868 (9th Cir. 2012), but this case does nothing to support their position. In *Dennis*, the Ninth Circuit rejected a settlement because the $5.5 million *cy pres* was not adequately identified or supported and this raised serious questions about the alleged value of the settlement. *Id.* Here, no valuation questions exist because there is no *cy pres* and the value of the settlement (both in available funds and claimed funds) has been calculated and considered.

Last, in alleging preferential treatment, the Objectors ignore the R&R's finding that (i) this Settlement provides an "immediate," "substantial," and "significant" recovery to the Class, and (ii) there is a "substantial public interest" in compensating counsel for work performed and awarding counsel for taking the risk of contingent cases that benefit consumers. *See* R&R at 46-47, 71. PAGEID 2844-2845, 2869.

## I. CCAF Objection 4 (clear sailing clause) and Objection 5 (kicker provision) lack merit.

This Settlement provides a "substantial" and "significant" recovery to the Class and Class Counsel's attorney fee award is not excessive or unreasonable. Therefore, the purported clear sailing provision did not insulate an excessive fee and the purported kicker provision did not harm the Class. The R&R conducted a thorough analysis of these provisions and, for all of the reasons set forth therein, any objections regarding these provisions should be overruled. *See* R&R at 50-54, PAGEID 2848-2852.

**J.    Zik/Hearon Objection VIII should be denied because Zik/Hearon is not entitled to attorneys' fees.**

Zik/Hearon's request for attorneys fees is contrary to the law.  This issue was discussed at the Fairness Hearing, and, as recognized in the R&R, "Sixth Circuit case law recognizes that awards of attorneys' fees to objectors may be appropriate where the objector provided a benefit to the class by virtue of their objection."  *See* R&R at 78, PAGEID 2876, (*quoting Lonardo*, 706 F.Supp. 2d at 803-804.)

"By virtue of their Objection," Zik/Hearon provides no benefit to the Class. Instead, Zik/Hearon's Objections are adverse to the Class because, if successful, Gym Cancel Subclass members will no longer be entitled to receive an average of $41.28 in guaranteed money.  Rather, under Zik/Hearon, they have the *chance* to recover an average payment of $36.00.  That is hardly a benefit to the Class.

**K.    CCAF Objection 2 has no merit because the public interest favors approval.**

The public interest favoring approval of this Settlement was discussed in the R&R, including the explicit finding that the Class will receive an "immediate cash settlement" in an "amount that is fair, reasonable and adequate."  *See* R&R at 39, PAGEID 2837.  CCAF ignores this, and the other cited public interest factors, and argues that *Pampers* requires rejection of this Settlement.  *Pampers* is inapposite and CCAF's argument is without merit.

**L.    CCAF Objection 6 is without merit because the Class Representative Enhancement Payments are fair and reasonable.**

CCAF Objection 6 lacks merit because it is based almost entirely on the *Pampers* decision.  Also, CCAF's reliance on *Vassalle* and *Radcliffe* is misplaced because the incentive payment in *Radcliffe* was expressly conditioned on the class

representatives' support for the Settlement, and in *Vassalle* the class representatives received equitable relief not available to absent class members. *See* Plaintiffs' Response to Objections (Docket No. 128), at 30-31, PAGEID 2284-2285. Finally, the R&R's finding that (i) the incentive payments were tailored to compensate the Class Representatives based on time and effort, and (ii) that the Class Representatives' initiative, time, and effort were essential to a "significant recovery to the class" are powerful factors supporting approval. *See* R&R at 57-58, PAGEID 2855-2856.

### M. CCAF Objection 8 alleging a failure to disclose Class Counsel's fee division is without legal support and entirely frivolous.

CCAF Objection 8 entirely fabricates a requirement that Class Counsel disclose its internal fee-sharing agreement prior to the claims period deadline. CCAF provides no support for this Objection because none exists. As discussed in the R&R, Rule 23 requires that class notice be directed in a reasonable manner. R&R at 67-68, PAGEID 2865-2866. The R&R found that all applicable requirements were met, including the disclosure and request for payment of Class Counsel's reasonable attorneys' fees in the amount of $2.39 million. *Id.* The R&R recognized CCAF's Objection and overruled it by (i) citing *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 WL 3173972, at *1-3 (W.D. Mich. Oct. 26, 2007), for the legal principle that no such requirement exists, and (ii) acknowledging that Class Counsel disclosed its fee split well in advance of the Fairness Hearing. *Id.*

CCAF's argument is without legal support, it is contradicted by *Bessey*, and the disclosure it seeks is entirely irrelevant. The Class Notice clearly and adequately disclosed to all absent class members that Class Counsel would seek an award of $2.39 million. How the Vorys and Isaac Wiles firms divided the work is entirely

irrelevant to the fairness and reasonableness of the Settlement. The CCAF, in trumpeting this Objection, makes no effort to explain how this information bears on the overall fairness of the Settlement.

## IV.   **CONCLUSION**

For the reasons set forth above; for the reasons contained in the R&R; and for the reasons discussed in Plaintiff's Response to the Objections, January 1, 2014 (Docket No. 128), and the parties' Joint Motion/Unopposed Motion for Final Approval, February 4, 2014 (Docket No. 132), Plaintiffs respectfully request that: (i) the CCAF and the Zik/Hearon Objections be overruled, (ii) that this Court accept and approve the R&R's recommendations (a) to (g), (iii) that this Court grant Final Approval of all provisions of this Settlement, and (iv) that this Court enter a Final Order and Final Judgment approving this Class Action Settlement in the proposed forms attached hereto as Exhibits 4 and 5.[12]

---

[12] A proposed Final Order and Final Judgment were previously submitted to the Court as Exhibits 1 and 2 to the Joint/Unopposed Motion for Final Approval (February 4, 2014, Docket 132). The proposed Final Order attached hereto as Exhibit 4 has been modified on page 1 to acknowledge the filing of the R&R and in ¶13 to include the final Class Payment as determined by the Claims Administrator. The proposed Final Judgment is unchanged.

Respectfully submitted,

s/ Thomas N. McCormick
William G. Porter (0017296)
wgporter@vorys.com
Thomas N. McCormick   (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
kjrubin@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone:  (614) 464-6400
Facsimile:  (614) 464-6350

James B. Lind (0083310)
jblind@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, OH 45202
Telephone: (513) 723-4000
Facsimile: (513) 852-7835

*Attorneys for Plaintiffs*

s/  Mark H. Troutman
Mark Landes   (0027227)
mlandes@isaacwiles.com
Gregory M. Travalio   (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman   (0076390)
mtroutman@isaacwiles.com
ISAAC, WILES, BURKHOLDER &
TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121
Facsimile:  (614) 365-9516

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 1, 2014, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.

/s/ Thomas N. McCormick_____
Thomas N. McCormick (0075496)
tnmccormick@vorys.com

5/01/2014 19230613