**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **AMBER GASCHO, *et al.*,** | |
| **on behalf of themselves and all others similarly situated,** | **CASE NO. 2:11-CV-00436** |
| **Plaintiffs,** | |
| **v.** | **CHIEF JUDGE SARGUS** |
| **GLOBAL FITNESS HOLDINGS, LLC,** | **MAGISTRATE JUDGE KING** |
| **Defendant.** | |

## PLAINTIFFS' OMNIBUS RESPONSE TO POST-HEARING BRIEF REGARDING CONTEMPT OF DEFENDANT GLOBAL FITNESS HOLDINGS, LLC, ROYCE PULLIAM, AND LAURENCE PAUL

These proceedings are about the contemptuous violation of a Court Order. Specifically, Royce Pulliam, and Laurence Paul, through their actions and inactions, caused Global Fitness to violate an enforceable and unambiguous Court Order. In their closing briefs, these same parties ignore the undisputed facts and binding Sixth Circuit precedent. Instead, they attempt to re-litigate the underlying class action settlement—a settlement that they voluntarily entered into and advocated for and that the Sixth Circuit approved. In doing so, Global Fitness, Royce Pulliam, and Laurence Paul highlight their prior lack of candor to the Court. For these reasons, this Court should make a final finding of contempt against Global Fitness, Royce Pulliam, and Laurence Paul and award sanctions to Plaintiffs.

1

I.      **Contempt is well established.**

The factual and legal record supporting contempt is well established and largely undisputed.  At this point, further discussion of the unrebutted evidence and binding precedent that supports a finding of contempt is repetitive of the information already contained in this Court's Opinion and Order (ECF No. 209), Plaintiffs Pre-Hearing Memorandum of Law (ECF No. 203), and Plaintiffs' Post Hearing Brief (ECF No. 237).

II.     **The asserted defenses are without merit.**

In their closing briefs, Global Fitness, Royce Pulliam, and Laurence Paul re-assert a number of previously rejected defenses in an effort to avoid a final finding of contempt.  These defenses are without merit, conflict with the established facts of this case, and/or are irrelevant under the law.

A.  **A valid and enforceable Court Order exists.**

Global Fitness, Royce Pulliam, and Laurence Paul again argue that no valid and enforceable Court Order exists.  This argument fails for multiple reasons.

First, it ignores the Final Approval Order and its mandate that "Class Counsel are hereby awarded attorneys' fees and reimbursement of their costs and expenses *in the total amount of $2,390,000.00 to be paid by Defendant to Class Counsel*."  ECF No. 147, at ¶ 11 (emphasis added).  The Final Approval Order is clear and unambiguous, and Global Fitness understood its obligations.

Second, in issuing the Final Approval Order, the Court did not simply reference or include the Settlement Agreement, but instead complied with its obligation to undertake an independent review of the class settlement to determine the settlement was fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e) (requiring court review

2

and approval of any class action settlement); *Dalley v. Mich. Blue Cross/Blue Shield, Inc.*, 612 F. Supp. 1444, 1467 (E.D. Mich. 1985) (explaining that Rule 23 requires a court to "independently approve a settlement in a class action suit"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820-21 (3d Cir. 1995) (holding that an agreement regarding attorneys' fees must be reviewed along with the class action settlement because "a thorough judicial review of fee applications is required in all class action settlements").  As such, the Final Approval Order represents a specific finding that the settlement is fair, reasonable, and adequate, in addition to imposing a mandate that the parties act pursuant to the terms set forth in the Court Order and the Settlement Agreement.  *See* ECF No. 147, at ¶¶ 3-6.

Third, the argument is also inconsistent with Global Fitness' prior positions.  As documented in detail below, Global Fitness sought, and repeatedly advocated for, imposition of the Final Approval Order without ever once raising any concerns about the ambiguity it now claims.  In fact, the specific Final Approval Order, which was accepted and adopted by this Court, was ***jointly*** proposed by the parties through its attachment to the Joint Motion for Final Approval.  *See* ECF No. 132-1.  Moreover, on April 21, 2017, one day after violating the Court Order, Global Fitness admitted that "[t]he settlement agreement approved by the Court spells out clearly that Plaintiff's counsel are to receive $2,390,000."  ECF No. 174, at 6.

