# IN THE UNITED STATES DISTRIT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| AMBER GASCHO, et al., : | |
| On behalf of themselves and all others : | Case No. 2:11-cv-436 |
| similarly situated : | |
| : | Chief Judge Edmund A. Sargus |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| GLOBAL FITNESS HOLDINGS, LLC : | |
| | |
| Defendants. | |

## MOTION OF DAHL ADMINISTRATION, LLC
## FOR RELEASE OF FUNDS

Now comes Dahl Administration, LLC ("Dahl"), by and through its counsel, and respectfully requests the Court to release the residual funds from the settlement disbursement to Dahl.

A Memorandum in Support is attached hereto.

                                              Respectfully,

                                              */s/ Drew H. Campbell*
                                              Drew H. Campbell    (0047197)
                                              Bricker & Eckler LLP
                                              100 S. Third Street
                                              Columbus, Ohio 43215
                                              Telephone: 614-227-2300
                                              Fax: 614-227-2390
                                              dcampbell@bricker.com
                                              *Counsel for Dahl Administration, LLC*

**MEMORANDUM IN SUPPORT**

I.  **INTRODUCTION AND OVERVIEW**

This Court is well-acquainted with the conduct of Global Fitness Holdings, LLC ("Global").

Perhaps less well known by the Court is how Global deceived Dahl in connection with its good faith performance as Claim Administrator under the ASA and the Settlement Agreement.

On or about September 12, 2013, Plaintiffs and Global entered into the Settlement Agreement, which requires Dahl to distribute funds to class members. The Court then incorporated that agreement into its July 16, 2014, Final Order Approving Class Settlement.

In connection with its duties as the Claims Administrator under the terms of the Settlement Agreement, Dahl received $1,633,240.00 from Global for the purpose of funding payments to Allowed Claimants and the Class Representative. As required by the terms of the Settlement, Dahl processed and mailed payments to allowed claimants.

As it was performing this aspect of its duties, Dahl received a telephone call from Global asking Dahl to confirm that the payments had been timely made. At no time did Global advise Dahl that there would be insufficient funds to meet the Defendant's outstanding and future obligations to Plaintiffs' counsel or to Dahl following distribution of the class payments.

Instead, Dahl first learned that Global was unable to make any further payments when it filed the Notice of Non-Payment ("Notice")—*after* Global confirmed that all of the initial class payments had been made. (ECF No.161.) In that Notice, Global stated that it had "insufficient assets to comply" with the obligations to pay Dahl for its services. It is apparent from the timing of the call and filing, therefore, that Global wanted to ensure that Dahl had disbursed payments

to class members *before* giving it notice that it would not be paid for its services—including future administrative services in connection with the class payments.

Both Dahl and the Plaintiffs were confronted with a dilemma. Despite Global's breach, Plaintiffs' counsel had ongoing duties to class members, while Dahl had obligations to the Court which appointed it to ensure that the settlement was properly administered. But with Global's Notice, the settlement hung in the balance. Had Dahl elected to cease performing due to Global's breach, the entire class settlement would have failed. Instead, Dahl promised the Court that it would continue to faithfully administer the class and fulfill the duties entrusted to it by the parties and the Court—notwithstanding the uncertainty created by the Defendant.

As part of this effort, Plaintiffs and Dahl jointly moved for an order requiring Global to escrow $100,000 of its remaining assets in order to pay Dahl "on an as-earned basis for continued administration of the class settlement." (ECF No. 186.) At the time, Dahl was owed $278,074.04 for professional fees incurred as a result of the procedures and processes expressly required by the settlement agreement, referred to as Settlement Administration Costs. (Declaration of Jeffrey Houdek ("Houdek Decl.") at ¶ 9) (Ex. A).

The Court granted Plaintiffs' and Dahl's joint request, and ordered Global to pay $100,000 directly to Dahl for the continued administration of the class settlement. (ECF No. 190.) On or about May 2, 2017, Dahl received that payment, and has received none since. (Houdek Decl., ¶ 11.) Since that payment, Dahl has incurred additional Settlement Administration Costs. Today, Global still owes Dahl $218,872.62 (which does not include interest or any other type of charge) for services performed both before and after the Notice. (Houdek Decl., ¶ 12.)

The claims administration process was completed on January 23, 2018, the date the last of the outstanding checks was cancelled as past their void date. As of the date of this Motion, a balance of $186,855.00 remains in the claims administration account (the "Residual Funds"). Pursuant to the Settlement Agreement, unless otherwise directed by the Court, the Residual Funds are to be returned to Global. (Settlement Agreement, at ¶ 14.2.)