Fourth, the argument relies on a misreading and misapplication of the law.  Reliance on the now-disfavored Seventh Circuit case, *H. K. Porter Co. v. Nat'l Friction Prods. Corp.*, 568 F.2d 24, 26 (7th Cir. 1977), is misplaced because the Seventh Circuit has warned against reading *H.K. Porter* too broadly, explaining that

3

"[w]hat the court seems to have meant was that it would be unjust to punish someone for violating an injunction that he could not understand.  It would be." *Dupuy v. Samuels*, 465 F.3d 757, 759-760 (7th Cir. 2006).

Likewise, and for these same reasons, Global Fitness' efforts to distinguish *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994), are unavailing. Indeed, this Court's reliance on *Kokkonen* for the proposition that "if the terms of a settlement agreement are incorporated into a court order, 'a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.'" is unremarkable.   Any holding to the contrary would be surprising given that: (1) Global Fitness jointly proposed the Final Approval Order to the Court, advocated for its adoption, and understood its terms; (2) the Court evaluated the settlement as required by Rule 23 and made specific findings in the Final Approval Order; (3) the Court expressly *incorporated* the Settlement Agreement into the Final Approval Order, *see* ECF No. 147, at 2 ("This Final Order Approving Class Action Settlement *incorporates* the Settlement Agreement.")[1]; and (4) in addition to the incorporation, the Court expressly stated that "the total amount of $2,390,000.00 [was] to be paid by Defendant to Class Counsel."  ECF No. 147, at ¶ 11 (emphasis added).

---

[1]  The Sixth Circuit has held that this distinction is pivotal.  *See Caudill v. N. Am. Media Group*, 200 F.3d 914, 917 (6th Cir. 2000) ("mere *reference* to the fact of a settlement does not *incorporate* the settlement agreement into the [] order" (emphasis added)).

4

Last, Global Fitness' argument that the ability to modify the settlement agreement "without needing further approval from the Court" renders the agreement unenforceable is wrong.  The Court's Final Approval Order *actually* provides:

> The Parties are hereby authorized, without needing further approval from the Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement, as are in writing and signed by the Parties' counsel and are consistent with this Final Order ***and do not limit the rights of the Class or Subclass Members under the Settlement Agreement.***

ECF No. 147, at ¶ 14 (emphasis added).  Nothing in this Paragraph blurs the unequivocal award of attorneys' fees ordered in ¶ 11.  Moreover, because no such modifications ever occurred, any reliance on this provision is misplaced.  Finally, the bold and italicized provision (which Global Fitness repeatedly omits) instructs that such language was added for the administrative convenience of the parties in the event that minor changes were needed to administer a class-action settlement involving tens of thousands of class members.  Such provisions are common and do nothing to undermine the enforceability of the Court Order and Settlement Agreement.

### B. Mr. Bober's testimony and his proposed "known and knowable" standard are irrelevant and support a finding of contempt.

As already established in prior briefing, Mr. Bober's opinions are irrelevant and unreliable.  *See* ECF No. 237, at 7-8.  However, two additional points further rebut any claim that the $10 million-plus distributions related to taxes as repeatedly claimed by Global Fitness.  *See, e.g.,* ECF No. 191, at 11 (saying all distributions were for "tax purposes and consistent with the longstanding procedures of the company").

First, Global Fitness, Royce Pulliam, and Laurence Paul failed to produce any evidence from, and could not even identify, the person who actually made calculations

5

*at the time* of the distribution.  Instead, Global Fitness, Royce Pulliam, and Laurence Paul rely on the reverse engineering of Mr. Bober performed in 2017.

Second, the distributions were made in two separate payments and conveniently totaled *the exact amount* received from LA Fitness.  The likelihood that a legitimate "tax" distribution equaled the same amount received days earlier is incredibly remote, if not impossible.  As such, the evidence proves that Global Fitness' prior claim that these distributions were for taxes and "consistent with the long standing procedures of the Company" is simply false.

Likewise, Global Fitness, Royce Pulliam, and Laurence Paul's reliance on an ill-defined "known or knowable" standard is incorrect.  Even assuming that some "known or knowable" standard exists, it is subservient to the legal requirements of the impossibility defense.  Taking all reasonable steps to comply, possessing clean hands, and having no responsibility for the present inability to pay are required, while "[g]ood faith, diligent, and substantial efforts are insufficient; a party must make *all* reasonable efforts."  *SEC v. Douglas*, No. 3:82 CV 29, 2012 U.S. Dist. LEXIS 116966, at *7–8 (N.D. Ohio Aug. 20, 2012); *see also Elec. Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 383 (6th Cir. 2003).