To avoid additional protracted litigation between Dahl and Global, however, Dahl is willing to accept the Residual Funds as full payment for professional services rendered under the Settlement Agreement. This represents a discount of $32,017.62, or 14.6%.

Pursuant to the Settlement Agreement and the Court's July 16, 2014, Final Order Approving Class Settlement, Dahl, therefore, respectfully requests that the Court order that Dahl be permitted to retain the Residual Funds in order to effectuate payment in accordance with the Settlement Agreement.

## II. LAW AND ARGUMENT

### A. The Court possesses jurisdiction to enforce the terms of the Settlement Agreement.

This Court possesses jurisdiction to enforce the terms of the Settlement Agreement pursuant to the July 16, 2014, Final Order Approving Class Settlement.

Typically, a district court does not retain jurisdiction over a private settlement agreement entered into by parties to a suit. *See Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 917 (6th Cir. 2000). In *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994), the Supreme Court, however, enumerated two exceptions to that general rule:

> [T]he parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal -- either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a

breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Kokkonen*, 511 U.S. at 380–81.

To retain jurisdiction by incorporating the terms of the settlement agreement into the order, a court must do more than make general references to a private settlement agreement in its order. *See, e.g.*, *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001), (noting that "the mere reference in a dismissal order to a settlement agreement does not incorporate the settlement agreement into the order") (citing *McAlpin v. Lexington 76 Auto Truck Stop. Inc.*, 229 F.3d 491 (6th Cir. 2000)). A court, however, does not need to recite the entire settlement agreement to retain jurisdiction. In *RE/MAX Int'l*, for example, the Sixth Circuit held that the second exception recognized in *Kokkonen* had been satisfied when the district court's order "stated that any 'subsequent order setting forth different terms and conditions relative to the settlement and dismissal of the within action shall supersede the within order.'" *Id.* at 645. The *RE/MAX* court reasoned that "the court may only enter subsequent orders involving the settlement agreement if it has retained jurisdiction. Thus, the 'continued role for the court that was contemplated after dismissal' is included in the language of the order itself." *Id.*

Here, both *Kokkonen* exceptions apply: First, the Settlement Agreement contains a separate provision that grants the Court the power to retain jurisdiction over the implementation and enforcement of the Settlement Agreement. Settlement Agreement, at ¶ 16.7. Specifically, in Paragraph 16.7 of the Settlement Agreement, the Parties agreed that:

> The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained only in the Court.

*Id.*

12501239v4

Second, the Court incorporated the terms of the Settlement Agreement into the Final Order. Specifically, the Final Order states that:

> **Retention of Jurisdiction.** The Court has jurisdiction to enter this Final Order and the accompanying Final Judgment. *This Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Final Order and the accompanying Final Judgment*, and for any other necessary purpose, including, without limitation,
>
> (a) *enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims, or causes of action* in the Consolidated Litigation that, in whole or in part, are *related to or arise out of the Settlement Agreement, this Final Order, or the Final Judgment* (including, without limitation, whether a person or entity is or is not a Settling Plaintiff; whether claims or causes of action allegedly related to this case are or are not barred by this Final Order and the Final Judgment);
>
> (b) *entering such additional Orders as may be necessary or appropriate to protect or effectuate the Court's Final Order and the Final Judgment approving the Settlement Agreement*, dismissing all claims on the merits and with prejudice, and permanently enjoining Settling Plaintiffs from initiating or pursuing related proceedings, *or to ensure the fair and orderly administration of this settlement*; and
>
> *(c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction.*

Order at ¶ 15 (emphasis added).

The Court has thus retained jurisdiction over the Settlement Agreement through both *Kokkonen* exceptions. The Court, therefore, has the power to enforce the terms of the Settlement Agreement, including Global's obligation to pay Dahl for services rendered.

### B. The Settlement Agreement has the weight of a court order and requires Global to pay Dahl for the costs of settlement.

The Court's Final Order also acts as a consent decree that subjects the parties to the Court's jurisdiction over the Settlement Agreement. The Court, therefore, possesses the authority to exercise its contempt powers to release the Residual Funds to Dahl.

A final order memorializing a settlement agreement can act as a consent decree. *Cf. Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). Importantly, in approving a consent decree, the court should follow three steps: "The proposed decree should be preliminarily approved, interested persons given notice, and a reasonableness determination made after a hearing is held." *Id.* at 920–21. After approval, the "consent decree is not simply a compact between former litigants, rather it is a court order." *Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 557 (6th Cir. 1982), *rev'd on other grounds sub nom. Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561 (1984).