Moreover, looking at what was "known and knowable" at the time actually *supports* a finding of contempt.  Specifically, in May 2014, Global Fitness distributed $10.4 million out of its $15.6 million remaining funds without any source of income, knowing that the following liabilities existed:

- A Settlement Agreement and pending Final Approval Order in this case totaling $4.4 million;

6

- Counterclaims brought by Paramount against Global Fitness seeking $4.6 million;

- Ongoing payroll and other expenditures, including rent to an entity owned by Royce Pulliam, that exceeded $800,000 in 2014, $650,000 in 2015, and $650,000 in 2016;

- Ongoing attorneys' fees and costs in the Paramount litigation, as well as the risk of ongoing attorneys' fees and costs in the *Gascho* litigation if the settlement were rejected, exceeding $1.6 million in 2014 and $800,000 in 2015.

Accordingly, given what was "known and knowable" at the time, the distribution of more than $10 million to the Managers in 2014 was simply unreasonable. Moreover, it is strong evidence of contempt because, in addition to enriching themselves, the Managers took **no** steps to otherwise ensure compliance with the Court Order. *See* ECF No. 209, at 11-15.

### C. Prior representations by Global Fitness to multiple courts were false.

The remaining defenses advanced by Global Fitness, Royce Pulliam, and Laurence Paul rely upon two primary theories already rejected by the Court: (1) Class Counsel is to blame for the lack of funds, and (2) Global Fitness, Royce Pulliam, and Laurence Paul had no duty to ensure payment. *See* ECF No. 209. However, in making these arguments, Global Fitness, Royce Pulliam, and Laurence Paul highlight prior representations to this Court that lacked the candor required by law.

As shown below, on no less than ten occasions Global Fitness advocated for the adoption of the same Final Approval Order that they now claim imposes no duty. Each of the ten representations is set forth in a numbered paragraph below.

1) **September 12, 2013:** Global Fitness Manager and CEO Royce Pulliam **and** counsel signed the Settlement Agreement saying, among other things, that (1) Global Fitness would make the required

payments; (2) Global Fitness would "use their best efforts" to effectuate the Settlement Agreement; and (3) Global Fitness "ha[s] duly authorized the execution, delivery and performance of this agreement." (ECF No. 97-1, at 12, 23, and 24.)

2) **September 19, 2013:** Defense counsel signed the Joint Motion for Preliminary Approval asking this Court to order payments because Defendant is "wrapping up its business operations," "[seeks] to void the risk of continuing litigation," and wants "certainty rather than the attendant risk." (ECF No. 97, at 7.)

3) **January 23, 2014:** Global Fitness opposes all objectors to the settlement saying "The Settlement Is Fair And Reasonable Based On The Risks Associated With Continued Litigation." (ECF No. 126, at 10.) Moreover, this same day they also file notice of non-opposition to the Court's award of attorneys' fees to Class Counsel. (ECF No. 127.)

4) **February 4, 2014:** Defense counsel signs and jointly submits the Joint Motion for Final Approval, which contains the Final Approval Order they now claim is unenforceable. (ECF No. 132.) In making this Joint Motion, Global Fitness asks this Court to order the now unfulfilled payments to the Class Counsel and Dahl.

5) **February 13, 2014:** Defense counsel appeared and spoke at the Final Fairness Hearing, urging Final Approval because "we believe this settlement is fair to everyone - - the class members and the defendants" and "Your Honor, we, Global Fitness, want this settlement approved." (ECF No. 139, at 68-69.)

On April 4, 2014: Magistrate Judge King issued a detailed Report and Recommendation approving the settlement and the Final Approval Order as proposed by Plaintiffs and Global Fitness. *See* ECF No. 141. The next month, on May 2, 2014, Royce Pulliam and Laurence Paul provided to themselves the so-called "tax" distribution of $10 Million.