By incorporating the terms of a settlement agreement into a final order, a court stamps its seal of approval on the settlement. *Cf. RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001). In this way, "[j]udicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties." *Williams*, 720 F.2d at 920. A court, therefore, has "an *affirmative duty* to protect the integrity of its decree and ensure that the terms are effectuated." *Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland*, 669 F.3d 737, 743 (6th Cir. 2012) (emphasis added). "This duty arises where the performance of one party threatens to frustrate the purpose of the decree." *Stotts*, 679 F.2d at 557.

"The prospective provisions of the consent decree operate as an injunction." *Williams*, 720 F.2d at 920. Importantly, the injunctive quality of consent decrees compels the court to:

> 1) retain jurisdiction over the decree during the term of its existence, 2) *protect the integrity of the decree with its contempt powers*, and 3) modify the decree should "changed circumstances" subvert its intended purpose.

*Id.* (emphasis added) (internal citations omitted).

Here, the Court followed the suggested procedure for approving a consent decree. The proposed order was preliminarily approved. (ECF No. 147, PageID 3006). Interested persons

were given notice. (*Id.*). And there was a final approval hearing, which ensured that the agreement was reasonable. (*Id.*). The Court then memorialized this agreement in its Final Order. The Court has thus placed its power and authority behind the Settlement Agreement.

Importantly, therefore, Global's obligation to pay Dahl for services rendered is not merely contractual (although it certainly is that). But rather—because the Court incorporated the Settlement Agreement in its own Final Order—Global's obligation is required by court order. Through its contempt power, therefore, the Court can release the Residual Funds to Dahl as payment for services rendered.

C. **Pursuant to its powers under the Settlement Agreement and the Final Order, the Court can, and should, release the Residual Funds to Dahl.**

To date, Dahl has incurred $318,872.62 in professional fees under the Settlement Agreement and the Court's Final Order.[1] In accruing those fees, Dahl has successfully, and in good faith, performed its obligations under the Settlement Agreement.

In return, Global is required under the terms of the Settlement Agreement and the Final Order to pay Dahl for services rendered. While Global does not dispute its obligation, it has yet to discharge it.

By failing to pay Dahl for services rendered, Global is violating the Settlement Agreement and the Court's Final Order. This violation is important. In fact, Dahl's performance was essential to the resolution of the suit: Dahl's performance preserved Plaintiffs' right to seek

---

[1] As provided in Houdek's Declaration, Dahl's performance under the Settlement Agreement included: "(i) receipt of potential Class Member records from Defendant and processing of the list of potential Class Members; (ii) preparation and mailing of the Mailed and Emailed Summary Notices ("Initial Notice"); (iii) processing of the Initial Notice; (iv) placing of the Publication Notice; (v) preparation and sending of the Supplemental Email Notice; (vi) implementation and operation of the toll-free settlement information line; (vii) implementation and maintenance of the settlement website; (viii) receipt and processing of Opt-Out Requests; (ix) receipt and processing of Objections to the settlement and/or Notices of Intent to Appear; (x) receipt and processing of Claim Forms; (xi) performing class payment calculations; (xii) the maintenance of the settlement website and telephone information line during the lengthy stay pending appeal, and (xiii) responding to inquiries from potential class members throughout the entire period since the moment that notice of the settlement was first provided." (Houdek Decl., ¶ 4.)

12501239v4

fees against Global under the Settlement Agreement. And Dahl's performance discharged Global's obligations to the class members.

## III. CONCLUSION

Because Global is in violation of the Settlement Agreement and the Court's Final Order, Dahl respectfully requests that the Court permit Dahl to retain the Residual Funds in full satisfaction of the professional fees it has incurred in this matter.

    Respectfully,

    */s/ Drew H. Campbell*
    Drew H. Campbell   (0047197)
    Bricker & Eckler LLP
    100 S. Third Street
    Columbus, Ohio 43215
    Telephone: 614-227-2300
    Fax: 614-227-2390
    dcampbell@bricker.com
    *Counsel for Dahl Administration, LLC*

**CERTIFICATE OF SERVICE**

A copy of the foregoing document has been served upon counsel of record in this case via the Court's electronic filing system, this 26th day of February, 2018.

*/s/ Drew H. Campbell*
Drew H. Campbell    (0047197)

12501239v4