6) **May 3, 2014:** One day later, one day after the distribution, Global Fitness filed a response supporting Magistrate Judge King's Report and Recommendation, saying "Global Fitness respectfully requests …

that this Court grant Final Approval of **_all_** provisions of the Settlement." (ECF No. 145, at 2.) [2]

7) **December 1, 2014:**  Defense counsel filed an Appellee Brief in the Sixth Circuit Court of Appeals seeking affirmance of the Final Approval Order.

Just days earlier, on November 28, 2014, records show that "cash on hand" was $4.3 million.  This is barely enough to cover this Settlement ($4.22 million), and it is wholly inadequate given future expenses cited above.

8) **June 9, 2015:**  Defense counsel appeared at oral argument in the Sixth Circuit Court of Appeals supporting affirmance of the Final Approval Order.

Six month earlier, on January 31, 2015, "cash on hand" was $200,000 <u>less</u> than this Settlement's obligation, and by August 28, 2015, "cash on hand" was <u>short</u> by more than $600,000.

9) **January 17, 2017:** Defense counsel filed in the United States Supreme Court a response in opposition to petitions for certiorari stating that "[t]he attorneys' fee award in this case . . . was fair and reasonable" and that "Global Fitness has every incentive to agree to a settlement that is both affordable and approvable" and that the fee amount to Class Counsel "should not be surprising or inherently objectionable"  Global Fitness' Response in Opposition to Petitions for (Writ of Certiorari, at 9.)

On January 1, 2017, Global Fitness had less than $500,000 in assets (*i.e.*, less than 20% of the amount needed to comply with this Court's Order).

10) **February 28, 2017:**  Defense counsel filed papers before Judge Smith saying that "[u]nder the Settlement Agreement, Global Fitness'

---

[2]     Whereas Global Fitness would like this Court to believe attorneys' fees are not a part of the same Settlement Agreement and Court Order that provides relief to the Class, *it had already acknowledged* that attorneys' fees were included as part of the Final Approval Order it was asking the Court to enter.  *See* ECF No. 127.

payment obligations are triggered by the 'Effective Date'" and arguing that the "Effective Date" should not start until twenty-five days have passed following the denial of certiorari.  *See* ECF No. 159.

Despite having somewhere between $200,000 and $400,000 in cash in February 2017, Global Fitness never advised the Court, Class Counsel, or Dahl that it could not comply with the Court Order.

In summary, Global Fitness advocated for, and requested, approval of the Final Approval Order no less than **ten times**, and often when it had insufficient money to pay the judgment.  Yet, Global Fitness now claims that *Class Counsel* is at fault for its inability to pay and that it had no duty to preserve the necessary funds.  These positions are contrary to the law and demonstrate an ongoing lack of candor to the Court.

## III.   <u>CONCLUSION.</u>

This Court has the opportunity not only to effectuate justice in the instant case, but also to send a strong message to future parties who would violate the Court's orders in any context: ***the rule of law must be upheld.***  Court orders must be obeyed.  And weighty consequences exist for those who ignore a Court Order.

Based upon the record in this case, the Court should find Defendants Global Fitness Holdings, LLC, Royce Pulliam, and Laurence Paul in contempt.  The record supports sanctions in the form of injunctive relief commanding immediate payment of $2.39 million to Class Counsel, payment of $214,983.66 to Dahl Administration, payment of Class Counsel's attorneys' fees and costs incurred since April 18, 2017 (including future appeals), and a daily fine and coercive incarceration to encourage prompt payment, as well as any other remedy that this Court sees fit and in accordance with law.

Respectfully submitted,

/s/ *Thomas N. McCormick*
John J. Kulewicz (0008376)
jjkulewicz@vorys.com
Thomas N. McCormick (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin (0077819)
kjrubin@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43215
(614) 464-6400 (telephone)
(614) 464-6350 (facsimile)
*Plaintiffs' Class Counsel*

/s/ *Mark H. Troutman*
Gregory M. Travalio (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman (0076390)
mtroutman@isaacwiles.com
Shawn K. Judge (0069493)
sjudge@isaacwiles.com
ISAAC WILES BURKHOLDER & TEETOR, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
(614) 221-2121 (telephone)
(614) 365-9516 (facsimile)
*Plaintiffs' Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 21, 2017, the foregoing was filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Mark H. Troutman*
Mark H. Troutman (0076390)
mtroutman@isaacwiles.com
*One of the Attorneys for Plaintiffs*